Sue Ellen Eisenberg (SE-4713) – *admitted pro hac vice*
Lucetta Franco (LF-7638) - *admitted pro hac vice*
Eisenberg & Bogas, P.C.
33 Bloomfield Hills Parkway, Suite 145
Bloomfield Hills, Michigan  48304-2945
(248) 258-6080

    - and –

Laurie Berke-Weiss (LB-3445)
Louis Pechman (LP-6395)
Berke-Weiss & Pechman LLP
488 Madison Avenue
New York, New York 10022
(212) 583-9500


*Attorneys for Defendant Isiah Lord Thomas III*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ANUCHA BROWNE SANDERS, <br><br>      Plaintiff, <br><br>   -against- <br><br> MADISON SQUARE GARDEN, L.P., ISIAH LORD THOMAS III AND JAMES L. DOLAN, <br><br>      Defendants. | Civil Case No. 06 Civ. 0589 (GEL) (DCF) <br><br> ECF CASE |


# MEMORANDUM OF LAW OF DEFENDANT ISIAH THOMAS
## IN SUPPORT OF HIS MOTION FOR
## PARTIAL SUMMARY JUDGMENT

Dockets.Justia.com

# TABLE OF CONTENTS

TABLE OF AUTHORITIES................................................................... iii

PRELIMINARY STATEMENT ........................................................... 1

STATEMENT OF FACTS................................................................... 1

    A.    Browne Sanders' Employment At MSG.......................................... 1

    B.    Thomas Did Not Supervise Browne Sanders.................................... 2

    C.    Browne Sanders' Claims of Discrimination .................................... 3

    D.    Browne Sanders Complained To MSG In December 2005 ............. 3

    E.    MSG Conducted An Investigation Into
        Browne Sanders' Claim And Issued Recommendations ................ 4

    F.    Browne Sanders' Employment Problems
        Pre-dated The Memorandum........................................................ 4

    G.    Browne Sanders Is Terminated...................................................... 6

    H.    Browne Sanders' Press Coverage Of Her Complaint...................... 6

    I.    Thomas' Statements To Press......................................................... 7

    J.    Procedural History ....................................................................... 8

ARGUMENT

POINT I

    STANDARD FOR REVIEW FOR
    SUMMARY JUDGMENT ....................................................................... 9

POINT II

    THERE ARE NO FACTS TO SUPPORT THE
    CLAIM THAT THOMAS AIDED AND ABETTED
    ANY RETALIATION BY MSG RESULTING IN
    BROWNE SANDERS' TERMINATION............................................... 10

i

A.    Browne Sanders' Allegations, Based Merely On
      Information And Belief, Are Insufficient
      To Defeat Defendants Motion For
      Summary Judgment .......................................................................10

B.    There Is No Factual Basis To Browne
      Sanders' Claim That Thomas Aided And
      Abetted The Decision To Fire Her ..................................................11

      1.    Because Thomas did not actually participate
            in Browne Sanders' termination, the standard
            for aiding and abetting forbidden discriminatory
            behavior is not met................................................................11

      2.    There is no evidence that MSG and Thomas
            acted together with respect to her termination........................13

POINT III

      BROWNE SANDERS HAS NO CLAIM AGAINST
      THOMAS FOR REPUTATIONAL DAMAGES....................................14


CONCLUSION.....................................................................................................18

## TABLE OF AUTHORITIES

### CASES

*Albert v. Oksen,*
        239 F.3d 256 (2d Cir. 2001) ....................................................................... 10

*Anderson v. Liberty Lobby, Inc.,*
        477 U.S. 242 (1986) ................................................................................... 9

*Brice v. Security Operations Systems, Inc.,*
        No. 00 Civ. 2438, 2001 U.S. Dist. LEXIS 1856
        (S.D.N.Y. Feb. 23, 2001).............................................................. 10, 12, 13

*Brink v. Union Carbide Corp.,*
        No. 99-7303, 2000 U.S. App. LEXIS 7150
        (2d Cir. April 18, 2000) ............................................................................ 10

*Caplan v. Winslett,*
        218 A.D.2d 148 (1st Dep't 1996)............................................................... 17

*Cerrato v. Durham,*
        941 F. Supp. 388 (S.D.N.Y. 1996)............................................................. 13

*Croskey v. Medical and Technical Services, Inc.,*
        No. 05 Civ. 6641, 2006 U.S. Dist. LEXIS 56466
        (S.D.N.Y. Aug. 10, 2006)........................................................................... 16

*DeWitt v. Lieberman,*
        48 F. Supp.2d 280 (S.D.N.Y. 1999)........................................................... 11

*Dister v. Continental Group, Inc.,* 859 F.2d 1109 (2d Cir. 1988) .......................... 9

*Dorvil v. Hilton Hotels Corp.,*
        807 N.Y.S.2d 369 (2006)............................................................................ 12

*Feingold v. New York,*
        366 F.3d 138 (2d Cir. 2004) ...................................................................... 12

*Food Lion, Inc. v. Capital Cities/ABC, Inc.,*
        887 F. Supp. 811 (M.D.N.C. 1995)............................................................ 16

*Hestin v. InSite Adver., Inc.,*
        No. 03 Civ. 2508, 2005 U.S. Dist. LEXIS 2546
        (S.D.N.Y. Feb. 22, 2005)............................................................................ 13

*Hudson v. Goldman Sachs & Co.,*
    304 A.D.2d 315 (1st Dep't 2003)................................................17

*Lesavoy v. Lane,*
    304 F. Supp.2d 520 (S.D.N.Y. 2004).........................................11

*Lipin v. Nat'l Union Fire Ins. Co. of Pittsburgh PA.,*
    202 F. Supp.2d 126 (S.D.N.Y. 2002).........................................17

*Long v. Marubeni America Corp.,*
    No. 05 Civ. 0639, 2006 U.S. Dist. LEXIS 8932
      (S.D.N.Y. Mar. 6, 2006) .........................................................12

*Lovely Peoples Fashion, Inc. v. Magna Fabrics, Inc.,*
    No. 95 Civ. 8450, 1996 U.S. Dist. LEXIS 18842,
      (S.D.N.Y. Dec. 19, 1996) .......................................................11

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,*
    475 U.S. 574, 89 L. Ed.2d 538, 106 S. Ct. 1348 (1986) ..............9

*Meiri v. Dacon,*
    759 F.2d 989 (2d Cir. 1985) ........................................................9

*Melendez v. Int'l Serv. Sys. Inc.,*
    No. 97 Civ. 8051, 1999 U.S. Dist. LEXIS 4317,
      (S.D.N.Y. Apr. 6, 1999) .........................................................12

*New York Times Co. v. City of New York, Commission on Human Rights,*
    79 Misc.2d 1046, N.Y.S.2d 321 (Sup. Ct. 1974),
     *aff'd,* 49 A.D.2d 851, 374 N.Y.S.2d 9 (1st Dep't 1975),
     *aff'd,* 41 N.Y.2d 345, 361 N.E.2d 963, 393 N.Y.S.2d 312 (1977) ............13

*Nugent v. The St. Luke's/Roosevelt Hospital Center,*
    No. 05 Civ. 5109, 2007 U.S. Dist. LEXIS 28274
      (S.D.N.Y. Apr. 18, 2007)........................................................10

*Patane v. Clark,*
    435 F. Supp.2d 306 (S.D.N.Y. June 21, 2006) ...........................11

*Patrowich v. Chemical Bank,*
    63 N.Y. 2d 541 (1984)................................................................12

*Patterson v. City of Utica,*
    370 F.3d 322 (2d Cir. 2004) ......................................................15

*Patterson v. County of Oneida,*
    375 F.3d 206 (2d Cir. 2004) ...............................................10, 11

*Pierce v. Netzel,*
 No. 04-5606, 2005 U.S. App. LEXIS 19555
 (2d Cir. Sept. 9, 2005) ............................................................... 10

*Rall v. Hellman,*
 284 A.D.2d 113 (1st Dep't 2001)............................................... 16

*Reserve Solutions, Inc. v. Vernaglia,*
 438 F. Supp.2d 280 (S.D.N.Y. 2006)......................................... 15

*R.G. Group, Inc. v. Horn & Hardart Co.,*
 751 F.2d 69 (2d Cir. 1984) ........................................................ 10

*Sowemimo v. D.A.O.R. Sec., Inc.,*
 43 F. Supp.2d 477 (S.D.N.Y. 1999)........................................... 12

*Stamm* v. New York City Transit Authority,
 No. 04 Civ. 2163, 2006 U.S. Dist. LEXIS 30076,
 (E.D.N.Y. Jan. 31, 2006) ........................................................... 13

**STATUTES**

New York City Administrative Code § 8-107 *et seq.* ............................ 1, 11-12, 18

New York Executive Law § 296 *et seq.* (2007) ......................................... 1, 11, 18

Title VII of the Civil Rights Act of 1964, as amended
 42 U.S.C. § 2000e, *et seq.* (2007) ................................................. 9

N.Y. CIV. RIGHTS LAW § 74 (2007) .................................................. 16

**MISCELLANEOUS**

FED. R. CIV. P. 15(a) ...................................................................... 17

FED. R. CIV. P. 56.......................................................................... 1

FED. R. CIV. P. 56(b) ...................................................................... 9

FED. R. CIV. P. 56(e) ...................................................................... 9, 10

## Preliminary Statement

Defendant Isiah Thomas ("Thomas") submits this Memorandum of Law in support of his motion pursuant to Rule 56, FED. R. CIV. P. for partial summary judgment dismissing (1) the Third and Fourth causes of action of the Second Amended Complaint (the "Complaint" or "Compl.") of plaintiff, Anucha Browne Sanders ("Browne Sanders"), insofar as those causes of action assert claims against Thomas for retaliation or aiding and abetting retaliation by others through the termination of Browne Sanders, under the New York Executive Law § 296 ("HRL") and the New York City Human Rights Law, New York City Administrative Code § 8-107 ("Code") and (2) the demand for an award of "reputational damages" against Thomas. Thomas submits this memorandum and a Rule 56.1 statement, together with the accompanying Declarations of Lucetta V. Franco and Isiah Lord Thomas III, in support of the motion.

## STATEMENT OF FACTS[1]

### A.    Browne Sanders' Employment At MSG

Browne Sanders began working for Madison Square Garden ("MSG"), in November 2000 as the Vice President of Marketing for the New York Knickerbockers ("Knicks"). (Ex. H, Transcript of the Deposition of Stephen Mills, 53, hereinafter "Mills Dep.")[2] She was promoted to Senior Vice President of Marketing and Business Operations in 2002. (Ex. A, Compl. ¶ 15; Ex. H, Mills Dep. 53, 77.) In that position, Browne Sanders' primary responsibility was to

---

[1] The critical facts set forth here are limited to those that relate to the subjects addressed in this motion. Although Thomas strongly denies the allegations against him, because he does not seek dismissal of the entire complaint against him, he makes no attempt in this memorandum of law to refute all the allegations in the complaint.

[2] Unless otherwise indicated, all "Ex." references are to exhibits annexed to the Declaration of Lucetta V. Franco executed on May 4, 2007 ("Franco Decl.").

oversee all non-player related business operations of the Knicks including the revenue streams, marketing, new media, franchise operations, administration and community relations. (Ex. D, Transcript of the Deposition of Anucha Browne Sanders, 343-45, hereinafter "Browne Sanders Dep."; Ex. K, SVP Operational Position Description; Ex. H, Mills Dep. 89.) Browne Sanders later became a "Profit and Loss Manager" in 2004, with increasing responsibility in the strategic planning and budgeting process (Ex. H, Mills Dep. 98-99; Ex. D, Browne Sanders Dep. 343), and received a salary adjustment in 2005 to reflect her increased responsibilities (Ex. H, Mills Dep. 98-99).

Browne Sanders reported to Stephen Mills ("Mills"), President and COO of MSG. (Ex. A, Compl. ¶ 15.) Mills hired her, was responsible for her promotion, evaluated her, and made recommendations with regard to her salary and any salary adjustments she received. (Ex. H, Mills Dep. 50, 53, 99.)

**B.    Thomas Did Not Supervise Browne Sanders**

Thomas was hired as the Knicks' President of Basketball Operations in December 2003. (Ex. E, Transcript of the Deposition of Isiah Thomas, 130, hereinafter "Thomas Dep.") In that position, he oversaw the coaches, players, scouts, trainers, medical personnel, and other Knicks' personnel at the MSG Training Center (the "practice facility") located in Tarrytown, New York. (*Id.*) Mills also was Thomas' direct supervisor. (*Id.*) Thomas did not hire Browne Sanders. (Declaration of Isiah Thomas executed May 2, 2007, ¶ 2, hereinafter "Thomas Decl.") Thomas did not complain to anyone about Browne Sander's ability to perform her duties and did not ask that her responsibilities be changed or cut; he did not set her salary or change her salary. (Ex. E, Thomas Dep. 284.) Furthermore, Thomas did not evaluate her performance, nor was he ever consulted with regard to her performance evaluations. (Thomas Decl. ¶ 2; Ex. E, Thomas Dep.

284.) Thomas rarely saw Browne Sanders, since she operated out of offices in Manhattan, and Thomas usually was traveling or working from the practice facility. (Ex. D, Browne Sanders Dep. 52, 59; Thomas Decl. ¶ 3.)[3]

## C.    Browne Sanders' Claims Of Discrimination

In her complaint, Browne Sanders alleges that from the time Thomas was hired as President of the Knicks in December 2003 until December 2004, he subjected her to gender-based harassment and discrimination. (Ex. A, Compl. ¶¶ 18-28.) She alleges further that, starting in late 2004, Thomas began to make sexual advances toward her, and engaged in other discriminatory acts. (*Id.* at ¶¶ 29-45.) Finally, Browne Sanders complains that subsequent to her retention of counsel in December 2005, MSG and James Dolan ("Dolan") retaliated against her by terminating her employment, following an investigation into her claims. (*Id.* at ¶¶ 46-53.) Browne Sanders specifically alleges, "on information and belief," that Thomas retaliated against her by telling senior management that she would not accept changes in the organization that he had implemented. (*Id.* at ¶ 53.) She asserts that by making the statement, he aided and abetted MSG in its retaliatory act of terminating her. (*Id.* at ¶¶ 68, 74.) Browne Sanders seeks an award directing Thomas and the other defendants to "make her whole for reputational damages. . . ." (*Id.* at Prayer for Relief, ¶ d.)

## D.    Browne Sanders Complained  To MSG in December 2005

On December 22, 2005, Browne Sanders' attorneys informed MSG's counsel of her allegations that she was being subjected to harassment and discrimination. (*Id.* at ¶ 47.)

---

[3] According to Browne Sanders she went to the practice facility "very rarely" or "just occasionally," and "maybe three times during the [basketball] season." (Ex. D, Browne Sanders Dep. 52, 59.)

**E.    MSG Conducted An Investigation Into Browne Sanders'
    Claims And Issued Recommendations**

MSG's Human Resources Department immediately commenced an investigation into her claims and issued recommendations. Rusty McCormack ("McCormack"), MSG's Senior Vice President for Human Resources and Organization Development, issued a memorandum recommending that Browne Sanders be separated from MSG. (Ex. G, Memorandum from Rusty McCormack dated January 19, 2006 "McCormack Memo.") The McCormack Memo referenced Browne Sanders' "poor relationship and difficulty interacting with Mills and other members of MSG management." (*Id.*) Thomas did not initiate the investigation, direct the investigation, or influence its findings. (Thomas Decl. ¶ 4.) He was not involved in any way other than as an interviewee giving responses to Browne Sanders' allegations and other questions put to him. (*Id.*)

**F.    Browne Sanders' Employment Problems Pre-dated The Memorandum**

There was strong support for McCormack's conclusions regarding Browne Sanders' interpersonal and other skills. Dolan formed an impression in the summer of 2005 that Browne Sanders did not have the skills to perform her job. (Ex. F, Dolan Dep. 61.) Dolan noted that Browne Sanders had displayed an unacceptable level of performance at a budget meeting, where she showed a lack of understanding of the budgeting process. (*Id.* at 186.) Browne Sanders was unable to explain her budget, and did not understand differences between concepts having to do with capital and operating expenses. (*Id.*)

Hank Ratner ("Ratner"), Vice-Chairman of MSG, consistently expressed his opinion that Browne Sanders should be fired, from July 2005 through her termination date. (*Id.* at 188.) Ratner knew Brown Sanders from interacting with her at budgeting, forecasting, and strategy meetings in 2004 and 2005. (Ex J, Transcript of the Deposition of Hank Ratner, 61-71,

hereinafter "Ratner Dep.") Ratner formed the impression from those interactions that Browne Sanders did not have the knowledge or temperament to do the job that needed to be done. (*Id.* at 80.) He found her to be resistant to change, closed minded and "very, very defensive." (*Id.* at 83.) She failed to understand the breadth of her responsibility for business groups under her direction and did not take responsibility for the numbers, whether expense or revenue, for those groups. (*Id.* at 84-86.) Ratner concluded that Browne Sanders did not have the financial skills she needed, was very territorial, and did not cooperate well with others. (*Id.* at 87.) Ratner shared his concerns about Browne Sanders with Dolan and Mills, among others, in the summer of 2005. (*Id.* at 93, 105.) When he was advised by Mills toward the end of the year that Browne Sanders wanted to leave, his response was "good." (*Id.* at 110.)

Mills had formed the same conclusions as Ratner and Dolan. Browne Sanders had deficiencies in defining a strategic direction and was unwilling or unable to focus and listen to Dolan and others with regard to the process of "branding" the Company. (Ex H, Mills Dep. 369-70.) Instead, she attacked Dolan, saying that he did not understand the concepts. (*Id.* at 370.) She blamed Mills for her own errors. (*Id.* at 379.)

In the latter part of 2005, before her attorneys ever contacted MSG, Mills told McCormack and Ratner that Browne Sanders had told him she could no longer do her job. (*Id.* at 420.) Ratner suggested that Mills and McCormack work on a severance package. (*Id.*) Mills told Dolan that Browne Sanders had informed him she did not wish to continue working for the company and that he was going to work on an arrangement where Browne Sanders would continue working while she looked for another position. (Ex. F, Transcript of the Deposition of James Dolan, 48, hereinafter "Dolan Dep.") Thomas played no role in the evaluating her skills or discussing her future with MSG.

### G.    Browne Sanders Is Terminated

In addition to the performance concerns about Browne Sanders, MSG learned that she had violated certain company policies by interfering in a Human Resources investigation. McCormack told Dolan that Browne Sanders had willfully violated the company's policies and had undermined the investigation of her complaints by attempting to influence the statements of her direct reports. (*Id.* at 74.) Again, there is no evidence whatsoever that Thomas had knowledge of her acts, or formed any conclusions regarding her violation of company policies.

Dolan made the decision to terminate Browne Sanders within 24 hours of his conversation with McCormack. (*Id.* at 85.) Dolan took a number of factors into account, including but not limited to her poor performance, her tampering with the investigation of an investigation, and her demand for a $6,500,000.00 severance payment in reaching his decision (*Id.* at 188-90.) Dolan made the termination decision "on his own." (*Id.* at 87.) Dolan did not ask Mills whether he agreed or not with the decision. (*Id.* at 171.) Thomas did not have the authority to terminate her, did not recommend her termination, and was not asked for his opinion regarding any decision to terminate her. (Thomas Decl. ¶ 5.)

### H.    Browne Sanders' Press Coverage Of Her Complaint

The filing of Browne Sanders' complaint in this action on January 24, 2006 triggered a number of news reports, which is not surprising as Browne Sanders convened a press conference at the time she filed suit. (Ex. D, Browne Sanders Dep. 463.) However, she maintains that statements made by Thomas at his press conference and in the news media spread damaging rumors about her. (*Id.*) She also maintains that Thomas has affected her ability to get other employment. (*Id.* at 465.) She claims that she was turned down for employment because of her

6

damaged reputation, although she does not recall anyone saying that was the reason for her non-hire. (*Id.* at 466-67.)

Browne Sanders' response to MSG's Second Set of Interrogatories, asserts that her request for reputational damages is based upon statements made by Thomas and his attorneys to the press. She named three "headhunters" as witnesses, but withdrew their names when defendants proposed to depose them. She also stated that Jeff Nix ("Nix"), a co-worker and friend, had knowledge of her reputational damages. (Ex. C, Plaintiff's Response to Defendants MSG and Dolan's Second Set of Interrogatories, No. 1, p. 3, Oct. 18, 2006, hereinafter "Pl's Response.")

Nix sent out resumes for Browne Sanders to several of his friends. (Ex. I, Transcript of the Deposition of Jeff Nix, 246, hereinafter "Nix Dep.") None indicated there were any openings. (*Id.* at 249.) One said she would be a tough hire because it was a "volatile situation." (*Id.*) That person has not been listed as a witness in this case.

On March 19, 2007, Browne Sanders submitted amended answers to interrogatories which included a calculation of her damages and the method she used to compute them. As to her claim for reputational damages, she asserts that "[t]o the extent she is not reinstated to her former position at MSG, [she] will...seek an award of front pay and/or reputational damages to compensate [her] from October 1, 2007 through age 65 for lost wages, bonuses and 401(k) contributions..., in the amount of $9,762,406." (Ex. L, Pl.'s Supplemental Disclosures Pursuant to FED. R. CIV. P. 26, pp. 1-2, March 19, 2007.) She does not state what portion, if any, of this claim relates to her demand for reputational damages against Thomas.

## I.    Thomas' Statements To The Press

At a press conference on January 25, 2006, Thomas read the following statement, which provided that:

> For me, this is just wrong!  All the lawyers are telling me, "Oh
> don't worry, this will pass, we will win in court, so don't say
> anything."  But it is not their name, their family, their career, and
> their reputation that is being hurt.  I did not harass Anucha, I did
> not discriminate against her, I did not fire her, I did not participate
> in any discussion that led to her being fired, she did not even work
> for me.
>
> I will not allow her or anybody else, man or woman, to use me as a
> pawn for their financial gain.  My job is and always has been to get
> the New York Knicks back to their Championship days, and that is
> where my focus will remain.  I needed to express myself and the
> truth, in spite of my able counsel, who felt being silent was the
> most judicious path.

(Thomas Decl. ¶ 7.)[4]

On or about January 27, 2006, Thomas gave another statement to the press about the

case.  The statement read:

> I have a responsibility as president of the New York Knicks, as a
> public figure, but more importantly as a father and husband, to
> answer these charges of sexual harassment.  First of all, I never,
> ever made any sexual advances toward Anucha, nor am I in love
> with Anucha, nor did I ever tell her I was in love with her, nor did I
> ever invite her to any off-site premises to have sex with her.  And I
> hope that when I'm found innocent of these allegations, that you
> will write it and run it with the same intensity.  I look forward to
> my day in court, where I am proven right and she is proven wrong.
> Thank you.

(*Id.*)  Thomas gave no further statements to the press.

## J.    Procedural History

Browne Sanders' original complaint was filed on or about January 24, 2006.  It included

a demand for damages due to "emotional distress" allegedly caused by defendants.  On July 14,

2006, she filed an amended complaint to add Dolan as a defendant and to add a retaliation claim

---

[4] In her answer to interrogatories Browne Sanders alleged that statements of both Thomas and his counsel harmed her, but she has taken no legal action against Thomas' attorneys in this regard.

8

against Thomas. She also dropped her demand for emotional distress damages and substituted a prayer for an order directing defendants "to make her whole for reputational damages as well as "all earnings. . . ." (Ex. A, Compl., Prayer for Relief, ¶ d.) On October 31, 2006, Browne Sanders amended her complaint for the second time to add two causes of action against MSG under Title VII of the Civil Rights Act of 1964, as amended 42 U.S.C. § 2000e, *et seq.* This amendment followed Browne Sanders' filing an EEOC complaint on March 2, 2006, the issuance of a Determination on September 15, 2006, and the issuance of a Notice of Right to Sue on September 21, 2006.

**ARGUMENT**

**POINT I**

**STANDARD FOR REVIEW FOR SUMMARY JUDGMENT**

This court has articulated the standard for granting summary judgment as follows:

> Summary judgment may only be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to an material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(b). The party opposing summary judgment "may not rest upon mere allegations or denials"; rather, it must "set forth specific facts showing that there is a genuine issue for trial. *Id.* 56(e). To defeat a motion for summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp,* 475 U.S. 574, 586, 89 L. Ed.2d 538, 106 S. Ct. 1348 (1986). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249-50, 91 L. Ed.2d 202, 106 S. Ct. 2505 (1986). Similarly, a party cannot defeat summary judgment by "offering purely conclusory allegations of discrimination," *Meiri v. Dacon,* 759 F.2d 989, 998 (2d Cir. 1985), or by offering evidence in opposition that is merely speculative. *See Dister v. Continental Group, Inc.,* 859 F.2d 1109, 1116-1117 (2d Cir. 1988).

9

> Accordingly, to defeat summary judgment, the party opposing
> summary judgment must set forth "concrete particulars" showing
> that a trial is needed. *R.G. Group, Inc. v. Horn & Hardart Co.*,
> 751 F.2d 69, 77 (2d Cir. 1984).

*Brice v. Security Operations Systems, Inc.*, No. 00 Civ. 2438, 2001 U.S. Dist. LEXIS 1856, at

*9-10 (S.D.N.Y. Feb. 23, 2001).

Although according to FED. R. CIV. P. 56(e), Browne Sanders has the burden to submit

evidence "made on personal knowledge, [which] shall set forth such facts as would be admissible

in evidence," to defeat summary judgment, *Brink v. Union Carbide Corp.*, No. 99-7303, 2000

U.S. App. LEXIS 7150 at *4 (2d Cir. April 18, 2000), the record reflects that Browne Sanders

has not provided any facts "…[ ]sufficient to create a genuine issue for the trial." *Pierce v.*

*Netzel*, No. 04-5606, 2005 U.S. App. LEXIS 19555, at *8 (2d Cir. Sept. 9, 2005) (citing

*Patterson v. County of Oneida*, 375 F.3d 206, 219 (2d Cir. 2004)). *See Albert v. Oksen*, 239 F.3d

256, 266 (2d Cir. 2001) (in challenging a motion for summary judgment, "a plaintiff may not

rely solely on hearsay or conclusory allegations"); *Nugent v. The St. Luke's/Roosevelt Hospital*

*Center*, No. 05 Civ. 5109, 2007 U.S. Dist. LEXIS 28274 *37 (S.D.N.Y. Apr. 18, 2007) (plaintiff

"cannot defeat summary judgment simply by relying on. . . vague testimony. . . "). Accordingly,

Browne Sanders' "evidence" concerning her alleged retaliation and reputational damages against

Thomas falls far short of the FED. R. CIV. P. 56(e) requirement, and those claims against Thomas

must be dismissed.

## POINT II

### THERE ARE NO FACTS TO SUPPORT THE CLAIM THAT THOMAS AIDED AND ABETTED ANY RETALIATION BY MSG RESULTING IN BROWNE SANDERS' TERMINATION

**A.    Browne Sanders' Allegations, Based Merely On Information And Belief, Are
Insufficient To Defeat Defendant's Motion For Summary Judgment**

Browne Sanders has deposed all participants and decision makers in her termination.

None of these witnesses testified to any facts whatsoever showing any participation by Thomas in the termination process or termination decision. In fact, after taking extensive discovery including over twenty-five (25) depositions of all persons associated with the investigation of her internal complaint and her termination, Browne Sanders has failed to adduce a scintilla of evidence to support her allegations that Thomas told senior management she would "not accept changes in the organization he had implemented." (Ex. A, Compl. ¶¶ 4, 53.) Moreover, since Browne Sanders' claim is made merely "on information and belief," her allegation is inadequate as a matter of law to survive summary judgment. *See Patterson,* 375 F.3d at 219 (conclusory assertions and statements made upon information and belief are insufficient to create a genuine issue of material fact); *Lesavoy v. Lane,* 304 F. Supp.2d 520, 527 (S.D.N.Y. 2004) (quoting *Lovely Peoples Fashion, Inc. v. Magna Fabrics, Inc.*, No. 95 Civ. 8450, 1996 U.S. Dist. LEXIS 18842, 1996 WL 732634, at *5 (S.D.N.Y. Dec. 19, 1996)).

**B.    There Is No Factual Basis To Browne Sanders' Claim That Thomas Aided and Abetted The Decision To Fire Her**

**1.    Because Thomas did not actually participate in Browne Sanders' termination, the standard for aiding and abetting forbidden discriminatory behavior is not met.**

Browne Sanders claims, *inter alia,* that Thomas intentionally aided and abetted the MSG termination decision. (Ex. A, Compl. ¶¶ 4, 53.)[5] Section 296(6) of the New York Human Rights Law "provide[s] that it is unlawful for a person to "aid, abet, incite, compel, or coerce" any conduct prohibited by the statute. N.Y. Exec. Law § 296(6); N.Y.C. Admin Code § 8-107(6).

---

[5] Because "in New York, liability must first be established as to the employer/principal before accessory liability can be found as to an alleged aider and abettor," *Patane v. Clark,* 435 F. Supp.2d 306, 314 (S.D.N.Y. June 21, 2006) (citing *DeWitt v. Lieberman,* 48 F. Supp.2d 280, 293-94 (S.D.N.Y. 1999)), Browne Sanders' claim of retaliation against MSG for her termination must be taken as true for the purpose of this motion. (Ex. A, Compl. ¶¶ 4, 53.)

*See Brice*, 2001 U.S. Dist. LEXIS 1856, at *10-11. Furthermore, the weight of the evidence is that Dolan made the decision to terminate Browne Sanders on his own, completely undercutting any purported connection between the statement and Browne Sanders' termination. (Ex. F, Dolan, Dep. 87, 171 (Dolan did not ask Mills whether he agreed or disagreed with the decision); Ex. H, Mills Dep. 127 (Dolan made the "ultimate determination ... whether to fire Ms. Browne Sanders")).

It is undisputed that in July 2005, five (5) months prior to making the termination decision, Dolan learned that Browne Sanders was having difficulty performing her job duties. (Ex. F, Dolan Dep. 60-61.) Dolan determined this from his own direct observations of Browne Sanders and discussions with Mills, Ratner and McCormack. (*Id.* at 72-74.) Additionally, Ratner recommended Browne Sanders' termination in July 2005. (*Id.* at 188.) In contrast, there is nothing in the record which implicates Thomas in any of these discussions and decisions concerning Browne Sanders.[6]

"Courts have interpreted this [aider and abettor] language to require a showing that the defendant actually participated in the conduct giving rise to the claim of discrimination." *Long v. Marubeni America Corp.*, No. 05 Civ. 0639, 2006 U.S. Dist. LEXIS 8932, at *15 (S.D.N.Y. Mar. 6, 2006) (citing *Feingold v. New York*, 366 F.3d 138, 157-59 (2d Cir. 2004)). *See Sowemimo v. D.A.O.R. Sec., Inc.*, 43 F. Supp.2d 477, 487 (S.D.N.Y. 1999); *Melendez v. Int'l Serv. Sys. Inc.*, No. 97 Civ. 8051, 1999 U.S. Dist. LEXIS 4317, *44-45 n.13, 1999 WL 187071, at *14 & n.13 (S.D.N.Y. Apr. 6, 1999). Similarly, a showing of "direct, purposeful

---

[6] It is undisputed that Thomas is neither an owner or supervisor as defined in HRL 296(1). *See, e.g., Dorvil v. Hilton Hotels Corp.*, 807 N.Y.S. 2d 369 (2006) (claims against individual defendant promptly dismissed where "there was no evidence raising a triable issue as to whether ... [individual defendant]... had an ownership interest... [where] plaintiff was employed or authority to make personnel decisions.") (citing *Patrowich v. Chemical Bank*, 63 N.Y. 2d 541 (1984)).

participation" is needed to establish that a defendant actually participated in the discriminatory conduct. *Cerrato v. Durham*, 941 F. Supp. 388, 396 (S.D.N.Y. 1996). *See Hestin v. InSite Adver., Inc.*, No. 03 Civ 2508, 2005 U.S. Dist. LEXIS 2546 at *91 (S.D.N.Y. Feb. 22, 2005) (aider and abettor liability "may be made against a defendant who has no control or authority over plaintiff. . . as long as there is direct participation in the discriminatory acts").

Browne Sanders has not alleged, nor is there evidence to show, that Thomas "actually participated" in the decision to terminate her. To the contrary, Dolan unequivocally testified that the decision to fire Browne Sanders was his alone. (Ex. F, Dolan Dep. 188-90.) *See Stamm v. New York City Transit Authority*, No. 04 Civ. 2163, 2006 U.S. Dist. LEXIS 30076, at *38 (E.D.N.Y. Jan. 31, 2006) ("actual participation is also a prerequisite to individual liability under the NYCHRC.").

### 2.    There is no evidence that MSG and Thomas acted together with respect to her termination.

Browne Sanders must show that MSG and Thomas acted together to effect Browne Sanders' termination in order to link Thomas as an aider and abettor to the termination. In the words of this court: "Aiding and abetting liability requires that the aider and abettor 'share the intent or purpose of the principal actor,' and there can be no partnership in an act where there is no community of purpose." *Brice*, 2001 U.S. Dist. LEXIS 1856, at *11 (citing *New York Times Co. v. City of New York, Commission on Human Rights*, 79 Misc.2d 1046, 1049, 362 N.Y.S.2d 321, 324 (Sup. Ct. 1974), *aff'd*, 49 A.D.2d 851, 374 N.Y.S.2d 9 (1st Dep't 1975), *aff'd*, 41 N.Y.2d 345, 361 N.E.2d 963, 393 N.Y.S.2d 312 (1977) (quotations and citations omitted) (applying New York City Human Rights Law). Because neither Browne Sanders' complaint nor the record as a whole contains any fact demonstrating the requisite shared intent or purpose, aider and abettor liability cannot attach to Thomas.

## POINT III

## BROWNE SANDERS HAS NO CLAIM AGAINST
## THOMAS FOR REPUTATIONAL DAMAGES

Browne Sanders' original Complaint alleged claims under both the Executive Law and

the Administrative Code "for mental anguish and humiliation as a result of defendant's

discriminatory acts." (Ex. A, Compl. ¶¶ 57, 63, 67, 71.)  Facing the specter of discovery

regarding her mental health issues, Browne Sanders abandoned her "mental anguish" claim

against defendants.  Instead, she recast her prayer for relief as one "to make her whole for

reputational damage." (Ex. A, Compl., Prayer For Relief ¶ d.)  Browne Sanders, however, has

no viable claim against Thomas for "reputational damages" under any theory of recovery and

this Court should reject her attempt to bootstrap defamation damages to her discrimination claim.

According to Browne Sanders, Thomas damaged her by "spreading damaging rumors

about me ... in the press." (Ex. D, Browne Sanders Dep. 463.)  When asked what Thomas said,

however, Browne Sanders could only muster: "I don't remember what his exact quotes were.

He had a press conference." (*Id.*)  In response to interrogatories requesting the identity of "all

persons whom Plaintiff believes has knowledge or information concerning the reputational

injuries claimed in this lawsuit, and/or the reputational damages sought in this lawsuit," Browne

Sanders provided a similarly vague response:

> Plaintiff states that anyone who has read or viewed media accounts
> of this case containing statements about plaintiff by defendants or
> defendants' representative, employees, agents or attorneys may
> have knowledge of plaintiff's reputational injuries.[8]

---

[8] In her original response to Interrogatory No. 1, Browne Sanders named three "head hunters" as witnesses to her reputational injuries and damages. However, those witnesses have been withdrawn. The only other witnesses named by Browne Sanders were Jeffrey Nix, Director of Scouting for the Knicks, who could not have believed that Browne Sanders' reputation was damaged since he sent her resume to four of his professional contacts for consideration. (Ex. I,

(Ex. C, Pl.'s Response, to Interrogatory No. 1). Likewise, with respect to interrogatories which requested documentary support for her claims for "reputational injury" or "reputational damages," Browne Sanders' only reference was to Documents Nos. 4139-4176, consisting of news reports of her filing of the lawsuit. (Ex. C, Pl.'s Response, Interrogatory No. 3.)

It is only within the defamation framework that "reputational" damages of the type claimed by Browne Sanders are available in New York. As the Second Circuit Court stated in *Patterson v. City of Utica*, 370 F.3d 322, 330 (2d Cir. 2004), "when dealing with loss of reputation alone, a state law defamation action for damages is the appropriate means of vindicating that loss." Notably, however, Browne Sanders has *never* made a tort claim of defamation against any of the defendants.

Browne Sanders' complaint fulfills none of the requirements for pleading a claim of defamation against Thomas. In this regard, "New York law mandates that in actions for defamation, 'the particular words complained of shall be set forth in the complaint.'" *Reserve Solutions, Inc. v. Vernaglia*, 438 F. Supp.2d 280, 289 (S.D.N.Y. 2006) (citing N.Y. C.P.L.R. 3016(a) (2003)). As Judge Marrero recently explained:

> The lower courts have developed a framework for the requirements of pleading defamation under Rule 8. According to this framework, in order to properly plead a claim for defamation, a party must "identify (1) the allegedly defamatory statements; (2) the person who made the statements; (3) the time when the statements were made; and, (4) the third parties to whom the statements were published."

*Id.* (citations omitted).

Here, Browne Sanders has entirely avoided the specific pleading requirements of New

---

Nix Dep. 246-49.) In fact, Nix testified that notwithstanding the lawsuit, he continues to believe that Browne Sanders would be an excellent and competent employee at any company. (*Id.* at 185.)

York's defamation law but seeks defamation damages. Courts in New York, however, have refused to permit claims of defamation in disguise. *See, e.g., Croskey v. Medical and Technical Services, Inc.*, No. 05 Civ. 6641, 2006 U.S. Dist. LEXIS 56466, at *11 (S.D.N.Y. Aug. 10, 2006) ("Even if the facts as the plaintiff presents them could be construed as another tort, such as intentional infliction of emotional distress, it is well established that where the crux of the complaint sounds in defamation, [the] court will refuse to allow a cause of action for emotional distress."); *Rall v. Hellman*, 284 A.D.2d 113, 115 (1st Dep't 2001) ("[i]t would be improper to permit plaintiff to evade the pleading prerequisites of a libel cause of action by simply recasting his claim as one for intentional infliction of emotional distress."). *See also Food Lion, Inc. v. Capital Cities/ABC, Inc.*, 887 F. Supp. 811, 824 (M.D.N.C. 1995) ("Food Lion may not, however, under the guise of some other claim, recover publication damages for injury to its reputation without establishing the defamation requirements of actual malice and falsity.").

It is rather astonishing that Browne Sanders seeks damages from Thomas on account of press coverage about her case, when it was she who initiated this lawsuit and held a press conference that received worldwide coverage. Nonetheless, to the extent that Browne Sanders bases her claim for reputational damages upon the statements of Thomas and his attorneys to the press, her claim must be dismissed - - even if she pled a *prima facie* case of defamation - - because Section 74 of the New York Civil Rights Law provides parties and their attorneys an absolute privilege to speak to the press about judicial proceedings. *See* N.Y. CIV. RIGHTS LAW § 74 (2007) ("[a] civil action cannot be maintained against any person, firm or corporation, for the publication of a fair and true report of any judicial proceeding, legislative proceeding or other official proceeding, or for any heading of the report which is a fair and true head note of the statement published.").

Judge Swain explained New York's absolute privilege in regard to comments about judicial proceedings as follows:

> Under New York law, "in the context of a legal proceeding, statements by parties and their attorneys are absolutely privileged if, by any view, or under any circumstances, they are pertinent to the litigation." The concept of pertinent material is "extremely broad" and "embraces anything that may possibly or plausibly be relevant or pertinent, with the barest rationality, divorced from any palpable or pragmatic degree of probability. All that is required for a statement to be privileged is a minimal possibility of pertinence. This rule rests upon the notion that parties 'should be able to speak with the free and open mind which the administration of justice demands without the constant fear of libel suits."

*Lipin v. Nat'l Union Fire Ins. Co. of Pittsburgh PA.*, 202 F. Supp.2d 126, 137 (S.D.N.Y. 2002) (internal citations and quotations omitted). *See also Hudson v. Goldman Sachs & Co.*, 304 A.D.2d 315, 316 (1st Dep't 2003) ("Nothing about Civil Rights Law § 74 suggests that a person served with a summons and complaint should not feel free and safe to announce its position, and otherwise make its first response to the allegations against it, in a forum other than court"); *Caplan v. Winslett*, 218 A.D.2d 148, 153 (1st Dep't 1996) ("As long as the subject of an out-of-court communication relates to pending or contemplated litigation, and is made in connection with a judicial proceeding, it furthers an interest of social importance and should be protected."). As such, because the alleged statements made by Thomas which were reported in the press were in the course of a legal proceeding to which they were pertinent, they are privileged and thus preclude Browne Sanders from stating a claim for defamation against Thomas.[9]

Another fundamental defect with Browne Sanders' unprecedented claim for reputational damages under the Executive Law and City Human Rights Law is that a post-termination press

---

[9] To the extent that the privilege under Section 74 of the Civil Rights Law is considered an affirmative defense, Thomas requests leave to amend his Answer to assert such defense. FED. R. CIV. P. 15(a).

conference has nothing to do with any "adverse action" arising out of the employment relationship. *See* N.Y. EXEC LAW § 296(1)(a) (prohibiting discrimination against employees "in the terms, conditions, and privileges *of employment*") (emphasis added); N.Y.C ADMIN. CODE § 8-107 (prohibiting discrimination against employees "in compensation or in terms, conditions or privileges *of employment*") (emphasis added). Rather, any commentary on the lawsuit by Thomas was merely the free expression of opinion *after* termination of Browne Sanders' employment.

Finally, Browne Sanders cannot make the claim of "reputational" damages against Thomas as a result of their workplace interaction since Browne Sanders' entire universe of alleged harassment by Thomas is from one-on-one settings. Accordingly, there can be no damage to Browne Sanders' reputation as a result of these private encounters. Similarly, Browne Sanders has not presented a single utterance by Thomas to others which has damaged her reputation.

In sum, Browne Sanders is unable to make a viable claim for defamation, so she is attempting to create a cause of action that seeks damages without meeting the legal requirements. This attempt at an end run around the strict requirements for pleading defamation in New York should not be condoned by this Court and Browne Sanders' claim for reputational damages, for all of the reasons set forth above, should be dismissed.

## CONCLUSION

Despite the extensive discovery Browne Sanders has conducted in this case, there is no evidence that Thomas actually participated in any way in the decision to separate Browne Sanders from MSG. Rather, the weight of the evidence shows no such participation.

Accordingly, Browne Sanders' cause of action against Thomas for aiding and abetting the retaliatory acts of MSG must be dismissed.

Similarly, Browne Sanders' claim for reputational damages against Thomas pursuant to State and City law also must be dismissed because Browne Sanders bases her claim on statements Thomas and his attorneys made in the media, which are absolutely privileged under the New York Civil Rights Law.

Dated:  New York, New York
        May 4, 2007


EISENBERG & BOGAS, P.C.


By: _____
    Sue Ellen Eisenberg (SE-4713) – *admitted pro hac vice*
    Lucetta Franco (LF-7638) - *admitted pro hac vice*
    Eisenberg & Bogas, P.C.
    33 Bloomfield Hills Parkway, Suite 145
    Bloomfield Hills, Michigan  48304-2945
    (248) 258-6080


BERKE-WEISS & PECHMAN LLP


By: _____
    Laurie Berke-Weiss (LB-3445)
    Louis Pechman (LP-6395)
    Berke-Weiss & Pechman LLP
    Attorneys for Defendants
    488 Madison Avenue, 11th Floor
    New York, NY  10022
    (212) 583-9500

TO:   Anne C. Vladeck (AV-4857)
        Kevin T. Mintzer (KM-4741)
        Karen Cacace (KC-3184)
          Vladeck, Waldman,
        Elias & Engelhard, P.C.
        Attorneys for Plaintiff
        1501 Broadway, Suite 800
        New York, NY 10036
        (212) 403-7300

        Ronald M. Green (RG-7766)
        Theresa M. Holland (TH-6973)
        Brian G. Cesaratto (BC-5464)
        Epstein Becker & Green, P.C.
        Attorneys for Defendants Madison Square
          Garden, L.P. and James L. Dolan
        250 Park Avenue
        New York, NY 10177
        (212) 351-4500

        Amber L. Kagan (AK-7973)
        Morgan, Lewis & Bockius LLP
        Attorneys for Defendants Madison Square
          Garden, L.P. and James L. Dolan
        101 Park Avenue
        New York, NY 10178
        (212) 309-6000