Sue Ellen Eisenberg (SE-4713) – *admitted pro hac vice*
Lucetta Franco (LF-7638) - *admitted pro hac vice*
Eisenberg & Bogas, P.C.
33 Bloomfield Hills Parkway, Suite 145
Bloomfield Hills, Michigan 48304-2945
(248) 258-6080

     - and –

Laurie Berke-Weiss (LB-3445)
Louis Pechman (LP-6395)
Berke-Weiss & Pechman, LLP
488 Madison Avenue
New York, New York 10022
(212) 583-9500


*Attorneys for Defendant Isiah Lord Thomas III*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ANUCHA BROWNE SANDERS,<br><br>         Plaintiff,<br><br>     -against-<br><br>MADISON SQUARE GARDEN, L.P.,<br>ISIAH LORD THOMAS III AND JAMES L.<br>DOLAN,<br><br>        Defendants. | Civil Case No. 06 Civ. 0589 (GEL) (DCF)<br><br>ECF CASE |

Defendant Isiah Thomas ("Thomas") submits this Statement of Undisputed

Material Facts pursuant to Local Civil Rule 56.1 of the Local Rules for the Southern

District of New York, together with the accompanying declarations of Isiah Thomas and

Lucetta V. Franco, in support of Thomas' Motion for Partial Summary Judgment

Dockets.Justia.com

dismissing (1) the Third and Fourth causes of action of the Second Amended Complaint ("Complaint") of plaintiff, Anucha Browne Sanders ("Browne Sanders") insofar as those causes of action assert claims against Thomas for retaliation or aiding and abetting retaliation by others through the termination of Browne Sanders, under the New York Executive Law § 296 ("HRL") and the New York City Human Rights Law, New York City Administrative Code § 8-107 ("Code") and (2) the demand for an award of "reputational damages" against Thomas.

The critical facts set forth here are limited to those that relate to the subjects addressed in this motion. Because Thomas does not seek dismissal of the entire complaint against him at this time, he makes no attempt in this memorandum of law to refute all the allegations in the complaint.

## STATEMENT OF MATERIAL FACTS NOT IN DISPUTE

**A.    Browne Sanders' Employment at MSG**

1.    Browne Sanders began working for MSG, in November 2000 as Vice President of Marketing for the Knicks.  (Ex. H, Transcript of the Deposition of Steven Mills, 53, hereinafter "Mills Dep.")

2.    Browne Sanders was promoted to Senior Vice President of Marketing and Business Operations in 2002.  (Ex. A, Plaintiff's Second Amended Complaint ¶ 15, hereinafter "Compl."; Ex. H, Mills Dep. 77.)

3.    In that position, Browne Sanders' primary responsibility was to oversee all non-player related business operations of the Kicks including the revenue streams, marketing, new media, franchise operations, administration and community relations.

(Ex. H, Mills Dep. 89; Ex. D, Transcript of the Deposition of Anucha Browne Sanders, 343-45, hereinafter "Browne Sanders Dep."; Ex. K, SVP Operational Position Description.)

4.    Browne Sanders later became a "Profit and Loss Manager" in 2004, with increasing responsibility in the strategic planning and budgeting process. (Ex. , Browne Sanders Dep. 343; Ex. H, Mills Dep. 99.)

5.    Brown Sanders received a salary adjustment in 2005 to reflect her increased responsibilities. (Ex. H, Mills Dep. 99.)

6.    Browne Sanders reported to Stephen Mills ("Mills"), President and COO of MSG. (Ex. A, Compl. ¶ 15.)

7.    Mills hired Brown Sanders, was responsible for her promotion, evaluated her, and made recommendations with regard to her salary and any salary adjustments she received. (Ex. H, Mills Dep. 50, 53, 99.)

**B.    Thomas Did Not Supervise Browne Sanders**

8.    Thomas was hired as President of Basketball Operations for the Knicks in December 2003. (Ex. E, Transcript from of Deposition of Isiah Thomas, 130, hereinafter "Thomas Dep.")

9.    In that position Thomas oversaw the coaches, players, scouts, trainers, medical personnel, and other Knicks personnel at the MSG Training Center (the "practice facility") located in Tarrytown, New York. (*Id.*)

10.    Mills was also Thomas' direct supervisor. (*Id.*)

11.    Thomas did not hire Browne-Sanders. (Declaration of Isiah Thomas

submitted in support of the motion, ¶ 2, hereinafter "Thomas Decl.")

12.     Thomas was usually traveling or working from the Knicks' Practice

Facility, which is located in Tarrytown, New York. (*Id.* at ¶ 3.)

**D.     Browne Sanders Complained to MSG**

13.     On December 22, 2005, Browne Sanders' attorneys informed MSG's

counsel that she was being subjected to harassment and discrimination. (Ex. A, Compl. ¶

47.)

**E.     MSG Conducted an Investigation with Regard to Browne Sanders' Claims**

14.     When Browne Sanders complained, MSG's Human Resources

Department immediately commenced an investigation into Browne Sanders' claims and

issued recommendations. (Ex. G, Memorandum from Rusty McCormack dated January

19, 2006 "McCormack Memo.")

15.     Thomas did not initiate the investigation, direct the investigation or

influence its findings. (Thomas Decl. ¶ 4.)

16.     Thomas was not involved in the investigation in any way other than as an

interviewee giving responses to Browne Sanders' allegations and other questions put to

him. (*Id.*)

**F.     Dolan Made the Decision to Terminate Browne Sanders**

17.     The McCormack Memo referenced Browne Sanders' "poor relationship

and difficulty interacting with Mills and other members of MSG management." (Ex. G,

McCormack Memo.)

18.     Rusty McCormack ("McCormack"), MSG's Senior Vice President for

Human Resources and Organization Development, issued a memorandum recommending that Browne Sanders be separated from MSG.

19.    Dolan formed an impression in the summer of 2005 that Browne Sanders did not have the skills to perform her job. (Ex. F, Dolan Dep. 61).

20.    Dolan noted that Browne Sanders had displayed an unacceptable level of performance at a budget meeting, where she showed a lack of understanding of the budgeting process. (*Id.* at 186).

21.    Browne Sanders was unable to explain her budget, and did not understand differences between concepts having to do with capital and operating expenses. (*Id.*)

22.    Hank Ratner ("Ratner"), Vice-Chairman of MSG, consistently expressed his opinion that Browne Sanders should be fired, from July 2005 through her termination date. (*Id.* at 188.)

23.    Ratner knew Brown Sanders from interacting with her at budgeting, forecasting and strategy meetings in 2004 and 2005. (Ex K, Transcript of the Deposition of Hank Ratner, 61-71, hereinafter "Ratner Dep.")

24.    Ratner formed the impression from those interactions that Browne Sanders did not have the knowledge or temperament to do the job that needed to be done. (*Id.* at 80.)

25.    Ratner found Browne Sanders to be resistant to change, closed minded and "very, very defensive." (*Id.* at 83.)

26.    Browne Sanders failed to understand the breadth of her responsibility for business groups under her direction and did not take responsibility for the numbers,

whether expense or revenue, for those groups. (*Id.* at 84-86.)

27.    Ratner concluded that Browne Sanders did not have the financial skills she needed, was very territorial, and did not cooperate well with others. (*Id.* at 87.)

28.    Ratner shared his concerns about Browne Sanders with Dolan and Mills, among others, in the summer of 2005. (*Id.* at 93, 105.)

29.    When Ratner was advised by Mills toward the end of the year that Browne Sanders wanted to leave, his response was "good." (*Id.* at 110.)

30.    Mills concluded that Browne Sanders had deficiencies in defining a strategic direction and was unwilling or unable to focus and listen to Dolan and others with regard to the process of "branding" the Company. (Ex H, Mills Dep. 369-70.)

31.    Browne Sanders attacked Dolan, saying that he did not understand the concepts. (*Id.* at 370.)

32.    Browne Sanders blamed Mills for her own errors. (*Id.* at 379.)

33.    In the latter part of 2005, before her attorneys ever contacted MSG, Mills told McCormack and Ratner that Browne Sanders had told him she could no longer do her job. (*Id.* at 420.)

34.    Ratner suggested that Mills and McCormack work on a severance package for Browne Sanders. (*Id.*)

35.    Mills told Dolan that Browne Sanders had informed him she did not wish to continue working for the company and that he was going to work on an arrangement where Browne Sanders would continue working for MSG while she looked for another position. (Ex. F, Transcript of the Deposition of James Dolan, 48, hereinafter "Dolan

Dep.")

36.     Browne Sanders willfully violated the company's policies and had

undermined the investigation of her complaints by attempting to influence the statements

of her direct reports. (*Id.* at 74).

37.     Dolan made the decision to terminate Browne Sanders. (*Id.* at 85.)

38.     Dolan took into account Browne Sanders' poor performance, her

tampering with the investigation of her complaint, and her demand for a $6,500,000.00

severance payment in reaching his decision (*Id.* at 188-90.)

39.     Dolan made the termination decision on his own. (*Id.* at 87.)

40.     Dolan did not ask Mills whether he agreed or not with the decision. (*Id.* at

171.)

41.     Thomas did not have the authority to terminate Browne Sanders, did not

recommend her termination, and was not asked for his opinion regarding any decision to

terminate her. (Thomas Decl. ¶ 5.)

42.     The filing of Browne Sanders' complaint in this action on January 24,

2006 triggered a number of news reports, which is not surprising as Browne Sanders

convened a press conference at the time she filed suit. (Ex. D, Browne Sanders Dep.

463.)

43.     At a press conference on January 25, 2006, Thomas read the following

statement:

> For me, this is just wrong!  All the lawyers are telling me,
> "Oh don't worry, this will pass, we will win in court, so
> don't say anything."  But it is not their name, their family,
> their career, and their reputation that is being hurt.  I did not

> harass Anucha, I did not discriminate against her, I did not
> fire her, I did not participate in any discussion that led to
> her being fired, she did not even work for me.
>
> I will not allow her or anybody else, man or woman, to use
> me as a pawn for their financial gain. My job is and always
> has been to get the New York Knicks back to their
> Championship days, and that is where my focus will
> remain. I needed to express myself and the truth, in spite of
> my able counsel, who felt being silent was the most
> judicious path.

(Thomas Decl. ¶ 7.)[1]

43.    On or about January 27, 2006, Thomas gave another statement to the
press, which read:

> I have a responsibility as president of the New York
> Knicks, as a public figure, but more importantly as a father
> and husband, to answer these charges of sexual harassment.
> First of all, I never, ever made any sexual advances toward
> Anucha, nor am I in love with Anucha, nor did I ever tell
> her I was in love with her, nor did I ever invite her to any
> off-site premises to have sex with her. And I hope that
> when I'm found innocent of these allegations, that you will
> write it and run it with the same intensity. I look forward to
> my day in court, where I am proven right and she is proven
> wrong. Thank you.

(*Id.*)

---

[1] In her answer to interrogatories Browne Sanders alleged that statements of both Thomas
and his counsel harmed her, but she has taken no regal action against Thomas' attorneys
in this regard.

Dated:  New York, New York
         May 4, 2007

EISENBERG & BOGAS, P.C.

By: _____
    Sue Ellen Eisenberg (SE-4713) – *admitted pro hac vice*
    Lucetta Franco (LF-7638) - *admitted pro hac vice*
    Eisenberg & Bogas, P.C.
    33 Bloomfield Hills Parkway, Suite 145
    Bloomfield Hills, Michigan  48304-2945
    (248) 258-6080

BERKE-WEISS & PECHMAN LLP

By: _____
    Laurie Berke-Weiss (LB-3645)
    Louis Pechman (LP-6395)
    Berke-Weiss & Pechman LLP
    488 Madison Avenue, 11th Floor
    New York, NY  10022
    (212) 583-9500

*Attorneys for Defendant Isiah Thomas*

TO:   Anne C. Vladeck (AV-4857)
      Kevin T. Mintzer (KM-4741)
      Karen Cacace (KC-3184)
        Vladeck, Waldman,
      Elias & Engelhard, P.C.
      Attorneys for Plaintiff
      1501 Broadway, Suite 800
      New York, NY  10036
      (212) 403-7300

      Ronald M. Green (RG-7766)
      Theresa M. Holland (TH- 6973)
      Brian G. Cesaratto (BC- 5464)

9

Epstein Becker & Green, P.C.
Attorneys for Defendants Madison Square
  Garden, L.P. and James L. Dolan
250 Park Avenue
New York, NY  10177
(212) 351-4500

Amber L. Kagan (AK-7973)
Morgan, Lewis & Bockius LLP
Attorneys for Defendants Madison Square
  Garden, L.P. and James L. Dolan
101 Park Avenue
New York, NY  10178
(212) 309-6000