Sue Ellen Eisenberg (SE-4713) – *admitted pro hac vice*
Lucetta Franco (LF-7638) - *admitted pro hac vice*
Eisenberg & Bogas, P.C.
33 Bloomfield Hills Parkway, Suite 145
Bloomfield Hills, Michigan 48304-2945
(248) 258-6080

- and –

Laurie Berke-Weiss (LB-3445)
Louis Pechman (LP-6395)
Berke-Weiss & Pechman, LLP
488 Madison Avenue
New York, New York 10022
(212) 583-9500


*Attorneys for Defendant Isiah Lord Thomas III*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ANUCHA BROWNE SANDERS,<br><br>Plaintiff,<br><br>-against-<br><br>MADISON SQUARE GARDEN, L.P., ISIAH LORD THOMAS III AND JAMES L. DOLAN,<br><br>Defendants. | Civil Case No. 06 Civ. 0589 (GEL) (DCF)<br><br>ECF CASE<br><br>DECLARATION OF ISIAH THOMAS |

ISIAH THOMAS, under penalty of perjury, affirms and states as follows:

1. I am President of Basketball Operations and Head Coach for the New York Knickerbockers ("Knicks"), and a defendant in the above-captioned action. As such, I am fully familiar with the facts and circumstances herein. This declaration is submitted in

support of my motion for partial summary judgment, brought pursuant to Rule 56(e), seeking dismissal of plaintiff's cause of action against me for aiding and abetting alleged retaliatory acts of defendant Madison Square Garden ("MSG"), and her claim for reputational damages against me, brought pursuant to the New York Executive Law § 296 ("HRL") and the New York City Human Rights Law, New York City Administrative Code § 8-107 ("Code").

2. As I have maintained since this lawsuit was filed by plaintiff Anucha Browne Sanders ("Browne Sanders"), I did not fire her or participate in the decision to fire her. Browne Sanders was hired by MSG before I was named to my position as President of Basketball Operations for the Knicks on December 22, 2003 (subsequently, I also was appointed Head Coach). After I joined MSG, I played no role whatsoever in Browne Sanders' supervision. I did not complain to anyone about her ability to perform her duties and did not ask that her responsibilities be changed or cut; I did not set her salary or change her salary. I did not evaluate her performance and I was not consulted with regard to her performance evaluations. Rather, we were no more than colleagues, both reporting to Steven Mills ("Mills"), President and COO of MSG.

3. At MSG, Browne Sanders and I saw each other occasionally, at best. In my position, I handled coaches, players, scouts, trainers, medical personnel, and oversaw the Knicks' Training Facility located in Tarrytown, New York (the "practice facility"). As such, most of my time was spent traveling or working from the practice facility, whereas Browne Sanders, who was the Knicks' Vice President of Marketing and Business Operations, operated out of MSG's offices in Manhattan and rarely visited the practice facility.

4. I understand Browne Sanders claims I had something to do with her firing, but that is simply not the case. I did not know she had been fired until after the fact.

As I now know, Browne Sanders made a complaint to MSG against me on or about December 22, 2005. On December 23, 2005 and January 11, 2006, I was interviewed by MSG personnel in connection with MSG's investigation of Browne Sanders' alleged claims, and gave my responses to her allegations and other questions put to me. Other than being interviewed, I did not have any role in the investigation of Browne Sanders' alleged claims. I did not initiate the investigation, direct any aspect of it, or influence its findings. Moreover, I have no knowledge of any acts committed by Browne Sanders in violation of company policy. I have formed no conclusions regarding any violation of company policies by Browne Sanders. I have told no one that she violated company policies.

5. I did not discuss Browne Sanders' employment status with anyone at MSG or the Knicks -- including defendant James Dolan ("Dolan") -- prior to her termination. I certainly had no authority to terminate Browne Sanders and I did not recommend her termination. Moreover, no one asked me for my opinion regarding MSG's decision to terminate her, and I did not offer an opinion to anyone. Browne Sanders' employment status simply was not one of my responsibilities.

6. It also is my understanding that according to Browne Sanders, I "stated to MSG's senior management that plaintiff would not accept changes in the organization that ...[I]... purportedly implemented." (Complaint ¶ 53.) However, she is mistaken. I did not tell anyone in MSG senior management that Browne Sanders would not accept changes I wanted to implement at the Knicks.

7. At a press conference on January 25, 2006, I read the following statement:
> For me, this is just wrong! All the lawyers are telling me, "Oh don't worry, this will pass, we will win in court, so don't say anything." But it is not their name, their family, their career, and their reputation that is being hurt. I did not harass Anucha, I did not discriminate against her, I did not fire her, I did not

> participate in any discussion that led to her being fired, she did not even work for me.
>
> I will not allow her or anybody else, man or woman, to use me as a pawn for their financial gain. My job is and always has been to get the New York Knicks back to their Championship days, and that is where my focus will remain. I needed to express myself and the truth, in spite of my able counsel, who felt being silent was the most judicious path.

On or about January 27, 2006, I gave another statement to the press about the case:

> I have a responsibility as president of the New York Knicks, as a public figure, but more importantly as a father and husband, to answer these charges of sexual harassment. First of all, I never, ever made any sexual advances toward Anucha, nor am I in love with Anucha, nor did I ever tell her I was in love with her, nor did I ever invite her to any off-site premises to have sex with her. And I hope that when I'm found innocent of these allegations, that you will write it and run it with the same intensity. I look forward to my day in court, where I am proven right and she is proven wrong. Thank you.

After that, I gave no further statements to the press.

I declare under penalty of perjury that the foregoing is true and correct. Executed on ~~April~~ MAY 2, 2007 in TARRYTOWN, NY.

_____
ISIAH THOMAS