UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

ANUCHA BROWNE SANDERS,

                      Plaintiff,

       - against -

MADISON SQUARE GARDEN, L.P., ISIAH
LORD THOMAS III, and JAMES L. DOLAN,

                   Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

06 Civ. 0589 (GEL)

ECF Case

---

PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO
MADISON SQUARE GARDEN, L.P. AND JAMES L. DOLAN'S
MOTION FOR PARTIAL SUMMARY JUDGMENT

---

                    VLADECK, WALDMAN, ELIAS &
                      ENGELHARD, P.C.
                    Attorneys for Plaintiff
                    1501 Broadway, Suite 800
                    New York, New York 10036
                    (212) 403-7300

245399 v2

Dockets.Justia.com

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................ii

PRELIMINARY STATEMENT .................................................................................1

STATEMENT OF FACTS .........................................................................................3

ARGUMENT..............................................................................................................9

    I.       LEGAL STANDARDS GOVERNING DEFENDANTS' MOTION .....................9

    II.      MATERIAL FACTUAL ISSUES PRECLUDE SUMMARY
           JUDGMENT ON DEFENDANTS' AFTER-ACQUIRED
           EVIDENCE DEFENSE....................................................................................10

           A.    Plaintiff Did Not Operate A Business While Working At MSG...............10

           B.    Plaintiff Has Not Committed Tax Fraud ..................................................12

           C.    There Is No Credible Evidence That Defendants Would
                 Have Fired Plaintiff Because Of the Information Contained
                 On Her 2001-2004 Tax Returns ...............................................................16

                 1.    MSG's Policies and Practices Do Not Require  Firing An
                      Employee Who Engages In Any Illegal Conduct.........................16

                 2.    Defendants Have Not Proposed Any Proper Comparators ...........17

                 3.    A Jury Need Not Believe Dolan's And Mills' Self-Serving
                      Affidavits .....................................................................................20

                 4.    Defendants Cannot Prove They Would Have Fired
                      Plaintiff Because Of Her 2001-2004 Tax Returns........................21

            D.    Plaintiff Has Not Retained A False Tax Benefit .......................................22

    III.     DEFENDANTS ARE NOT ENTITLED TO  SUMMARY
           JUDGMENT ON PLAINTIFF'S CLAIMS FOR
           REPUTATIONAL DAMAGES .......................................................................24

CONCLUSION .......................................................................................................25

## TABLE OF AUTHORITIES

### CASES

Blake-Mcintosh v. Cadbury Beverages, Inc.,
    No. 96 Civ. 2554 (EBB), 1999 WL. 643661 (D. Conn. Aug. 10, 1999)............................21

Davis v. Arkansas Dep't of Human Servs.,
    862 F.2d 173 (8th Cir. 1988) ................................................................................21, 22

Flores v. Buy Buy Baby, Inc.,
    118 F. Supp. 2d 425 (S.D.N.Y. 2000) ..............................................................................11

Greene v. Coach, Inc.,
    218 F. Supp. 2d 404 (S.D.N.Y. 2002) ........................................................................20, 21

Hillman v. Hamilton Coll.,
    No. 95 Civ. 1442 (RSP), 1998 WL. 166827 (N.D.N.Y. April 9, 1998)............................12

La Fond v. General Physics Svcs. Corp.,
    50 F.3d 165 (2d Cir. 1995) ................................................................................................10

Lewis v. Sugar Creek Stores, Inc.,
    No. 96 Civ. 0100, 1996 WL. 685730 (W.D.N.Y. Nov. 25, 1996) ....................................20

McKennon v. Nashville Banner Publ'g, Co.,
    513 U.S. 352 (1995) ....................................................................................10, 16, 20

Medlock v. Ortho Biotech, Inc.,
    164 F.3d 545 (10th Cir. 1999) ..........................................................................................23

Predzik v. Shelter Corp., Inc.,
    No. 05 Civ. 1063 (JRT), 2006 WL. 2794368 (D. Minn. Sept. 27, 2006).........................21

Reeves v. Sanderson Plumbing Prods., Inc.,
    530 U.S. 133 (2000) ..............................................................................................10, 20

Rodal v. Anesthesia Group of Onondaga, P.C.,
    369 F.3d 113 (2d Cir. 2004) ..............................................................................................9

Russel v. Microdyne Corp.,
    65 F.3d 1229 (4th Cir. 1995) ............................................................................................11

Russell v. Board of Plumbing Exam'rs of the County of Westchester,
    74 F. Supp. 2d 339 (S.D.N.Y. 1999) ................................................................................17

Sellers v. Mineta,
    358 F.3d 1058 (8th Cir. 2004) ..................................................................................23

Sigmon v. Parker Chapin Flattau & Kimpl,
    901 F. Supp. 667 (S.D.N.Y. 1995) ...........................................................................23

Sweet v. Blue Cross and Blue Shield of Utica-Watertown, Inc.,
    No. 93 Civ. 811 (RSP), 1998 WL. 695610 (N.D.N.Y. Sept. 28, 1999) ...........................21

Tolbert v. Queens Coll.,
    242 F.3d 58 (2d Cir. 2001) ........................................................................................10

U.S. v. Boulerice,
    325 F.3d 75 (1st Cir. 2003)........................................................................................14

U.S. v. Romanow,
    509 F.2d 26 (1st Cir. 1975).........................................................................................14

Waag v. Thomas Pontiac, Buick, GMS, Inc.,
    930 F. Supp. 393 (D. Minn. 1996)..............................................................................20

Washington v. Lack County, Ill.,
    969 F.2d 250 (7th Cir. 1992) .....................................................................................21

Welch v. Liberty Mach. Works, Inc.,
    23 F.3d 1403 (8th Cir. 1994) .....................................................................................20

Williams v. Pharmacia, Inc.,
    137 F.3d 944 (7th Cir. 1998) .....................................................................................25

**STATUTES**

42 U.S.C. §1981a(b)(3) ...........................................................................................................25

42 U.S.C. § 2000e...........................................................................................................1, 23, 25

Fed.R.Civ.P. 56(f)...................................................................................................................19

N.Y. Exec. Law §296 ...............................................................................................................1

N.Y.C. Admin. Code § 8-107....................................................................................................1

## PRELIMINARY STATEMENT

Plaintiff Anucha Browne Sanders ("plaintiff" or "Browne Sanders"), submits this Memorandum of Law in opposition to the motion for partial summary judgment of defendants Madison Square Garden, L.P. ("MSG") and James L. Dolan ("Dolan") (collectively "defendants"). Browne Sanders alleges that while working at MSG she was discriminated against her because of her sex, including being subjected to sexual harassment, and that defendants retaliated against her because she engaged in protected activity, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-2000e-17 ("Title VII"); the New York State Human Rights Law, New York Executive Law §§ 296-301; and the Administrative Code of the City of New York §§ 8-107-8-109. Defendants tacitly admit that a trial is necessary to determine MSG's and Dolan's liability. Defendants' motion addresses only the type of damages that plaintiff may receive at trial.

Defendants disingenuously claim that there are no issues of material fact concerning their after-acquired evidence defense. This is simply not true. Defendants have no credible evidence to support their theory that plaintiff's damages should be limited because of improper business deductions on her personal tax returns. Indeed, defendants' argument is so devoid of factual support that defendants should not be allowed to present it to the jury, let alone prevail on summary judgment. No reasonable jury could determine that Browne Sanders violated any MSG policies while employed there or that defendants would have fired her for any alleged transgression. While MSG has a policy against operating outside businesses without written authorization from MSG, there is no evidence, other than her admittedly incorrect tax returns, that plaintiff did any such thing. Despite pursuing exhaustive discovery on the subject, defendants have not uncovered a single piece of evidence to suggest that plaintiff actually operated any type of outside business while employed by MSG. Moreover, the accountant who

prepared the erroneous tax returns for Browne Sanders has testified that he does not recall if he simply made up the erroneous deductions on Browne Sanders' tax returns, and the evidence shows that is exactly what he did.

Defendants' contention that Browne Sanders engaged in "tax fraud" is also unsupported and, therefore, cannot be the basis for an after-acquired-evidence defense. Browne Sanders testified she was not aware at the time she filed the tax returns at issue that her accountant had included improper deductions. When Browne Sanders became aware that her taxes had been incorrectly filed, she hired an experienced accountant and followed his advice concerning amending the incorrect returns. Neither the Internal Revenue Service ("IRS") nor any other taxing authority has suggested that Browne Sanders engaged in any improper conduct.

Even if Browne Sanders had knowingly taken improper deductions on returns (which she did not), defendants cannot establish that they would have fired her based on such conduct. Defendants have not shown that they have any policy of firing employees who engage in purported misconduct that is uncharged and that is completely unrelated to work. To the contrary, Dolan has publicly admitted using illegal drugs for approximately a decade while an employee of Cablevision. Despite policies, which Dolan admitted applied to him, that state such conduct is the basis for termination, Dolan continued to be employed by Cablevision, MSG's parent company, and is currently the Chairman of MSG and the Chief Executive Officer of Cablevision. In addition, there is ample evidence that during discovery defendant Isiah Thomas, ("Thomas"), as well as other MSG employees, lied during their depositions in this case. Yet, MSG has taken no action against Thomas or any of the other employees who did so.

Defendants' after-acquired evidence defense must also fail because, in the absence of this lawsuit, defendants would have been legally barred from obtaining plaintiff's tax returns. Accordingly, they cannot establish that they would have fired Browne Sanders based on

information contained in her tax returns and their motion for summary judgment on the after-acquired evidence defense should be denied.

Defendants' motion to dismiss plaintiff's claim for reputational damages should also be denied because a jury could find that as a result of defendants' unlawful conduct, plaintiff has suffered injury to her reputation and to her ability to earn a living now and in the future.

## STATEMENT OF FACTS[1]

### Damage To Plaintiff's Reputation

Plaintiff was terminated from her employment at MSG on January 19, 2006. (Pl. 56.1 ¶ 62) On January 24, 2006, plaintiff filed this action. That same day, lawyers for MSG made statements to the press on behalf of their client. MSG claimed that plaintiff's claim was "fabricated and outrageous" and that Browne Sanders was "fired because of an inability to fulfill her professional responsibilities." (Pl. 56.1 ¶ 63) Plaintiff responded to these smears in a statement that she read at a press conference on January 25, 2006. (Pl. 56.1 ¶ 64)

Following Browne Sanders' unlawful dismissal and the negative public comments that defendants made about her, her career prospects and earning capacity have been damaged. Although Browne Sanders applied for jobs with hundreds of potential employers in a wide variety of businesses, she is presently working as an independent contractor for a non-profit organization. Her annual compensation is less than half of what she had earned at MSG. (Pl. 56.1 ¶ 66) Moreover, Browne Sanders has repeatedly been asked about the circumstances of her dismissal from MSG by prospective employers and executive recruiters, some of whom have

---

[1] The facts are set forth in greater detail in Plaintiff's Statement of Material Facts Pursuant to Local Civil Rule 56.1 ("Pl. 56.1").

specifically referenced the circumstances surrounding her dismissal in the context of discussing potential jobs that she ultimately was not offered. (Pl. 56.1 ¶ 67)

<u>Plaintiff's 2001-2004 Tax Returns</u>

Prior to 2000, plaintiff's tax returns were prepared by ARB Associates. (Pl. 56.1 ¶ 68) In 2001, plaintiff hired a new accountant, ██████████████████. (Pl. 56.1 ¶ 69) ████████ prepared plaintiff's tax returns for the years 2001 through 2004. (<u>Id.</u>)

Plaintiff did not operate a direct marketing business at any point, including during the time period from 2001 through 2004. (Pl. 56.1 ¶ 70) In a questionnaire which Browne Sanders completed for ███████, she confirmed that she did not have a business. (Pl. 56.1 ¶ 71) The questionnaire, entitled Individual Tax Organizer (1040), appears to be for the 2001 tax year and asks the taxpayer to check "yes" or "no" to several questions. One of the questions is, "Did you start a business?" Plaintiff checked "NO" in response to that question. The questionnaire also includes a worksheet for taxpayers to list all of their business expenses. Browne Sanders did not list any business expenses on the worksheet. (<u>Id.</u>)

███████, however, included a Schedule C on each tax return that he prepared for plaintiff. (Pl. 56.1 ¶ 72) The Schedule C claimed business expenses for a direct marketing business. (<u>Id.</u>) ███████ does not remember having any discussions with Browne Sanders regarding a direct marketing business. (Pl. 56.1 ¶ 73) Nor does ███████ have any documents provided to him by plaintiff that reflect a direct marketing business. (<u>Id.</u>)

When questioned on the specific entries on plaintiff's 2002 tax form, ███████ testified that he did not know who provided the information included on the Schedule C (Pl. 56.1 ¶ 74); he did not remember if he made up any entries on the Schedule C form that were based on information that he did not receive from plaintiff; and he did not remember if he added additional

information to plaintiff's 2002 Schedule C that was not provided to him by plaintiff. (<u>Id.</u>)  When questioned specifically on the tax returns he prepared for 2003, ██████ testified that he did not remember if the tax returns were prepared based on information provided to him by his clients. (Pl. 56.1 ¶ 75)  He also testified that with regard to plaintiff's 2003 tax return, he did not remember if he completed it based on information plaintiff provided.  (<u>Id.</u>)

Indeed, ██████ testified that he did not remember if he made up the information contained on the Schedule C forms that he prepared for plaintiff. (Pl. 56.1 ¶ 76)  He also did not remember if in general he included information on tax returns that was not based on information that he received from his clients. (Pl. 56.1 ¶ 77)

██████ is an alcoholic. (Pl. 56.1 ¶ 78)  He began receiving treatment from High Focus, a rehabilitation company, in November 2006. (<u>Id.</u>) ██████ is also receiving treatment from Alcoholics Anonymous. (<u>Id.</u>) ██████ testified that he was in denial for many years about his alcoholism, and that he started receiving treatment for his alcoholism because his accounting partner, ██████, told him in 2006 that he needed to seek help. (Pl. 56.1 ¶ 79)  He did not know if his alcoholism affected the preparation of plaintiff's tax returns. (Pl. 56.1 ¶ 80)

Browne Sanders did not review the tax returns that ██████ prepared for her prior to signing them. (Pl. 56.1 ¶ 81)  Accordingly, plaintiff did not know that the tax returns contained erroneous information when she filed them. (<u>Id.</u>)

### Plaintiff's 2005 Tax Returns

Plaintiff chose to have Brock Weaver ("Weaver"), an out-of-town accountant, prepare her 2005 tax returns. (Pl. 56.1 ¶ 82)  Plaintiff spoke to Weaver in April 2006 concerning the preparation of her 2005 taxes. (Pl. 56.1 ¶ 83)  In order to complete plaintiff's 2005 tax returns, Weaver reviewed her 2004 tax returns. (<u>Id.</u>)

Because it was so close to the filing deadline of April 15, Weaver was under a lot of pressure to go through all the issues he needed to discuss with Browne Sanders in order to complete her return. (Pl. 56.1 ¶ 84) Weaver asked Browne Sanders about taking a deduction related to her trip to aid the victims of the tsunami in Thailand. (Pl. 56.1 ¶ 85) Browne Sanders told Weaver about the relief work she had done and the expenses she had incurred. (Id.)

After reviewing her 2004 tax returns, Weaver also questioned Browne Sanders about the business expenses listed on the Schedule C. (Pl. 56.1 ¶ 86) Browne Sanders responded to Weaver, "What business expenses, what do you mean by a business? . . . I don't have a business." (Id.) According to Weaver, Browne Sanders seemed not to know that the business expenses existed. Browne Sanders told Weaver, "I don't know where the preparer got those expenses from." (Id.) Plaintiff told Weaver that she never had a direct marketing business. (Id.)

Weaver prepared two tax returns for plaintiff for 2005: one with the filing status of "married filing separately" and one with the filing status of "married filing jointly." (Pl. 56.1 ¶ 88) Plaintiff filed the tax return with the filing status of "married filing separately." (Pl. 56.1 ¶ 89) Weaver incorrectly recorded that Browne Sanders filed the return with the status of "married filing jointly." (Pl. 56.1 ¶ 90)

Plaintiff's 2003-2004 Amended Tax Returns

In November 2006, after this Court ordered plaintiff to produce her tax returns for the years 2000 through 2005, Browne Sanders reviewed her 2000 through 2005 tax returns and realized that her tax returns for 2001 through 2004 had listed a number of erroneous deductions concerning a direct marketing business. (Pl. 56.1 ¶ 91) Plaintiff then hired Leon Reimer ("Reimer") to review her tax returns. (Pl. 56.1 ¶ 92)

Reimer met with Browne Sanders in November 2006 and reviewed her 2000-2005 tax returns. (Pl. 56.1 ¶ 93) Reimer told Browne Sanders that her 2000 and 2005 tax returns

appeared to be prepared properly. (Pl. 56.1 ¶ 94) Reimer questioned Browne Sanders about the Schedule C forms that had been included in her 2001 through 2004 tax returns. (Pl. 56.1 ¶ 95) In response to Reimer's questions, Browne Sanders stated that she had not been in a trade or business; that she had been an employee; and that she did not know what a Schedule C was or why it was filed. (Id.) Browne Sanders also told Reimer that she never discussed the Schedule C expenses with ████████ she had not supplied him with the amounts that were recorded, and she did not know how the amounts were determined. (Id.) Browne Sanders told Reimer that she had not reviewed the tax returns after they were prepared. (Id.)

Reimer took notes during his initial meeting with plaintiff. (Pl. 56.1 ¶ 96) One of his notes was a question, "made up expenses by new accountant?" (Id.) Reimer wrote that note because Browne Sanders had not provided ████████ with information concerning the expenses listed on the Schedule C forms and Reimer questioned whether ████████ had made up the expenses. (Id.)

Reimer advised Browne Sanders that she should amend her 2003 and 2004 tax returns because they reflected a loss from a trade or business when she was not in a trade or business. (Pl. 56.1 ¶ 97) Reimer advised Browne Sanders not to amend her 2001 or 2002 tax returns because the three-year civil statute of limitations that applied to amendments had already expired for those returns. (Id.) Plaintiff's amended 2003 and 2004 returns do not include a Schedule C or any deductions for business expenses. (Id.)

Conduct of Other MSG Employees

Neither Cablevision, MSG's parent company, nor MSG fire all senior level employees that engage in illegal conduct. For example, Dolan, who has acknowledged that the company policies apply to him, has an admitted history of illegal drug use during his employment with Cablevision, yet he is currently the Chairman of MSG. (Pl. 56.1 ¶ 98)

In addition, there is substantial evidence that Thomas lied during his deposition in this case. Thomas testified that he never referred to plaintiff as attractive or "easy on the eyes." (Pl. 56.1 ¶ 99) Robert Levy ("Levy"), a third party with no connection to plaintiff or interest in the outcome of this case, however, has testified that during a Knicks open practice he witnessed Thomas say to Browne Sanders and another person that Browne Sanders was attractive and easy on the eyes. (Id.) In addition, Jonathan Schindel ("Schindel"), another third party with no connection to this case, has submitted a declaration stating that at the same open practice he also heard Thomas refer to Browne Sanders as beautiful, attractive, and easy on the eyes. (Id.) Despite this evidence, Thomas remains the President, Basketball Operations for MSG and the Head Coach of the Knicks, and it has been widely reported that his contract has been extended. (Id.)

Thomas has also been involved in an outside business while employed by MSG. Thomas is one of the owners of Dale & Thomas Popcorn. (Pl. 56.1 ¶ 100) In addition, Thomas engaged in promotional activities related to Dale & Thomas Popcorn. (Id.) Thomas has not received a written waiver from MSG to conduct any outside business, although he and Dolan claim that Thomas was given oral permission to be an investor in Dale & Thomas Popcorn. (Pl. 56.1 ¶ 101) Dale & Thomas Popcorn is also a vendor at MSG, and Thomas has not received a written waiver for this as MSG policy requires. (Pl. 56.1 ¶ 102)[2]

Defendants have not identified any MSG employee who is similarly situated to plaintiff and was fired by MSG. Two of the comparators proposed by MSG, ████████████████ and ████████████████████████, were fired by MSG after they engaged in improper work-related conduct. (Pl. 56.1 ¶ 104) MSG fired ██████ because he worked for ABC-TV

---

[2] Thomas also hired a family member, his niece, as his assistant, without receiving a written waiver as MSG policy requires. (Pl. 56.1 ¶ 103)

during the time he was scheduled to work for Madison Square Garden Network. As a result, he was not at his scheduled position for MSG and was paid by both companies for the same time period. This was ████ third act of misconduct. (Id.) MSG fired ████████ after it became aware that he had submitted applications through MSG for medical insurance for a woman that he claimed was his wife, when he was not married. (Pl. 56.1 ¶ 105) ██████ misrepresentation had cost MSG over $70,000 in insurance premiums. (Id.)

MSG also offers as a comparator ████████████████. MSG revoked an offer of employment to ██████ after it determined that she had misrepresented her qualifications. (Pl. 56.1 ¶ 106) ██████ stated on her resume that she was a college graduate, but this was not true. (Id.) Finally, MSG proposes three other comparators, ████████████████, ██████████████████, and ██████████████, whom MSG fired after they were arrested. (Pl. 56.1 ¶ 107) ██████ was reinstated after the case against her was dismissed on speedy trial grounds. (Id.)[3]

## ARGUMENT

### I.    LEGAL STANDARDS GOVERNING DEFENDANTS' MOTION

Summary judgment is inappropriate because defendants have not established the absence of material factual issues. See Rodal v. Anesthesia Group of Onondaga, P.C., 369 F.3d 113, 118 (2d Cir. 2004). A court determining whether a genuine factual issue exists must "constru[e] the evidence in the light most favorable to the non-moving party." Id. Not only must there be no genuine issue as to the facts, but there must also be no controversy regarding the inferences to be

---

[3] Each of the proposed comparators works outside of the Knicks organization. Defendants have previously argued, and this Court has held, that plaintiff could not obtain discovery about allegations of discrimination and retaliation at MSG outside of the Knicks organization that did not involve Stephen Mills or James Dolan. (Pl. 56.1 ¶ 108) If the Court determines that these comparators are relevant, plaintiff requests additional discovery.

drawn from them. See La Fond v. General Physics Svcs. Corp., 50 F.3d 165, 171 (2d Cir. 1995). On a motion for summary judgment, a court must credit all evidence favorable to the non-movant and may not credit the movant's evidence unless it comes from disinterested witnesses and is uncontradicted and unimpeached. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 151 (2000); Tolbert v. Queens Coll., 242 F.3d 58, 70 (2d Cir. 2001).

II.    MATERIAL FACTUAL ISSUES PRECLUDE SUMMARY JUDGMENT ON
       DEFENDANTS' AFTER-ACQUIRED EVIDENCE DEFENSE

Defendants are correct that under McKennon v. Nashville Banner Publ'g, Co., 513 U.S. 352 (1995), evidence that is discovered during litigation of an employment discrimination case may be used to limit a plaintiff's damages if the employer can prove that the newly discovered conduct is so severe that the employer would have discharged the plaintiff on that basis alone. (Memorandum of Law in Support of Madison Square Garden, L.P. and James L. Dolan's Motion for Partial Summary Judgment ("Def. Mem.") 14-15)  Defendants, however, cannot prove that they would have fired plaintiff if they had the opportunity to review her 2001-2004 tax returns earlier.  Indeed, there is no credible evidence that suggests that plaintiff violated any MSG policy or that she engaged in any conduct that would have resulted in MSG firing her.  Accordingly, their motion for partial summary judgment based on the after-acquired evidence defense should be denied.

A.    Plaintiff Did Not Operate A Business While Working At MSG

Defendants contend that the statements made on plaintiff's 2001-2004 tax returns are sufficient evidence that she violated MSG's policy precluding MSG employees from "serving as an officer, director, agent, employee, consultant or provider of or in any other capacity for any for-profit organization."  (Def. Mem. 23-24)  No reasonable jury, however, could find that Browne Sanders actually operated a business while employed by MSG.  MSG conducted

extensive discovery on this issue and has presented no evidence, other than plaintiff's admittedly incorrect tax returns, that she was involved in any outside business while working at MSG.

Indeed, it is improper for defendants' to move for summary judgment on this basis when they are fully aware that <u>all</u> of the witnesses questioned about whether Browne Sanders operated any outside business testified that she did not. These witnesses corroborate Browne Sanders' testimony that the Schedule C filings were incorrect. Moreover, other than the incorrect tax returns, defendants have not identified a single document related to this purported business. ████████ the accountant who prepared the incorrect returns, did not have any documents or notes related to any business purportedly operated by plaintiff. ████████ admitted that it is possible he made up the information on the Schedule C forms that he prepared for plaintiff and the questionnaire that Browne Sanders completed for ████████ stated that she did not have a business or any business-related expenses. (Pl. 56.1 ¶¶ 71-77)

Summary judgment on this ground should be denied because the evidence developed during discovery creates questions of fact as to whether Browne Sanders operated a business while working at MSG. <u>See</u> <u>Russel v. Microdyne Corp.</u>, 65 F.3d 1229, 1237- 41 (4th Cir. 1995) (reversing summary judgment on defendant's after-acquired evidence defense where there was contradictory evidence regarding whether the employer would have dismissed the plaintiff based on newly discovered evidence); <u>Flores v. Buy Buy Baby, Inc.</u>, 118 F. Supp. 2d 425, 432-33 (S.D.N.Y. 2000) (denying motion for summary judgment on an after-acquired evidence defense because material issues of fact existed as to whether defendant would have fired plaintiff solely on the basis of the newly discovered information).

Even if Browne Sanders had conducted an outside business (which she did not), it is not clear that defendants would have fired her. Thomas has admitted that while employed at MSG he has been part-owner of an outside business, Dale & Thomas Popcorn. (Pl. 56.1 ¶ 100)

Thomas has also been involved in promotional events for Dale & Thomas Popcorn and has used the services of an MSG employee in connection with his Dale & Thomas work. (Id.) Moreover, MSG has selected Dale & Thomas as a vendor, contrary to MSG policy. (Pl. 56.1 ¶ 102) MSG has stated that it does not have a written waiver that would allow Thomas to engage in this business or for Dale & Thomas to become an MSG vendor, as its policy requires. (Pl. 56.1 ¶¶ 101-02) Even the purported oral waiver that Dolan claims he granted Thomas to invest in Dale & Thomas does not encompass Thomas' actual work for that company, and certainly did not permit him to use MSG resources for his personal venture. Yet, no action has been taken against Thomas. See Hillman v. Hamilton Coll., No. 95 Civ. 1442 (RSP), 1998 WL 166827, at *10-11 (N.D.N.Y. April 9, 1998) (factual issue in dispute as to whether the plaintiff acted inappropriately and whether the defendant would have fired the plaintiff "as a matter of settled company policy had it known of her actions").

B.    Plaintiff Has Not Committed Tax Fraud

Defendants' second basis for its after-acquired evidence defense is similarly deficient. Defendants contend that because plaintiff amended her tax returns for 2003 and 2004 and has testified that she did not have a direct marketing business, "it cannot be disputed that plaintiff knowingly filed false tax returns." (Def. Mem. 17) Defendants advance this argument only by ignoring plaintiff's testimony that she did not review her 2001-2004 tax returns before signing them (Pl. 56.1 ¶ 81), the questionnaire that plaintiff submitted to ▮▮▮▮ (Pl. 56.1 ¶¶ 46, 71), and most of the testimony of the three accountants defendants deposed on this issue.

Indeed, defendants' selection of ▮▮▮▮ testimony could only have been intended to deceive the Court. Defendants fail to inform the Court that ▮▮▮▮ testified that he is an alcoholic and began receiving treatment only as of November 2006. (Pl. 56.1 ¶ 78) They also fail to note that ▮▮▮▮ testified he did not know if his condition affected his preparation of

plaintiff's tax returns. (Pl. 56.1 ¶ 80) ████████ stated his memory was impaired due to his

alcoholism, which had caused his brain to be "partially fried." (Id.)

    Most importantly, defendants do not include ████████ testimony that he did not recall if

he made up the information he included on Browne Sanders' Schedule C forms. (Pl. 56.1 ¶ 76)

During questioning by MSG's and Dolan's counsel, ████████ testified as follows:

> Q: None of the information contained in Schedule C was made up
> by you?
>
> A: I don't recall.

(Id.) Defendants improperly quote ████████ testimony directly prior to this as evidence that

Browne Sanders was the only person who supplied ████████ with information to assist him in

preparation of her taxes for 2001. (Def. Mem. 18) While ████████ testified that he did not speak

to anyone other than plaintiff about her 2001 return (Pl. 56.1 ¶ 46), he then testified that he did

not recall if he made up the information on plaintiff's Schedule C for 2001. (Id.) Accordingly,

defendants' claim that "plaintiff provided all the information reflected on the return" (Def. Mem.

18), misrepresents ████████ testimony.[4]

    Defendants also fail to mention that ████████ never testified that Browne Sanders told

him that she had a direct marketing business, nor did ████████ testify that Browne Sanders ever

told him to falsify her tax returns. Instead, ████████ repeatedly testified that he did not know if

he obtained from plaintiff the information that he included on Browne Sanders' Schedule Cs.

(Pl. 56.1 ¶ 47) In response to questions by Thomas' lawyer, ████████ testified as follows:

---

[4] Defendants also claim that ████████ testified that plaintiff was the only person who provided
him with information to assist him in the preparation of her 2003 tax return. (Def. Mem. 18)
Defendants fail to note that ████████ did not remember discussing with plaintiff the preparation
of the Schedule C for plaintiff's 2003 tax return (Pl. 56.1 ¶ 46) and did not have any documents
provided by plaintiff that related to the Schedule C for 2003. (Pl. 56.1 ¶ 46)

> Q: In the calendar year 2003 when you were preparing the tax
> return for 2002 for Anucha Browne Sanders, would you have made
> any entries on Schedule C of that return that were not based on
> information given to you by Anucha Browne Sanders?
>
> A.  I do not recall.

(Pl. 56.1 ¶ 74)

Even when asked leading questions, ████ replied that he did not remember whether

he included information on his clients' tax returns that he did not obtain from his clients.  For

example, ████ gave the following testimony:

> Q: My question to you, sir, is that regardless of the tax year, you
> would not include information in the return that was not based on
> information that you received from the individual would you?
>
> A.  I don't recall.

(Pl. 56.1 ¶ 77)

In light of ████ testimony that he does not recall how he obtained the information

he included on plaintiff's Schedule C forms, ████ further testimony that he may have made

up the information, and plaintiff's testimony that she did not review her tax returns before

signing them, it is absurd for defendants to argue that it is undisputed that Browne Sanders

knowingly filed false tax returns.  The cases cited by defendants hold only that a jury <u>may</u> infer

that a taxpayer read his return and knew its contents because he signed it; they do not suggest

that a jury must make that finding.  <u>See</u> <u>U.S. v. Boulerice</u>, 325 F.3d 75, 80-81 (1st Cir. 2003);

<u>U.S. v. Romanow</u>, 509 F.2d 26, 27 (1st Cir. 1975).

Defendants' attempt to bolster their argument by citing to the testimony of Weaver, the

accountant who prepared Browne Sanders' 2005 tax returns, is unavailing.  Defendants claim that

Weaver testified that plaintiff provided the Schedule C information to ████ (Def. Mem. 18),

but Weaver testified throughout his deposition that when he questioned Browne Sanders about

the Schedule C submitted with her 2004 tax return, she was surprised and told him that she did

not have a business. (Pl. 56.1 ¶¶ 44, 86)  For example, Weaver testified as follows:

> Q: So she told you that she had no idea how this schedule would
> have ever ended up on her return?
>
> A. Yes.

(Pl. 56.1 ¶ 86)

Defendants rely on the questioning that followed shortly after that testimony, where

Weaver stated that Browne Sanders told him that in response to ████████ questions she had

provided information about expenses.  It is unclear from this testimony what expenses Weaver

believed Browne Sanders was referring to.  Moreover, Weaver testified earlier in his deposition

that when he questioned plaintiff about expenses listed on her 2004 Schedule C, she responded "I

don't know where the preparer got those expenses from."  (Pl. 56.1 ¶ 44)  To the extent that

anything in Weaver's testimony supports defendants' assertion that plaintiff provided ██████

with information for the 2004 Schedule C, any such inference is directly contradicted by the

majority of his testimony.[5]

Any suggestion that plaintiff provided ██████ with information concerning a business

or business expenses is further contradicted by the questionnaire that plaintiff submitted to

██████.  ██████ sent this questionnaire to plaintiff to gather information to prepare her taxes.

(Pl. 56.1 ¶ 71)[6]  The questionnaire, entitled Individual Tax Organizer (1040), appears to be for

---

[5] Weaver also testified that he was under a lot of pressure when he spoke to plaintiff in April
2006 because it was close to the filing deadline.  (Pl. 56.1 ¶ 84)  In addition, Weaver was
mistaken about which tax return plaintiff filed in 2005.  (Pl. 56.1 ¶¶ 88-90)  Given Weaver's busy
schedule, a jury could reasonably find that his recollection of a brief conversation with plaintiff
is not entirely accurate.

[6] The questionnaire was produced by ██████ in response to defendants' subpoena for his file
concerning plaintiff.  Browne Sanders had not maintained a copy of the questionnaire.

the 2001 tax year and asks the taxpayer to check "yes" or "no" to several questions.  In response

to the question, "Did you start a business?" plaintiff checked "NO." (Id.)  Furthermore, where

the questionnaire asks the taxpayers to list all business expenses, Browne Sanders did not list any

such expenses. (Id.)  Moreover, ███████ file does not contain any documents suggesting that

Browne Sanders had provided ███████ with the Schedule C information, or that she was aware

that the deductions were included on her return.

C.     There Is No Credible Evidence That Defendants Would Have Fired Plaintiff
       Because Of the Information Contained On Her 2001-2004 Tax Returns

       Even if defendants could prove that plaintiff intentionally filed false tax returns, they

cannot meet their burden of establishing that "the wrongdoing was of such severity that the

employee in fact would have been terminated on those grounds alone if the employer had known

of it at the time of the discharge." McKennon, 513 U.S. at 362-63.

       1.     MSG's Policies and Practices Do Not Require
              Firing An Employee Who Engages In Any Illegal Conduct

       Defendants contend that pursuant to Cablevision's Code of Business Conduct and Ethics,

the MSG Employee Handbook, the MSG Confidentiality, Code of Business Conduct and

Proprietary Agreement, and a handout from an MSG ethics training, MSG fires any employee

who engages in fraudulent, dishonest or unlawful conduct. (Def. Mem. 19-20)  However, these

policies plainly relate to work-related misconduct.  MSG cannot plausibly claim that it fires any

employee who engages in alleged dishonest or unlawful behavior even if the conduct does not

result in criminal charges and is not related to the workplace.  If that were actually MSG's policy,

it would be placed in the impractical position of investigating thousands of its employees and

firing any who engaged in any non-work-related conduct that was dishonest or violated any law

of any municipality, state, or the federal government.  There is absolutely no evidence that MSG

actually enforces its policies in such a manner.

Defendants' argument is also belied by the illegal conduct that they have tolerated by high-level employees. The most prominent example of this involves Dolan, Chairman of MSG. Dolan has an admitted history of illegal drug use, describing his mid-thirties as "a festival. It was not a festival of love, it was a festival of self-abuse. Like any other alcoholic and chemically dependent person, every binge, every event, is a little more than the one before." (Pl. 56.1 ¶ 98) During the decade or so that Dolan used illegal drugs, he was employed by Cablevision, MSG's parent company, and was admittedly subject to the company's policies. (Id.) Given MSG's Chairman's history of criminal activity, defendants cannot plausibly contend that they would fire any employee who violates the law.

Moreover, a jury could find that Thomas, among other MSG employees, lied during his deposition in this case. While Thomas testified that he never referred to plaintiff as attractive or "easy on the eyes," two independent witnesses, Levy and Schindel, have testified that they heard Thomas use those very phrases to describe Browne Sanders (Pl. 56.1 ¶ 99). Yet Thomas remains President, Basketball Operations for MSG and Head Coach of the Knicks and, after his deposition, had his contract renewed.

2.    Defendants Have Not Proposed Any Proper Comparators

Defendants' after-acquired evidence defense must also fail because the alleged wrongdoing involves plaintiff's tax returns, which are statutorily protected from disclosure. See Russell v. Board of Plumbing Exam'rs of the County of Westchester, 74 F. Supp. 2d 339, 348 (S.D.N.Y. 1999) (noting "the independent confidentiality of federal income tax returns and return information" and finding that employer could not require prospective employees to produce tax forms for review). The court in Russell held that employers are not permitted to require employees to show them their tax returns. Because employers are precluded from even reviewing their employees' tax returns, it follows that they cannot make employment decisions

based on such tax returns. Although <u>McKennon</u>, 513 U.S. at 362, provides that an after-acquired evidence defense can rest on evidence that an employer may not have known of if the plaintiff had not filed a lawsuit, the Court did not suggest that employers could claim a defense based on information that they could not have legally obtained in the absence of a lawsuit. MSG should not be permitted to argue that it would have fired plaintiff based on its assessment of her personal income taxes when it would not have been legally entitled to review her tax returns in the absence of plaintiff's lawsuit.

The confidentiality of plaintiff's tax returns also makes it impossible for defendants to point to any comparators for plaintiff. Indeed, defendants have not even claimed that they have <u>ever</u> fired any employee in connection with the employee's personal tax filings. Instead, defendants have provided evidence of fired employees whose conduct bears no resemblance to plaintiff's alleged conduct. Three of the comparators defendants offered, ███████████, and ████, have no relevance because MSG fired them after they were arrested. (Pl. 56.1 ¶ 107) Indeed, ████ was reinstated after the case against her was dismissed on speedy trial grounds, further proving that she was placed on leave because, in contrast to Browne Sanders, ████ had been accused of wrongdoing by the government. (<u>Id.</u>)

Plaintiff has not been charged with any crime nor has any state or federal agency pursued any civil action against her. Despite defendants' repeated use of the phrase "tax fraud," the relevant taxing authorities have not suggested that Browne Sanders engaged in any improper conduct. As plaintiff has not been charged with any crime, the fact that MSG has fired other employees who have been arrested has no relevance.

Defendants improperly rely on MSG's firing of other employees, ████ and ███████, after they engaged in improper work-related conduct. (Pl. 56.1 ¶¶ 104-05) MSG fired ████ after he double-worked as a cameraman for MSG and ABC-TV in July 2003. (Pl. 56.1 ¶ 104)

As a result, he was not at his scheduled position for MSG and was paid by both companies. (<u>Id.</u>) MSG fired ███████ after it became aware that he had submitted applications through MSG for medical insurance for a woman that he falsely claimed was his wife. ███████ conduct cost MSG over $70,000 in insurance premiums. (Pl. 56.1 ¶ 105)  As plaintiff is not even alleged to have engaged in any work-related misconduct or to have cost MSG any money, these examples are irrelevant.

Equally irrelevant is MSG's decision to revoke an offer of employment to a prospective employee after MSG determined that she had falsely stated on her resume that she was a college graduate.   (Pl. 56.1 ¶ 106)   Defendants have not alleged that plaintiff made any misrepresentations concerning her qualifications.  Therefore, MSG's refusal to hire ███████ has no bearing on whether defendants would have fired Browne Sanders in connection with her tax returns.  Moreover, each of the proposed comparators are outside of the Knicks organization, and defendants have previously argued, and this Court held, plaintiff's could not obtain discovery of other instances of discriminatory conduct outside the Knicks organization unless they directly involved Mills or Dolan.[7]

---

[7] Even if the Court determines that any of the comparators proposed by defendants are relevant to this case, to the extent defendants' motion for summary judgment is based on such comparators, the motion should be denied because defendants produced all of the documents related to the proposed comparators on February 27, 2007, the last day of discovery.  Defendants thus precluded plaintiff from conducting any follow-up discovery on these issues.  Pursuant to Fed. R. Civ. P. 56(f), it is improper to grant summary judgment if the non-moving party has not had ample discovery on the relevant issues.  Thus, if the Court finds any of the comparators proposed by defendants to be relevant, plaintiff requests that discovery be reopened to allow her to gather evidence concerning those comparators and other employees who engaged in similar conduct but were not fired.

### 3.    A Jury Need Not Believe Dolan's And Mills' Self-Serving Affidavits

Defendants also rely on the Affidavits of Dolan and Mills, which state that had they known that plaintiff falsified her tax returns, they would have fired her. (Def. Mem. 20)  As discussed above, the evidence does not support defendants' assertion that plaintiff falsified her tax returns. Therefore, the factual basis of Dolan's and Mill's affidavits is disputed.

Moreover, a jury will not be required to believe the self-serving testimony of Dolan and Mills, and, therefore, summary judgment cannot be granted on the basis of their affidavits. See Reeves, 530 U.S. at 151; Waag v. Thomas Pontiac, Buick, GMS, Inc., 930 F. Supp. 393, 409 (D. Minn. 1996) (self-serving affidavit submitted by employer was insufficient to prove that defendant would have fired plaintiff); Welch v. Liberty Mach. Works, Inc., 23 F.3d 1403, 1405-06 (8th Cir. 1994) (employer's president's affidavit was a self-serving document that did not prove that employer would not have hired plaintiff absent plaintiff's misrepresentation about her qualifications), abrogated on other grounds, McKennon, 513 U.S. 352; Lewis v. Sugar Creek Stores, Inc., No. 96 Civ. 0100, 1996 WL 685730 at *3-4 (W.D.N.Y. Nov. 25, 1996) (affidavits stating that plaintiff's alleged misconduct was grounds for firing did not establish after-acquired evidence defense as a matter of law).

Greene v. Coach, Inc., 218 F. Supp. 2d 404 (S.D.N.Y. 2002), relied on by defendants (Def. Mem. 15), is inapposite.  In Greene, the plaintiff admitted to falsifying her employment application and the plaintiff did not put forth any evidence to rebut the defendant's showing that it would have terminated her employment based on her misrepresentation.  218 F. Supp. 2d at 413-14.  Specifically, the defendant presented evidence that on two prior occasions, it had fired employees after it had discovered that the employees had falsified their job histories. Id. at 412. Here, plaintiff has presented abundant evidence that she did not engage in any fraudulent activity

and defendant has failed to proffer even one proper comparator.    Accordingly, <u>Greene</u> is inapplicable to this case.[8]

    4.      <u>Defendants Cannot Prove They Would Have
Fired Plaintiff Because Of Her 2001-2004 Tax Returns</u>

Despite defendants' failure to offer any credible and uncontradicted evidence that they would have fired plaintiff in connection with her 2001-2004 tax returns, defendants argue that they are entitled to summary judgment on this issue. (Def. Mem. 17-21)  Because defendants cannot support their argument that they would have fired plaintiff had they reviewed her 2001-2004 tax returns while she was employed, their motion for summary judgment as to this basis of their after-acquired evidence defense should be denied. <u>See</u> <u>Predzik v. Shelter Corp., Inc.</u>, No. 05 Civ. 1063 (JRT), 2006 WL 2794368, at *5 (D. Minn. Sept. 27, 2006) (denying summary judgment on after-acquired evidence defense because defendant did not prove that it was settled company policy to fire employees for misrepresenting employment history on job application); <u>Blake-Mcintosh v. Cadbury Beverages, Inc.</u>, No. 96 Civ. 2554 (EBB), 1999 WL 643661, at *16-18 (D. Conn. Aug. 10, 1999) (factual issues existed as to whether defendant would have fired plaintiff for newly discovered alleged instances of malpractice); <u>Sweet v. Blue Cross and Blue Shield of Utica-Watertown, Inc.</u>, No. 93 Civ. 811 (RSP), 1998 WL 695610, at *6 (N.D.N.Y. Sept. 28, 1999) (factual issues existed as to whether plaintiff acted appropriately and whether defendant would have fired plaintiff as a matter of settled company policy).

    <u>Davis v. Arkansas Dep't of Human Servs.</u>, 862 F.2d 173 (8th Cir. 1988), cited by defendants (Def. Mem. 16), does not suggest otherwise. In <u>Davis</u>, the appeals court affirmed the district court's holding that <u>at trial</u> the plaintiff had not met her burden of proving defendant's

---

[8] <u>Washington v. Lack County, Ill.</u>, 969 F.2d 250 (7th Cir. 1992), a pre-<u>McKinnon</u> case relied on by defendants (Def. Mem. 20), is inapplicable for similar reasons. In <u>Washington</u>, the affidavit the defendant submitted was uncontradicted. <u>Id.</u> at 256.

reasons for her firing were pretextual. Id. at 175-76. The plaintiff in Davis was employed by the state government and the defendant presented evidence that the plaintiff committed fraud on the state, her employer. Thus, Davis involved whether the employer's actual reason for firing the plaintiff was discriminatory and credibility determinations made at trial. Accordingly, Davis has no bearing on the issue of whether MSG would have fired Browne Sanders if she had knowingly filed false tax returns (which she did not). Moreover, unlike the plaintiff's activities in Davis, Browne Sanders' alleged conduct had no connection to her employment.

D.      Plaintiff Has Not Retained A False Tax Benefit

Defendants also incorrectly contend that they should be granted summary judgment on their after-acquired evidence defense because plaintiff has not amended her 2001-02 tax returns. (Def. Mem. 21-23) This argument is meritless because there is no evidence that plaintiff acted improperly by following the advice of an experienced accountant, who specializes in forensic accounting and is an expert at analyzing tax records to detect irregularities in reporting, filing, and payment matters. (Pl. 56.1 ¶¶ 92, 97)

Based on his review of Browne Sanders' tax returns and his conversations with her, Reimer determined that the 2001-04 tax returns had been erroneously filed and were subject to a three-year statute of limitations. (Pl. 56.1 ¶¶ 91-97) Because the 2001 and 2002 tax returns had been filed more than three years prior to November 2006, Reimer advised Browne Sanders not to amend those tax returns. (Pl. 56.1 ¶ 97) Defendants have offered no evidence that Browne Sanders acted improperly in following Reimer's advice. Defendants have only insinuated that the IRS might disagree with Reimer. Even if that happened (which it has not), that would not suggest that Browne Sanders was wrong for following the advice of an experienced tax professional. Defendants' contention that it would have fired plaintiff for doing so is baseless.

Defendants' argument also fails because alleged post-termination conduct cannot be the basis for an after-acquired evidence defense. Although, as defendants state, the issue has not been decided by the Second Circuit, in <u>Sigmon v. Parker Chapin Flattau & Kimpl</u>, 901 F. Supp. 667, 682-83 (S.D.N.Y. 1995), the court found that alleged post-termination wrongdoing could not serve to limit the employee's damages. The court found that Title VII's goal, eliminating bias in the workplace, could not be realized if an employer could reduce its liability based on alleged wrongful conduct after the employee was discriminatorily fired. <u>Id.</u> Because Browne Sanders' followed her accountant's advice not to amend her 2001 and 2002 tax returns in November 2006, ten months after defendants fired her, that conduct cannot be the basis for an after-acquired evidence defense. <u>See</u> <u>Sigmon</u>, 901 F. Supp. at 682-83.

Defendants' reliance (Def. Mem. 22) on <u>Sellers v. Mineta</u>, 358 F.3d 1058 (8th Cir. 2004), is unavailing. While the court in <u>Sellers</u> determined that post-termination conduct, under certain circumstances, might justify an after-acquired evidence defense, it emphasized the employer's burden to prove that it would not have reinstated the employee because of the newly discovered conduct. <u>Sellers</u>, 358 F.3d at 1063-64. In determining whether the employer meets this burden, the court "must look to the employer's actual employment practices and not merely the standards articulated in its employment manuals, for things are often observed in the breach not in the keeping." <u>Id.</u> at 1064. Defendants cannot meet this burden. Indeed, because no reasonable jury could find that defendants would have fired plaintiff because she did not amend her 2001 and 2002 tax returns, defendants should not be permitted to present this defense at trial. At a minimum, defendants' motion for summary judgment on this basis should be denied. [9]

---

[9] Defendants' reliance on <u>Medlock v. Ortho Biotech, Inc.</u>, 164 F.3d 545 (10th Cir. 1999) (Def. Mem. 22), is also misplaced. In <u>Medlock</u>, the Seventh Circuit affirmed the district court's decision not to give a jury instruction requested by defendant which related to its after-acquired evidence defense. 164 F.3d at 555.

III.   DEFENDANTS ARE NOT ENTITLED TO SUMMARY JUDGMENT ON
       PLAINTIFF'S CLAIMS FOR REPUTATIONAL DAMAGES

Defendants have failed to demonstrate an absence of disputed material facts concerning

plaintiff's claim for reputational damages as a result of MSG's and Dolan's unlawful conduct.

As defendants' arguments essentially restate Thomas' position on this issue, plaintiff incorporates

by reference the portion of her Memorandum of Law in Opposition to Isiah Thomas' Motion for

Partial Summary Judgment that addresses Thomas' motion to dismiss plaintiff's claims for

reputational damages.   As fully discussed therein: (1) plaintiff need not plead or prove the

elements of defamation in order to recover for injury to her reputation caused by defendants'

discriminatory and retaliatory conduct; (2) New York law does not preclude plaintiff from

introducing as evidence public statements by defendants and their counsel, including MSG's

false and retaliatory claim that plaintiff was fired because of an "inability to fulfill professional

responsibilities" and that plaintiff was seeking a "financial windfall" (Def. 56.1 ¶ 54); and (3)

there is ample evidence from which a jury could find that plaintiff suffered extensive reputational

injury as a result of defendants' discriminatory and retaliatory actions.

Contrary to defendants' assertions (Def. Mem. 24-25), it is <u>not</u> undisputed that plaintiff's

claims for reputational damages arise solely from MSG's post-lawsuit press statements.  (Pl. 56.1

¶ 60)   Rather, the underlying cause of plaintiff's reputational injury is defendants' unlawful

discrimination and retaliation, which culminated in plaintiff's firing.  The false public statements

defendants made compounded that reputational harm.

Moreover, contrary to defendants' argument (Def. Mem. 25), whether or not Dolan made

any public statements about plaintiff is irrelevant to his liability for plaintiff's reputational injury

because Dolan was responsible for plaintiff's retaliatory dismissal.  In addition, given Dolan's

ownership interest in the company, his position as the most senior executive of MSG, and his

admission that he approved MSG's "press strategy" in responding to Browne Sanders' complaint (Pl. 56.1 ¶ 63), a jury could find that he is responsible for the false and retaliatory statements MSG made about plaintiff that further damaged her reputation. Furthermore, defendants are not shielded from liability for plaintiff's reputational injury simply because she responded to their smear campaign, which began the very day that the lawsuit was filed. (Pl. 56.1 ¶ 64)

Finally, MSG's motion to dismiss plaintiff's claim for reputation injury under Title VII must fail because one of the statute's remedial provisions, 42 U.S.C. § 1981a(b)(3), is specifically designed to authorize damages for "injury to character and reputation." Williams v. Pharmacia, Inc., 137 F.3d 944, 952 (7th Cir. 1998). To the extent that MSG claims that any provision of New York law concerning reputational injury overrides Title VII, MSG's position runs counter to the Supremacy Clause and should be rejected.

## CONCLUSION

For the foregoing reasons, defendants' motion for partial summary judgment should be denied in its entirety.

Dated: New York, New York
       May 25, 2005

<div style="margin-left: 40%;">

VLADECK, WALDMAN, ELIAS &
ENGELHARD, P.C.

By: _____
Anne C. Vladeck (AV 4857)
Kevin T. Mintzer (KM 4741)
Karen Cacace (KC 3184)
Attorneys for Plaintiff
1501 Broadway, Suite 800
New York, New York 10036
(212) 403-7300

</div>