## MADISON SQUARE GARDEN, L.P.
CONFIDENTIALITY, CODE OF BUSINESS CONDUCT
AND PROPRIETARY PROPERTY AGREEMENT

MADISON SQUARE GARDEN, L.P. _____
(Hereinafter referred to as the Company)   Date

_Anucha Browne Sanders_ agree to the following:
(print name)

### 1. CONFIDENTIAL INFORMATION
**A. Non-Disclosure of Information**
I will neither disclose nor use for my own or another's benefit, during or after my employment, any information not publicly known (hereinafter called Confidential Information) relating to Madison Square Garden, L.P., its subsidiaries and affiliates, including the Company (hereinafter collectively called "Madison Square Garden, L.P.") unless authorized in writing by the Company. Confidential Information shall include, but not be limited to, Madison Square Garden, L.P.'s administrative procedures and manuals; business and financial plans, operations, projections, results and prospects; computer programs; customer, employee, stockholder and supplier information or lists; research efforts, trade secrets, Proprietary Property (as set forth in Section 3 below) and technical information; trademarks under consideration; terms and conditions of Madison Square Garden, L.P.'s contracts and agreements; as well as any information disclosed to Madison Square Garden, L.P. in confidence by third parties.

**B. Return of Information**
When my employment with the Company terminates, I will promptly deliver to the Company all materials in my possession containing such Confidential Information.

### 2. CODE OF BUSINESS CONDUCT
During my employment I may not engage in activities or have personal or financial interests that may impair, or appear to impair, my independence or judgment or otherwise conflict with my responsibilities to Madison Square Garden, L.P. Such activities and interests include, but are not limited to:

a. accepting fees, commissions or property in connection with any transaction on behalf of Madison Square Garden, L.P.;

b. accepting entertainment, gifts, transportation or any other favor or gratuity of more than nominal value from any current or would-be supplier, customer or competitor of Madison Square Garden, L.P., or any individual or enterprise having or seeking a business relationship with Madison Square Garden, L.P.;

c. having a financial interest in customers, suppliers, competitors or any enterprise that has a business relationship with Madison Square Garden, L.P., except where that financial interest is limited to 1% or less of a publicly held company;

d. borrowing from or lending to customers or suppliers except for normal banking transactions with financial institutions;

e. personally taking advantage of business opportunities that might be of interest to Madison Square Garden, L.P.

f. engaging in business with, or as, a competitor, customer, or supplier of Madison Square Garden, L.P., or having any other business transaction with Madison Square Garden, L.P., other than in the ordinary course of employment.

g. serving as an officer, director, agent, employee, consultant or promoter of or in any other capacity for any for-profit organization.

h. having family members (including spouse, parents, children, sisters, brothers, nephews and nieces either by blood or by marriage) employed by Madison Square Garden, L.P.

i. failure to comply fully and in good faith with all laws and regulations and with the highest ethical principles concerning the purchase and sale of securities by the Shareholders of MSG, L.P. (Cablevision Systems Corporation) or of other companies with which MSG, L.P., or Cablevision Systems Corporation have a relationship.

### 3. PROPRIETARY PROPERTY
**A. Copyrightable Works**
Copyrightable Works are original works such as computer programs; dramatic, graphic, literary, musical, pictorial works; and sound recordings. All Copyrightable Works I make or contribute to within the scope of my employment are works for hire and all rights to such works belong to the Company.

**B. Inventions**
Inventions include copyrightable works as well as other conceptions or creations such as designs, devices, ideas and improvements. I do hereby assign to the Company (or to the United States Government if the Company so directs) all of my rights to inventions that I make or conceive, either alone or with others, during my employment by the Company and for a reasonable period of not less than one year thereafter. This provision shall not apply, however, to inventions that are unrelated to the business of the Company (including its research and development) or that do not result from any work I do for the Company so long as they are developed entirely on my own time without the use of Madison Square Garden, L.P.'s equipment, supplies, facilities, or Confidential Information.

**C. Cooperation**
Without charge to the Company, and at the Company's expense, I will, both during my employment by the Company and at any time thereafter, sign all papers, including assignments of rights,



CONFIDENTIAL

MSG 00369

sole view of the Company, are necessary, proper and expedient to establish and protect the Company's rights in its Inventions and Copyrightable Works.

D. Appointment of Agent

I irrevocably appoint the Chief Executive of the Company or the Chief Executive's designee to act as agent and attorney in fact to perform all acts necessary to obtain patents or copyrights to the Company's Inventions or Copyrightable Works if (i) I refuse to perform those acts so requested or (ii) am unavailable, within the meaning of the United States Patent and Copyright laws.

4. EXTENT OF AGREEMENT

If I am employed by or transferred to a successor, subsidiary, affiliate of Madison Square Garden, L.P., or a joint venture or partnership in which it participates, this Agreement shall be continued during my employment by such other entity.

5. INTEGRATION AND BINDING EFFECT

This Agreement is the complete and exclusive statement of the agreement between the parties concerning the subject matter of this Agreement and supersedes all others. The terms hereof shall be binding upon myself, my heirs and my legal representatives. These terms shall not be waived or modified except by an instrument in writing signed by myself and an officer of the Company. NOTHING IN THIS AGREEMENT SHALL BE CONSTRUED AS A GUARANTEE OF EMPLOYMENT OR CONTINUED EMPLOYMENT.

6. SEVERABILITY

If any provision of this Agreement is held to be unenforceable for any reason, it shall be modified rather than voided, if possible, in order to achieve to the extent possible the intent of the parties to this Agreement. In any such event, all other provision of the Agreement shall be deemed valid and enforceable to the fullest possible extent.

7. REMEDIES

I understand that any breach of the Agreement may result in my immediate termination. I also understand that the company may, in addition, pursue its legal and equitable remedies in the event of a breach or threatened breach.

8. ACKNOWLEDGMENT

I acknowledge that I have read and understand this Agreement and that in consideration of my employment, the wages paid me and other good and valuable consideration, I do hereby agree to abide by the terms of this Agreement.

I understand that if I have any questions concerning my obligations under this Agreement, I should consult Human Resources.

This Agreement has been signed and retained by Human Resources.

11-21-00
Date

*[signature]*
Signature of Employee

Anucha Browne Sanders
(Print or Type Name)

VP Marketing
Position

Please list any of your activities or interests or those of your immediate family (parents, spouse, and children) that might conflict, or appear to conflict, with your responsibilities to Madison Square Garden, L.P.

CONFIDENTIAL

MSG 00370