VLADECK, WALDMAN, ELIAS & ENGELHARD, P.C.
COUNSELORS AT LAW
1501 BROADWAY
NEW YORK, N.Y. 10036
TEL 212/403-7300
FAX 212/221-3172



November 1, 2006

**BY FEDERAL EXPRESS**

Hon. Gerard E. Lynch
United States District Judge
United States Courthouse
500 Pearl Street, Room 910
New York, New York 10007-1581

  Re: Browne Sanders v. Madison Square Garden, L.P. et al.
    S.D.N.Y. Case No. 06 CV 0589 (GEL)

Dear Judge Lynch:

  Pursuant to Your Honor's Individual Practices, the parties write to raise certain discovery issues with the Court. On October 20, plaintiff provided defendants with her portion of a letter to the Court on the following issues: (1) the timing of the depositions of defendant Isiah Thomas ("Thomas"), defendant James Dolan ("Dolan") and MSG witness Stephon Marbury ("Marbury"); (2) defendants' request that plaintiff be deposed by defendants' respective counsel for a total of more than two days; and (3) defendant Madison Square Garden's ("MSG") responses to several of plaintiff's document requests. On October 31, defendants provided plaintiff with their portion of the letter to the Court concerning the issues raised by plaintiff. Additionally, on October 31, MSG provided plaintiff with a section on plaintiff's responses to several of MSG's document requests (MSG's Position – Section II.B. Discovery Sought by Defendants MSG and James Dolan). Today, MSG provided plaintiff with another new section (Plaintiff's October 27, 2006 Document Production).

  The parties agree that they have met and conferred in good faith concerning each of the issues raised by plaintiff, including: a meeting among counsel on September 27, 2006 that lasted several hours (Mr. Mintzer and Ms. Cacace were present for plaintiff, Ms. Holland and Ms. Kagan, among others, were present for MSG and Dolan, and Ms. Horwitz was present for Thomas); additional telephone calls thereafter between Mr. Mintzer and Ms. Holland, and various written communications between them. Plaintiff and defendant Thomas were able to reach agreement on all but one of the document discovery issues specific to Thomas and believe the remaining issue will be resolved shortly. Despite the efforts described above, the parties have been unable to reach agreement regarding the matters identified in this letter.

241281 v1

Hon. Gerard E. Lynch
November 1, 2006
Page 2

The parties disagree as to whether they have satisfied their obligations to meet and confer concerning the issues raised by MSG, as discussed further below.

<u>Plaintiff's Position</u>

    a.    <u>Deposition Issues</u>

        1)    <u>Dolan, Thomas, Marbury Deposition</u>

On September 18, 2006, at the conference with the parties, the Court extended the discovery schedule for 60 days. Under the revised schedule, fact discovery is due to be completed by November 29, 2006. Your Honor also instructed the parties to meet promptly and agree on a deposition schedule. In accordance with the Court's instructions, the parties have reached agreement on a schedule for most of the noticed depositions in this matter.

The only remaining disagreement concerns the depositions of Dolan, Thomas and Marbury. Defendant has proposed that Dolan be deposed on November 30, Thomas on December 8 and Marbury on December 19. Plaintiff has objected to this proposal on two grounds. First, defendant's proposed dates are all after the Court's discovery deadline. Second, plaintiff should not be required to depose three central witnesses -- two of them parties -- after every other deposition in the matter has been conducted. Dolan is alleged to have made the retaliatory decision to fire plaintiff; Thomas is alleged to have substantially contributed to the hostile work environment and to have assisted in the retaliatory dismissal; Marbury is also an alleged harasser. Requiring plaintiff to take their depositions at the very end of the discovery process would prejudice plaintiff because, <u>inter alia</u>, in questioning all of the other deponents, we would not have the benefit of knowing the testimony of three critical witnesses. Moreover, as in every case, there would likely be the need to follow up with further discovery, which would be foreclosed by defendants' proposed schedule.

Plaintiff has made every effort to accommodate defendants' scheduling challenges. We do not expect Thomas or Marbury to be deposed on a game day or when they are on the road. We have told defendants that we would have been willing to take these depositions on virtually any day in October or during the early portion of November, including weekends. Indeed, plaintiff has been attempting to schedule these depositions for approximately five months. It is simply unreasonable for defendants to withhold these witnesses until after all other discovery has been conducted and after the discovery deadline. Accordingly, we request that the Court Order defendants to produce Dolan, Thomas and Marbury for deposition prior to November 15, 2006.

        2)    <u>Plaintiff's Deposition</u>

The Court should reject defendants' request to extend plaintiff's deposition beyond two full days. Fed. R. Civ. P. 30(d)(2) provides that all depositions are presumptively limited to one day of seven hours. While there is no reason that defendants could not effectively complete plaintiff's

241281 v1

Hon. Gerard E. Lynch
November 1, 2006
Page 3

deposition in that time, as an accommodation to defendants and to minimize disputes, plaintiff has agreed to produce plaintiff for two full days.

Not satisfied with this compromise, defendants seek even more time. Defendants' assertion that they cannot complete plaintiff's deposition in two days is unfounded. While defendants emphasize that there are three defendants in this matter, two of those defendants -- MSG and Dolan -- are represented by the same counsel, and the defense of Thomas is completely coordinated with MSG's. Moreover, this is a single-plaintiff employment discrimination case that primarily concerns events that took place over the course of approximately two years. Defendants should easily be able to complete plaintiff's deposition in two days if they make any reasonable attempt to focus on the relevant issues and not waste time. Accordingly, defendants' request to depose plaintiff for more than two days should be denied. At the very least, defendants should be required to demonstrate after taking two days of plaintiff's deposition why they were not able to complete plaintiff's deposition in that time.

    b.    <u>Document Issues</u>

MSG has failed to properly respond to three of plaintiff's documents requests.

    1)    <u>Evidence of Other Gender Discrimination, Harassment and Retaliation Claims</u>

Plaintiff's Document Request 58 provides:

> Provide copies of any and all documents concerning any alleged claims or allegations, orally or in writing, that have been made by any individual concerning allegations of sex discrimination, sexual harassment, and/or retaliation by MSG or its employees during the period January 2000 through the present.

This request is appropriate because, as courts in this circuit have repeatedly recognized:

> Evidence of general patterns of discrimination by an employer is clearly relevant in an individual disparate treatment case, and is therefore discoverable pursuant to Fed. R. Civ. P. 26(b)(1). <u>Flanagan v. Travelers Ins. Co.</u>, 111 F.R.D. 42, 48 (W.D.N.Y. 1986) (citing <u>Zahorik v. Cornell University</u>, 98 F.R.D. 27, 31 (N.D.N.Y. 1983)); <u>Lieberman v. Gant</u>, 630 F.2d 60, 68 (2d Cir. 1980).

<u>Culkin v. Pitney Bowes, Inc.</u>, 225 F.R.D. 69, 71 (D. Conn. 2004); <u>see also</u> <u>Hurley v. Atlantic City Police Dep't</u>, 174 F.3d 95, 110-11 n.11 (3d Cir. 1999) (evidence that others in the same protected group experienced harassment is relevant and admissible because "but for these precepts, clever discriminators might isolate each instance of discrimination and make it seem trivial or neutral.").

241281 v1

Hon. Gerard E. Lynch
November 1, 2006
Page 4

MSG, however, has agreed to produce only documents concerning claims of sex discrimination, sexual harassment or retaliation within the Knicks organization, but not documents concerning such claims in any other division of MSG. This response is inadequate because Browne Sanders has alleged that she was subjected to a hostile work environment with the full knowledge of her supervisor, Steve Mills, who is the President and Chief Operating Officer of all of MSG Sports, not simply the Knicks. Moreover, plaintiff was retaliated against by, among others, MSG Chairman Dolan as well as the head of human resources for all of MSG. Given that plaintiff was subjected to illegal conduct by the most senior-levels of MSG, it would be inappropriate to limit discovery to discrimination and retaliation complaints made solely by Knicks employees. This is particularly so because the Knicks non-basketball staff employs a relatively small number of people (approximately 25) and are fully integrated into the larger corporate structure of MSG. For example, many of the facilities, business, legal, human resources employees that work with the Knicks also have responsibilities for other divisions of MSG. Sexual harassment, gender discrimination or retaliation complaints made by any MSG employee since 2000 may be relevant to demonstrating that the organization as a whole, including the highest levels of MSG management, tolerates or even promotes a discriminatory environment.

Plaintiff is also entitled to any gender discrimination, sexual harassment or retaliation complaints because discovery has revealed that within the last two years, MSG has entered into a consent decree or other agreement with the EEOC that required the organization to implement anti-harassment training. MSG should be required to produce both its agreement with the EEOC and documents concerning any complaints that caused the EEOC to impose such requirements. The fact that plaintiff was harassed and retaliated against so soon after MSG entered into an agreement with the EEOC is relevant to MSG's affirmative defense that it has an effective anti-harassment policy as well as to plaintiff's claim for punitive damages. See Kolstad v. American Dental Ass'n, 527 U.S. 526, 527 (1999).

2) <u>Comparative Evidence</u>

Plaintiff's Document Request No. 63 provides:

> Provide copies of the performance reviews from the year 2002 to the present of the following MSG employees: John Cudmore; Joel Fisher; Brian Lafemina; Mark Piazza; Marc Schoenfeld; Barry Watkins; Thomas.

This request seeks the performance evaluations of potential comparators of plaintiff. Although discovery has confirmed that plaintiff received excellent performance evaluations throughout her employment with MSG, defendants have nonetheless asserted that she was a poor performer. Plaintiff, therefore, should be able to compare her evaluations with those of similarly situated men and/or individuals who did not complain of discrimination. See McGuinness v. Lincoln Hall, 263 F.3d 49 (2d Cir. 2001).

241281 v1

All of the individuals identified in the request, with the exception of Thomas, who is the President of Basketball Operations, are Senior Vice Presidents who have at least some responsibilities for the Knicks: John Cudmore is the Senior Vice President, Finance & Controller, MSG; Joel Fisher is the Senior Vice President, Sports & Facility Event Sales; Brian Lefemina is Senior Vice President, Team Sales; Mark Piazza is Senior Vice President, Sports Team Operations; Marc Schoenfeld is Senior Vice President, Legal Affairs, MSG; and Barry Watkins is Senior Vice President Communications. Furthermore, most of these individuals report to Mills, plaintiff's direct supervisor. Thus, plaintiff's request is appropriate and responsive documents should be produced.

MSG has claimed, without explanation, that the specified individuals are not apt comparators and therefore discovery of their performance reviews is inappropriate. During the meet and confer process, plaintiff asked MSG to identify the individuals who defendant believes are appropriate comparators to plaintiff. MSG has failed to identify a single person, presumably reflecting its belief that there is no one in the organization that is similarly situated to plaintiff. While defendant may choose to argue that at trial, it is plainly an unreasonable position to take in the context of discovery. Defendant should be required to respond to plaintiff's document request No. 63.

3) <u>Conduct of MSG Senior Management</u>

Plaintiff's Document Request No. 30 provides:

> Provide copies of all documents (including but not limited to receipts, expense reports, and e-mail messages) concerning any visits by any member of MSG senior management, including but not limited to Dolan, Mills, Ratner, and Thomas, to any adult entertainment establishment, "gentlemen's club," peep show, strip club or similar establishment, with one or more MSG employee(s).

MSG has refused to respond to this request, contending that the information sought is not relevant to plaintiff's claim and is embarrassing. MSG's relevance objection is without merit. Plaintiff was informed during her employment that MSG senior management, including Mills, Dolan and Thomas, among others, frequented strip clubs or similar establishments together, and that these excursions were paid for by the company. Plaintiff's awareness of this conduct contributed to the discriminatory work environment because it reflected senior management's view of women. Furthermore, this conduct is probative of plaintiff's gender discrimination claims because, as a senior woman in the organization, plaintiff was obviously not included in these events, which, to the extent that they were paid for by MSG, were necessarily work-related. With respect to defendant's assertion that the information requested is embarrassing, plaintiff does not seek information concerning purely private activities; only workplace-related conduct is sought. Accordingly, defendants should be required to respond to this request.

241281 v1

Hon. Gerard E. Lynch
November 1, 2006
Page 6

    c.    <u>MSG's Issues</u>

As noted above, on October 30, MSG added a section to this letter concerning discovery sought by defendants MSG and James Dolan (Section II.B.). Three of the issues in the new section were discussed at the September 27 meeting. At the conclusion of that meeting, plaintiff understood that MSG was going to consider narrowing two of the requests (concerning plaintiff's telephone and travel records) and to provide authority or justification to plaintiff concerning two other requests (concerning plaintiff's tax records and her home computer). On October 13, MSG wrote to plaintiff following up on many of the issues discussed on September 27. MSG, however, did not raise in its October 13 letter the issues that it has now submitted to the Court. Indeed, at no time after the September 27 meeting did MSG attempt to further confer regarding plaintiff's responses to MSG's document requests. Moreover, one of the issues raised by MSG in this letter (MSG's request for redacted notes from a meeting with plaintiff's counsel), has never been raised with plaintiff prior to raising the issue in this letter.

Plaintiff does not believe there is any basis for defendants to obtain the documents at issue. Indeed, similar requests have been classified as fishing expeditions and have been denied in other cases. However, in an effort to avoid requiring the Court's intervention, plaintiff was willing to discuss these issues further. Plaintiff offered on September 27, October 30 and 31 to meet and confer further on these issues, but MSG has refused. Today, MSG added another section on plaintiff's document production (Plaintiff's October 27, 2006 Document Production). MSG has not previously raised this issue with plaintiff.

MSG's tactics have prevented plaintiff from timely raising the issues in her October 20 letter to the Court. Because the scheduling issues raised by plaintiff are time sensitive, plaintiff requests that the Court consider only those issues at this time. If MSG continues to refuse to satisfy its meet and confer obligations, plaintiff respectfully requests that the Court allow plaintiff sufficient time to respond to the new issues raised by MSG. In order to avoid similar problems in the future, plaintiff requests that the Court order that once a party has been presented with a portion of a discovery letter to the Court, the responding party must provide its response in three days.

Defendants have also raised the issue of plaintiff's amending the Complaint to include claims under Title VII. Plaintiff requested permission to file the Second Amended Complaint, which includes her Title VII claims, yesterday. On September 20, 2006, plaintiff requested a Notice of Right to Sue and the investigation file from the EEOC. Plaintiff had not filed the Second Amended Complaint earlier because we did not receive the EEOC's investigation file until late last week and we wanted an opportunity to review the EEOC file before further amending the Complaint.

<u>MSG's Position</u>

We are pleased that, after having received defendants' portion of the joint letter, plaintiff has finally sought permission to file her Second Amended Complaint adding a Title VII

241281 v1

claim. We note, however, that on September 21, 2006, the EEOC issued a Notice of Right To Sue authorizing plaintiff to commence a lawsuit against MSG under Title VII. Plaintiff's counsel issued a press release shortly after receiving the EEOC's determination, but inexplicably waited nearly five weeks to seek to amend the complaint, doing so only after MSG raised the issue in a draft of its portion of this joint letter and subsequent to the commencement of depositions in this matter.

Plaintiff's October 27, 2006 Document Production

As we have previously informed Plaintiff and the Court, MSG has worked diligently to comply with Plaintiff's document requests and to work out any discovery disputes. Plaintiff has made a similar effort. However, last Friday, on the eve of the first deposition in this action, Plaintiff produced a CD Rom containing approximately 5000 pages of documents containing financial data and other sensitive material pertaining to MSG. According to Plaintiff's counsel, Plaintiff had this information on a portable USB drive. We do not yet have any further details from Plaintiff regarding this data.

All defendants previously requested from the Court an extension of the discovery period so that all parties could complete their discovery obligations. While Plaintiff's counsel opposed the request, we believe that the timing of this latest document production, as well as the timing of Plaintiff's Second Amended Complaint, demonstrates that such an extension is appropriate. In order to prevent any party from being prejudiced based on ongoing document productions, scheduling difficulties, amended pleadings, or any other reason, we again respectfully request an extension of the discovery period until the end of January. That extension may also cure the scheduling issues raised in this letter.

I. Depositions

Plaintiff has noticed nine depositions. Defendant MSG has noticed three depositions, including plaintiff's deposition, which defendant Thomas has separately noticed. As most of the witnesses are MSG employees, counsel for MSG coordinated the availability of all of the parties including plaintiff, all counsel and all witnesses. All of these depositions have now been scheduled, except for two depositions which MSG noticed and which were temporarily taken off the schedule to accommodate plaintiff's preferences. Due to a serious family illness/death, one witness has to be rescheduled and due to a clerical error, another witness needs to be rescheduled – dates have been offered for this week and next. In addition, all parties have indicated the likelihood of needing more depositions.

A. Extension

After considerable efforts by its counsel, MSG has proposed a reasonable schedule for the initial nine depositions in this case, considering the multiple parties and defense counsel in this matter, the extensive travel and game schedules of two of the witnesses and the significant

241281 v1

Hon. Gerard E. Lynch
November 1, 2006
Page 8

commitments of three senior level executive witnesses (two of whom are also senior officers of MSG's parent company). We are aware that three of the depositions are scheduled to occur after the cut-off date the Court established at the September 19 conference – one simply the day after – but we believe we have complied with the spirit of the Court's intent in granting only a 60 day extension of discovery. The Court will recall that it denied the 120 day extension requested by all of the defendants in order to assure that counsel gave due priority to deposition scheduling. We believe we have complied with that directive, but the scheduling and travel difficulties are such that were not able to completely do so within the additional sixty days. Further, as noted above, the parties are likely to notice additional witnesses to depose after completing the initial depositions. (As noted below, MSG has already postponed two additional depositions they previously noticed in order to accommodate plaintiff's counsel's preferences as to the timing and order of depositions. We intend to complete those depositions and notice several others after considering the plaintiff's deposition testimony and her recent discovery responses). Accordingly, we request that the Court grant an extension of the discovery deadline to accommodate this schedule.

B.   Scheduling

Despite the acknowledged difficulty in scheduling around multiple defendants, multiple counsel and plaintiff, plaintiff's counsel expressed their unhappiness with the sequence of the scheduled depositions and defendants sought to accommodate their preference. Under the proposed schedule, all of the defendants have already given up their traditional priority to depose plaintiff first so that depositions can start as soon as practicable. In response to plaintiff's counsel's request, MSG was able to move the deposition of Steve Mills far earlier in the deposition schedule than it originally proposed. Mr. Mills, plaintiff's former supervisor and the President of MSG Sports, is one of the most significant witnesses identified by plaintiff, and his deposition will occur next week, immediately after plaintiff's deposition. MSG also was able to move to earlier in the schedule, two additional witnesses, Rusty McCormack, MSG's Senior Vice President, Human Resources, and John Moran (now unavailable because of a serious family illness), MSG's Senior Vice President, Employee and Labor Relations, to accommodate plaintiff's request. To do so, MSG agreed to move two of its previously noticed depositions of Roy Sanders, plaintiff's husband, and Vicki Browne Moore, plaintiff's sister, to a mutually convenient date at any point in the deposition schedule, not yet been determined.

Despite MSG's accommodation to plaintiff's counsel's preference, Plaintiff's counsel was not satisfied; accordingly, MSG tried again to move up several dates, but were unable to do so in light of witness and counsel unavailability.

Plaintiff's counsel complains that he wants to take the deposition of defendant James Dolan (now scheduled for November 30) earlier in the deposition order. As Chairman of MSG and President and Chief Executive Officer of Cablevision, MSG's parent company, Mr. Dolan is the senior most executive in both companies and has significant attendant obligations with those roles that cannot easily be moved. While we appreciate plaintiff's counsel's desire to take Mr. Dolan's

241281 v1

Hon. Gerard E. Lynch
November 1, 2006
Page 9

deposition earlier in the current schedule, it is simply not possible to satisfy this preference without a significant impact on both Mr. Dolan's business schedule and the overall deposition schedule.

With regard to Mr. Thomas and Mr. Marbury, a good faith effort has been made to produce them at the earliest possible times. However, due to their heavy travel and game schedule as the basketball season gets underway, Mr. Thomas, the Knicks' President of Basketball Operations and Head Coach, and Mr. Marbury, a player for the Knicks, are essentially not available for depositions in November. As explained to plaintiff's counsel, there are only two days in November which are not travel days or game days, one of which is the Sunday of Thanksgiving weekend. Indeed, plaintiff concedes that it is inappropriate for Mr. Thomas or Mr. Marbury to be deposed on a game day or when they are on the road, but plaintiff is nonetheless asking the Court to do just that.

### C. Plaintiff's Deposition

The Court's Case Management Plan (the "Plan") dated March 23, 2006 states "No depositions shall be extended beyond two business days without prior leave of the Court." Since defendants are represented by various counsel we are currently uncertain whether we will require a third day of deposition for plaintiff. Accordingly, we are seeking prior leave of the Court for a possible third day.

Plaintiff's counsel has insisted that plaintiff's deposition take place on consecutive days, and has refused MSG's request to reserve a third day should it be needed. MSG believes that a third day may be necessary for a number of reasons, including that there are multiple defendants involved in the action who are represented by separate counsel. Notably, and only in the case of plaintiff, two separate deposition notices have been sent. While counsel for plaintiff speculatively asserts that "the defense of Thomas is completely coordinated with MSG's" – the interests of those parties are not identical. Since the claims in this action consist almost exclusively of plaintiff's uncorroborated allegations regarding various incidents to which there were no witnesses, her detailed testimony is essential to a full exploration of her allegations. In addition, there has also been voluminous document discovery regarding plaintiff's career with MSG about which she will need to be questioned. For these reasons, MSG requests leave of the Court to allow for a possible third day of deposition for plaintiff.

## Thomas' Position Regarding Plaintiff's Deposition

Isiah Thomas, who is separately represented, wants to make clear that his counsel intends to ask plaintiff questions relating to the allegations she has made against him and does not want to be time limited should MSG require more than 7 hours to cover the areas of interest to it. Although Thomas and MSG have cooperated in the defense of the case, plaintiff's statement that Thomas' defense is "completely coordinated" with MSG's is inaccurate. Thomas has cooperated with MSG – and will continue to do so – in order to avoid unnecessary expense to all parties. For this reason, Thomas did not participate in the many telephone conversations and written

241281 v1

communications Mr. Mintzer and Ms. Holland had to attempt to reach agreement on the discovery and scheduling issues addressed in this letter. Thomas' efforts to foster efficiency should not now be used to prevent him from having a fair examination of the plaintiff pursuant to Fe. R. Civ. P. 30(d). A substantial number of plaintiff's allegations relate to Thomas and he many need a full day to examine her.

Thomas agrees with the position MSG has taken in this letter. However, his defense is distinct from MSG's. Thomas respectfully requests that the Court allow plaintiff's deposition to extend an additional day if it is not completed in two days.

## II. Document Issues

### A. Discovery Sought by Plaintiff

Plaintiff contends that MSG has failed to properly respond to three of plaintiff's document requests. As explained below, MSG has fully complied with the Federal Rules of Civil Procedure and applicable authority in responding to all requests, including the three being disputed by plaintiff.

#### 1. Evidence of Other Gender Discrimination, Harassment and Retaliation Claims

Plaintiff seeks documents concerning all complaints of gender discrimination, harassment or retaliation made by anyone employed by any of MSG's divisions and businesses for a period of more than six-and-one-half years. MSG has already produced in this single plaintiff employment discrimination case complaints made regarding these categories of discrimination within the Knicks organization for that period. Plaintiff worked only within the Knicks organization and her allegations and claims arise solely from within and about the Knicks organization for a period that commenced in 2004. MSG should not be required to produce complaints made by non-Knicks employees as it would be unduly burdensome and they are not relevant to the claims made by plaintiff.

Plaintiff's request for internal complaints made by employees outside of the New York Knicks organization, regardless of business unit, function or title, is not appropriate here. Such complaints do not "bear a reasonable relationship to the types of conduct and the operation, policy or employees involved in the present dispute." See Zahorik v. Cornell University, 98 F.R.D. 27, 31 (N.D.N.Y. 1983) (plaintiff cannot conduct a general "fishing expedition" into areas unrelated to their claims such as an employer's treatment of personnel outside of plaintiff's position). Plaintiff made no allegations in her voluminous complaint implicating any other business unit within MSG other than the basketball organization. In addition, the lack of any allegations of "pattern and practice" or "systemic" discrimination in the complaint supports MSG's position that there is no probative value to producing information about employees outside of the Knicks organization. See Oaks v. Trustees of Columbia Univ., No. 87 Civ. 8283 (WK), 1988 WL 132890 at *3 (S.D.N.Y. Dec. 6, 1988) (court

241281 v1

held that the probative value of producing employee complaints outside of plaintiffs' department is at best speculative.) In addition, in this single plaintiff case, plaintiff lacks any legal basis for her claim that she is entitled to complaints outside of the Knicks organization.

### 2. Comparative Evidence

Plaintiff also seeks performance reviews of several senior executives of MSG as asserted comparators. In order to be a proper comparator, the identified individuals must be similarly situated to plaintiff in "all material respects." See Shumway v. United Parcel Serv., Inc., 118 F.3d 60, 64 (2d Cir.1997). "What constitutes 'all material respects' [] varies somewhat from case to case and, [...], must be judged based on (1) whether the plaintiff and those he maintains were similarly situated were subject to the same workplace standards and (2) whether the conduct for which the employer imposed discipline was of comparable seriousness." Graham v. Long Island R.R., 230 F.3d 34, 39 (2d Cir. 2000) citing Shumway, 118 F.3d at 64.

The "potential" comparators for whom plaintiff seeks information include: John Cudmore, Senior Vice President & Controller, Teams; Joel Fisher, Senior Vice President, Sports & Facility Event Sales; Brian Lefemina, Senior Vice President, Team Sales, Tickets/Suites; Mark Piazza, Senior Vice President, Sports Team Operations; Marc Schoenfeld, Senior Vice President, Legal and Business Affairs; and, Barry Watkins, Senior Vice President, Communications. Plaintiff, by contrast, spent her entire MSG career involved in team marketing and business operations functions. None of these comparators held positions "similar to plaintiff's in all material respects" and plaintiff has put forth no information to suggest that she can meet that standard. Further, each of the alleged comparators has academic and professional backgrounds that are completely distinct from plaintiff's. Notably, plaintiff fails to put forth any reasoning whatsoever as to why the persons she identifies are proper comparators, and in three of the five cases, report to Steve Mills. Plaintiff is simply engaging in a fishing expedition which is improper and should not be allowed.

### 3. Conduct of MSG Senior Management

Plaintiff requests documents for any member of MSG senior management regarding visits made at any time or place to any adult entertainment establishment with one or more MSG employee(s). This request is simply not relevant to the claims being made in this action. Plaintiff has raised no allegations about having been invited to or excluded from any company events, social or otherwise of such a nature. There is no basis for requiring production of any such records, other than to attempt to harass and embarrass senior management.

Unlike in other cases, plaintiff is not claiming that she was denied a business opportunity due to her exclusion from business/client outings which were ever held at strip clubs. See, e.g., Zubulake v. UBS Warburg LLC, 382 F. Supp. 2d 536, 548 (S.D.N.Y. 2005) (evidence of client outings to strip clubs admissible where plaintiff alleged purposeful exclusion from such outings). Nor does plaintiff allege that members of senior management were even speaking about or

241281 v1

alluding to excursions to adult entertainment clubs which made her feel uncomfortable. Nor does she apparently have any independent knowledge that such things ever occurred. There is little doubt that plaintiff's counsel is engaging in an effort to harass and embarrass MSG and their officers by seeking discovery about these matters.

### B. Discovery sought by Defendants MSG

Defendant MSG wrote to plaintiff on July 31st concerning plaintiff's failure to produce the documents discussed herein stating that it was writing in order to avoid the Court's intervention. Plaintiff counsel refused to produce any of the requested documents and the parties have been at an impasse. The parties met and conferred on September 27, 2006. At that meeting, Plaintiff's counsel stated that the notes of his meeting with an MSG employee (Ms. Buchholz) were privileged, that Plaintiff's home computer would not be produced and that any responsive material on the computer had already been provided, and that Plaintiff would not produce her personal tax returns. Plaintiff's counsel also stated that he would consider providing plaintiff's personal travel and telephone records for a reasonable time period, but to date these records have not been produced.

While Plaintiff's deposition is scheduled to commence November 6, 2006, Plaintiff seeks to further delay the discovery process and presumably bring this matter to the Court a second time, claiming that Defendant MSG's letter of October 13, 2006 did not itself address Plaintiff's failure to produce. MSG's October 13, 2006 letter to plaintiff accompanied a further document production by MSG. It described the categories of documents being produced and addressed various objections raised by Plaintiff in connection with MSG's earlier productions. It did not address Plaintiff's continued failure to produce documents that had been requested and previously met and conferred about as this was not the purpose of the letter.

Finally, Plaintiff has still not stated that it will produce any of the documents despite the parties exchanging their positions, which would have avoided the necessity for Section II.B of this letter. MSG has, therefore, satisfied its meet and confer obligation as to each of these issues.

Defendant MSG is seeking documents plaintiff has declined to produce, as set forth below.

### 1. Telephone and Travel Records

Plaintiff has failed to properly respond to MSG's Document Request Nos. 63 and 64, which seek the discovery of plaintiff's personal telephone and travel records for the period of her employment to the present. Courts regularly find documents such as phone records and credit card records are discoverable when these materials are relevant to a claim or defense. See Williams v. Muhammad's Holy Temple of Islam, Inc., No. 00 Civ. 1251 (RML), 2006 WL 297448, at *5 (E.D.N.Y. Feb. 8, 2006) (phone records); Kirchsner v. Klemons, No. 99 Civ. 4828 (RCC)(DFE), 2002 WL 88317 (S.D.N.Y. Jan. 22, 2002) (phone records discoverable); Sovereign Partners Ltd.

241281 v1

Partnership v. Restaurant Teams Intern., Inc., No. 99 Civ. 0564 (RJW)(JCF), 1999 WL 993678, at *3-4 (S.D.N.Y. Nov. 2, 1999); Lanci v. Arthur Anderson, LLP, No. 96 Civ. 4009 (WK), 1998 WL 355412 (S.D.N.Y. July 2, 1998) (phone records discoverable); Reserve Solutions, Inc. v. Vernaglia, 442 F. Supp. 2d 191, 192 (S.D.N.Y. Aug. 11, 2006) (finding employee's relevant credit card and other documents discoverable, stating "privacy concerns do not outweigh [a party's] obligation to provide or permit discovery of relevant financial information"). Indeed, in the context of its decision with respect to the discoverability of plaintiff's diary, this Court ruled that defendants were entitled to discovery bearing on plaintiff's motive, credibility and external stressors. Plaintiff's refusal to provide the requested telephone and travel records is contrary to the spirit of the Court's prior ruling with respect to the discoverability of matters bearing on motive, credibility and external stressors.

Plaintiff's claims in this action are based on her uncorroborated allegations of events that apparently were, for the most part, not witnessed. She attempts to support her allegations by claiming she made contemporaneous notes or contemporaneous communications about these events to others. Clearly, telephone and travel records are also relevant to explore the validity of these claims.

In addition, we believe that plaintiff was looking for another job well before she ever complained about any of these uncorroborated allegations and for reasons other than those raised in this lawsuit (some of those positions were compensated at a level far below her compensation with MSG). Again, telephone and travel records are essential to analysis and preparation of this defense.

2. Tax Returns

Plaintiff has failed to properly respond to MSG's Document Request No. 59 which seeks the discovery of plaintiff's tax returns and other documents referencing receipt of income by plaintiff from 2000 to the present. Plaintiff has objected to the production and instead has produced only her Form W-2 and other work-related income from MSG from 2002 to 2005. Plaintiff has not asserted a good faith basis for failing to produce the tax returns and her W-2s for 2001, and such documents should be produced as they are relevant to the claims being made in this action.

With regard to plaintiff's tax returns, MSG is aware that tax returns are subject to a "quasi-privilege" and that "they will be ordered disclosed only if they are relevant and the information sought is not readily available from other sources." Schwartz v. New York City Off-Track Betting Corp., No. 92 Civ. 1166 (KMW), 1993 WL 42760, at *2 (S.D.N.Y. Feb. 11, 1993); see also, Cooper v. Hallgarten & Co., 34 F.R.D. 482, (S.D.N.Y. 1964). In the instant case, plaintiff's financial situation and family income are relevant to the existence of financial stressors, may tend to explain her workplace interactions, or expose the potential motives for filing this action. And, as noted earlier, this Court has already ruled that defendants are entitled to discovery addressed to plaintiff's motive, credibility, and external stressors. Further, such information cannot be ascertained from other sources such as plaintiff's W-2's as they fail to reflect other income, expenses or losses she may have suffered while employed by MSG. See, e.g., Chiquelin v. Efunds Corp., No. 02 Civ.

241281 v1

5152 (LAP)(DFE), 2003 WL 21459581, at *3 (June 24, 2003) (despite providing Forms W-2 and 1099, the court directed plaintiff to produce any Schedules C and D from his tax returns which may yield relevant information not contained in Forms W-2 or 1099). Consequently, MSG respectfully requests that the Court order plaintiff to properly respond to Document Request No. 59 and produce all relevant documents including her tax returns.

3. Attorney Notes

MSG's Document Request Nos. 36 and 37 seek documents relating to participation by one of plaintiff's direct subordinates, Karin Buchholz, in meetings with plaintiff's counsel on December 2 and 4, 2005 (the "December 2 and 4 meetings"), two weeks before plaintiff complained to MSG about any alleged sexual harassment. Plaintiff has refused to turn over, even in redacted form, her attorneys' notes of those meetings, even though Ms. Buchholz has expressly waived any privilege that she might have had with respect to those conversations. Importantly, MSG does not seek the production of those portions of documents reflecting notes of plaintiff's discussions with her attorneys.

Documents, notes and other information pertaining to Ms. Buchholz' statements at the December 2 and 4 meetings are not only discoverable, but are clearly relevant to the merits of plaintiff's claims, as well as for determining plaintiff's credibility. See United States v. Int'l Bus. Mach. Corp., 66 F.R.D. 215, 218 (S.D.N.Y. 1974) (holding that one of the recognized purposes of discovery is "to obtain information for use on cross-examination and for the impeachment of witnesses") (citations omitted). MSG has learned from Buchholz that plaintiff and her attorneys attempted to persuade Buchholz to join plaintiff in asserting claims of harassment against Thomas as part of an exit strategy designed to maximize her separation package. According to Buchholz, when she repeatedly told plaintiff's counsel that she was not a victim of sexual harassment and that Thomas had not acted inappropriately toward her, plaintiff's counsel persisted in trying to convince Buchholz that she had a claim and to join with plaintiff in order to "strengthen" any attack on MSG and Thomas. As such, the documents requested go to the core of one of MSG's main defenses.

Furthermore, because Buchholz has waived any supposed privilege that might have arisen from her participation in the December 2 and 4 meetings, and the privilege belongs to Buchholz, plaintiff and her counsel lack a good faith basis on which to withhold the documents. And, to the extent that the document needs to be redacted in order to protect plaintiff's privileged communications, we have no doubt that plaintiff's counsel can make the appropriate redactions.

Even though MSG has access to Buchholz and can discuss with her recollections of the meetings, it is critical that MSG has access to counsel's contemporaneous notes and any other documentation of the unprivileged elements of those meetings in order to put on its defense. Accordingly, MSG respectfully requests that the Court direct the production of notes related to Buchholz.

241281 v1

Hon. Gerard E. Lynch
November 1, 2006
Page 15

### 4. Plaintiff's Home Computer

MSG's Document Request No. 13 seeks the production of plaintiff's personal computer "for inspection thereof for information relating to Plaintiff's employment at MSG, the termination of her employment at MSG and/or any allegation in the Complaint." Plaintiff has refused to make her home personal computer available for inspection. MSG seeks the inspection of plaintiff's home personal computer because it has a good faith belief that documents and information directly relevant to this case are maintained on plaintiff's home computer. Indeed, MSG has learned that, at various times since January 2004, plaintiff emailed from her MSG-owned office computer to her home computer confidential MSG documents. Plaintiff also emailed from her MSG-owned office computer to her home computer multiple versions of her resume. In addition, MSG has learned that plaintiff was revising her resume in early 2005, and had advised Mills of her intention to leave MSG, before she ever complained of the alleged sexual harassment. Accordingly, MSG respectfully requests that the Court direct plaintiff to make her personal home computer available for inspection.

We thank the Court for its attention to this matter.

Respectfully submitted,

VLADECK, WALDMAN, ELIAS &
ENGELHARD, P.C.

By: *Anne Vladeck*
Anne C. Vladeck (AV-4857)
Kevin T. Mintzer (KM-4741)
1501 Broadway, Suite 800
New York, New York 10036
(212) 401-7348
*Attorneys for Plaintiff*

MANATT, PHELPS & PHILLIPS, LLP

By: *L. Peter Parcher by ACV*
L. Peter Parcher (LPP-8096)
O. Peter Sherwood (OPS-3076)
Lisa Horwitz (LH-8168)
7 Times Square
New York, New York 10036
(212) 790-4584
*Attorneys for Isiah Thomas*

EPSTEIN BECKER & GREEN, P.C.

By: *Ronald M Green by ACV*
Ronald M. Green (RG-7766)
Teresa Holland (TH-6973)
250 Park Avenue
New York, New York 10177-1211
(212) 351-4500

Christopher P. Reynolds, Esq. (CR-8338)
Amber L. Kagan, Esq. (AK-7973)
Morgan, Lewis & Bockius LLP
101 Park Avenue
New York, New York 10178
(212) 309-6000
*Attorneys for Madison Square Garden, L.P.*

241281 v1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x

BROWNE SANDERS,

        Plaintiff,

    -v-

MADISON SQUARE GARDEN, L.P., et al.,

        Defendants.

------------------------------------------------------------x

06 Civ. 589 (GEL)

ORDER

GERARD E. LYNCH, District Judge:

    The parties have presented by joint letter dated November 1, 2006, a series of discovery disputes. Having considered the parties' positions, the Court rules as follows:

    1. Defendants' renewed request for an extension of the discovery period is denied, except to the extent implicit in the rulings below.

    2. Defendants' proposed scheduling of the depositions of Dolan, Thomas and Marbury is approved. Although plaintiff argues that the proposal is unreasonable, plaintiff agrees that she does "not expect Thomas or Marbury to be deposed on a game day or when they are on the road" (Joint Letter at 2), and does not dispute defendants' assertion that there are effectively no such days in November. Whether or not defendants could or should have made these witnesses available at some earlier point is moot. A schedule has now been proposed that requires only a very modest extension of the discovery period, and the proposed alternative of requiring depositions of all three witnesses before November 15 would require another round of negotiations about the scheduling of other witnesses.

    3. Defendants' request for prior leave to take a three-day deposition of plaintiff is denied. Depositions are presumptively limited to one seven-hour day, Fed. R. Civ. P. 30(d)(2), and the wealth and celebrity of some of the parties to this case does not make the case any more complex than other discrimination cases to which that rule is routinely applied. Plaintiff has agreed to two days of deposition, which should be more than sufficient. Defendant Thomas correctly notes that he has a separate interest in the case and should have an opportunity to ask questions. This interest, however, can be accommodated by reserving four hours of the fourteen provided for questioning by Thomas. This ruling does not foreclose a request for additional time if defendants can demonstrate, after the deposition, that despite diligent and efficient questioning there are relevant areas that were not adequately addressed; if such a request is made, the Court will carefully consider whether the transcript discloses footdragging, excessive lawyer

squabbling, or repetitive or excessive questioning by either side.

    4. Plaintiff's request that defendants be required to provide information about other complaints of sex discrimination, sexual harassment or retaliation made by their employees is granted to the following extent:

    a. Madison Square Garden shall produce its agreement with the EEOC and documents concerning any complaints made to the EEOC related to the process that led to that agreement.

    b. Madison Square Garden shall produce any documents relating to claims of sexual harassment, sex discrimination, or retaliation made against Madison Square Garden Sports President Mills or Chairman Dolan from 2000 to the present.

    5. Plaintiff's request that defendants be ordered to comply with plaintiff's document request number 63 is granted. This ruling does not reflect any determination that the individuals in question are in any sense appropriate comparators for any discrimination claim by plaintiff. Such a determination can only be made in response to trial objections or motions in limine. But the standard of relevance for discovery is broader than the standard at trial, and the evaluations of employees at the same general level of management as plaintiff are sufficiently relevant to be discoverable.

    6. Plaintiff's request that defendants be ordered to comply with plaintiff's document request number 30 is denied. While such information could well be relevant in some hostile environment cases, the conduct in question is remote from the specific allegations in this complaint.

    7. Defendants' request that plaintiff be required to provide personal travel and telephone records is denied. Defendants' claim that such records are within "the spirit of the Court's prior ruling" with respect to diary entries potentially "bearing on plaintiff's motive, credibility and external stressors" (Joint Letter at 13) is without merit. Diary entries provide information about plaintiff's thoughts and feelings, and either do or do not corroborate later claims of distressing events. Phone records and travel records provide no such corroborating or non-corroborating information.

    8. Defendants' request that plaintiff be ordered to produce copies of her tax returns for tax years beginning in 2000 is granted.

    9. Defendants' request for notes relating to Karin Buchholz's participation in attorney interviews is granted in part. Plaintiff shall produce copies of such notes to defendants to the extent there is no claim of work-product privilege. With respect to any documents for which plaintiff claims a privilege, plaintiff shall provide copies of such notes to the Court for in camera inspection.

2

10. Defendants' request for inspection of plaintiff's home computer is denied, provided that plaintiff's counsel represents in writing that the computer has been properly and diligently searched for all documents and files that are responsive to defendants' discovery requests, and that all such responsive documents and files have been duly produced.

SO ORDERED.

Dated: New York, New York
       November 6, 2006

                                                    GERARD E. LYNCH
                                                   United States District Judge