

CONFIDENTIAL    MSG 41097

Dockets.Justia.com

## MADISON SQUARE GARDEN, L.P.
### CONFIDENTIALITY, CODE OF BUSINESS CONDUCT AND PROPRIETARY PROPERTY AGREEMENT

MADISON SQUARE GARDEN, L.P.   Date 8/18/99
(Hereinafter referred to as the Company)



_____ agree to the following:
(print name)

### 1. CONFIDENTIAL INFORMATION

**A. Non-Disclosure of Information**
I will neither disclose nor use for my own or another's benefit, during or after my employment, any information not publicly known (hereinafter called Confidential Information) relating to Madison Square Garden, L.P., its subsidiaries and affiliates, including the Company (hereinafter collectively called "Madison Square Garden, L.P."), unless authorized in writing by the Company. Confidential Information shall include, but not be limited to, Madison Square Garden, L.P.'s administrative procedures and manuals; business and financial plans, operations, projections, results and prospects; computer programs; customer, employee, stockholder and supplier information or lists; research efforts, trade secrets, Proprietary Property (as set forth in Section 3 below) and technical information; trademarks under consideration; terms and conditions of Madison Square Garden, L.P.'s contracts and agreements; as well as any information disclosed to Madison Square Garden, L.P. in confidence by third parties.

**B. Return of Information**
When my employment with the Company terminates, I will promptly deliver to the Company all materials in my possession containing such Confidential Information.

### 2. CODE OF BUSINESS CONDUCT

During my employment I may not engage in activities or have personal or financial interests that may impair, or appear to impair, my independence or judgment or otherwise conflict with my responsibilities to Madison Square Garden, L.P. Such activities and interests include, but are not limited to:

a. accepting fees, commissions or property in connection with any transaction on behalf of Madison Square Garden, L.P.;

b. accepting entertainment, gifts, transportation or any other favor or gratuity of more than nominal value from any current or would-be supplier, customer or competitor of Madison Square Garden, L.P., or any individual or enterprise having or seeking a business relationship with Madison Square Garden, L.P.;

c. having a financial interest in customers, suppliers, competitors or any enterprise that has a business relationship with Madison Square Garden, L.P., except where that financial interest is limited to 1% or less of a publicly held company;

d. borrowing from or lending to customers or suppliers except for normal banking transactions with financial institutions;

e. personally taking advantage of business opportunities that might be of interest to Madison Square Garden, L.P.;

f. engaging in business with, or as, a competitor, customer, or supplier of Madison Square Garden, L.P., or having any other business transaction with Madison Square Garden, L.P., other than in the ordinary course of employment.

g. serving as an officer, director, agent, employee, consultant or promoter of or in any other capacity for any for-profit organization.

h. having family members (including spouse, parents, children, sisters, brothers, nephews and nieces either by blood or by marriage) employed by Madison Square Garden, L.P.

i. failure to comply fully and in good faith with all laws and regulations and with the highest ethical principles concerning the purchase and sale of securities by the Shareholders of MSG, L.P. (Cablevision Systems Corporation) or of other companies with which MSG, L.P., or Cablevision Systems Corporation have a relationship.

### 3. PROPRIETARY PROPERTY

**A. Copyrightable Works**
Copyrightable Works are original works such as computer programs; dramatic, graphic, literary, musical, pictorial works; and sound recordings. All Copyrightable Works I make or contribute to within the scope of my employment are works for hire and all rights to such works belong to the Company.

**B. Inventions**
Inventions include copyrightable works as well as other conceptions or creations such as designs, devices, ideas and improvements. I do hereby assign to the Company (or to the United States Government if the Company so directs) all of my rights to inventions that I make or conceive, either alone or with others, during my employment by the Company and for a reasonable period of not less than one year thereafter. This provision shall not apply, however, to inventions that are unrelated to the business of the Company (including its research and development) or that do not result from any work I do for the Company so long as they are developed entirely on my own time without the use of Madison Square Garden, L.P.'s equipment, supplies, facilities, or Confidential Information.

**C. Cooperation**
Without charge to the Company, and at the Company's expense, I will, both during my employment by the Company and at any time thereafter, sign all papers, including assignments of rights, give evidence and testimony, and perform all acts that, in the

CONFIDENTIAL

MSG   41098

sole view of the Company, are necessary, proper and expedient to establish and protect the Company's rights in its inventions and Copyrightable Works.

D. Appointment of Agent

I irrevocably appoint the Chief Executive of the Company or the Chief Executive's designee to act as agent and attorney in fact to perform all acts necessary to obtain patents or copyrights to the Company's inventions or Copyrightable Works if (i) I refuse to perform those acts so requested or (ii) am unavailable, within the meaning of the United States Patent and Copyright laws.

4. EXTENT OF AGREEMENT

If I am employed by or transferred to a successor, subsidiary, affiliate of Madison Square Garden, L.P., or a joint venture or partnership in which it participates, this Agreement shall be continued during my employment by such other entity.

5. INTEGRATION AND BINDING EFFECT

This Agreement is the complete and exclusive statement of the agreement between the parties concerning the subject matter of this Agreement and supersedes all others. The terms hereof shall be binding upon myself, my heirs and my legal representatives. These terms shall not be waived or modified except by an instrument in writing signed by myself and an officer of the Company. NOTHING IN THIS AGREEMENT SHALL BE CONSTRUED AS A GUARANTEE OF EMPLOYMENT OR CONTINUED EMPLOYMENT.

6. SEVERABILITY

If any provision of this Agreement is held to be unenforceable for any reason, it shall be modified rather than voided, if possible, in order to achieve to the extent possible the intent of the parties to this Agreement. In any such event, all other provision of the Agreement shall be deemed valid and enforceable to the fullest possible extent.

7. REMEDIES

I understand that any breach of the Agreement may result in my immediate termination. I also understand that the company may, in addition, pursue its legal and equitable remedies in the event of a breach or threatened breach.

8. ACKNOWLEDGMENT

I acknowledge that I have read and understand this Agreement and that in consideration of my employment, the wages paid me and other good and valuable consideration, I do hereby agree to abide by the terms of this Agreement.

I understand that if I have any questions concerning my obligations under this Agreement, I should consult Human Resources.

This Agreement has been signed and retained by Human Resources.



Date: Aug 8, 99

Signature of Employee

(Print or Type Name)

Position: Event Opts Supv.

Please list any of your activities or interests or those of your immediate family (parents, spouse, and children) that might conflict, or appear to conflict, with your responsibilities to Madison Square Garden, L.P.

_____
_____
_____
_____
_____
_____

CONFIDENTIAL                                              MSG    41099

 # EMPLOYEE CODE OF CONDUCT

- Public trust and confidence are the greatest assets held by Madison Square Garden. It is the responsibility of all employees to uphold that trust by performing their duties with integrity and professionalism. The public's image of Madison Square Garden are a reflection of our appearance, behavior and attitude. Each employee must maintain a helpful and courteous attitude while striving to maintain a safe and clean environment. Following the directives listed below will help to ensure compliance with our standards of conduct. Failure to conform to these directives will subject the employee to disciplinary action up to and including discharge.

- All employees will be knowledgeable of upcoming events and facilities and will provide information when it is requested.

- Guests entering the Facility will be treated courteously, always being called "Sir" and "Madam" and the words "Please" and "Thank You" will be used when making requests. When providing directives to guests, a firm but polite tone should be used. Do not yell.

- If we cannot render immediate assistance it is our responsibility to notify and bring to the guest the employees who can address their problem. If a guest or a member of management requests our name or ID number or the name of our supervisor for any reason we will provide it.

- All employees are expected, when on duty, to be well groomed and in proper uniform and shoes.

- Smoking, eating or drinking on duty, and in public view when off duty is not allowed.

- All employees are required to pick up incidental trash e.g., napkins, cups, food wrappers, on floors/phone locations in plain view.

- Excessive lateness or absenteeism will not be tolerated.

- Early action and warnings may prevent situations from escalating. Always be attentive and try to deal with situations before they become difficult.

- The use of obscene, vulgar or abusive language or excessive force is not allowed no matter what the provocation may be, including fighting with employees, guests, supervisors, managers or other individuals.

- Sitting in an unoccupied seat during an event, or viewing a performance from a stand or a gate is not allowed. Using your Madison Square Garden ID card to gain entry to an event or building is also not allowed.

- All employees are expected to maintain and operate all company property in a safe manner. Any employee damaging, defacing or negligent in the care or theft of company property is subject to immediate disciplinary action up to and including termination.

- Any participation by an employee in the unauthorized sale and/or resale of an MSG event ticket is strictly prohibited and will subject the employee to immediate disciplinary action up to and including termination.

- Unauthorized leave from post or sleeping on duty is not allowed and will subject the employee to immediate disciplinary action up to and including termination.

- Allowing the unauthorized entry of individuals into the building, upgrading seat locations, ticket changing, allowing guests to sit in a seat for which they do not have a ticket and/or the acceptance of payments for entry into the building, is strictly forbidden and will subject the employee to immediate discharge. Tips may not be solicited, but may be accepted when a guest desires to reward exceptional service.

- All media inquiries are to be directed to a management member of Corporate Communications or Public Relations. In no case should anyone other than a Corporate Communications or Public Relations management employee make a comment to the media. Any employee violation of this policy is subject to disciplinary action, up to and including termination.

- There are specific work rules applicable to each department within the Company. This code of conduct is not meant to limit those work rules, but to supplement them.

_____     Jun. 18, 99
Signature                   Date

_____     _____
Print or Type Name          Job Title

White - Employee, Yellow - Human Resources, Green - Department

h:\users\mpitalo\empcode.doc

**CONFIDENTIAL**                                    MSG   41100



# EMPLOYEE CODE OF CONDUCT

- Public trust and confidence are the greatest assets held by Madison Square Garden. It is the responsibility of all employees to uphold that trust by performing their duties with integrity and professionalism. The public's image of Madison Square Garden are a reflection of our appearance, behavior, and attitude. Each employee must maintain a helpful and courteous attitude while striving to maintain a safe and clean environment. Following the directives listed below will help to ensure compliance with our standards of conduct. Failure to conform to these directives will subject the employee to disciplinary action up to and including discharge.

- All employees will be knowledgeable of upcoming events and facilities and will provide information when it is requested.

- Guests entering the Facility will be treated courteously, always being called "Sir" and "Madam" and the words "Please" and "Thank You" will be used when making requests. When providing directives to guests, a firm but polite tone should be used. Do not yell.

- If we cannot render immediate assistance it is our responsibility to notify and bring to the guest the employees who can address their problem. If a guest requests our name or ID number or the name of our supervisor for any reason we will provide it.

- All employees are expected, when on duty, to be well groomed and in proper uniform and shoes.

- Smoking, eating or drinking on duty, and in public view when off duty is not allowed.

- All employees are required to pick up incidental trash e.g., napkins, cups, food wrappers, on floors/phone locations in plain view.

- Excessive lateness or absenteeism will not be tolerated.

- Early action and warnings may prevent situations from escalating. Always be attentive and try to deal with situations before they become difficult.

- The use of obscene, vulgar or abusive language or excessive force is not allowed no matter what the provocation may be.

- Sitting in an unoccupied seat during an event, or viewing a performance from a stand or a gate is not allowed.

- All employees are expected to maintain and operate all company property in a safe manner. Any employee damaging, defacing or negligent in the care of company property is subject to immediate disciplinary action up to and including termination.

- Any participation by an employee in the unauthorized sale and/or resale of an MSG event ticket is strictly prohibited and will subject the employee to immediate disciplinary action up to and including termination.

- Unauthorized leave from post or sleeping on duty is not allowed and will subject the employee to immediate disciplinary action up to and including termination.

- Allowing the unauthorized entry of individuals into the building, upgrading seat locations, ticket changing, allowing guests to sit in a seat for which they do not have a ticket and/or the acceptance of payments for entry into the building, is strictly forbidden and will subject the employee to immediate discharge. Tips may not be solicited, but may be accepted when a guest desires to reward exceptional service.

- All media inquiries are to be directed to a management member of Corporate Communications or Public Relations. In no case should anyone other than a Corporate Communications or Public Relations management employee make a comment to the media. Any employee violation of this policy is subject to disciplinary action, up to and including termination.

- There are specific work rules applicable to each department within the Company. This code of conduct is not meant to limit those work rules, but to supplement them.

_____Oct. 9, 1996_____          _____
Date                                  Job Title

_____
Signature of Employee

_____
Print or Type Name

White - Employee, Yellow - Human Resources, Green - Department

CONFIDENTIAL                                      MSG   41101

MARCOS - 45869



DOA - 5/6/04 - 23:10 HOURS
1. CRIM IMPERS
2. RESIST ARREST
3. OP MV/ILL ALCOHOL
4. OP MV/INTOX 1st DEG
5. DISORDERLY CONDUCT

DID YOU → 1. ANY ONE HERE IN MSG INFORMED OF THIS INCIDENT.
2. Mr. DRINZENBERRY 718-625-1777
3. BROOKLYN BATTERY TUNNEL

7/29 - ████ shows up with her husband.
Husband is asked to wait outside.
████ admits to arrest
- admits to never informing anyone @ MSG of arrest.
- ████ is advised to stay out of the Garden until disposition is determined.
- ████ requests Policy/Procedures on how such cases are handled.

**CONFIDENTIAL**                                     **MSG   41102**



CONFIDENTIAL

MSG   41103

| FACILITIES-GARDEN SERVICES Complainant Name/Title | Employee Name/Title | Issue | Date of Incident | Immediate Supervisor/ Department | Date Reported to ER | Meeting/ Hearing Date | Responsible ER Manager | Resolution/Status |
|---|---|---|---|---|---|---|---|---|
| | Event Supervisor ▓▓▓ | ▓▓▓ was arrested. | 5/6/04 | R. Palma Event Operations | 7/22/04 | 7/30/04 | M. Negron | 7/22/04- P. McEniry advises C. Ricker confidentially, that she heard that ▓▓▓ was arrested for DUI and impersonating an officer. C. Ricker contacts J. Dean, R. Palma, and T. Nadal. 7/23- T. Nadal obtains arrest information (criminal impersonation 2, resisting arrest and driving under the influence). ▓▓▓ C. Ricker to schedule a meeting with J. Dean and ▓▓▓ 7/30- J. Dean interviews ▓▓▓ ▓▓▓ presence of M. Negron. ▓▓▓ is placed on LOO pending disposition of case. 8/23- C. Ricker forwards file to M. Negron for follow up/ closure. 9/24- M. Negron sends e-mail to J. Dean for update. J. Dean replies that hearing was scheduled for 9/14. J. Dean to follow up. 9/27- J. Dean advises that trial was rescheduled for 10/5. 10/25- M. Negron follows up with J. Dean who advises that trial was rescheduled for 11/14. 1/24- M. Negron follows up with J. Dean ▓▓▓ who advises that trial was rescheduled for 2/3. 2/14- ▓▓▓ to be heard in Trial Part 3. 3/15- J. Dean sends e-mail to M. Negron advising that case has been adjourned until 4/11. 6/28- J. Dean provides disposition certificates indicating that case was dismissed based on speedy trial provisions. Prosecutor failed to provide a speedy trial. M. Negron sends e-mail to J. Moran. ▓▓▓ 7/11 ▓▓▓ leaves message for J. Dean. 7/15- M. Negron and J. ▓▓▓ meet with H. ▓▓▓ who states company has no reason to keep ▓▓▓ from working. 7/25- J. DiCocca speaks with ▓▓▓ and advises that she ▓▓▓ return to work. 8/1- Profile processed to reinstate ▓▓▓ Resolved |

REDACTED

CONFIDENTIAL                          MSG  41104

| Margery Smith Event Supervisor | 5/6/04 | R. Palma Event Operations | 7/22/04 | 7/30/04 | C. Ricker |
|---|---|---|---|---|---|
| [M. Smith] was arrested. | | | | | 7/22/04 - P. McEnlry advises C. Ricker confidentially, that she heard [REDACTED] was arrested for DUI and impersonating an officer. C. Ricker contacts J. Dean, R. Palma and T. Nadal. 7/23 - T. Nadal obtains arrest information (criminal impersonation 2, resisting arrest and driving while under the influence). C. Ricker to schedule meeting with J. Dean and [REDACTED] 7/30 - J. Dean interview in presence of M. Negron. [REDACTED] is placed on ILO and pending disposition of case. 8/25 - C. Ricker forwards file to M. Negron for follow-up/closure. |

REDACTED

CONFIDENTIAL

MSG   41105

Negron, Marcos

**From:** Dean, Joseph
**Sent:** Friday, July 01, 2005 12:19 PM
**To:** Negron, Marcos; DiCocco, Joe
**Cc:** Randazzo, Kirk; JDean122304
**Subject:** RE: ███

Neither have I......Have a great holiday weekend...
Joe Dean

-----Original Message-----
**From:** Negron, Marcos
**Sent:** Friday, July 01, 2005 10:34 AM
**To:** Dean, Joseph; DiCocco, Joe
**Cc:** Randazzo, Kirk
**Subject:** FW: ███

fyi. I have yet to hear from her.

REDACTED

-----Original Message-----
**From:** Negron, Marcos
**Sent:** Tuesday, June 28, 2005 4:00 PM
**To:** Moran, John VP ER MSG
**Subject:** ███

Joe Dean just provided a disposition certificate for ███ an Event Supervisor, was placed on ILO on 7/29/04 for allegedly DUI, impersonating an officer and resisting arrest. The disposition states that the case has been dismissed based on the speedy trial provisions. According to Dean, the case was dismissed because the prosecutor failed to provide a speedy trial. We need to discuss reinstating her ███ has not contacted the company asking for reinstatement.

1

CONFIDENTIAL                                    MSG    41106

Ricker, Catherine

**From:** Dean, Joseph
**Sent:** Friday, July 30, 2004 7:41 AM
**To:** Ricker, Catherine
**Cc:** Negron, Marcos; Palma, Ralph; Hassett, Timothy; Low, Loretta; Hallinan, Sean
**Subject:** ▓▓▓▓▓▓▓

Marcos and I interviewd ▓▓▓▓▓▓▓ in the 6th floor conference yesterday at approx 6PM. ▓▓▓▓ admittted to being arrested on May 6 at approx 11PM for five criminal violations. I asked her if she advised anyone in management that she had been arrested. She stated she did not. She further stated she did not know she had to advise anyone. She asked to see it in written policy where she had to advise anyone of her being arrested. She was advised that she would not be allowed to perform her duties or work at MSG until there is a disposition in criminal court of the charges against her. She was advised to notify MSG when there is a disposition in this case. She was further advised that when MSG receives this dispostion her eligibity to return to work will be reviewed by E/R. Prior to ▓▓▓▓ arrival at my office I received a call from her attorney Mr. John Dewzenerry. He advised me that ▓▓▓▓ has pleaded not guilty to the charges and the case had been adjourned until mid-September. He requested I not ask her about her guilt or innocence in this matter and that she not be asked to discuss the details leading up to her arrest on these charges. I agreed as we do not want to be the subject of a Discovery Subpoena from either the prosecutor or defense team in this matter. We did not take her MSG ID card from her at this time.
Joe D

1

**CONFIDENTIAL**                                              **MSG   41107**

**Negron, Marcos**   ER File/update Log

**From:** DiCocco, Joe
**Sent:** Monday, July 25, 2005 11:27 AM
**To:** Randazzo, Kirk; Negron, Marcos
**Cc:** Palma, Ralph; Hoffman, Karen; Nadal, Tom; JDean122304; Hallinan, Sean; Nadal, Tom
**Subject:** RE: ▮▮▮▮

**Sensitivity:** Confidential

Guys --

▮▮▮▮ returned my voice mail from last week earlier this morning. She will be returning as a Event Ops Supervisor beginning in August. As discussed with Ralph -- We will place her on a training program for the month of August (along with Paul Heinze). She will go back into normal rotation in September.

Joe D

-----Original Message-----
**From:** Dean, Joseph
**Sent:** Friday, July 15, 2005 3:06 PM
**To:** Randazzo, Kirk
**Cc:** Palma, Ralph; DiCocco, Joe; Hoffman, Karen; Nadal, Tom; JDean122304
**Subject:**
**Sensitivity:** Confidential

Conferred with ▮▮▮▮, John Moran, Marcos Negron this morning re ▮▮▮▮ H/R is going to advise Joe Dicocco to notify ▮▮▮▮ that she has been reinstated and can return to work when assigned....
Joe Dean

REDACTED

1

**Ricker, Catherine**

| | |
|---|---|
| From: | Nadal, Tom |
| Sent: | Thursday, July 22, 2004 4:04 PM |
| To: | Ricker, Catherine |
| Subject: | RE: ▓▓▓▓▓ |

I did hear something regarding this several days ago.

I was informed that it happen in the Brooklyn Battery Tunnel
Also, she gave the arresting officer a hard time (cursing him out) & was in possession of multiple ID cards.

That's all I got...

-----Original Message-----
From: Ricker, Catherine
Sent: Thursday, July 22, 2004 3:28 PM
To: Nadal, Tom
Subject: FW: ▓▓▓▓▓

Tom,

FYI.

Catherine

-----Original Message-----
From: Ricker, Catherine
Sent: Thursday, July 22, 2004 3:28 PM
To: Palma, Ralph
Cc: Negron, Marcos; Dean, Joseph
Subject: ▓▓▓▓▓

Ralph,

Have you heard anything about ▓▓▓▓▓ getting arrested for DUI and impersonating an offficer?

Catherine

CONFIDENTIAL                                           MSG   41115