Sue Ellen Eisenberg (SE-4713) – *admitted pro hac vice*
Lucetta Franco (LF-7638) - *admitted pro hac vice*
Eisenberg & Bogas, P.C.
33 Bloomfield Hills Parkway, Suite 145
Bloomfield Hills, Michigan 48304-2945
(248) 258-6080

- and –

Laurie Berke-Weiss (LB-3445)
Louis Pechman (LP-6395)
Berke-Weiss & Pechman LLP
488 Madison Avenue
New York, New York 10022
(212) 583-9500

*Attorneys for Defendant Isiah Lord Thomas III*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ANUCHA BROWNE SANDERS,<br><br>Plaintiff,<br><br>-against-<br><br>MADISON SQUARE GARDEN, L.P., ISIAH LORD THOMAS III AND JAMES L. DOLAN,<br><br>Defendants. | Civil Case No. 06 Civ. 0589 (GEL) (DCF)<br><br>ECF CASE |

**REPLY MEMORANDUM OF LAW OF DEFENDANT ISIAH
THOMAS IN SUPPORT OF HIS MOTION FOR
PARTIAL SUMMARY JUDGMENT**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES..................................................................................iv

PRELIMINARY STATEMENT ..........................................................................1

STATEMENT OF FACTS...................................................................................2

POINT I

    BROWNE SANDERS' CONCLUSORY AND
    MISLEADING ALLEGATIONS DO NOT RAISE
    THE REQUISITE MATERIAL FACTS TO DEFEAT
    THOMAS' MOTION..................................................................................2

POINT II

    BROWNE SANDERS HAS PROFFERED NO EVIDENCE
    TO SHOW THAT THOMAS POSSESSED EITHER THE
    REQUISITE RETALIATORY ANIMUS OR THE INTENT
    FOR AIDER AND ABETTOR LIABILITY...............................................3

    A.    There Is No Evidence That Thomas Had Knowledge
         Of Madison Square Garden's Decision To Terminate
         Browne Sanders Until After Her Dismissal ........................................3

    B.    Any Purported Evidence Of Animus Or Intent
         Advanced By Browne Sanders Is Temporally Unrelated
         To Her Termination .............................................................................4

    C.    Browne Sanders Has Not Presented Any Material Evidence
         To Support The Allegation That Thomas' Statements
         Were "False" .......................................................................................5

POINT III

    PLAINTIFF CANNOT ESTABLISH A VALID
    CLAIM FOR REPUTATIONAL DAMAGES
    UNDER APPLICABLE DISCRIMINATION LAWS ...............................6

    A.    Browne Sanders' New Claims Conflict With Her Prior Position In
         Violation Of FED. R. CIV. P. 56(e) ....................................................6

    B.    The Reasoning In *Williams v. Pharmacia* Should Not Be
         Adopted By This Court........................................................................7

C.  Browne Sanders Has No Evidence To Support A Claim For
    Reputational Damages Under The *Williams* Standard ....................9

&zwj;

# TABLE OF AUTHORITIES

**CASES**

*Albemarle Paper Co. v. Moody*,
    422 U.S. 405 (1975) .................................................................................................8

*Anderson Liberty Lobby, Inc.*,
    477 U.S. 242 (1986) .................................................................................................2

*Chapkines v. New York Univ.*,
    2005 U.S. Dist. LEXIS 1035 (S.D.N.Y. Jan. 19, 2005) ..........................................3

*Cravetts v. Federal Reserve Bank of New York*,
    2004 U.S. Dist. LEXIS 22184 (S.D.N.Y. Nov 1, 2004) ..........................................2

*Das v. Our Lady of Mercy Medical Ctr.*,
    2002 U.S. Dist. LEXIS 7771 (S.D.N.Y. Apr. 29, 2002) ..........................................6

*Dunson v. Tri-Maintenance & Contractors, Inc.*,
    171 F. Supp. 2d 103 (E.D.N.Y. 2001) .....................................................................3

*Feingold v. New York*,
    366 F.3d 138 (2d Cir. 2004) ....................................................................................3

*Gentile v. County of Suffolk*,
    926 F.2d 142 (2d Cir. 1991) ....................................................................................8

*Inganamorte v. Cablevision Sys. Corp.*,
    2006 U.S. Dist. LEXIS 67872 (E.D.N.Y. Sept. 21, 2006) ......................................3

*Long v. Marubeni America Corp.*,
    2006 U.S. Dist. LEXIS 8932 (S.D.N.Y. Mar. 6, 2006) ...........................................3

*Mattenson v. Baxter Healthcare Corp.*,
    438 F.3d 763 (7th Cir. 2006) ...................................................................................8

*Osorio v. Source Enterprises, Inc.*,
    2007 U.S. Dist. LEXIS 18725 (S.D.N.Y. Mar. 5, 2007) ....................................9, 10

*Pollard v. E.I. du Pont de Nemours & Co.*,
    532 U.S. 843 (2001) .................................................................................................8

*Reed v. Cedar County,*
    2007 U.S. Dist. LEXIS 9915 (N.D. Iowa Feb. 12, 2007) ............................. 10

*Vann v. New York City Transit Auth.,*
    4 F. Supp. 2d 327 (S.D.N.Y. 1998) ................................................................ 5

*Weinstock v. Columbia Univ.,*
    224 F.3d 33 (2d Cir. 2000) ........................................................................ 2, 3

*Williams v. Pharmacia, Inc.,*
    137 F.3d 944 (7th Cir. 1998) .................................................................. 7,8,9

**MISCELLANEOUS**

Fed. R. Civ. P. 26 (2007) .................................................................................. 8

Fed. R. Civ. P. 56(e) (2007) ............................................................................. 6

BLACK'S LAW DICTIONARY (7th ed. 1999) ............................................ 7, 8

## PRELIMINARY STATEMENT

Browne Sanders' response to Thomas' Motion for Partial Summary Judgment does not provide sufficient legal support for her claim that Thomas aided and abetted MSG's alleged wrongful act of terminating Browne Sanders.

Browne Sanders admits that: she reported to Stephen Mills ("Mills"); Mills was primarily responsible for her hire, promotion and salary; and Mills was also Thomas' direct supervisor. Browne Sanders also admits that: Thomas did not hire her; Thomas did not have the authority to fire her; and Thomas did not fire her. Finally Browne Sanders admits that: James Dolan ("Dolan") made the decision to terminate her employment; Dolan made the decision on his own; and Dolan did not read the McCormack Memo (which referenced disagreements in terms of philosophy and management style between Thomas and Browne Sanders) before terminating her employment.[1]

Equally important are the facts which must be deemed admitted because there are no factual assertions made in opposition: Neither Rusty McCormack ("McCormack") nor anyone else at MSG shared Thomas' observations about his interactions with Browne Sanders with Dolan; Thomas did not know that MSG was considering the termination of Browne Sanders; Thomas did not speak to Dolan about what he should say at his interview; Thomas did not speak to Dolan after his interview about his observations of Browne Sanders; and Thomas did not speak to Dolan about terminating Browne Sanders.

---

[1] Browne Sanders asserts that the McCormack Memo was created after the decision to terminate. MSG disputes that assertion. Regardless of when the document was created, there is no evidence to contradict Dolan's testimony that he did not see the Memo until the date of his deposition on December 11, 2006. (Combined 56.1, ¶18, Thomas' Reply.)

1

Browne Sanders does not provide sufficient legal support for her claim of entitlement to reputational damages. She now contends that it was Thomas', MSG's, and Dolan's alleged acts of discrimination and retaliation that gave rise to her claim for reputational damages, rather than any statements made by the co-defendants. She has now abandoned her original claim for reputational damages based on her deposition testimony and her response to MSG's Second Set of Interrogatories. The cases cited in support of her new position are lacking in logic and, if followed, will allow Browne Sanders a double recovery. Finally, Browne Sanders cannot show the requisite causal relationship between her damages and any acts on the part of any of the defendants.

## STATEMENT OF FACTS

The Court is referred to the detailed factual statements, exhibits, and declarations included in Thomas' Motion for Partial Summary Judgment and the Combined Rule 56.1 Statement of Defendant Thomas' Undisputed Material Facts, Plaintiff's Response and Thomas' Reply.

## POINT I

## BROWNE SANDERS' CONCLUSORY AND MISLEADING ALLEGATIONS DO NOT RAISE THE REQUISITE MATERIAL FACTS TO DEFEAT THOMAS' MOTION

Browne Sanders' conclusory claims that Thomas made "false" statements during the investigation of the sexual harassment complaint she initiated cannot defeat Thomas' motion. *See Cravetts v. Federal Reserve Bank of New York*, 2004 U.S. Dist. LEXIS 22184, at *8 (S.D.N.Y. Nov 1, 2004) ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted.") (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). See also *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir.

2

2000), *Chapkines v. New York Univ.*, 2005 U.S. Dist. LEXIS 1035, at *38 (S.D.N.Y. Jan. 19, 2005) (summary judgment granted for defendant employer where plaintiff employee attempted to "cast a wide net over all of the defendants, ensnaring them in a tenuous conspiracy theory" to terminate him, but failed to present any evidence in support of his conclusory allegations).

**POINT II**

**BROWNE SANDERS HAS PROFFERED NO EVIDENCE TO SHOW THAT THOMAS POSSESSED EITHER THE REQUISITE RETALIATORY ANIMUS OR THE INTENT FOR AIDER AND ABETTOR LIABILITY**

"[A] person can be liable as an aider and abettor under the New York anti-discrimination provisions if he 'actually participated in the conduct giving rise to a discrimination claim.'" *Long v. Marubeni America Corp.*, 2006 U.S. Dist. LEXIS 8932, at *15 (S.D.N.Y. Mar. 6, 2006) (citing *Feingold v. New York*, 366 F.3d 138, 157-59 (2d Cir. 2004)). Thomas evidenced neither "the retaliatory animus required for [aider and abettor] liability ... [nor did] he intentionally aid[...] another who did have ... authority to engage in illegal conduct." *Long*, 2006 U.S. Dist. LEXIS 8932, at *16. *Cf. Dunson v. Tri-Maintenance & Contractors, Inc.*, 171 F. Supp. 2d 103, 115 (E.D.N.Y. 2001).

A.     **There Is No Evidence That Thomas Had Knowledge Of Madison Square Garden's Decision To Terminate Browne Sanders Until After Her Dismissal**

Notwithstanding Browne Sanders' attempt to "spin" the facts, no evidence has been adduced to show that Thomas had any knowledge of Madison Square Garden's decision to terminate Browne Sanders until after her dismissal. *See Inganamorte v. Cablevision Sys. Corp.*, 2006 U.S. Dist. LEXIS 67872, at *50-55 (E.D.N.Y. Sept. 21, 2006) (court found that "no reasonable inference exist[ed] that plaintiff's termination was done in response to her attorney's letter" complaining of discrimination when supervisor testified that "he did not learn of plaintiff's complaints, including her lawyer's letter, until after Plaintiff's employment was

3

actually terminated.") It is undisputed that Thomas did not know the purpose of the investigation when he was interviewed. (Reply Ex. T, Thomas Dep. 64-65.) Rather, the evidence supports the fact that Thomas was not even aware of Browne Sanders' sexual harassment claim when he spoke to investigators. (Reply Ex. Y, Noel Dep. 95-96.)[2] Accordingly, Browne Sanders' argument that Thomas had a motive to falsely criticize plaintiff is cut out of whole cloth. *See* Pl.'s Mem. Opp'n Summ. J. 14.

Even if Thomas wanted to harm Browne Sanders through the investigation, there is no evidence to indicate he knew that his statements about their working relationship would be used as a basis to terminate her. Finally, there is no evidence to indicate that Thomas actively participated with anyone at MSG, much less Dolan, to set Browne Sanders up for termination. *See* Preliminary Statement, p.1, *supra*.

B.   **Any Purported Evidence Of Animus Or Intent Advanced By Browne Sanders Is Temporally Unrelated To Her Termination**

Incredibly, Browne Sanders seeks to bolster her "aider and abettor" claim by pointing to comments allegedly made by Thomas <u>after</u> she was terminated by Dolan, *i.e.*, the statement made to the EEOC eight (8) months later, Thomas' Answer to Browne Sanders' Complaint filed a month later, and the statement Thomas made to the press the day after Browne Sanders filed her complaint. It is beyond peradventure that none of these "statements" reflect the requisite animus and intent to satisfy the "actual participation" requirement for aiding and abetting and all of them are subsequent in time to the decision-making process.

Most troubling is the attempt by Browne Sanders to lead this Court to believe that an alleged request by Thomas that Browne Sanders be fired was made in a time frame that would

---

[2] Unless otherwise indicated, all "Reply Ex." References are to exhibits annexed to the Reply Declaration of Lucetta V. Franco executed on June 8, 2007 ("Franco Reply Decl.").

4

make it relevant on the aider/abettor issue. Browne Sanders points to comments Thomas allegedly made to Mills and others in early 2004, nearly two (2) years before Browne Sanders' termination, in a vain attempt to demonstrate retaliatory animus. (*See* Pl. 56.1 ¶55; Combined Rule 56.1). Browne Sanders also cites testimony from herself, Mills, and Favorito as evidence of her claim; but, only her own self-serving testimony supports her description of events which occurred in early 2004.[3]

### C. Browne Sanders Has Not Presented Any Material Evidence To Support The Allegation That Thomas' Statements Were "False"

There is no support for Browne Sanders' claim that Thomas intentionally created a pretext for her termination. Even assuming that Thomas' statements in the investigation factored into MSG's decision to terminate Browne Sanders, the weight of the evidence is that the statements were, in any event, truthful.

During the investigation of Browne Sanders' claims in December 2004 and January 2005, Thomas merely expressed his well-known opinion - - that they had "butted heads" on their respective roles in the Knicks' organization. (Combined Rule 56.1, X, ¶ 15.) Thus, Browne Sanders has failed to present any evidence to create a genuine issue of material fact as to truthfulness of Thomas' permissible statements. *See Vann v. New York City Transit Auth.*, 4 F. Supp.2d 327, 330 (S.D.N.Y. 1998) (plaintiff's allegation that "defendant...falsely represented, in a letter, to an NYCTA Superintendent, that [plaintiff] had been 'AWOL' from the job site," alleged only by plaintiff's opposition memorandum, is not supported by any admissible facts).

---

[3] In fact, Favorito recalled that Thomas was critical of Browne Sanders and her department for "being disorganized." (Reply Ex. U, Favorito Dep. 87-88). Mills recalls Thomas stating he did not want to "be a person who was out selling season tickets" for Browne Sanders. (Ex. O, Mills Dep. 200-201). Thus, the proffered third party statements fail to deliver any evidence of intent or animus.

5

Notably, in response to Thomas' assertions that he and Browne Sanders had difficulties in the workplace because she "resisted his organization changes and wanted to manage basketball operations as well as her own department" (Pl.'s Mem. Opp'n Summ. J. 9), the only evidence she offers to support her position other than her own statements and conjecture is a final positive performance review from Mills. (Pl.'s Mem. Opp'n Summ. J. 14.) However, "prior positive evaluations of the plaintiff's work performance alone do not prove that later unsatisfactory evaluations are the result of animus or constitute a pretext for unlawful discrimination." *Das v. Our Lady of Mercy Medical Ctr.*, 2002 U.S. Dist. LEXIS 7771, at *27 (S.D.N.Y. Apr. 29, 2002). Moreover, the performance review does not even refer to Browne Sanders' relationship with Thomas, but merely provides a generally positive review of work completed at the time when Thomas was implementing changes in basketball operations. *See* Mintzer Decl. Ex. 14 at MSG 04598.

## POINT III

## BROWNE SANDERS CANNOT ESTABLISH A VALID CLAIM FOR REPUTATIONAL DAMAGES UNDER APPLICABLE DISCRIMINATION LAWS

**A.    Browne Sanders' New Claims Conflict With Her Prior Position in Violation of FED. R. CIV. P. 56(e)**

Browne Sanders has abandoned her original claim for reputational damages based on her deposition and her responses to MSG's Second Set of Interrogatories. She now contends that it was Thomas', MSG's, and Dolan's alleged acts of discrimination and retaliation that gave rise to her claim for reputational damages, rather than any statements made by the co-defendants. Her new claim should not be considered by this Court since it is in contravention of Fed. R. Civ. P. 56(e) (On motion for summary judgment, genuine issue of fact requiring trial cannot be raised by statements in affidavits

6

not based on personal knowledge, statements and affidavits that conflict with prior deposition testimony, or arguments or statements by counsel unsupported by record).

### B. The Reasoning In *Williams v. Pharmacia* Should Not Be Adopted By This Court

Browne Sanders relies on the Seventh Circuit's decision in *Williams v. Pharmacia, Inc.*, 137 F.3d 944, 953 (7th Cir. 1998) which recognizes a "lost future earnings award" that would compensate a plaintiff for "diminished earnings resulting from the reputational harms" suffered because of discrimination. The flawed reasoning of the court in *Williams*, and its progeny, need not and should not be adopted by this Court.

The *Williams* case stated:

> Whereas front pay compensates the plaintiff for the lost earnings from her old job for as long as she may have been expected to hold it, a lost future earnings award compensates the plaintiff for the diminution in expected earnings in all of her future jobs for as long as the reputational or other injury may be expected to affect her prospects.

*Williams*, 137 F.3d at 954.

In order to create this distinction without a difference, the Seventh Circuit reasoned that "injury to professional standing" and "injury to character and reputation" are both "other non-pecuniary losses." *See Williams*, 137 F.3d at 952 (citation omitted). The foundation of the *Williams* analysis is based on the axiom that "lost future earning capacity" is a "non-pecuniary injury." *Williams* 137 F.3d at 953. But how can damage to earnings not be pecuniary? As noted by Black's Law Dictionary, "pecuniary" is defined as "[m]onetary; relating to money; financial; consisting of money or that which can be valued in money." BLACK'S LAW DICTIONARY 152 (7th ed. 1999). In turn, "earnings" is defined as "income. That which is earned; *i.e.* money earned from performance of labor, services, sale of goods, etc." BLACK'S LAW DICTIONARY

7

226 (7th ed. 1999). As such, *Williams* is premised on the non sequitur that lost future earnings is non-pecuniary.

This fundamental flaw in the Seventh Circuit's analysis would improperly allow plaintiffs to double-dip with regard to future economic losses. This result thwarts the central statutory purpose of anti-discrimination laws, which is "to make persons whole for injuries suffered." *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 418-21 (1975). Under Second Circuit law, it is well-settled that "when a plaintiff seeks compensation for the same damages under different legal theories of wrongdoing, the plaintiff should receive compensation for an item of damages only once." *See Gentile v. County of Suffolk*, 926 F.2d 142, 153 (2d Cir. 1991).

The Seventh Circuit itself has recognized the potential overlap resulting from the *Williams* case. In *Mattenson v. Baxter Healthcare Corp.*, 438 F.3d 763, 771 (7th Cir. 2006), the court addressed the lack of distinction between lost future earnings and front pay in a claim arising under the Age Discrimination in Employment Act. The court noted that "[t]he standard legal remedy of an award of lost future earnings, [is] indistinguishable as a practical matter from front pay." The Seventh Circuit cited the United States Supreme Court's decision in *Pollard v. E.I. du Pont de Nemours & Co.*, 532 U.S. 843, 846 (2001), defining front pay as "simply money awarded for lost compensation ... in lieu of reinstatement." The decisions in *Mattenson* and *Pollard* underscore that Browne Sanders cannot have both front pay (lost future earnings) and reputational damages (lost future earnings).

The fallacy of considering reputational damages as a separate item from front pay is illustrated by Plaintiff's Supplemental Disclosures Pursuant to F.R.Civ.P. 26, dated March 19, 2007. In that calculation of damages Browne Sanders states as follows:

> To the extent that plaintiff is not reinstated to her former position at MSG, plaintiff will also seek an award of front pay and/or reputational damages to

8

>compensate plaintiff, from October 1, 2007 through age 65 (January 5, 2028), for expected lost wages, bonuses, and 401(k) contributions, less any work-related compensation that plaintiff expects to earn in mitigation of her damages, in the amount of $9,762,406. (*See* attached chart detailing the calculations for back pay and front pay) If plaintiff is not reinstated to her former position at MSG, plaintiff will also seek an Order requiring MSG to make pension payments to her in the amounts that she would have been entitled to receive had her employment not been unlawfully terminated by MSG and had she continued to work at MSG until age 65.

*See* Reply Ex. W. Browne Sanders has invited this court to embrace the fog of reputational damages when she, herself, cannot articulate what those damages are.

### C. Browne Sanders Has No Evidence To Support A Claim For Reputational Damages Under The *Williams* Standard

Even if this Court decides to follow *Williams*, it must nevertheless conclude that Browne Sanders has failed to present competent evidence to support her claim for reputational damages against Thomas, MSG, or Dolan.

In the *Williams* case, plaintiff's expert testified that "the poor evaluations Williams received and Pharmacia's eventual termination of her employment taint Williams's employment record." *Williams*, 137 F.3d at 952. The court noted that, "[t]o recover for lost earning capacity, a plaintiff must produce competent evidence suggesting that his injuries have narrowed the range of economic opportunities available to him ... [and] must show that his injury has caused a diminution in his ability to earn a living." *Id.* (internal quotations and alterations omitted). The court concluded that the jury could have believed the testimony of the expert in finding for plaintiff.

In *Osorio v. Source Enterprises, Inc.*, No. 5 Civ. 10029 (JSR) 2007 U.S. Dist. LEXIS 18725 (S.D.N.Y. Mar. 5, 2007), there was also competent evidence that supported plaintiff's claim for reputational damage. In that case there was evidence proving that defendant's agents had wrongfully accused plaintiff (the former editor of a hip hop magazine) of having sexual

9

relations with many of the artists she was interviewing in a magazine which was widely read in the hip-hop community. *See* Reply Ex. X, *Osorio* Tr. Transcript, Ex. 21.

In *Reed v. Cedar County*, No. 05-CV-64-LRR, 2007 U.S. Dist. LEXIS 9915 (N.D. Iowa Feb. 12, 2007), the court was ruling on motions *in limine*, not on a motion for summary judgment. The decision does not offer details with regard to the proposed testimony from witnesses, described as plaintiff's "family members," as to her alleged reputational damages, making it impossible to use the case as precedent. *Reed*, 2007 U.S. Dist. LEXIS 9915, at *23.

Browne Sanders' affidavit consists of speculation and conjecture. While her testimony regarding her attempts to find work may be admissible, her testimony with regard to statements made to her by unnamed potential employers and recruiters are hearsay. Defendants do not know who made the statements, their timing, or their context. More importantly, there is nothing to indicate a causal nexus between the inquiries made and her failure to obtain employment. Discovery has closed. No experts have been named by Browne Sanders, and no witnesses have been identified, who can competently testify on this subject. Browne Sanders' claim for reputational damages as to all defendants must be dismissed.

For all the foregoing reasons, Thomas' motion for partial summary judgment should be granted in its entirety.

Dated: New York, New York
June 8, 2007

EISENBERG & BOGAS, P.C.

By: *[signature: Sue Ellen Eisenberg]*
Sue Ellen Eisenberg (SE-4713) – *admitted pro hac vice*
Lucetta Franco (LF-7638) - *admitted pro hac vice*
Eisenberg & Bogas, P.C.
33 Bloomfield Hills Parkway, Suite 145
Bloomfield Hills, Michigan 48304-2945
(248) 258-6080

BERKE-WEISS & PECHMAN LLP

By: *[signature]*
Laurie Berke-Weiss (LB-3445)
Louis Pechman (LP-6395)
Berke-Weiss & Pechman LLP
Attorneys for Defendants
488 Madison Avenue, 11th Floor
New York, NY 10022
(212) 583-9500

TO: Anne C. Vladeck (AV-4857)
Kevin T. Mintzer (KM-4741)
Karen Cacace (KC-3184)
Vladeck, Waldman,
Elias & Engelhard, P.C.
Attorneys for Plaintiff
1501 Broadway, Suite 800
New York, NY 10036
(212) 403-7300

11

Ronald M. Green (RG-7766)
Theresa M. Holland (TH-6973)
Brian G. Cesaratto (BC-5464)
Epstein Becker & Green, P.C.
Attorneys for Defendants Madison Square
 Garden, L.P. and James L. Dolan
250 Park Avenue
New York, NY 10177
(212) 351-4500

Amber L. Kagan (AK-7973)
Morgan, Lewis & Bockius LLP
Attorneys for Defendants Madison Square
 Garden, L.P. and James L. Dolan
101 Park Avenue
New York, NY 10178
(212) 309-6000