Sue Ellen Eisenberg (SE-4713) - *admitted pro hac vice*
Lucetta Franco (LF-7638) - *admitted pro hac vice*
Eisenberg & Bogas, P.C.
33 Bloomfield Hills Parkway, Suite 145
Bloomfield Hills, Michigan  48304-2945
(248) 258-6080

         - and –

Laurie Berke-Weiss (LB-3445)
Louis Pechman (LP-6395)
Berke-Weiss & Pechman, LLP
488 Madison Avenue
New York, New York 10022
(212) 583-9500


*Attorneys for Defendant Isiah Lord Thomas III*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ANUCHA BROWNE SANDERS, | |
| Plaintiff, | Civil Case No. 06 Civ. 0589 (GEL) (DCF) |
| -against- | ECF CASE |
| MADISON SQUARE GARDEN, L.P., ISIAH LORD THOMAS III AND JAMES L. DOLAN, | |
| Defendants. | COMBINED RULE 56.1 STATEMENT OF DEFENDANT THOMAS' UNDISPUTED MATERIAL FACTS, PLAINTIFF'S RESPONSE AND THOMAS' REPLY |

Dockets.Justia.com

Defendant Isiah Thomas ("Thomas") submits this Combined Statement of Undisputed Material Facts pursuant to Local Civil Rule 56.1 of the Local Rules for the Southern District of New York ("Rule 56.1"), in support of his Motion for Partial Summary Judgment to dismiss (1) the Third and Fourth causes of action of the Second Amended Complaint ("Complaint") of plaintiff, Anucha Browne Sanders ("Browne Sanders") insofar as those causes of action assert claims against Thomas for retaliation or aiding and abetting retaliation by others through the termination of Browne Sanders, under the New York Executive Law § 296 ("HRL") and the New York City Human Rights Law, New York City Administrative Code § 8-107 ("Code") and (2) the demand for an award of "reputational damages" against Thomas, incorporating plaintiff's response to Thomas' Rule 56.1 Statement and Thomas' reply thereto ("Combined Rule 56.1 Statement").

## STATEMENT OF MATERIAL FACTS NOT IN DISPUTE

### A.    Browne Sanders' Employment at MSG

1.    Browne Sanders began working for MSG, in November 2000 as Vice President of Marketing for the Knicks. (Ex. H, Transcript of the Deposition of Steven Mills, 53, hereinafter "Mills Dep.")[1]

**Plaintiff's Response:** Admit.

**Thomas' Reply:** No response necessary.

2.    Browne Sanders was promoted to Senior Vice President of Marketing and Business Operations in 2002. (Ex. A, Plaintiff's Second Amended Complaint ¶ 15, hereinafter "Compl."; Ex. H, Mills Dep. 77.)

**Plaintiff's Response:** Admit.

**Thomas' Reply:** No response necessary.

3.    In that position, Browne Sanders' primary responsibility was to oversee all non-

---

[1] All "Ex." references are to Exhibits annexed to the Declaration of Lucetta V. Franco dated May 4, 2007.

player related business operations of the Knicks including the revenue streams, marketing, new media, franchise operations, administration and community relations. (Ex. H, Mills Dep. 89; Ex. D, Transcript of the Deposition of Anucha Browne Sanders, 343-45, hereinafter "Browne Sanders Dep."; Ex. K, SVP Operational Position Description.)

**Plaintiff's Response:** Admit in part. This description is not a complete description of Browne Sanders' primary responsibilities. Browne Sanders was also a profit and loss ("P & L") manager with collaborative responsibilities for the budget. She also had responsibility for the game presentation and alumni relations (i.e. relations with former Knicks players). (Pl. Dep. I. 343-44)

**Thomas' Reply:** Plaintiff's response contains no additional material facts which create a genuine issue to be tried as required by Rule 56.1(b) as to the assertion contained in this paragraph.

4.      Browne Sanders later became a "Profit and Loss Manager" in 2004, with increasing responsibility in the strategic planning and budgeting process. (Ex. D, Browne Sanders Dep. 343; Ex. H, Mills Dep. 99.)

**Plaintiff's Response:** Deny. The organizational change in which Browne Sanders and other heads of business units became P & L managers took place before 2004. MSG Chairman James Dolan ("Dolan") testified that Browne Sanders' duties changed when she "took on full responsibilities for marketing the Knicks" (Dolan Dep. 52), which took place in 2002. (See ¶ 2, supra; see also Dolan Dep. 19-21, 163-66) Browne Sanders already had P & L responsibilities by the time that Thomas was hired in December 2003. (Thomas Dep. 240-41.)

**Thomas' Reply:** Plaintiff's response contains no additional material facts which create a genuine issue to be tried as required by Rule 56.1(b) as to the assertion contained in this paragraph. Moreover, plaintiff misstates Dolan's testimony insofar as he stated that Browne Sanders' job changed prior to July 2005. He was uncertain of the exact date, but testified that it was "obviously prior to July [2005]," that it "could have been [n 2004] but it could have been earlier. It could have been early 2005." (Reply Ex. M, Transcript of the Deposition of James Dolan, 53, hereinafter "Dolan Dep.").[2]

5.      Browne Sanders received a salary adjustment in 2005 to reflect her increased responsibilities. (Ex. H, Mills Dep. 99.)

**Plaintiff's Response:** Deny. The salary adjustment that Browne Sanders received in April 2005 from approximately $213,000 to $250,000 was not in connection with any increased responsibilities because Browne Sanders' responsibilities had not changed in 2005 or 2004. (See ¶4, supra) When Stephen Mills ("Mills") informed Browne Sanders of the raise in 2005, he said that Browne Sanders was receiving it because she was doing a great job. (Browne Sanders Decl. ¶ 11) Furthermore, Mills testified that he did not know why Browne Sanders had received a raise in 2005 (Mills Dep. 349-52), and only after discussing the matter with counsel on a break

---

[2] All "Reply Ex." references are to Exhibits annexed to the Reply Declaration of Lucetta V. Franco dated June 8, 2007.

did he testify that the raise was because of a change in Browne Sanders' grade. (Mills Dep. 418-20) Dolan also testified that he did not know why Browne Sanders received a raise in 2005 even though he personally approved the raise. (Dolan Dep. 153-55)

**Thomas' Reply:** Plaintiff's response contains no additional material facts which create a genuine issue to be tried as required by Rule 56.1(b) as to the assertion contained in this paragraph.

6.    Browne Sanders reported to Stephen Mills ("Mills"), President and COO of MSG. (Ex. A, Compl. ¶ 15.)

**Plaintiff's Response:** Admit.

**Thomas' Reply:** No response necessary.

7.    Mills hired Browne Sanders, was responsible for her promotion, evaluated her, and made recommendations with regard to her salary and any salary adjustments she received. (Ex. H, Mills Dep. 50, 53, 99.)

**Plaintiffs' Response:** Admit that Mills was primarily responsible for plaintiff's hire, promotion and salary. Others were involved, however. For example, Dolan has claimed that he approved plaintiff's promotion to Senior Vice President, Marketing and Business Operations. (Affidavit of James L. Dolan, dated April 26, 2007, at ¶ 2, submitted in support of MSG's motion for partial summary judgment)

**Thomas' Reply:** Plaintiff's response contains no additional material facts which create a genuine issue to be tried as required by Rule 56.1(b) as to the assertion contained in this paragraph.

## B.    Thomas Did Not Supervise Browne Sanders

8.    Thomas was hired as President of Basketball Operations for the Knicks in December 2003. (Ex. E, Transcript from of Deposition of Isiah Thomas, 130, hereinafter "Thomas Dep.")

**Plaintiff's Response:** Admit.

**Thomas' Reply:** No response necessary.

9.    In that position Thomas oversaw the coaches, players, scouts, trainers, medical personnel, and other Knicks personnel at the MSG Training Center (the "practice facility") located in Tarrytown, New York. (*Id.*)

**Plaintiff's Response:** Admit in part. Thomas also had an office and a conference room at MSG's offices in Manhattan on the same floor as Browne Sanders. (Pl. Dep. I 213-16)

4

**Thomas' Reply:** Plaintiff's response contains no additional material facts which create a genuine issue to be tried as required by Rule 56.1(b) as to the assertion contained in this paragraph.

10. Mills was also Thomas' direct supervisor. (*Id.*)

**Plaintiff's Response:** Admit in part. Thomas also reported to Dolan. (Thomas Dep. 131-32)

**Thomas' Reply:** Plaintiff's response contains no additional material facts which create a genuine issue to be tried as required by Rule 56.1(b) as to the assertion contained in this paragraph.

11. Thomas did not hire Browne Sanders. (Declaration of Isiah Thomas submitted in support of the motion, ¶ 2, hereinafter "Thomas Decl.")

**Plaintiff's Response:** Admit.

**Thomas' Reply:** No response necessary.

12. Thomas was usually traveling or working from the Knicks' Practice Facility, which is located in Tarrytown, New York. (*Id.* at ¶ 3.)

**Plaintiff's Response:** Admit in part. Thomas worked at the Practice Facility and he traveled. In addition, he also worked at MSG's Penn Plaza offices, where he had an office and a conference room. Thomas also came to the arena for home games. (Pl. Dep. I, 213-16)

**Thomas' Reply:** Plaintiff's response contains no additional material facts which create a genuine issue to be tried as required by Rule 56.1(b) as to the assertion contained in this paragraph.

## D. Browne Sanders Complained to MSG

13. On December 22, 2005, Browne Sanders' attorneys informed MSG's counsel that she was being subjected to harassment and discrimination. (Ex. A, Compl. ¶ 47.)

**Plaintiff's Response:** Admit. However, Browne Sanders had also previously informed MSG that she had been sexually harassed. (Pl. Dep. I. 106-08, 245-48, 335-36)

**Thomas' Reply:** Plaintiff's response contains no additional material facts which create a genuine issue to be tried as required by Rule 56.1(b) as to the assertion contained in this paragraph. Before December 15, 2005, plaintiff had not complained to anyone at MSG about any allegedly inappropriate action or conduct by Thomas. (Reply Ex. N, Transcript of the Deposition of John Moran, 174-76, 194-96, hereinafter "Moran Dep."; Reply Ex. O, Transcript of the Deposition of Stephen Mills, 397-98, hereinafter "Mills Dep."; Reply Ex. P, Transcript of the Deposition of Pete Olsen, 118-19, hereinafter "Olsen Dep.") Mills never heard anything from Browne Sanders about Thomas acting inappropriate to her until December 15, 2005.

(Reply Ex. O, Mills Dep. 397-98.)  Plaintiff did not make a complaint of sexual harassment to Olsen during their May 2005 lunch.  (Reply Ex. P, Olsen Dep. 118-19.)

E.     **MSG Conducted an Investigation with Regard to Browne Sanders' Claims**

14.     When Browne Sanders complained, MSG's Human Resources Department immediately commenced an investigation into Browne Sanders' claims and issued recommendations. (Ex. G, Memorandum from Rusty McCormack dated January 19, 2006 "McCormack Memo.")

**Plaintiff's Response:** Admit in part, deny in part.  Shortly after the December 22, 2005 meeting between plaintiff's counsel and MSG's counsel, MSG began an internal investigation of plaintiff's sexual harassment complaint. (Mintzer-Thomas Decl., Ex. 25, at ¶ 7)  MSG's internal investigation was conducted by, among others, Rochelle Noel ("Noel"), an in-house attorney for Cablevision, MSG's parent company, and MSG Vice President of Employee Relations John Moran ("Moran").  (Id.)  On or about January 13, 2006, Noel and Moran, among others, finalized the findings of MSG's internal investigation in a document entitled, Summary of Harassment Investigation ("Investigation Summary").  (Noel Dep. Ex. 14)  The Investigation Summary does not contain any recommendations.  (Id.)
On or about January 19, 2006, Marc Schoenfeld ("Schoenfeld"), then MSG's Acting General Counsel, drafted a memorandum for Rusty McCormack ("McCormack"), MSG's Senior Vice President of Human Resources, entitled "Knicks Employee Relations Issues." (McCormack Dep. 223-227, 254-56; Franco Decl., Ex. G)  The Knicks Employee Relations Issues memorandum recommended that Thomas receive "one-on-one sessions with a qualified outside expert in order to sensitize him further with regard to the concerns that his conduct could raise in a corporate environment and in light of company policy."  The Knicks Employee Relations Issues memorandum further recommended that Mills have meetings with Cablevision's human resources officers to discuss what "lessons, if any, may be learned from the facts described in the [Investigation Summary].  The Knicks Employee Relations Issues memorandum also states that Browne Sanders should be fired.  Neither Thomas nor Mills ever received the training recommended in the Knicks Employee Relations Issues memorandum. (McCormack Dep. 228-30; Franco Decl., Ex. G)

**Thomas' Reply:**  Plaintiff's response contains no additional material facts which create a genuine issue to be tried as required by Rule 56.1(b) as to the assertion contained in this paragraph.

15.     Thomas did not initiate the investigation, direct the investigation or influence its findings. (Thomas Decl. ¶ 4.)

**Plaintiff's Response:** Deny.  Thomas was interviewed by Moran and Noel on December 23, 2005 and January 11, 2006.  During those interviews, Thomas provided false and misleading information to MSG investigators and greatly influenced the findings of the investigation. Thomas repeatedly and falsely said that Browne Sanders' harassment complaints were unfounded and falsely suggested that her allegations against him arose from changes that he implemented upon joining the Knicks.  Specifically, Thomas told MSG investigators: (1) that he

6

and Browne Sanders "butted heads" because Thomas "wanted complete control of player's time
and responsibilities," which Browne Sanders resisted; (2) that Browne Sanders "wanted to be
making decisions in basketball operations," rather than running her own department; and (3) that
Browne Sanders had acted as if she were Thomas' boss. (Moran Dep. 299-300, 310-12 and
Moran Dep. Exs. 10 and 11; Noel Dep. 64-67, 94-95, 232-233 and Noel Dep. Exs. 2, 13, 14)

**Thomas' Reply:** Plaintiff's response contains no additional material facts which create a
genuine issue to be tried as required by Rule 56.1(b) as to the assertion contained in this
paragraph. Further, plaintiff's "facts" constitute mere conjecture, and plaintiff "must do more
than simply show that there is some metaphysical doubt to the material facts" to defeat summary
judgment. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).
Plaintiff has offered no fact that would allow a trier of fact to conclude that Thomas initiated the
investigation, directed the investigation, or influenced its findings; therefore, Thomas' statement
No. 15 should be admitted.

16.    Thomas was not involved in the investigation in any way other than as an
interviewee giving responses to Browne Sanders' allegations and other questions put to him.
(*Id.*)

**Plaintiff's Response:** Admit in part, deny in part. Admit that Thomas was an interviewee.
However, Thomas raised issues with MSG investigators about Browne Sanders' purported
involvement in basketball operations that the investigators did not ask him about. For example,
Thomas volunteered to Moran and Noel that a former Knicks player had allegedly complained to
Thomas about Browne Sanders inappropriately getting involved in basketball operations by
criticizing a player. (Moran Dep. 315-16; Moran Dep. Ex. 11)

**Thomas' Reply:** Plaintiff's response contains no additional material facts which create a
genuine issue to be tried as required by Rule 56.1(b) as to the assertion contained in this
paragraph.

## F.    Dolan Made the Decision to Terminate Browne Sanders

17.    The McCormack Memo referenced Browne Sanders' "poor relationship and
difficulty interacting with Mills and other members of MSG management." (Ex. G, McCormack
Memo.)

**Plaintiff's Response:** Admit that the Knicks Employee Relations Issue memorandum, drafted
by counsel, contains the above-quoted words. The memorandum also states that the
"investigation made clear that Browne Sanders and Thomas had a number of business
disagreements in philosophy and management style." (Franco Decl. Ex G)

**Thomas' Reply:** Plaintiff's response contains no additional material facts which create a
genuine issue to be tried as required by Rule 56.1(b) as to the assertion contained in this
paragraph.

18.    Rusty McCormack ("McCormack"), MSG's Senior Vice President for Human

Resources and Organization Development, issued a memorandum recommending that Browne Sanders be separated from MSG. (Ex. G, McCormack Memo.)

**Plaintiff's Response:** Admit in part, deny in part. Although McCormack signed the Knicks Employee Relations Issues memorandum, the document was actually written by Schoenfeld. According to McCormack, Schoenfeld drafted the memorandum in order to create a "record" for anticipated litigation. Furthermore, the memorandum was created after McCormack had already learned that Dolan had decided to fire Browne Sanders. (Franco Decl., Ex. G; McCormack Dep. 254-55, 260-62)  Indeed, Browne Sanders was fired on the same date that the memorandum was finalized, January 19, 2006. (Mintzer-Thomas Decl., Ex. 2)

**Thomas' Reply:**  Plaintiff's response contains no additional material facts which create a genuine issue to be tried as required by Rule 56.1(b) as to the assertion contained in this paragraph.  Further, while there may be some dispute between Browne Sanders and MSG about when the memorandum was drafted and signed, there is no dispute that: Dolan did not see the memorandum until the date of his deposition, December 11, 2006 (Reply Ex. M, Dolan Dep. 95, 196).  Moreover, Browne Sanders has adduced no fact to counter Dolan's testimony that Thomas never talked to Dolan about the observations he made during the investigation (Reply Ex. M, Dolan Dep. 86-87); and that Dolan never heard or read about Thomas' observations from McCormack, or anyone else (Reply Ex. M, Dolan Dep. 95, 108, 116, 196).

19.    Dolan formed an impression in the summer of 2005 that Browne Sanders did not have the skills to perform her job. (Ex. F, Dolan Dep. 61).

**Plaintiff's Response:** Deny. In or about the first quarter of 2005, Browne Sanders received a performance appraisal from Mills. (Mills Dep. 46)  In that appraisal, Browne Sanders received an overall performance rating of 4 on a scale of 1 to 5, denoting that plaintiff's overall performance "exceeded expected performance." (Mills Dep. Ex. 11)  In or about February 2005, MSG awarded Browne Sanders a bonus of $76,000, which represented approximately 36% of her 2004 salary. (Dolan Dep. Ex. 16)  On or about April 6, 2005, MSG raised Browne Sanders' annual base salary from approximately $213,000 to $250,000, an increase of over 17%.  Dolan approved this raise which, according to Mills, Browne Sanders received because she was doing a great job. (Dolan Dep. Ex. 4; Browne Sanders Dec. ¶ 11)  Browne Sanders was never told that she did not have the skills to do her job, that her performance was deficient or that her job was in jeopardy. (Mills Dep. 375; Pl. Dep. I 345-48; Browne Sanders Decl. ¶ 5)  Likewise, there was no document created before Browne Sanders' counsel complained of sexual harassment on her behalf that reflects that Dolan or anyone else at MSG had determined that Browne Sanders did not have the skills to do her job.  A reasonable jury could reject Dolan's self-serving testimony that he had decided that she did not have the skills to perform her job within a few months of Browne Sanders receiving a large bonus, a significant raise and an excellent performance review.

**Thomas' Reply:**  Plaintiff's response contains no additional material facts which create a genuine issue to be tried as required by Rule 56.1(b) as to the assertion contained in this paragraph.

20.    Dolan noted that Browne Sanders had displayed an unacceptable level of

performance at a budget meeting, where she showed a lack of understanding of the budgeting process. (*Id.* at 186).

**Plaintiff's Response:** Deny. Browne Sanders' performance at the budget meetings was not unacceptable, and she was never told by anyone that she showed a "lack of understanding of the budgeting process." (Pl. Dep. I 345-48; Pl. Dep. II 139-41, 378-79) As discussed above (see ¶ 19, supra), a jury could conclude that Dolan's purported criticism of Browne Sanders' performance is not genuine and that it is a pretext to justify Browne Sanders' retaliatory dismissal.

**Thomas' Reply:** Plaintiff's response contains no additional material facts which create a genuine issue to be tried as required by Rule 56.1(b) as to the assertion contained in this paragraph.

21.    Browne Sanders was unable to explain her budget, and did not understand differences between concepts having to do with capital and operating expenses. (*Id.*)

**Plaintiff's Response:** Deny. Browne Sanders was not criticized for her presentation of the budget, and she understood the concepts of capital and operating expense at all times. (See response to ¶¶ 19-20, supra)

**Thomas' Reply:** Plaintiff's response contains no additional material facts which create a genuine issue to be tried as required by Rule 56.1(b) as to the assertion contained in this paragraph.

22.    Hank Ratner ("Ratner"), Vice-Chairman of MSG, consistently expressed his opinion that Browne Sanders should be fired, from July 2005 through her termination date. (*Id.* at 188.)

**Plaintiff's Response:** Deny. Hank Ratner ("Ratner") admits that he never expressed any criticism of Browne Sanders to her directly. (Ratner Dep. 81-83) Ratner claims that he developed a low opinion of Browne Sanders' performance in November or December 2004 (Ratner Dep. 87), even though Browne Sanders received an excellent performance review several months later in or about March 2005. (Mills Dep. Ex. 11) Furthermore, there is not a single document reflecting that Ratner believed that Browne Sanders had any performance deficiencies, let alone that she should be dismissed. Accordingly, a jury would be entitled to reject Dolan's testimony, relied by Thomas, that Ratner had recommended Browne Sanders' dismissal in or about the summer of 2005. (See response to ¶¶ 19-21, supra)

**Thomas's Reply:** Plaintiff's response contains no additional material facts which create a genuine issue to be tried as required by Rule 56.1(b) as to the assertion contained in this paragraph.

23.    Ratner knew Brown Sanders from interacting with her at budgeting, forecasting and strategy meetings in 2004 and 2005. (Ex J, Transcript of the Deposition of Hank Ratner, 61-71, hereinafter "Ratner Dep.")

9

**Plaintiff's Response:** Admit that Browne Sanders and Ratner interacted at budget, forecast and strategy meetings in 2004 and 2005.

**Thomas' Reply:** No response necessary.

24.    Ratner formed the impression from those interactions that Browne Sanders did not have the knowledge or temperament to do the job that needed to be done. (*Id.* at 80.)

**Plaintiff's Response:** Deny. Ratner never told Browne Sanders that he believed that there was any deficiency in her job knowledge, temperament or any other aspect of her performance. (Ratner Dep. 181-83) Moreover, MSG has not produced a single document reflecting that Ratner held such a view of that he expressed it to anyone. A jury could reject Ratner's self-serving testimony that he was critical of Browne Sanders' performance. (See also response to ¶¶ 19 and 22, supra)

**Thomas' Reply:** Plaintiff's response contains no additional material facts which create a genuine issue to be tried as required by Rule 56.1(b) as to the assertion contained in this paragraph.

25.    Ratner found Browne Sanders to be resistant to change, closed minded and "very, very defensive." (*Id.* at 83.)

**Plaintiff's Response:** Deny. (See response to ¶ 24, supra)

**Thomas' Reply:** Plaintiff's response contains no additional material facts which create a genuine issue to be tried as required by Rule 56.1(b) as to the assertion contained in this paragraph.

26.    Browne Sanders failed to understand the breadth of her responsibility for business groups under her direction and did not take responsibility for the numbers, whether expense or revenue, for those groups. (*Id.* at 84-86.)

**Plaintiff's Response:** Deny. In the final performance review that Browne Sanders received at MSG in or about March 2005, she was specifically praised for her work as a P & L manager and, in the category of her "job knowledge," she was rated as "exceeded expected performance." (Mills Dep. Ex. 11; see also response to ¶¶ 22-24, supra)

**Thomas' Reply:** Plaintiff's response contains no additional material facts which create a genuine issue to be tried as required by Rule 56.1(b) as to the assertion contained in this paragraph.

27.    Ratner concluded that Browne Sanders did not have the financial skills she needed, was very territorial, and did not cooperate well with others. (*Id.* at 87.)

**Plaintiff's Response:** Deny. None of the views purportedly held by Ratner concerning

plaintiff's performance were ever conveyed to Browne Sanders. Furthermore, in Browne Sanders' most recent performance review, Browne Sanders was rated "exceeds expected performance" in the categories of "job knowledge" and "develops relationships." In the category of "manages and develops people," Browne Sanders was rated " far exceeds expected performance." (Mills Dep. Ex. 11; see also response to ¶¶ 22-26, supra)

**Thomas' Reply:** Plaintiff's response contains no additional material facts which create a genuine issue to be tried as required by Rule 56.1(b) as to the assertion contained in this paragraph.

28.     Ratner shared his concerns about Browne Sanders with Dolan and Mills, among others, in the summer of 2005. (Id. at 93, 105.)

**Plaintiff's Response:** Deny. (See response to ¶¶ 22-27, supra)

**Thomas' Reply:** Plaintiff's response contains no additional material facts which create a genuine issue to be tried as required by Rule 56.1(b) as to the assertion contained in this paragraph.

29.     When Ratner was advised by Mills toward the end of the year that Browne Sanders wanted to leave, his response was "good." (Id. at 110.)

**Plaintiff's Response:** Deny. Browne Sanders never told Mills that she wanted to leave MSG. (Pl. Dep. I 172-74) Accordingly, a jury could find that Mills did not tell Ratner that Browne Sanders wanted to leave.

**Thomas' Reply:** In November 2005, plaintiff had a meeting with Mills in which she told him that she had lost the respect and confidence of her peers and the employees that worked for her; that she felt she could no longer function in her job or perform her job for the Knicks; and that she needed Mills' help to find another job while she still had a job. (Reply Ex. O, Mills Dep. 123-25, 283-85, 300-01.)

30.     Mills concluded that Browne Sanders had deficiencies in defining a strategic direction and was unwilling or unable to focus and listen to Dolan and others with regard to the process of "branding" the Company. (Ex H, Mills Dep. 369-70.)

**Plaintiff's Response:** Deny. Mills never expressed any criticism of Browne Sanders' strategic planning skills, her "listening skills" or her "branding" skills over the course of many years of completing Browne Sanders' performance reviews. (Mills Dep. Exs. 6, 8,11)

**Thomas' Reply:** Plaintiff's response contains no additional material facts which create a genuine issue to be tried as required by Rule 56.1(b) as to the assertion contained in this paragraph.

31.     Browne Sanders attacked Dolan, saying that he did not understand the concepts. (Id. at 370.)

**Plaintiff's Response:** Deny. Browne Sanders did not "attack" Dolan for not understanding the concept of branding or any other "concepts." (Browne Sanders Decl. ¶ 6)

**Thomas' Reply:** Plaintiff's response contains no additional material facts which create a genuine issue to be tried as required by Rule 56.1(b) as to the assertion contained in this paragraph.

    32.    Browne Sanders blamed Mills for her own errors. (*Id.* at 379.)

**Plaintiff's Response:** Deny. Browne Sanders did not blame Mills for her own errors. (Browne Sanders Decl. ¶ 7)

**Thomas' Reply:** Plaintiff's response contains no additional material facts which create a genuine issue to be tried as required by Rule 56.1(b) as to the assertion contained in this paragraph.

    33.    In the latter part of 2005, before her attorneys ever contacted MSG, Mills told McCormack and Ratner that Browne Sanders had told him she could no longer do her job. (*Id.* at 420.)

**Plaintiff's Response:** Deny. Browne Sanders never told Mills that she could no longer do her job. (Pl. Dep. I 172-74) Therefore, a jury could find that Mills did not make any such statements to McCormack and Ratner.

**Thomas' Reply:** Plaintiff's response contains no additional material facts which create a genuine issue to be tried as required by Rule 56.1(b) as to the assertion contained in this paragraph.

    34.    Ratner suggested that Mills and McCormack work on a severance package for Browne Sanders. (*Id.*)

**Plaintiff's Response:** Deny. McCormack did not have any discussions with Ratner, Mills or Dolan about Browne Sanders separating from MSG. (McCormack Dep. 232) According to Dolan, there was no discussion of providing Browne Sanders with severance. (Dolan Dep. 68-69) Furthermore, there are not documents reflecting Ratner ever told Mills or McCormack to work on a severance package for Browne Sanders, or that anyone from MSG prepared a severance package for Browne Sanders. (Mills Dep. 285-86)

**Thomas' Reply:** Plaintiff's response contains no additional material facts which create a genuine issue to be tried as required by Rule 56.1(b) as to the assertion contained in this paragraph. Mills reported the conversation he had with Browne Sanders to Ratner and McCormack who eventually advised Dolan about it. (Reply Ex. O, Mills Dep. 127; Reply Ex. Q, Transcript of the Deposition of Hank Ratner, 247-49, hereinafter "Ratner Dep.")

35. Mills told Dolan that Browne Sanders had informed him she did not wish to continue working for the company and that he was going to work on an arrangement where Browne Sanders would continue working for MSG while she looked for another position. (Ex. F, Transcript of the Deposition of James Dolan, 48, hereinafter "Dolan Dep.")

**Plaintiff's Response:** Deny. Browne Sanders never told Mills that she did not wish to continue working for the company. (Pl. Dep. I 172-74) Therefore, a jury could find that Mills did not make any such statements to Dolan. Furthermore, there are no documents reflecting that Mills or anyone else ever worked on a separation "arrangement" for Browne Sanders. (Mills Dep. 285-86)

**Thomas' Reply:** Plaintiff's response contains no additional material facts which create a genuine issue to be tried as required by Rule 56.1(b) as to the assertion contained in this paragraph.

36. Browne Sanders willfully violated the company's policies and had undermined the investigation of her complaints by attempting to influence the statements of her direct reports. (*Id.* at 74).

**Plaintiff's Response:** Deny. Neither MSG or Dolan has ever identified any company policy that Browne Sanders purportedly violated by discussing her complaints of harassment with her direct reports or colleagues. Furthermore, Browne Sanders' communications with her colleagues concerning her complaints of sexual harassment constitute protected activity under the anti-discrimination laws. See Memorandum of Law In Support of Plaintiff's Motion For Partial Summary Judgment, dated April 27, 2007, previously submitted to the Court.

**Thomas' Reply:** Plaintiff's response contains no additional material facts which create a genuine issue to be tried as required by Rule 56.1(b) as to the assertion contained in this paragraph.

37. Dolan made the decision to terminate Browne Sanders. (*Id.* at 85.)

**Plaintiff's Response:** Admit that Dolan made the decision to terminate Browne Sanders' employment with MSG.

**Thomas' Reply:** No response necessary.

38. Dolan took into account Browne Sanders' poor performance, her tampering with the investigation of her complaint, and her demand for a $6,500,000.00 severance payment in reaching his decision (*Id.* at 188-90.)

**Plaintiff's Response:** Admit in part, deny in part. Admit that Dolan claims to have considered Browne Sanders' work performance, her alleged tampering with the investigation of her sexual harassment complaint, and her demand for a severance payment in reaching his decision. Deny that Browne Sanders' work performance was actually a motivating factor in the decision to fire Browne Sanders. Browne Sanders' work performance was consistently rated as excellent

13

throughout her employment at MSG. (Mills Dep. Exs. 6,8, 11; ¶¶ 48-51, infra) Dolan had no interactions with the plaintiff from the summer 2005 budget meetings through and including the day in January 2006 that he decided to fire her. (Dolan Dep. 121-22) Furthermore, there is no evidence that Browne Sanders "tampered" with MSG's investigation of her harassment complaint or that she ever made a "demand for a severance payment."

**Thomas' Reply:** Plaintiff's response contains no additional material facts which create a genuine issue to be tried as required by Rule 56.1(b) as to the assertion contained in this paragraph.

39.    Dolan made the termination decision on his own. (*Id.* at 87.)

**Plaintiff's Response:** Admit that Dolan made the decision to fire Browne Sanders on his own. However, MSG and Dolan were assisted in their retaliatory decision to fire Browne Sanders by Thomas, who provided MSG with a pretextual basis for her dismissal by falsely claiming, inter alia, that Browne Sanders wanted to run basketball operations instead of her own department and that Browne Sanders had acted as if she was his boss. (See ¶ 15, supra)

**Thomas' Reply:** Deny allegations of falsity. Plaintiff's response contains no additional material facts which create a genuine issue to be tried as required by Rule 56.1(b) as to the assertion contained in this paragraph. Plaintiff's "facts" constitute mere conjecture, and plaintiff "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Plaintiff asserts that the McCormack Memorandum was created after the decision to terminate was made by Dolan. MSG disputes that the memorandum was created after McCormack had learned that Dolan had decided to fire Browne Sanders. MSG maintains that McCormack signed the memorandum after Dolan decided to fire Browne Sanders (Reply Ex. R, McCormack Dep. 261-62). While there may be some dispute between Browne Sanders and MSG about when the memorandum was "created" and signed, there is no dispute that Dolan did not see the memorandum until the date of his deposition, December 11, 2006 (Reply Ex. M, Dolan Dep. 95, 196). Moreover, Browne Sanders has proffered no fact to counter Dolan's testimony that Thomas never talked to Dolan about the observations he made during the investigation (Reply Ex. M, Dolan Dep. 86-87); and that Dolan never heard or read about Thomas' observations from McCormack, or anyone else (Reply Ex. M, Dolan Dep. 95, 108, 116, 196.)

40.    Dolan did not ask Mills whether he agreed or not with the decision. (*Id.* at 171.)

**Plaintiff's Response:** Admit that Dolan did not ask Mills whether Mills agreed with the decision to fire Browne Sanders.

**Thomas' Reply:** No response necessary.

41.    Thomas did not have the authority to terminate Browne Sanders, did not recommend her termination, and was not asked for his opinion regarding any decision to terminate her. (Thomas Decl. ¶ 5.)

**Plaintiff's Response:** Admit in part, deny in part. Admit that Thomas did not have the authority to terminate Browne Sanders' employment on his own. After Browne Sanders told Thomas to stop harassing her, however, Thomas complained to Mills about Browne Sanders and told Mills that he wanted her fired. (P1. Dep. I 453-54) Furthermore, Thomas provided his "opinion" about Browne Sanders during his interviews with Moran and Noel, among other occasions. (See ¶ 15, supra)

**Thomas' Reply:** Plaintiff's response contains no additional material facts which create a genuine issue to be tried as required by Rule 56.1(b) as to the assertion contained in this paragraph. Browne Sanders has proffered no fact to counter Dolan's testimony that Thomas never talked to Dolan about the observations he made during the investigation (Reply Ex. M, Dolan Dep. 86-87); and that Dolan never heard or read about Thomas' observations from McCormack, or anyone else (Reply Ex. M, Dolan Dep. 95, 108, 116, 196). Thomas never told Mills he wanted Browne Sanders fired. (Reply Ex. O, Mills Dep. 204-05.) But even if the assertion is taken as true for purposes of the motion, plaintiff has testified that Mills' statement to her was made in early 2004. (Reply Ex. S, Browne Sanders Dep. 452-55.) Thomas asks that his assertions in statement No. 41 be admitted in their entirety.

42.    The filing of Browne Sanders' complaint in this action on January 24, 2006 triggered a number of news reports, which is not surprising as Browne Sanders convened a press conference at the time she filed suit. (Ex. D, Browne Sanders Dep. 463.)

**Plaintiff's Response:** Admit in part, deny in part. Admit that the filing of Browne Sanders' complaint in this action on January 24, 2006 triggered a number of news reports. However, Browne Sanders did not have a press conference until after Thomas' counsel and MSG's counsel made false and derogatory statements concerning Browne Sanders to the press. (See ¶ 62, infra)
**Thomas' Reply:** Deny that any statements made by Thomas' counsel and MSG's counsel was false and derogatory. Plaintiff's response contains no additional material facts which create a genuine issue to be tried as required by Rule 56.1(b) as to the assertion contained in this paragraph.

43.    At a press conference on January 25, 2006, Thomas read the following statement:

> For me, this is just wrong! All the lawyers are telling me, "Oh don't worry, this will pass, we will win in court, so don't say anything." But it is not their name, their family, their career, and their reputation that is being hurt. I did not harass Anucha, I did not discriminate against her, I did not fire her, I did not participate in any discussion that led to her being fired, she did not even work for me.
>
> I will not allow her or anybody else, man or woman, to use me as a pawn for their financial gain. My job is and always has been to get the New York Knicks back to their Championship days, and that is where my focus will remain. I needed to express myself and the truth, in spite of my able counsel, who felt being silent was the

most judicious path.

(Thomas Decl. ¶ 7.)[3]

**Plaintiff's Response:** Admit.

**Thomas' Reply:** No response necessary.

44.    On or about January 27, 2006, Thomas gave another statement to the press, which read:[4]

> I have a responsibility as president of the New York Knicks, as a
> public figure, but more importantly as a father and husband, to
> answer these charges of sexual harassment. First of all, I never,
> ever made any sexual advances toward Anucha, nor am I in love
> with Anucha, nor did I ever tell her I was in love with her, nor did I
> ever invite her to any off-site premises to have sex with her. And I
> hope that when I'm found innocent of these allegations, that you
> will write it and run it with the same intensity. I look forward to
> my day in court, where I am proven right and she is proven wrong.
> Thank you.

(*Id.*)

**Plaintiff's Response:** Admit.

**Thomas' Reply:** No response necessary.

## THOMAS' RESPONSES TO PLAINTIFF'S 56.1 STATEMENTS

45.    Browne Sanders began her employment with MSG in November 2000 as the Vice President of Marketing for the Knicks. Browne Sanders was hired by Mills, who was then the Executive Vice President for Franchise Operations for MSG. (Mills Dep. 47-49.) As Vice President of Marketing, Browne Sanders reported to Mills. (Mills Dep. 47-49)

**Thomas' Response:** Whether the facts contained in this assertion are true or untrue is not material to a determination of Thomas' motion and does not create a genuine issue to be tried as required by Rule 56.1(b) for purposes of Thomas' motion for partial summary judgment.

---

[3] In her answer to interrogatories Browne Sanders alleged that statements of both Thomas and his counsel harmed her, but she has taken no legal action against Thomas' attorneys in this regard.

[4] Thomas' 56.1 Statement inadvertently numbered this as paragraph "43."

46.    On our about January 24, 2002, Mills completed a performance evaluation for Browne Sanders for the calendar year 2001. (Mills Dep. 56 and Mills Dep. Ex. 3) In that evaluation, Mills gave Browne Sanders an overall performance rating of "outstanding," which was the best of four possible ratings. (Mills Dep. Ex. 3)

**Thomas' Response:** Whether the facts contained in this assertion are true or untrue is not material to a determination of Thomas' motion and does not create a genuine issue to be tried as required by Rule 56.1(b) for purposes of Thomas' motion for partial summary judgment.

47.    On or about March 11, 2002, MSG promoted Browne Sanders to the position of Senior Vice President ("SVP"), Marketing & Business Operations of the New York Knicks. In this new role, plaintiff continued to report to Mills, who at that point has been promoted and held the position of President, MSG Sports Team Operations. (Mills Dep. 83-85 and Mills Dep. Ex. 4) As SVP of Marketing and Business Operations, Browne Sanders also had a so-called dotted line reporting relationship to Scott Layden ("Layden"), who was then the President of Basketball Operations for the Knicks. Browne Sanders was responsible for keeping Layden informed about the important business developments related to the team. (P1. Dep. I 35-40, 460-61)

**Thomas' Response:** Whether the facts contained in this assertion are true or untrue is not material to a determination of Thomas' motion and does not create a genuine issue to be tried as required by Rule 56.1(b) for purposes of Thomas' motion for partial summary judgment.

48.    On or about January 24, 2003, Mills completed an executive performance appraisal for Browne Sanders for the calendar year 2002. In that evaluation, Mills gave Browne Sanders an overall performance rating of "outstanding," which was the best of four possible ratings. (Mills Dep. Ex. 6)

**Thomas' Response:** Whether the facts contained in this assertion are true or untrue is not material to a determination of Thomas' motion and does not create a genuine issue to be tried as required by Rule 56.1(b) for purposes of Thomas' motion for partial summary judgment.

49.    On our about February 14, 2003, Mills completed a performance planning and appraisal document in connection with MSG's Management Performance Incentive Plan ("MPIP"). In that document, Mills assigned Browne Sanders an overall rating of 5 on a scale of 1 to 5 (where 5 is the highest rating), denoting that Browne Sanders has "far exceeded expected performance." (Mills Dep. Ex. 7)

**Thomas' Response:** Whether the facts contained in this assertion are true or untrue is not material to a determination of Thomas' motion and does not create a genuine issue to be tried as required by Rule 56.1(b) for purposes of Thomas' motion for partial summary judgment.

50.    In or about early 2004, in connection with evaluation Browne Sanders' performance for the calendar year 2003 for purposes of the MPIP, Mills assigned Browne Sanders an overall rating of 5, which was the highest possible rating. (Mills Dep. Ex. 8)

**Thomas' Response:** Whether the facts contained in this assertion are true or untrue is not material to a determination of Thomas' motion and does not create a genuine issue to be tried as required by Rule 56.1(b) for purposes of Thomas' motion for partial summary judgment.

51.    In or about the first quarter of 2005, Mills completed a performance appraisal for Browne Sanders for the calendar year 2004. (Mills Dep. 46) In that document, Mills assigned Browne Sanders and overall performance rating of 4 on a scale of 1 to 5, denoting that plaintiff's overall performance for 2004 "exceeded expected performance." Mills also wrote in that review that "Anucha effectively managed through the organizational and philosophical changes when Isiah Thomas was hired. She has managed through the organizational and philosophical changes when Isiah Thomas was hired. She has managed to derive upon key player involvement in team business and marketing initiatives with less player availability." (Mills Dep. Ex. 11.)

**Thomas' Response:** Whether the facts contained in this assertion are true or untrue is not material to a determination of Thomas' motion and does not create a genuine issue to be tried as required by Rule 56.1(b) for purposes of Thomas' motion for partial summary judgment.

52.    During the course of Browne Sanders' employment with MSG, she received many professional and personal honors, including being named by the Sports Business Journal as one of the top 40 professionals under 40 years old in the sports field. (Mintzer Thomas Decl., Ex. 1: Browne Sanders Decl. ¶ 2.)

**Thomas' Response:** Whether the facts contained in this assertion are true or untrue is not material to a determination of Thomas' motion and does not create a genuine issue to be tried as required by Rule 56.1(b) for purposes of Thomas' motion for partial summary judgment.

53.    On or about December 22, 2003, MSG hired Thomas as the President of Basketball operations for the Knicks. Before joining the Knicks, Thomas was a hall-of-fame basketball player, and executive, a television basketball analyst and coach. (Thomas Dep. 79-80, 89-90, 1010-02, 103-04) When Thomas joined MSG, he was given a multi-year contract until July 2007 (Mintzer-Thomas Decl., Ex. 3) and became part of MSG's Office of the Chairman, a six member group of MSG's most senior managers led by MSG Chairman Dolan. (Dolan Dep. 45-46) Browne Sanders continued to have the same dotted line reporting relationship to Thomas that had to Layden. (Pl. Dep. I 40)

**Thomas's Response:** Whether the facts contained in this assertion are true or untrue is not material to a determination of Thomas' motion and does not create a genuine issue to be tried as required by Rule 56.1(b) for purposes of Thomas' motion for partial summary judgment.

54.    Beginning in early 2004, Thomas began sexually harassing Browne Sanders by, among other things, referring to her by demeaning and sexist epithets, such as "bitch" and "ho," as well as cursing at her in their private conversations. (Pl. Dep. I 220-26) Browne Sanders complained to Mills on multiple occasions about Thomas' conduct, and she also told Thomas that he should act like a professional and treat her with respect. (Id.; Browne Sanders Decl. ¶ 9)

**Thomas' Response:** Whether the facts contained in this assertion are true or untrue is not

material to a determination of Thomas' motion and does not create a genuine issue to be tried as required by Rule 56.1(b) for purposes of Thomas' motion for summary judgment. Further, the deposition testimony of neither Thomas nor Mills corroborates Browne Sanders' purported factual statements. (Reply Ex. O, Mills Dep. 180-81; Reply Ex. T, Transcript of the Deposition of Isiah Thomas, 177, 192-93, hereinafter "Thomas Dep.")

55.    After Browne Sanders complained about Thomas' behavior, Thomas told Mills that he wanted Browne Sanders fired. Thomas also complained about Browne Sanders' performance to Joseph Favorito, then the Knicks Vice President for Public Relations. (Pl. Dep. I 452-55; Mills Dep. 199-201; Favorito Dep. 86-88.)

**Thomas's Response:** Whether the facts contained in this assertion are true or untrue is not material to a determination of Thomas' motion and does not create a genuine issue to be tried as required by Rule 56.1(b) for purposes of Thomas' motion for summary judgment. Plaintiff claims that Mills told her that Thomas told him he wanted her fired. Mills denies ever making the statement. (Reply Ex. O, Mills Dep. 204-05.) Even if the statement was made, according to Browne Sanders' own testimony, it was made in early 2004. (Reply Ex. S, Browne Sanders Dep. I 452-55, II 119.) Further, Favorito testified that Thomas criticized Browne Sanders' "disorganization" but "was [not] specifically critical [of] Anucha [Browne Sanders]. . . [b]ut since. . . [she] was the head of the department a lot of it laid on her shoulders. . . " (Reply Ex. U, Transcript of the Deposition of Joseph Favorito, 86-87, hereinafter "Favorito Dep.")

56.    Beginning in late December 2004 and continuing throughout 2005, Thomas' treatment of Browne Sanders changed. Instead of cursing at Browne Sanders and treating her with hostility, Thomas began to profess his love for her, to make sexual advances toward her, and to make comments about her physical appearance such as telling her that she was "beautiful," "attractive" and "easy on the eyes." (Pl. Dep. I 335-36, 397-401, 426-27; Levy Dep. 20-23)

**Thomas' Response:** Whether the facts contained in this assertion are true or untrue is not material to a determination of Thomas' motion and does not create a genuine issue to be tried as required by Rule 56.1(b) for purposes of Thomas' motion for summary judgment. Thomas specifically testified that he did not profess love for Browne Sanders, make comments about her physical appearance or make sexual advances towards her. (Reply Ex. T, Thomas Dep. 65, 68-69, 70-71, 212-13, 214, 258-59, 273-74.)

57.    On or about November 28, 2005, plaintiff had learned from a member of her staff that Knicks player Stephon Marbury as repeatedly refereed to her as a "black bitch." (Mintzer-Thomas Decl., Ex.9)

**Thomas' Response:** Whether the facts contained in this assertion are true or untrue is not material to a determination of Thomas' motion and does not create a genuine issue to be tried as required by Rule 56.1(b) for purposes of Thomas' motion for summary judgment.

58.    On December 22, 2005, counsel for Browne Sanders met with counsel for MSG. (Mintzer-Thomas Decl., Ex. 8, at ¶ 25) At that meeting, Browne Sanders' attorneys stated

among other things, that Browne Sanders had been subjected to sexual harassment at MSG and provided MSG's counsel with information concerning Browne Sanders' claims. (Id.)

**Thomas' Response:** Whether the facts contained in this assertion are true or untrue is not material to a determination of Thomas' motion and does not create a genuine issue to be tried as required by Rule 56.1(b) for purposes of Thomas' motion for summary judgment.

59.    Shortly after the December 22, 2005 meeting between plaintiff's counsel and MSG's counsel, MSG began an internal investigation of plaintiff's sexual harassment complaint. MSG's internal investigation was conducted by, among others, Noel and Moran. (Mintzer-Thomas Decl., Ex. 25, at ¶ 7)

**Thomas' Response:** Admit.

60.    Moran and Noel interviewed plaintiff on January 6, 2006, at which times Browne Sanders provided substantial detail about her sexual harassment complaint. (Noel Dep. Ex. 14)

**Thomas' Response:** Defendants dispute that plaintiff provided "substantial detail" about her sexual harassment complaint. (Mintzer Affidavit in Support of Plaintiff's Motion for Partial Summary Judgment, Exh. 23.) Moreover, whether the facts contained in this assertion are true or untrue is not material to a determination of Thomas' motion and does not create a genuine issue to be tried as required by Rule 56.1(b) for purposes of Thomas' motion for partial summary judgment. Further, Noel Dep. Ex. 14 is a memorandum to Rusty McCormack from Rochelle Noel and John Moran entitled "Summary of Harassment Investigation." Included in the memorandum, among other things, is a summary of Browne Sanders' allegations.

61.    Moran and Noel also interviewed Thomas on December 23, 2005 and January 11, 2006, during which Thomas falsely denied most of Browne Sanders' allegations. (Moran Dep. Exs. 10 and 11 and Noel Dep. Exs. 2, 13, 14) In those interviews Thomas also volunteered numerous criticisms about Browne Sanders as set forth above. (See ¶ 15, supra)

**Thomas' Response:** Admit the dates of the interview of Thomas. Deny allegations of falsity. Plaintiff's assertions contain conclusions and not material facts as required by Rule 56.1(b).

62.    On January 24, 2006, plaintiff filed this action. That same day, lawyers for Thomas and MSG made statements to the press on behalf of their respective clients. MSG claimed that plaintiff's claim was "fabricated and outrageous" and that Browne Sanders was "fired because of an inability to fulfill her professional responsibilities." (Rule 56.1 Statement in Support of Defendants Madison Square Garden, L.P. and James L. Dolan's Motion for Partial Summary Judgment ("MSG 56.1 Statement"), dated April 27, at ¶ 54) Thomas' lawyers stated that plaintiff's claims were "a blatant attempt by Anucha Browne Sanders to get a large sum of money from Madison Square Garden by taking advantage of the celebrity status of our client." (Mintzer-Thomas Decl., Ex. 4) Plaintiff responded to these smears in a statement that she read at a press conference on January 25, 2006. That same day, Thomas held a press conference in which he falsely denied plaintiff's claims and asserted that Browne Sanders was trying to use him as a "pawn" for her "financial gain." (Rule 56.1 Statement of Isiah Thomas ("Thomas 56.1

Statement"), dated May 4, 2007, at ¶ 43, submitted in support of Thomas' motion for partial summary judgment) Two days later, Thomas held another press conference, in which he again falsely denied Browne Sanders' claims. (Thomas 56.1 Statement ¶ 44)

**Thomas' Response:** Admit statements made by MSG and Thomas, deny falsity. Further, plaintiff's "facts" constitute mere conjecture, and plaintiff "must do more than simply show that there is some metaphysical doubt to the material facts" to defeat summary judgment. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

63.    Thomas' Answer to plaintiff's Complaint specifically alleges that "plaintiff's inability to accept the changes that occurred under Thomas' leadership fueled her antipathy toward Thomas and are reflected by this meritless lawsuit." (Franco Decl., Ex. B at 2)

**Thomas' Response:** Admit.

64.    In February 2006, Browne Sanders filed a charge of discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC") against MSG based on the same events described in her original Complaint, including her claims that she was sexually harassed and that she was fired for engaging in protected activity. (Mintzer-Thomas Decl., Ex. 5) In April 2006, MSG submitted a Position Statement to the EEOC concerning Browne Sanders' charge. In its Position Statement, MSG represented that Browne Sanders "refused to accept and adapt to changes in procedure after Isiah Thomas joined the Knicks in December 2003 as President, Basketball Operations." According to MSG, Browne Sanders was fired, at least in part, because she refused "to adapt to the changes instituted by Thomas." (Mintzer-Thomas Decl., Ex. 6)

**Thomas' Response:** Admit that Browne Sanders filed a charge of discrimination and that MSG submitted a Position statement that stated, "In sum, Browne Sanders' inability to work with other MSG executives, including Thomas, and to adapt to the changes instituted by Thomas, combined with other significant professional conflicts and her repeated failures to effectively perform the management and financial aspects of her job, led to her termination in January 2006."

65.    Thomas falsely stated to the representative of the EEOC who was investigating Browne Sanders' charge of discrimination that Browne Sanders "did not like" the organizational changes that Thomas has implemented within basketball operations (Mintzer-Thomas Decl., Ex. 7)

**Thomas' Response:** Deny. (Reply Ex. T, Thomas Dep. 47.)

66.    Browne Sanders did not object to the managerial changes that Thomas instituted concerning the functioning of the basketball operations department. Nor did Browne Sanders seek to have a greater role in basketball operations. Browne Sanders and Mills did discuss Browne Sanders' concerns that Thomas was not making the basketball operations staff, including the players and himself, available for business operations activities. (Browne Sanders Decl. ¶ 10)

**Thomas' Response:** Deny. (Reply Ex. O, Mills Dep. 170-79, 194-201, 227-231, 246-257;

Reply Ex. U, Favorito Dep. 109-10, 136-38; Reply Ex. V, Transcript of the Deposition of Barry Watkins, 75-84, 92-109, 115, hereinafter "Watkins Dep.")

67.    At Dolan's deposition in December 2006, Dolan claimed that he made the decision to fire Browne Sanders from MSG, and he did so on his own, without consulting anyone else. (Dolan Dep. 87) Dolan's stated reasons for firing Browne Sanders are now, among other things, that Browne Sanders purportedly requested six million dollars in severance and that she allegedly violated MSG's policies by tampering with the internal investigation of her sexual harassment complaint. (Dolan Dep. 73-94, 177-192)

**Thomas' Response:** Plaintiff misstates and selectively quotes in a misleading manner from Dolan's testimony. (Reply Ex. M, Dolan Dep. 48, 53-62, 64-66, 73-77, 84-87, 171, 178-79, 185-86, 191-92, 197-98.)

68.    In fact, Browne Sanders never made a "severance demand" to MSG. Rather, her counsel and MSG's counsel attempted to settle her claims of sexual harassment. (Mintzer-Thomas Decl., Ex. 8, at ¶¶ 25-29) Furthermore, Browne Sanders did nothing to "tamper" with MSG's investigation. Rather, at various times in 2004 and 2005, Browne Sanders spoke with other MSG employees about, among other things, interactions and difficulties that she has with Thomas and Marbury. (Buchholz Dep. 124-33; Brown Dep. 151-59, 161-73, 179-82; Nix Dep. 76-81, 91-95, 140-48, 166-67, 281-82)

**Thomas' Response:** Whether the facts contained in this assertion are true or untrue is not material to a determination of Thomas' motion and does not create a genuine issue to be tried as required by Rule 56.1(b) for purposes of Thomas' motion for partial summary judgment.

69.    Although Browne Sanders has applied for jobs with hundreds of potential employers in a wide variety of businesses, she is presently working as an independent contractor for a non-profit organization. Her annual compensation is less than half of what she had earned at MSG. Moreover, Browne Sanders has repeatedly been asked about the circumstances of her dismissal for MSG by prospective employers and executive recruiters, some of whom have specifically referred to her dismissal from MSG in discussing potential jobs that she ultimately was not offered. (Browne Sanders Decl. ¶¶ 3-4)

**Thomas' Response:** Admit for purposes of this motion only that plaintiff has applied for jobs with hundreds of potential employers in a wide variety of businesses. Admit for purposes of this motion only that she is presently working as an independent contractor for a non-profit organization and that her annual compensation is less than half of what she earned at MSG. The remainder of the assertion is based on hearsay and does not create a genuine issue to be tried as required by Rule 56.1(b) for the purposes of Thomas' motion for summary judgment.

Dated: New York, New York
       June 8, 2007

                                    EISENBERG & BOGAS, P.C.


                                    By: _____
                                        Sue Ellen Eisenberg (SE-4713) – *admitted pro hac vice*
                                        Lucetta Franco (LF-7638) - *admitted pro hac vice*
                                        Eisenberg & Bogas, P.C.
                                        33 Bloomfield Hills Parkway, Suite 145
                                        Bloomfield Hills, Michigan  48304-2945
                                        (248) 258-6080


                                    BERKE-WEISS & PECHMAN LLP


                                    By: _____
                                        Laurie Berke-Weiss (LB-3445)
                                        Louis Pechman (LP-6395)
                                        Berke-Weiss & Pechman LLP
                                        488 Madison Avenue, 11th Floor
                                        New York, NY  10022
                                        (212) 583-9500

                                    *Attorneys for Defendant Isiah Thomas*


TO:    Anne C. Vladeck (AV-4857)
       Kevin T. Mintzer (KM-4741)
       Karen Cacace (KC-3184)
        Vladeck, Waldman,
       Elias & Engelhard, P.C.
       Attorneys for Plaintiff
       1501 Broadway, Suite 800
       New York, NY  10036
       (212) 403-7300

Ronald M. Green (RG-7766)
Theresa M. Holland (TH- 6973)
Brian G. Cesaratto (BC- 5464)
Epstein Becker & Green, P.C.
Attorneys for Defendants Madison Square
  Garden, L.P. and James L. Dolan
250 Park Avenue
New York, NY  10177
(212) 351-4500

Amber L. Kagan (AK-7973)
Morgan, Lewis & Bockius LLP
Attorneys for Defendants Madison Square
  Garden, L.P. and James L. Dolan
101 Park Avenue
New York, NY  10178
(212) 309-6000