UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

ANUCHA BROWNE SANDERS,

                Plaintiff,

    - against -

MADISON SQUARE GARDEN, L.P., ISIAH LORD
THOMAS III and JAMES L. DOLAN,

                Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

06 Civ. 0589 (GEL)

ECF CASE

---

## MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT MADISON SQUARE GARDEN, L.P.'s MOTION TO AMEND ITS ANSWER TO ADD A COUNTERCLAIM

---

VLADECK, WALDMAN, ELIAS
   & ENGELHARD, P.C.
Attorneys for Plaintiff
1501 Broadway, Suite 800
New York, New York  10036
(212) 403-7300

245116 v3

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ...................................................................................ii

PRELIMINARY STATEMENT ...........................................................................1

STATEMENT OF FACTS ...................................................................................1

ARGUMENT ........................................................................................................6

    I.     LEGAL STANDARDS GOVERNING MSG'S MOTION TO AMEND............6

    II.    MSG'S COUNTERCLAIM FAILS AS A MATTER OF LAW .........................7

          A.    The "Faithless Servant" Doctrine............................................................7

          B.    Any Claim That Browne Sanders Breached Her Duty Of Loyalty By Engaging In Unspecified "Business Activities" Is Futile ...................9

          C.    Any Claim That Browne Sanders Breached Her Duty Of Loyalty By Engaging In "Tax Fraud" Is Futile ...................................................11

          D.    MSG's Policies Do Not Create Fiduciary Obligations ...........................11

          E.    The New York Labor Law Prohibits Forfeiture of Earned Wages .........13

    III.   MSG'S COUNTERCLAIM WAS BROUGHT IN BAD FAITH.......................14

    IV.   THE PROPOSED AMENDMENT IS UNTIMELY AND WOULD PREJUDICE BROWNE SANDERS ..............................................................17

CONCLUSION ....................................................................................................21

# TABLE OF AUTHORITIES

## CASES

Abramson v. Dry Goods Refolding Co.,
    166 N.Y.S. 771 (1st Dep't 1917)................................................................7

Acevedo v. Surles,
    778 F. Supp. 179 (S.D.N.Y. 1991)...........................................................15

Affiliated FM Ins. Co. v. Jou Jou Designs, Inc.,
    No. 90 Civ. 8262, 1997 WL 150139 (S.D.N.Y. March 28, 1997)................20

American Federal Group, Ltd. v. Rothenberg,
    No. 91 Civ. 7860, 2003 WL 22349673 (S.D.N.Y. Oct. 14, 2003).................9

Angello v. Labor Ready, Inc.,
    825 N.Y.S.2d 674 (N.Y. 2006) ................................................................13

Ansam Associates v. Cola Petroleum, Ltd.,
    760 F.2d 442 (2d Cir. 1985).....................................................................17

Barrows v. Forest Laboratories,
    742 F.2d 54 (2d Cir. 1984) ......................................................................17

Berman v. Parco,
    986 F. Supp. 195 (S.D.N.Y. 1997)...........................................................18

Berry v. Stevinson Chevrolet,
    74 F.3d 980 (10th Cir. 1996) ...................................................................15

Bon Temps Agency, Ltd. v.  Greenfield,
    622 N.Y.S.2d 709 (2d Dep't 1995)..............................................................8

Burke v. Steinmann,
    No. 03 Civ. 1390 (GEL), 2004 WL 1117891
    (S.D.N.Y. May 18, 2004)..........................................................................11

Burlington Northern & Santa Fe Railway Co. v. White,
    126 S. Ct. 2405 (2006)........................................................................14, 15

Burnett Process, Inc. v. Richlar Industries, Inc.,
    390 N.Y.S.2d 282 (4th Dep't 1976) ............................................................8

Cresswell v. Sullivan & Cromwell,
    922 F.2d 60 (2d Cir. 1990) ................................................................. 17, 18

Durham Life Ins. Co. v. Evans,
    166 F.3d 139 (3d Cir. 1999) ................................................................. 15

EEOC v. Levi Strauss & Co.,
    515 F. Supp. 640 (N.D. Ill. 1981) ........................................................ 15

EEOC v. Virginia Carolina Veneer Corp.,
    495 F. Supp. 775 (W.D. Va. 1980) ...................................................... 15

Electchester Housing Project, Inc. v. Rosa,
    639 N.Y.S.2d 848 (2d Dep't 1996) ...................................................... 15

Feiger v. Iral Jewelry, Ltd.,
    394 N.Y.S.2d 626 (N.Y. 1977) ................................................... 7, 8, 9, 13

Foman v. Davis,
    371 U.S. 178 (1962) .......................................................................... 6

Frederic M. Reed & Co. v. Irvine Realty Group, Inc.,
    723 N.Y.S.2d 19 (1st Dep't 2001) ........................................................ 8

H.L. Hayden Co., v. Siemens Medical Sys.,
    112 F.R.D. 417 (S.D.N.Y. 1986) ......................................................... 17

Hudacs v. Frito-Lay, Inc.,
    660 N.Y.S.2d 700 (N.Y. 1997) ............................................................ 14

Jacques v. DiMarzio,
    216 F. Supp. 2d 139 (E.D.N.Y. 2002) ............................................... 16, 17

Jacques v. DiMarzio, Inc.,
    200 F. Supp. 2d 151 (E.D.N.Y. 2002) ................................................. 16

KTR Newmark Real Estate, LLC v. Schleider,
    No. 602546/03, 2005 WL 5088283 (Sup. Ct., N.Y. Co. Feb. 16, 2005) .......... 8

Kanyi v. United States,
    No. 99 CV 5851, 2002 WL 1471648 (E.D.N.Y. May 3, 2002) ..................... 20

Kaul v. Hanover Direct, Inc.,
    296 F. Supp. 2d 506 (S.D.N.Y. 2004) ................................................. 16

Kreinik v. Showbran Photo, Inc.,
 No. 02 Civ. 1172, 2003 WL 22339268 (S.D.N.Y. Oct. 14, 2003)................................15

Krumme v. Westpoint Stevens Inc.,
 143 F.3d 71 (2d Cir. 1998) ......................................................... 14, 17, 19, 20

Lamdin v. Broadway Surface Advertising Corp.,
 272 N.Y. 133, 5 N.E.2d 66 (1936) ...................................................................7

Lobosco v. New York Tel. Co./NYNEX,
 727 N.Y.S.2d 383 (N.Y. 2001) ......................................................................12

Maas v. Cornell Univ.,
 699 N.Y.S.2d 716 (N.Y. 1999) ......................................................................12

Mal Dunn Associates, Inc. v. Kranjac,
 539 N.Y.S.2d 430 (2d Dep't 1988)....................................................................8

Maritime Fish Products, Inc. v. World-Wide Fish Products, Inc.,
 474 N.Y.S.2d 281 (1st Dep't 1984)................................................................8, 9

Martin v. Supreme Court of the State of New York,
 644 F. Supp. 1537 (N.D.N.Y. 1986) ...............................................................16

McCarthy v. Dun & Bradstreet Corp.,
 482 F.3d 184 (2d Cir. 2007)........................................................................6, 18

McCoy v. Goldberg,
 845 F. Supp. 155 (S.D.N.Y. 1994)...................................................................20

Metal & Salvage Assoc., Inc. v. Siegel,
 503 N.Y.S.2d 26 (1st Dep't 1986) ....................................................................8

Murray v. Beard,
 102 N.Y. 505, 7 N.E. 553 (1886) .................................................................9, 11

Phansalkar v. Andersen Weinroth & Co., L.P.,
 344 F.3d 184 (2d Cir. 2003)........................................................ 7, 8, 9, 11, 14, 15

Priestly v. American Airlines, Inc.,
 No. 89 Civ. 8265, 1991 WL 64459 (S.D.N.Y. April 12, 1991)..................................18

Rent-A-Center, Inc. v. Mamoraneck Ave. Corp.,
 215 F.R.D. 100 (S.D.N.Y. 2003) ......................................................................6

Schneider Leasing Plus, Inc. v. Stallone,
    569 N.Y.S.2d 126 (2d Dep't 1991)..................................................................8

Schnepf v. Siegel,
    No. 98 Civ. 1255, 1998 WL 474132 (S.D.N.Y. July 11, 1998).........................18, 19, 20

Schwartz v. Leonard,
    526 N.Y.S.2d 506 (2d Dep't 1988)..................................................................7

Smith v. P.O. Canine Dog Chas,
    No. 02 6240, 2004 WL 2202564 (S.D.N.Y. Sept. 28, 2004).....................................6, 10

Stoner v. New York City Ballet Co.,
    No. 99 Civ. 0196, 2002 WL 523270 (S.D.N.Y. Apr. 8, 2002)..................................6, 10

Sullivan & Cromwell LLP v. Charney,
    15 Misc.3d 1128(A), 2007 WL 1240437 (Sup. Ct., N.Y. Co. April 30, 2007)................7

Swierkiewicz v. Sorema N.A.,
    534 U.S. 506 (2002)..................................................................................9

Tulummello v. W.J. Taylor Intern. Constr. Co., Inc.,
    446 N.Y.S.2d 673 (4th Dep't 1981) ................................................................8

Urquiola v. Linen Supermarket, Inc.,
    No. 94-14-Civ-ORL-19, 1995 WL 266582 (M.D. Fla. Mar. 23, 1995).........................15

Western Elec. Co. v. Brenner,
    392 N.Y.S.2d 409 (N.Y. 1977) ....................................................................11

Westwood Chemical Co., Inc. v. Kulick,
    570 F. Supp. 1032 (S.D.N.Y. 1983)................................................................8

In re Wireless Tel. Ser. Antitrust Litig.,
    No. 02-Civ-2637, 2004 WL 2244502 (S.D.N.Y. Oct. 6, 2004)..................................20

Yankelevitz v. Cornell Univ.,
    No. 95 Civ 4593, 1996 WL 447749 (S.D.N.Y. Aug. 7, 1996) ..................................15

**STATUTES**

42 U.S.C. § 2000e-3(a)...............................................................................14

Fed. R. Civ. P. 11 ......................................................................................16

Fed. R. Civ. P. 13(e)..................................................................................................19

Fed. R. Civ. P. 16......................................................................................................6

**MISCELLANEOUS**

1 M. Silberberg, Civil Practice in the Southern District of New York § 6.26............................18

Restatement (Second) of Agency § 388 (1958).....................................................................11

Restatement (Second) of Agency § 469 (1958)......................................................................7

## PRELIMINARY STATEMENT

In a transparent attempt to salvage a crumbling defense and to further retaliate against plaintiff Anucha Browne Sanders ("plaintiff" or "Browne Sanders") for asserting her legal rights to be protected from discrimination, defendant Madison Square Garden, L.P. ("MSG") has moved to amend its Answer to assert a frivolous counterclaim against Browne Sanders for allegedly acting as a "faithless servant." According to MSG, Browne Sanders engaged in "business activities" or committed "tax fraud" in violation of MSG's policies. The Court should deny the motion because MSG's counterclaim (1) is legally baseless; (2) was brought in bad faith to further retaliate against Browne Sanders; and (3) if granted, will result in substantial prejudice to Browne Sanders as fact discovery has closed, motions for summary judgment have been filed and a trial date has been set.

## STATEMENT OF FACTS[1]

Background

On January 24, 2006, Browne Sanders filed a complaint alleging that, while employed by MSG, she was sexually harassed by Isiah Lord Thomas III ("Thomas"), President of Basketball Operations for MSG and Head Coach of the New York Knickerbockers ("Knicks"), a National Basketball Association franchise owned by MSG. Among other things,

---

[1] For purposes of this memorandum, Browne Sanders relies on the exhibits attached to the Declaration of Kevin Mintzer in Opposition to Madison Square Garden, L.P. and James L. Dolan's Motion for Partial Summary Judgment and Madison Square Garden, L.P.'s Motion for Leave to Amend Its Answer ("Mintzer MSG Dec."). Excerpts of the first and second day of plaintiff's deposition are referred to as "Pl. Dep. I" and "Pl. Dep. II." Excerpts of the depositions of all other witnesses are referred to by the person's name, followed by "Dep. __." Excerpts of the deposition transcripts of plaintiff, Hank Ratner ("Ratner"), ███████████, ████████, Brock Weaver ("Weaver"), Leon Reimer ("Reimer"), Roy Sanders ("Sanders"), Victoria Browne Moore ("Browne Moore"), Ruth Browne ("Browne"), Melinda Gerrard ("Gerrard"), Jeffrey Nix ("Nix") and Rick Singer ("Singer") are attached to the Mintzer MSG Dec.

Thomas called Browne Sanders a "bitch" and a "ho," and made sexual advances toward Browne Sanders, repeatedly professing his love for her.    Shortly after Browne Sanders' attorneys first contacted MSG regarding Thomas' harassment, MSG fired her.[2]

On November 22, 2006, as part of discovery and pursuant to the Court's order of November 6, 2006, Browne Sanders produced to MSG her tax returns for the period 2000 through 2005.    Although Browne Sanders did not operate a direct marketing business at any point during those years, her then accountant, ███████████ included a Schedule C form on each return that he prepared for Browne Sanders claiming expenses for a direct marketing business. The returns were filed erroneously because Browne Sanders did not review them before she signed them.    Upon learning of these misstatements, Browne Sanders hired a new accountant and followed his advice in correcting the erroneous returns.[3]

Nonetheless, according to MSG, upon receiving these tax returns, it purportedly "became aware of Plaintiff's improper, unlawful and disloyal behavior." (Memorandum of Law in Support of Defendant Madison Square Garden, L.P.'s Motion for Leave to Amend Its Answer ("MSG Mem.") 4)   Indeed, on November 29, 2006, MSG threatened Browne Sanders with motion practice concerning the company's purported belief that the tax returns demonstrated that Browne Sanders "violated company policies sufficient to warrant her termination." (Mintzer MSG Dec. Ex. 6)   At the November 30, 2006 deposition of MSG

---

[2] The U.S. Equal Employment Opportunity Commission ("EEOC") conducted an independent investigation and found evidence that Browne Sanders was subjected to "severe and pervasive verbal sexual harassment," that MSG "did not take reasonable care to prevent or correct discrimination and harassment in the workplace," and that plaintiff was "retaliated against and terminated once the sexual harassment discrimination against her was reported to" MSG. (Mintzer MSG Dec. Ex. 7)

[3] Browne Sanders produced the corrected returns to MSG on November 24, 2006.

employee Ratner, MSG reaffirmed its intent to file a motion concerning Browne Sanders' tax returns, and do so quickly, but refused to provide any details about such motion. (Ratner Dep. 4 ("We intend to observe the terms of the confidentiality stipulation in connection with the filing when we make it.  We're probably not going to make that filing today."))

Inexplicably, despite being aware of Browne Sanders' alleged misconduct, MSG did not assert a counterclaim for breach of duty of loyalty in its December 1, 2006 Answer to Plaintiff's Second Amended Complaint, filed nine days after it admittedly received plaintiff's tax returns.  MSG did, however, conduct discovery in an attempt to "further develop information regarding [plaintiff's] misconduct."  (MSG Mem. 9)  In that regard, MSG deposed ███████ as well as plaintiff's two other tax preparers, Weaver and Reimer.

Discovery Showed That Browne Sanders Did Not Breach Her Duty Of Loyalty To MSG

MSG did not uncover any evidence that plaintiff engaged in "business activities" or committed "tax fraud," let alone evidence that she committed even a single act in the performance of her duties for MSG that amounted to a breach of duty of loyalty.

In particular, at her deposition Browne Sanders flatly denied operating a direct marketing business at any point from 2001 through 2004. (Pl. Dep. II 44)  Six other witnesses, including, Browne Sanders' husband (Sanders), her two sisters (Browne Moore and Browne), her friend (Gerrard), the Director of Scouting for the Knicks (Nix), and her former supervisor at IBM (Singer), all corroborated Browne Sanders' testimony that she did not operate a business while employed by MSG.  (Sanders Dep. 291-92; Browne Moore Dep. 229; Browne Dep. 215-16; Gerrard Dep. 73; Nix Dep. 252-53; Singer Dep. 80)

███████, the accountant who prepared Browne Sanders' tax returns from 2001 to 2004, could not remember having any discussions with plaintiff concerning a direct

marketing business, nor did he have any documents provided to him by plaintiff that reflected such a business. ███████ Dep. 44-46, 50-51, 54, 64-65, 72)  To the contrary, the questionnaire Browne Sanders completed for ███████ concerning her taxes, which was produced from ███████ files in response to MSG's subpoena, states that she did not have a business. ███████ Dep. 35; Mintzer MSG Dec. Ex. 1)  Moreover, ███████ could not remember if he made up information contained on the Schedule C forms he prepared for Browne Sanders. ███████ Dep. 48)

Weaver testified that Browne Sanders hired him to prepare her tax returns for calendar year 2005. (Weaver Dep. 83-84)  When Weaver questioned Browne Sanders about the Schedule C that ███████ had prepared, she responded, "What business expenses, what do you mean by business? . . . I don't have a business."  (Weaver Dep. 34)  Browne Sanders further stated to Weaver, "I don't know where the preparer ███████ got those expenses from."  (Weaver Dep. 35-36)  Browne Sanders reaffirmed for Weaver that she never had a direct marketing business. (Weaver Dep. 107)

In November 2005, after this Court ordered that Browne Sanders produce her tax returns for the years 2000 through 2005, she hired Reimer to review her returns.  Reimer also testified that when he questioned Browne Sanders about ███████ Schedule C forms she stated that she had not been in a trade or business. (Reimer Dep. 24, 63-64)  Indeed, Browne Sanders told Reimer that she did not know what a Schedule C was or why ███████ had filed one. (Reimer Dep. 24)  Browne Sanders also told Reimer that she had never discussed the Schedule C with ███████, that she had not supplied ███████ with the amounts that he recorded on the Schedule C, that she did not know how ███████ had determined those

amounts, and that she had not reviewed the tax returns after they were prepared.  (Reimer Dep. 24, 28, 92, 99-100)

According to Reimer, he advised Browne Sanders that she should amend her 2003 and 2004 tax returns because they erroneously reflected a loss from a trade or business when she was not in a trade or business, but that she should not amend her 2001 or 2002 tax returns because the three-year statute of limitations that applied to amendments had already expired for those returns. (Reimer Dep. 24-25, 67-68)  Browne Sanders followed Reimer's advice and amended her 2003 and 2004 tax returns, omitting the Schedule C forms. (Declaration of Brian G. Cesaratto ("Cesaratto Dec.") Exs. W-X)[4]

In short, MSG's crusade to uncover evidence that Browne Sanders engaged in employee misconduct yielded nothing.  MSG did not unearth any evidence that Browne Sanders surreptitiously competed with MSG, diverted MSG's business opportunities, accepted kickbacks or misused MSG's proprietary information.

MSG Attempts To File A Baseless, Retaliatory Counterclaim Against Browne Sanders

Despite a complete lack of evidence, on April 27, 2007, MSG served Browne Sanders with a proposed counterclaim for breaching her duty of loyalty to MSG.  (Defendant Madison Square Garden, L.P.'s Amended Answer and Counterclaim to the Second Amended Complaint of Plaintiff Anucha Browne Sanders ("MSG's Proposed Counterclaim") attached to the April 27, 2007 Declaration of Ronald M. Green)  MSG failed to notify the Court of its motion to amend at any point during the discovery period or at the March 9, 2007 conference where the Court set a briefing schedule.  By the time MSG moved to add its counterclaim, the

---

[4] MSG and defendant James Dolan ("Dolan") submitted the Cesaratto Dec. as part of their motion for partial summary judgment.

discovery deadline had long since passed, the parties had exchanged motions for summary

judgment and the Court had set a trial date for September 10, 2007.

ARGUMENT

I.    LEGAL STANDARDS GOVERNING MSG'S MOTION TO AMEND

"Although Rule 15(a) of the Federal Rules of Civil Procedure provides that

leave to amend 'shall be freely given when justice so requires,' it is within the sound discretion

of the district court to grant or deny leave to amend." McCarthy v. Dun & Bradstreet Corp.,

482 F.3d 184, 200 (2d Cir. 2007).  An amendment should be denied where the court finds

undue delay or bad faith by the moving party, prejudice to the non-moving party, or that the

amendment would be futile. Foman v. Davis, 371 U.S. 178, 182 (1962).  Moreover, where, as

here, "a summary judgment motion has been made and evidence outside the pleadings has

already been submitted, the court must determine whether the amendment would be futile

under the summary judgment standard." Smith v. P.O. Canine Dog Chas, No. 02 6240, 2004

WL 2202564, at *12 (S.D.N.Y. Sept. 28, 2004); see Stoner v. New York City Ballet Co., No.

99 Civ. 0196, 2002 WL 523270, at *14 n.10 (S.D.N.Y. Apr. 8, 2002) (motion to amend denied

where it would "immediately be subjected to dismissal on a motion for summary judgment").[5]

---

[5] Courts have also held that where, as here, an amendment would require extending court-imposed deadlines, the movant must show good cause under Fed. R. Civ. P. 16. See Rent-A-Center, Inc. v. Mamoraneck Ave. Corp., 215 F.R.D. 100, 104 (S.D.N.Y. 2003) ("A finding of good cause under Fed. R. Civ. P. 16 depends on the diligence of the moving party.  In other words, the movant must also show that the deadlines cannot be reasonably met despite its diligence.  If a party is not diligent, the good cause inquiry should end.").  Whether the Court applies the Rule 15 standard, the summary judgment standard or the good cause standard, MSG's motion fails.

II.     MSG'S COUNTERCLAIM FAILS AS A MATTER OF LAW

        MSG seeks to recoup all of the compensation Browne Sanders earned since approximately 2001 on grounds that Browne Sanders either engaged in "unauthorized business activities" or committed "tax fraud" and therefore breached her duty of loyalty to MSG. MSG's proposed counterclaim is frivolous.

        A.    The "Faithless Servant" Doctrine

        An employer's claim that an employee breached a duty of loyalty is "limited to cases where the employee, acting as the agent of the employer, unfairly competes with his employer, diverts business opportunities to himself or others to the financial detriment of the employer, or accepts improper kickbacks." Sullivan & Cromwell LLP v. Charney, 15 Misc.3d 1128(A), 2007 WL 1240437, at *5 (Sup. Ct., N.Y. Co. April 30, 2007). In other words, an employer must show that the employee has been "faithless in the performance of his services," Feiger v. Iral Jewelry, Ltd., 394 N.Y.S.2d 626, 626 (N.Y. 1977) (citing Restatement (Second) of Agency § 469 (1958)), such as where the employee "makes a profit or receives a benefit in connection with transactions conducted by him on behalf of his employer." Phansalkar v. Andersen Weinroth & Co., L.P., 344 F.3d 184, 203 (2d Cir. 2003) (citing Lamdin v. Broadway Surface Advertising Corp., 272 N.Y. 133, 5 N.E.2d 66 (1936)). Even then, many courts have held that the employee disloyalty must be "substantial." Phansalkar, 344 F.3d at 201; see Abramson v. Dry Goods Refolding Co., 166 N.Y.S. 771, 773 (1st Dep't 1917) (the disloyalty must "permeate[] the employee's service in its most material and substantial part") (quoting Turner v. Konwenhoven, 100 N.Y. 115, 2 N.E. 115 (1885)); Schwartz v. Leonard, 526 N.Y.S.2d 506, 508 (2d Dep't 1988) (finding no "persistent pattern of disloyalty" where lawyer removed files from his firm's office and started a competing practice).

Courts have repeatedly made clear that the mere act of establishing an outside business, standing alone, does not constitute a breach of duty of loyalty. See Westwood Chemical Co., Inc. v. Kulick, 570 F. Supp. 1032, 1040 (S.D.N.Y. 1983) ("there is no adequate proof that, in engaging in any of these outside activities, [employees] were competing with [employer]. The court must therefore conclude that neither [employee] breached any fiduciary duty to [employer] in conducting these outside activities."); Bon Temps Agency, Ltd. v. Greenfield, 622 N.Y.S.2d 709, 710 (2d Dep't 1995) ("the establishment of this business in and of itself is not a sufficient basis to conclude that [employee] was a disloyal employee throughout her tenure as [employer] appears to contend").

An employee is even permitted to secretly establish a competing business while employed without breaching a duty of loyalty so long as the employee does not use the employer's "time, facilities or proprietary secrets." Frederic M. Reed & Co. v. Irvine Realty Group, Inc., 723 N.Y.S.2d 19, 20 (1st Dep't 2001); see Feiger, 394 N.Y.S.2d at 626; Schneider Leasing Plus, Inc. v. Stallone, 569 N.Y.S.2d 126, 128 (2d Dep't 1991); Mal Dunn Associates, Inc. v. Kranjac, 539 N.Y.S.2d 430, 430-31(2d Dep't 1988); Metal & Salvage Assoc., Inc. v. Siegel, 503 N.Y.S.2d 26, 27 (1st Dep't 1986); Maritime Fish Products, Inc. v. World-Wide Fish Products, Inc., 474 N.Y.S.2d 281, 285 (1st Dep't 1984); Tulummello v. W.J. Taylor Intern. Constr. Co., Inc., 446 N.Y.S.2d 673, 674 (4th Dep't 1981); Burnett Process, Inc. v. Richlar Industries, Inc., 390 N.Y.S.2d 282, 283 (4th Dep't 1976); KTR Newmark Real Estate, LLC v. Schleider, No. 602546/03, 2005 WL 5088283, at *3 (Sup. Ct., N.Y. Co. Feb. 16, 2005).

MSG is well aware of this well-settled standard as each of the cases relied on by MSG makes clear that a claim for breach of duty of loyalty requires more than an allegation that the employee engaged in unspecified "business activities." See Phansalker, 344 F.3d at

203 (duty of loyalty breached where, among other things, employee "with[held] from [employer] cash, stocks, and other interests that belonged to [employer]"); Murray v. Beard, 102 N.Y. 505, 508, 7 N.E. 553, 554 (1886) (agent cannot act on behalf of principal and the principal's competitors in vying for the same contract of sale); Maritime Fish, 474 N.Y.S.2d at 285 (breach of duty of loyalty where employee "surreptitiously organized a competing corporation, corrupted a fellow employee, and secretly pursued and profited from one or more opportunities properly belonging to his employer"); American Federal Group, Ltd. v. Rothenberg, No. 91 Civ. 7860, 2003 WL: 22349673, at *10 (S.D.N.Y. Oct. 14, 2003) ("when an employee . . . solicits customers of a current employer and diverts the current employer's business to himself, he breaches his fiduciary duty to his employer"). Indeed, MSG relies on Feiger, 394 N.Y.S.2d at 626, where New York's highest Court expressly held that an employee who "took preliminary steps to enter into a competitive business involved no breach of fidelity so long as . . . plaintiff never lessened his work on behalf of defendant and never misappropriated to his own use any business secrets or special knowledge."[6]

### B.    Any Claim That Browne Sanders Breached Her Duty Of Loyalty By Engaging In Unspecified "Business Activities" Is Futile

MSG has failed to allege even a single disloyal act by Browne Sanders. Rather, MSG makes the conclusory (and entirely baseless) allegation that Browne Sanders "engag[ed]

---

[6] In an attempt to manufacture a claim against Browne Sanders, MSG misleadingly suggests that under Feiger (as quoted in Phansalkar), any misdeed by an employee, no matter how remote, is sufficient to state a claim for breach of duty of loyalty. (MSG Mem. 8 ("It is of no consequence that Plaintiff's misconduct did not result in any actual damages to MSG.")) The Feiger Court was merely making the observation that, under common law, an employer could recover commissions paid to a faithless employee without having to prove additional damages. See Phansalkar, 344 F.3d at 200. In fact, the Court makes clear that a breach of duty of loyalty claim lies only where the employee has been "faithless in the performance of his duties." Feiger, 394 N.Y.S.2d at 626 (emphasis added).

in unauthorized business activities" during her employment. (MSG's Proposed Counterclaim ¶ 126) This allegation, standing alone, fails to state a claim under the "faithless servant" doctrine, as the cases in the preceding section make clear. Moreover, this is not a situation where MSG will have the opportunity to develop its claim further as discovery has closed and summary judgment motions have been filed. Indeed, MSG admits that its evidence has been "fully developed" and that it does not require further discovery. (MSG Mem. 8, 11); see Smith, 2004 WL 2202564, at *4; compare Swierkiewicz v. Sorema N.A., 534 U.S. 506, 512-13 (2002) ("Th[e] simplified notice pleading standard relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and dispose of unmeritorious claims.").

Further, MSG is well aware, having already completed discovery on the issue, that its allegation that Browne Sanders engaged in "unauthorized business activities" is patently false. Between November 22, 2006 and March 14, 2007,[7] MSG conducted full discovery on this issue and could not identify a shred of evidence that Browne Sanders operated a business. To the contrary, MSG learned through the depositions of plaintiff, her husband, two sisters, three accountants, and several former colleagues and friends, that there was no such "business." Thus, even if the motion to amend were granted, MSG's claim would "immediately be subjected to dismissal on a motion for summary judgment." Stoner, 2002 WL 523270, at *14 n.10.

---

[7] Magistrate Judge Freeman permitted the parties to complete limited discovery for two weeks after the discovery deadline of February 28, 2007.

C.     Any Claim That Browne Sanders Breached Her Duty
       Of Loyalty By Engaging In "Tax Fraud" Is Futile

MSG's alternative argument that Browne Sanders breached her duty of loyalty

by purportedly committing "tax fraud" is likewise baseless.  The faithless servant doctrine "is

grounded in the law of agency" and thus requires that an employee exercise "the utmost good

faith and loyalty in the performance of his duties."  Phansalkar, 344 F.3d at 200 (quoting

Western Elec. Co. v. Brenner, 392 N.Y.S.2d 409, 411 (N.Y. 1977)) (emphasis added); see

Restatement (Second) of Agency § 388 (1958) (prohibiting an agent from profiting "in

connection with transactions conducted by him on behalf of the principal") (emphasis added).

Browne Sanders did not file her personal tax returns as part of her duties for MSG.  Nor did

she engage in any "transaction" on behalf of MSG by filing those returns.  Murray, 102 N.Y. at

508, 7 N.E. at 554.  That Browne Sanders' accountant misstated certain business deductions on

her tax returns (which she subsequently corrected as instructed by her current accountant) does

not remotely suggest that she unfairly competed with MSG, diverted MSG's business

opportunities, accepted kickbacks or misused MSG's proprietary information.

D.     MSG's Policies Do Not Create Fiduciary Obligations

MSG cannot cure these fatal flaws in its counterclaim by alleging that Browne

Sanders breached MSG's Code of Business Conduct and Proprietary Property Agreement or

MSG's policies.  (MSG's Proposed Counterclaim ¶¶ 115-20)  In order to recover on its

counterclaim, MSG must do more than claim a violation of a purported employment

agreement; rather, MSG must allege conduct that rises to the level of an independent breach of

a duty of loyalty. Thus, in Burke v. Steinmann, No. 03 Civ. 1390 (GEL), 2004 WL 1117891

(S.D.N.Y. May 18, 2004), this Court denied an employer's counterclaim seeking to recoup

back wages based on allegations that the former employee violated the employer's

"Management Agreement." In language that applies with equal force to this matter, this Court held, "[t]o the extent that the allegations made by defendants in support of their breach of contract counterclaim are at all supported by the record, they do not amount to a breach of the duty of good faith and loyalty." Id. at *6.

In any event, MSG's Employee Code of Conduct, Cablevision's Code of Business Conduct and Ethics and the MSG Employee Handbook are merely expressions of MSG's general polices. For example, MSG's Employee Code of Conduct directs employees to "maintain a helpful and courteous attitude," to be "knowledgeable about upcoming events," to address guests as "Sir and Madam," and to "pick up incidental trash" such as "napkins, cups [or] food wrappers." (Mintzer MSG Dec. Ex. 8) Likewise, MSG's Employee Handbook contains MSG's policies regarding, among other things, business attire, media relations and maintaining a neat and safe work environment. (Affidavit of John Moran ("Moran Aff.") Ex. J)[8] Without more, such routine policy statements are neither contracts nor manifestations of binding fiduciary obligations between an employer and employee. See Lobosco v. New York Tel. Co./NYNEX, 727 N.Y.S.2d 383, 386 (N.Y. 2001) ("Routinely issued employee manuals, handbooks and policy statements should not lightly be converted into binding employee agreements."); Maas v. Cornell Univ., 699 N.Y.S.2d 716, 720 (N.Y. 1999) ("The University nowhere reflected an intent that the provisions of its Code would become terms of a discrete, implied-in-fact agreement for purposes such as are alleged in this lawsuit.") In fact, MSG's Employee Handbook expressly states it "was designed to familiarize employees with Madison

---

[8] MSG and Dolan submitted the Moran Aff. as part of their motion for partial summary judgment.

Square Garden, L.P. and is not intended to be interpreted, in any way, as a contract for continued employment." (Moran Aff. Ex. J at MSG 12808)

At its core, MSG argues that because its policies prohibit "illegal activities" generally, an MSG employee breaches his duty of loyalty by engaging in any type of unlawful conduct whatsoever. (MSG's Proposed Counterclaim ¶¶ 119, 121) This argument fails for two reasons. First, as explained above, the "faithless servant" doctrine requires the employer to show the employee was "faithless <u>in the performance of his duties</u>." <u>Feiger</u>, 394 N.Y.S.2d at 626 (emphasis added). Second, MSG's policies plainly relate only to work-related behavior. (<u>See</u> Cablevision Code of Business Conduct and Ethics 4 ("it is both illegal and against Company policy for any employee . . . to profit from undisclosed information relating to the Company") (Moran Aff. Ex. H); MSG Employee Code of Conduct ("Public trust and confidence are the greatest assets held by [MSG]. It is the responsibility of all employees to uphold that trust by <u>performing their duties</u> with integrity and professionalism.") (Mintzer MSG Dec. Ex. 8) (emphasis added)) Thus, MSG cannot convert each non-worked related act, even a purportedly criminal one, into a breach of duty of loyalty. In any event, MSG is well aware that Browne Sanders has not been charged, let alone convicted, of any civil or criminal violation.

E.    <u>The New York Labor Law Prohibits Forfeiture of Earned Wages</u>

MSG's counterclaim also fails for the independent reason that New York Labor Law § 193 prohibits MSG from seeking to recoup earned compensation from Browne Sanders. "The purpose of Labor Law [Section 193] is to strengthen and clarify the rights of employees to the payment of wages." <u>Angello v. Labor Ready, Inc.</u>, 825 N.Y.S.2d 674, 626 (N.Y. 2006) (internal citations omitted). When it was originally enacted in 1966, Section 193 "forbade only

direct deductions from wages." <u>Hudacs v. Frito-Lay, Inc.</u>, 660 N.Y.S.2d 700, 702 (N.Y. 1997). However, the statute was amended in 1974 "to explicitly forbid repayments by separate transaction" in order to prevent employers from doing "indirectly what they could not do directly." <u>Id</u>. at 703; Labor Law § 193(2).  "The Legislature sought to end the subterfuge of an employer's paying full wages but then seeking payment at another time." <u>Angello</u>, 825 N.Y.S.2d at 677.  Here, MSG's counterclaim falls squarely within Section 193's prohibition against attempting to recoup earned compensation by "separate transaction." [9]

III.    <u>MSG'S COUNTERCLAIM WAS BROUGHT IN BAD FAITH</u>

A court has the discretion to deny a motion to amend a pleading that is made in bad faith. <u>Krumme v. Westpoint Stevens Inc.</u>, 143 F.3d 71, 88 (2d Cir. 1998).  Here, MSG has acted in bad faith by attempting to assert a frivolous counterclaim against Browne Sanders in further retaliation for Browne Sanders exercising her legal rights to be protected from discrimination.

Title VII contains a broad provision that makes it unlawful for an employer to retaliate against an employee who has opposed an "unlawful employment practice." 42 U.S.C. § 2000e-3(a).   An employer violates Title VII's anti-retaliation provision by engaging in conduct that "would have dissuaded a reasonable worker from making or supporting a charge of discrimination." <u>Burlington Northern & Santa Fe Railway Co. v. White</u>, 126 S.Ct. 2405, 2415 (2006) (citations omitted).  Such prohibited retaliatory conduct need not be employment related. As the Supreme Court recently held, "[a]n employer can effectively retaliate against an employee by taking actions not directly related to his employment or by causing him harm <u>outside</u> the workplace." <u>Id</u>. at 2412 (emphasis in original).

---

[9] The employee in <u>Phansalkar</u> did not invoke the protections of Section 193.

Consistent with this expansive reading of Title VII's prohibition on retaliation, courts have repeatedly recognized, even pre-Burlington Northern, that the filing of counterclaims against an employee can constitute retaliation for protected activity. See Yankelevitz v. Cornell Univ., No. 95 Civ. 4593, 1996 WL 447749, at *5 (S.D.N.Y. Aug. 7, 1996) (counterclaim filed against plaintiff in Title VII case may constitute unlawful retaliation); Durham Life Ins. Co. v. Evans, 166 F.3d 139, 157 (3d Cir. 1999) (action against former employee for breach of non-competition agreement constitutes retaliation); Urquiola v. Linen Supermarket, Inc., No. 94-14-Civ-ORL-19, 1995 WL 266582, at *1 (M.D. Fla. Mar. 23, 1995) (filing of lawsuit can be basis for retaliation claim under Title VII); EEOC v. Levi Strauss & Co., 515 F. Supp. 640, 643-44 (N.D. Ill. 1981) (same); EEOC v. Virginia Carolina Veneer Corp., 495 F. Supp. 775, 778 (W.D. Va. 1980) (same); Electchester Housing Project, Inc. v. Rosa, 639 N.Y.S.2d 848, 849 (2d Dep't 1996) (employer retaliated against employee, in violation of the Executive Law, by contesting employee's right to unemployment benefits after employee had filed complaint with State Division of Human Rights).[10] Even compulsory counterclaims can constitute retaliation if they were asserted for retaliatory motives. Yankelevitz, 1996 WL 447749, at * 4.

A court may thus find that an employer acted with a retaliatory motive - and in bad faith - where, as here, it attempts to assert counterclaims that are entirely without merit.

---

[10] See also Kreinik v. Showbran Photo, Inc., No. 02 Civ. 1172, 2003 WL 22339268, at *8 (S.D.N.Y. Oct. 14, 2003) (counterclaims filed against plaintiff in ERISA case may constitute unlawful retaliation under Section 510); Acevedo v. Surles, 778 F. Supp. 179 (S.D.N.Y. 1991) (holding that New York State Office of Mental Health's practice of claiming medical treatment expenses against indigent patients only if they asserted claims against it, and offsetting patients' recovery in the amount of those expenses, violated patients' constitutional rights of access to the courts and due process, even though claims were valid); Berry v. Stevinson Chevrolet, 74 F.3d 980, 986-87 (10th Cir. 1996) (filing of criminal charges against former employee constitutes retaliation under Title VII).

For example, in <u>Jacques v. DiMarzio, Inc.</u>, 200 F. Supp. 2d 151 (E.D.N.Y. 2002), the plaintiff sued her former employer for, among other things, disability discrimination. The employer filed counterclaims seeking $500,000 against the plaintiff alleging a litany of baseless claims. The Court ultimately found the employer's counterclaims "utterly devoid of factual allegations to raise a colorable claim" and imposed sanctions pursuant to Fed. R. Civ. P. 11. <u>Jacques v. DiMarzio</u>, 216 F. Supp. 2d 139, 142 (E.D.N.Y. 2002). In doing so, the Court "admonish[ed] the practicing bar against asserting baseless, retaliatory counterclaims" as "[s]uch claims constitute the type of abusive, harassing practices proscribed by Rule 11." <u>Jacques</u>, 200 F. Supp. 2d at 163; <u>see</u> <u>Martin v. Supreme Court of the State of New York</u>, 644 F. Supp. 1537 (N.D.N.Y. 1986) (imposing Rule 11 sanctions where frivolous action was brought for a retaliatory purpose).

Similarly, in <u>Kaul v. Hanover Direct, Inc.</u>, 296 F. Supp. 2d 506 (S.D.N.Y. 2004), the Court found that an employer acted with a retaliatory purpose in asserting a specious breach of fiduciary duty counterclaim against a former employee. The Court reasoned:

> [Employer's] argument that [employee] improperly spent his own time and improperly diverted the time of other . . . employees for the benefit of his wife is specious. On the record before the Court, a reasonable jury could only conclude that [employer] is grasping at straws in an effort to strike back at [employee] for initiating this lawsuit.

<u>Id.</u> at 525.

There can be no serious doubt that MSG has acted in bad faith and with a retaliatory purpose in attempting to assert a counterclaim against Browne Sanders. As explained above, despite having had a full opportunity to engage in discovery, including, obtaining Browne Sanders' tax records and conducting depositions of Browne Sanders and

three of her tax preparers, MSG cannot allege even a single incident of Browne Sanders competing with MSG, utilizing MSG's proprietary information or engaging in self-dealing. MSG is thus well aware that its breach of duty of loyalty counterclaim has no basis in law or fact. Nonetheless, MSG has utilized the counterclaim to threaten Browne Sanders with forfeiture of nearly all of the compensation she earned during her MSG career. MSG's actions "can only realistically be viewed . . . as a bad faith retaliatory <u>in terrorem</u> tactic against the plaintiff for bringing her claims to court." <u>Jacques</u>, 216 F. Supp. 2d at 144. Accordingly, the Court should deny MSG's motion to assert its frivolous counterclaim.

In the event that the Court permits MSG to assert its proposed counterclaim against Browne Sanders, she should be permitted to amend her complaint to add further allegations of retaliation against MSG and defendant James Dolan.

## IV.   THE PROPOSED AMENDMENT IS UNTIMELY AND WOULD PREJUDICE BROWNE SANDERS

A "touchstone of a district court's discretionary authority to deny leave to amend" is prejudice to the non-movant. <u>Krumme</u>, 143 F.3d at 88 (citing <u>Barrows v. Forest Laboratories</u>, 742 F.2d 54, 58 (2d Cir. 1984)). A court may deny leave to amend where, as here, "the motion is made after an inordinate delay, no satisfactory explanation is offered for the delay, and the amendment would prejudice the [non-movant]." <u>Cresswell v. Sullivan & Cromwell</u>, 922 F.2d 60, 72 (2d Cir. 1990). "One of the most important considerations in determining whether amendment would be prejudicial is the degree to which it would delay the final disposition of the action." <u>Krumme</u>, 143 F.3d at 88 (citing <u>H.L. Hayden Co., v. Siemens Medical Sys.</u>, 112 F.R.D. 417, 419 (S.D.N.Y. 1986)). A proposed amendment is "especially prejudicial" where "discovery ha[s] already been completed and the [non-movant] ha[s] already filed a motion for summary judgment." <u>Krumme</u>, 143 F.3d at 88 (citing <u>Ansam</u>

Associates v. Cola Petroleum, Ltd., 760 F.2d 442, 446 (2d Cir. 1985)); see Berman v. Parco, 986 F. Supp. 195, 217-19 (S.D.N.Y. 1997) ("[p]rejudice may be found where the amendment is sought after discovery is closed" and the non-movant's motion for summary judgment was imminent).

There is little doubt that MSG failed to act promptly in asserting its counterclaim. MSG admits that it obtained Browne Sanders' tax records on November 22, 2006. (MSG Mem. 9). According to MSG, these records purportedly "made clear that Plaintiff had conducted an unauthorized business while employed by MSG." (Id.; see id. at 4 (admitting that MSG became aware of Browne Sanders' allegedly "disloyal behavior following production of Plaintiff's long withheld tax returns on November 22 and 24, 2006")) Despite this alleged "clarity," MSG failed to assert its counterclaim nine days later when it filed its Answer to the Second Amended Complaint on December 1, 2006. Nor did MSG attempt to assert its counterclaim at any point during the subsequent four-month discovery period, which ended on March 14, 2007. Instead, MSG waited until April 27, 2007, approximately a month-and-a-half after the close of discovery and after a trial date had been set by the Court, to seek leave to amend its Answer to assert its counterclaim. Such a delay is undoubtedly "inordinate." See McCarthy, 482 F.3d at 202 (leave to amend denied where movant waited "more than two months after discovery was completed"); Schnepf v. Siegel, No. 98 Civ. 1255, 1998 WL 474132 (S.D.N.Y. July 11, 1998) (motion to amend denied after three-month delay and after discovery closed).

Remarkably, MSG has failed to provide any explanation for its decision to delay asserting its counterclaim until long after discovery closed. See Cresswell, 922 F.2d at 72 (the burden is on the movant to provide a satisfactory explanation for the delay). Given MSG's

assertion that it became aware of its allegation that Browne Sanders was a "faithless servant" on or about November 22, 2006 – nine days before it filed its Answer – MSG cannot excuse its tardiness by asserting that it was unaware of the counterclaim at the time it filed its Answer. See Fed. R. Civ. P. 13(e) (permitting "a counterclaim by supplemental pleading" where the claim "either matured or was acquired by the pleader after serving a pleading"); see Priestly v. American Airlines, Inc., No. 89 Civ. 8265, 1991 WL 64459, at *2 (S.D.N.Y. April 12, 1991) ("[i]nsofar as the proposed claim is not predicated on facts learned after the pleading stage of the litigation, the resulting delay is inexcusable"); 1 M. Silberberg, Civil Practice in the Southern District of New York § 6.26 ("the Court may deny a motion to amend when the movant knew or should have known of the facts upon which the amendment is based when the original pleading was filed"). MSG cannot argue that it omitted the counterclaim through "oversight, inadvertence or excusable neglect" (Fed. R. Civ. P. 13(f)) as MSG freely admits that it conducted discovery on its hidden counterclaim prior to the discovery deadline. (MSG Mem. 8, 11) Indeed, as early as November 29, 2006, MSG threatened to engage in motion practice claiming that the tax returns established the plaintiff "violated company policies." (Mintzer MSG Dec. Ex. 6)

Finally, MSG's inexplicable delay in moving to amend its Answer would result in manifest prejudice to Browne Sanders. At this point, discovery has closed, summary judgment motions have been served and a trial date has been set. To permit MSG's counterclaim at this late stage is "especially prejudicial." Krumme, 143 F.3d at 88. Among other things, Browne Sanders would be denied discovery on the critical issue of whether MSG's counterclaim was asserted for a retaliatory purpose in violation of federal, state and city antidiscrimination laws. (See Point III, supra)

Nor can such prejudice be cured by reopening discovery. Requiring Browne Sanders to engage in such additional discovery would, in and of itself, be prejudicial. See In re Wireless Tel. Ser. Antitrust Litig., No. 02-Civ-2637, 2004 WL 2244502, at *5-6 (S.D.N.Y. Oct. 6, 2004) (requiring a party to defend against a new claim made "virtually at the end of discovery" is unduly prejudicial); Schnepf, 1998 WL 474132, at *4 ("It is clear that if leave to amend were to be granted, defendants would be prejudiced because discovery is closed."). Moreover, Browne Sanders will be prejudiced as a result of the delay caused by her having to "withdraw [her] previously filed motion for summary judgment" and "re-brief [that] motion[] to include" MSG's counterclaim. Kanyi v. United States, No. 99 CV 5851, 2002 WL 1471648, at *2 (E.D.N.Y. May 3, 2002). This entire process would "delay the final disposition of this action" which is "one of the most important considerations" in determining prejudice. Krumme, 143 F.3d at 88.[11]

---

[11] The cases cited by MSG are inapposite. In Affiliated FM Ins. Co. v. Jou Jou Designs, Inc., No. 90 Civ. 8262, 1997 WL 150139, at *3 (S.D.N.Y. March 28, 1997), the Court granted leave to add a counterclaim where discovery had not yet closed, the parties agreed that no additional discovery was required, summary judgment motions had not been filed and no trial date had been set. In McCoy v. Goldberg, 845 F. Supp. 155, 157 (S.D.N.Y. 1994), the non-movant did "not contend that he has been or will be prejudiced by an amendment."

## CONCLUSION

For the above-stated reasons, MSG's motion to amend its Answer to add a frivolous counterclaim should be denied.

Dated: New York, New York
      May 25, 2007

                                        VLADECK, WALDMAN, ELIAS &
                                        ENGELHARD, P.C.


                            By:         _____
                                        Anne C. Vladeck (AV 4857)
                                        Kevin T. Mintzer (KM 4741)
                                        Karen Cacace (KC 3184)
                                        Attorneys for Plaintiff
                                        1501 Broadway, Suite 800
                                        New York, New York  10036
                                        (212) 403-7300