UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------- x
ANUCHA BROWNE SANDERS,　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　　　:
　　　　　　　　Plaintiff,　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　　　:　06 Civ. 00589 (GEL) (DCF)
　　　　　　　- against -　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　　　:　**DECLARATION OF**
MADISON SQUARE GARDEN, L.P., ISIAH LORD　:　**CHRISTOPHER**
THOMAS III AND JAMES L. DOLAN,　　　　　　:　**REYNOLDS, ESQ.**
　　　　　　　　　　　　　　　　　　　　　　:
　　　　　　　　Defendants.　　　　　　　　　:
---------------------------------------- x

Christopher Reynolds, Esq. declares under penalty of perjury:

1.　I am a member of the law firm of Morgan, Lewis & Bockius LLP and submit this declaration in support of Defendants' opposition to Plaintiff's motion for partial summary judgment.

2.　At all relevant times, Morgan, Lewis and Bockius LLP has been outside counsel to Madison Square Garden, L.P. ("MSG") in this matter.

3.　On December 22, 2005, I accompanied Marc Schoenfeld, Esq., ("Schoenfeld") acting General Counsel of MSG at the time, to a meeting at Vladeck, Waldman, Elias & Englehard, P.C., counsel for Plaintiff.

4.　During that meeting, Plaintiff's counsel asserted that Plaintiff had been sexually harassed at MSG during the period from January 2004 to December 2005 following the hiring of Defendant Isiah Thomas ("Thomas") as the Knicks' President and General Manager. Plaintiff's counsel specifically referred to purported conduct engaged in by Thomas, including but not limited to his alleged use of profanity, telling Plaintiff he was "in love" with her, and hugging her and trying to kiss her on December 15, 2005. Plaintiff's counsel also stated that Stephon Marbury, a New York Knicks' basketball player, had purportedly referred to Plaintiff as

a "black bitch" in a June 2005 telephone conversation with Dan Gladstone, a member of Plaintiff's staff.

5. In the discussion, Plaintiff's counsel also noted Plaintiff's complaints about alleged conduct not directed at Plaintiff or involving her. According to Plaintiff, (i) Isiah Thomas purportedly instructed Petra Pope, an MSG employee, to go into the referees' locker room and "flirt" with the referees, (ii) Tasheem Ward, an employee in Plaintiff's organizational unit and Stephon Marbury's cousin, should not have been employed in the organization because he was not qualified for his position; (iii) Hassan Gonsalves, another Stephon Marbury cousin, sexually harassed ████████████ but not Plaintiff, and was fired for it, and (iv) a female Knicks' employee had sexual relations with Stephon Marbury after work hours following their attending a strip club.

6. Plaintiff's counsel also stated that Plaintiff believed she had a "closer" relationship with Scott Layden, Thomas' predecessor as President and General Manager of the New York Knicks, than she did with Thomas after Thomas replaced Scott Layden in December 2003.

7. Plaintiff's counsel then stated that Plaintiff was prepared to file a lawsuit likely to result in substantial publicity and specifically mentioned the resulting public embarrassment to Thomas and the New York Knicks.

8. Plaintiff's counsel further stated that MSG had to pay Plaintiff "a lot of money . . . in order to teach them [MSG] a lesson . . . that's the only way they [MSG] will learn." Plaintiff's counsel stated that Plaintiff "wants money, lots of money."

9. On December 22, 2005, I sent Plaintiff's counsel an email, a true copy of which is attached hereto as Exhibit A, confirming our earlier telephone conversation that

"[c]ommencing immediately the respective counsel for Madison Square Garden ("MSG") and Anucha Browne Sanders will attempt to expedite a negotiated, good faith resolution of Ms. Browne Sanders' claims." No monetary demand had as yet been made by Plaintiff's counsel at the time of my email.

10. On December 27, 2005, Plaintiff's counsel conveyed by telephone a $6.5 million demand. Among Plaintiff's counsel's rationales was that the settlement amount would "teach" MSG to impose "discipline" on its employees.

11. On December 30, 2005, I wrote to Plaintiff's counsel by letter, a copy of which is attached hereto as Exhibit B, stating,

> As best as I can determine from your demand and our discussions, your demand was based upon an assumption that your client would not be able to replicate or surpass, over a 20-year future career, the income and position she currently has with Madison Square Garden. We do not share that assumption and see no rational basis to do so, especially in light of what would be her clear obligation to mitigate her alleged damages.
>
> Our counter-offer is premised instead on the commitment that MSG will actively support and facilitate Ms. Browne-Sanders finding new employment, be it in the sports and entertainment industry or elsewhere. Given Ms. Browne-Sanders' background, experience and five-year affiliation with MSG, a well-known industry employer, and MSG's active support, we are confident that Ms. Browne-Sanders can obtain a rewarding and at least equally remunerative career elsewhere.
>
> MSG is ready, willing and able to continue as rapidly as possible our good-faith discussions in order to find a mutually acceptable resolution. That resolution, however, must have a rational basis and our proposal accomplishes that." (emphasis added).

In addition to MSG's offer to actively support Plaintiff in gaining new employment, I conveyed on MSG's behalf a counter-offer of one year of severance as a consultant approximating $300,000. (See Exhibit C).

12. Plaintiff's counsel responded to MSG's December 30, 2005 counter-offer on January 3, 2006 with a demand of $5.95 million, approximately 22 years of Plaintiff's then salary.

**I declare under penalty of perjury that the foregoing is true and correct.**

Executed on May 25, 2007, in New York, New York.

_____
CHRISTOPHER REYNOLDS, ESQ.