UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------- x

ANUCHA BROWNE SANDERS,

          Plaintiff,

    - against -

MADISON SQUARE GARDEN, L.P., ISIAH LORD
THOMAS III AND JAMES L. DOLAN,

          Defendants.

------------------------------------- x

06 CV 0589 (GEL) (DCF)

ECF CASE


# REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANT MADISON SQUARE GARDEN, L.P.'S MOTION FOR LEAVE TO AMEND ITS ANSWER


EPSTEIN BECKER & GREEN, P.C.
250 Park Avenue
New York, New York 10177-1211

212.351.4500

Attorneys for Defendants Madison Square Garden, L.P. and James L. Dolan

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ............................................................................................. ii

PRELIMINARY STATEMENT ........................................................................................ 1

ARGUMENT ..................................................................................................................... 3

I. MSG'S COUNTERCLAIM IS NOT FUTILE ........................................................ 3

    A. Plaintiff Cannot Properly Rely On Her Counsel's Argument To Show That MSG's Counterclaim Is Futile .................................................. 3

    B. Plaintiff Impermissibly Narrows The Scope Of The Faithless Servant Doctrine ............................................................................. 4

II. PLAINTIFF'S REMAINING CONTENTIONS LACK MERIT ........................... 7

    A. MSG's Counterclaim Was Not Brought In Bad Faith ............................... 7

    B. Plaintiff Will Not Suffer Prejudice If Leave To Amend Is Granted ........... 8

    C. MSG's Counterclaim Is Governed By The Liberal Rule 12(b)(6) Standard ............................................................................. 10

CONCLUSION ................................................................................................................ 10

## TABLE OF AUTHORITIES

**Page**

### CASES

Angello v. Labor Ready, Inc., 7 N.Y.3d 579 (2006)..................................................................8

Bon Temps Agency, Ltd. v. Greenfield, 212 A.D.2d 427 (1st Dep't 1995).....................................6

Burke v. Steinmann, No. 03 Civ. 1390 (GEL), 2004 WL 1117891 (S.D.N.Y. May 18, 2004) ............................................................................................................................6, 8

Fieger v. Iral Jewlery, Ltd., 41 N.Y.2d 928 (1977)....................................................................6

Foley v. American Elec. Power, 425 F. Supp. 2d 863 (S.D. Ohio 2006) .....................................5,6

Jacques v. DiMarzio, Inc., 216 F. Supp. 2d 139 (E.D.N.Y. 2002) ...............................................8

Lobosco v. New York Tel. Co./NYNEX, 96 N.Y.2d 312 (2001).....................................................7

Maas v. Cornell Univ., 94 N.Y.2d 87 (1999) ...........................................................................7

McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184 (2d Cir. 2007) ............................................9

Murray v. Beard, 102 N.Y. 505 (1886)..................................................................................5

Phansalkar v. Andersen Weinroth & Co., L.P., 344 F.3d 184 (2d Cir. 2003) ..........................5, 6, 7

Resorts & Motel Adv. Devel. Agency, Ltd. v. Sloan, 160 F.R.D. 449 (S.D.N.Y. 1995) ...............10

Slue v. New York Univ. Med. Ctr., 409 F. Supp. 2d 349 (S.D.N.Y. 2006) ...................................4

Smith v. P.O. Canine Dog Chas, No. 02 Civ. 6240 KMF, 2004 WL 2202564 (S.D.N.Y. Sept. 28, 2004)..........................................................................................................10

South Pierre Assocs. v. Meyers, 12 Misc. 3d 955 (N.Y.C. Civil Ct. 2006)....................................6

State Teachers Retirement Bd. v. Fluor Corp, 654 F.2d 843 (2d Cir. 1981) .................................9

Stoner v. New York City Ballet Co., No. 99 Civ. 0196, 2002 WL 523270 (S.D.N.Y. Apr. 8, 2002) ..........................................................................................................................10

Sullivan & Cromwell LLP v. Charney, 15 Misc.3d 1128, 2007 WL 1240437 (Sup. Ct., N.Y. Co. Apr. 30, 2007).................................................................................................5

Turner v. Kouwenhoven, 100 N.Y. 115 (1885) ............................................................................5

Veritas-Scalable Inv. Prods. Fund, LLC v. FB Foods, Inc., No. 3:04 Civ. 1199 JBA, 2006
WL 2520262 (D. Conn. July 26, 2006) ....................................................................................10

Westwood Chem. Co. v. Kulick, 570 F. Supp. 1032 (S.D.N.Y. 1983) .......................................6

Yankelevitz v. Cornell Univ., No. 95 Civ. 4593, 1996 WL 447749 (S.D.N.Y. Aug. 7,
1996) ..........................................................................................................................................8

## STATUTES

New York Lab. Law § 193 ..........................................................................................................8

Restatement 2d §469 ...................................................................................................................6

## PRELIMINARY STATEMENT

Defendant Madison Square Garden, L.P. ("MSG" or "Defendant") submits this reply memorandum of law in further support of its motion to amend its answer to assert a counterclaim against Anucha Browne Sanders ("Plaintiff"). In its opening brief, MSG demonstrated far more than is required merely to assert a counterclaim under the faithless servant doctrine. It is undisputed that, without MSG's knowledge, Plaintiff engaged in significant tax fraud and/or operated an unauthorized "self-employed" marketing business while serving as one of MSG's most senior marketing and business executives, in utter disregard of MSG's policies and her agreement with MSG. Because of Plaintiff's fiduciary obligations as an executive employee, her continuous breaches of MSG policy from 2001 through at least April 2005 justify recovery of the high level of executive compensation paid to her during that period.

Plaintiff now argues that no evidence exists that she actually conducted an outside business, committed tax fraud or engaged in any wrongful act in the performance of her work-related "duties for MSG" that amounted to a breach of her acknowledged duty of loyalty. (Pl. Br. at 3). Plaintiff's factual contentions, however, are wholly unsupported by admissible evidence since she relies solely on self-serving hearsay and the arguments of her counsel. Indeed, Plaintiff's opposition papers, by her choice and/or that of her counsel, conspicuously lack her own sworn statement supporting her counsel's argument that her accountant simply "made up" the false information contained on the tax returns that she signed and submitted to Federal and State taxing authorities for four consecutive years. Rather, she relies on her most recent accountant to trot out self-serving, unsworn, inadmissible statements she allegedly made to him when he was retained and paid by her counsel <u>after</u> this Court's order that she disclose the returns. Despite her efforts, Plaintiff cannot contest her disclosures of a wholly owned marketing

business made under oath on four consecutive years of separately filed tax returns – two years of which remain unamended.

Plaintiff argues that since MSG's allegations concern what she calls "personal" tax fraud and/or business activities that were not part of her job duties, she is entitled to retain the compensation paid to her. (Pl. Br. at 13). She also argues that MSG's faithless servant claim is baseless because MSG does not contend that she unfairly competed with MSG, diverted its business opportunities or received improper kickbacks. (Pl. Br. at 7). Plaintiff wholly disregards established case law permitting a faithless servant claim where an employee's misconduct interferes with the employer's business practices or violates its policies, even when the misconduct occurs outside of work or no tangible economic damage results to the employer. While most faithless servant claims indeed arise in the factual context of unfair competition and similar misconduct, the doctrine broadly reaches any breach of trust that substantially violates the duties owed to an employer pursuant to a "contract of service," including where an employee fails to disclose an interest that would influence her conduct in her continued employment. Plaintiff's argument is entirely unavailing, as it is undisputed that she breached MSG policies that are intended to circumscribe certain personal financial interests and outside business activities. She cannot avoid the negative consequences of her breaches as MSG determined in setting the terms and conditions of employment that certain private activities and conflicts of interest would institutionally impact its business in a negative way.

Plaintiff also argues that MSG's counterclaim was made in bad faith, is intended to retaliate against her, and is dilatory. (Pl. Br. at 14-17). It is Plaintiff's misconduct and breaches of MSG policy, however, not her assertion of Title VII claims, that create the basis for the counterclaim. Title VII was never intended to insulate employees from the consequences of their breach of fiduciary obligations owed to their employer. Far from delaying in bringing its

2

counterclaim, MSG proceeded responsibly and with due diligence in asserting its counterclaim only after completing necessary and appropriate discovery into Plaintiff's misconduct, including the depositions of the three accountants she used over the prior five years.

Most importantly, MSG's proposed counterclaim must be judged under the liberal pleading standards of Rule 12(b)(6), rather than those applicable to a motion for summary judgment. MSG's proposed counterclaim is based not on mere allegations on information and belief, but instead is based on evidence revealed during discovery. Viewed in that light, MSG's motion for leave to assert a faithless servant counterclaim should be granted.

## ARGUMENT

### I. MSG'S COUNTERCLAIM IS NOT FUTILE

#### A. Plaintiff Cannot Properly Rely On Her Counsel's Argument To Show That MSG's Counterclaim Is Futile

All of the material facts that form the basis for MSG's proposed counterclaim herein remain undisputed by Plaintiff.[1] Plaintiff contends, however, that no proof exists that she ever engaged in either an outside business or personal tax fraud, and she never, in fact, breached her duty of loyalty. (Pl. Br. at 9-11). Substantial evidence exists, regardless of her counsel's factually unsupported argument, that Plaintiff (i) operated an unauthorized self-employed marketing business and/or (ii) committed tax fraud for four years. There is also no question that such evidence is admissible because Plaintiff is estopped from denying these facts, as she made sworn statements against interest in her tax returns under penalty of perjury and at her deposition

---

[1] (See Combined Rule 56.1 Statement ("Combined 56.1"), attached as Exhibit A to Reply Memorandum of Law in Further Support of Defendants' Motion for Partial Summary Judgment ("Reply Mem.") ¶¶ 9, 11, 13-22, 24, 27, 29, 31-35, 43, 46, 50). Plaintiff's tax returns and the disclosures therein as to her operation of a direct marketing business are not contested. (Id. ¶ 43). The affidavit and deposition testimony from her most recent accountant, who calls himself a "forensic" accountant and was retained and paid by her counsel, contains nothing but inadmissible self-serving hearsay and is utterly insufficient to counter the undisputed facts gleaned from Plaintiff's tax returns and other evidence that she committed tax fraud and/or engaged in prohibited business activities. (See Affidavit of Leon Reimer ¶¶ 10, 11, 13, 14).

3

under oath, augmented by the deposition testimony of her accountants and her stipulation that she filed the false returns.[2] MSG's policies, Plaintiff's agreement to abide by the requirements set forth therein, and the nature of Plaintiff's job-related financial responsibilities are all undisputed.[3] Indeed, Plaintiff admitted that if she did conduct a business as represented to the taxing authorities, she violated MSG policy and she could be terminated.[4]

### B. Plaintiff Impermissibly Narrows The Scope Of The Faithless Servant Doctrine

Plaintiff argues that even if she operated an outside marketing business of her own or committed tax fraud, she engaged in purely personal activity that did not impact the performance of her job duties and could not be of major concern to her employer. (Pl. Br. at 9-11). She contends that the faithless servant doctrine is limited to anti-competitive activity and similar conduct that acts to the employer's financial detriment. (Pl. Br. at 7-9). Plaintiff impermissibly narrows the scope of the doctrine. As this Court has stated, an employee's activity outside of work may properly support a claim for breach of fiduciary duty upon proof that the activity "interfered with [an employer's] own business practices."[5]

MSG's policy is not limited to a prohibition on competitive activity (as that is only one of several prohibited activities), but also more broadly prohibits, for example, an employee from "serving as an officer, director, agent, employee, consultant or promoter of or in any other capacity for any for-profit organization." (Declaration of Brian G. Cesaratto, Exh. F

---

[2] See Reply Mem. at pp. 3-5. Plaintiff's 2001 and 2002 tax returns have not been amended.

[3] See, e.g., Combined 56.1 ¶ 8 (Plaintiff admitted to being responsible for the Knicks' $120 million budget).

[4] See Combined 56.1 ¶ 22.

[5] Slue v. New York Univ. Med. Ctr., 409 F. Supp. 2d 349, 373-374 (S.D.N.Y. 2006). Your Honor held, "[a]bsent a connection to the defendants, improper conduct is not sufficient to sustain a breach of fiduciary duty." Id. at *374 (dismissing counterclaim against employee where no evidence existed that employer's business practices were interfered with when employee took inappropriate photographs of patients as part of his own private practice). Your Honor was evaluating the same standard relied on by the parties here, i.e., whether the employee's conduct violated the duty of good faith and fair dealing owed by an employee to an employer "in the performance of the employee's duties." Id. at 373.

4

(see secs. 2(f) and (g)).[6] Plaintiff's operation of a business, even one not in competition with MSG, without its knowledge and authorization, interfered with MSG's business practices and legitimate business interests and violated MSG's well-established policies. Similarly, as to Plaintiff's tax fraud, MSG's policy reaches beyond an employee's day-to-day job duties and, on its face, reaches out of work conduct by prohibiting "personal or financial interests that may impair, or appear to impair, [an employee's] independence or judgment." Id. Nor is MSG's prohibition on illegal activity limited to unlawful behavior occurring at work. (Moran Affidavit, Exhs. G and I). Given Plaintiff's extensive civic and financial responsibilities for the Knicks' revenue and expense budget of more than $120 million, and her dealings with contractors, community representatives, and vendors, her undisclosed personal tax fraud and outside business interests were directly material to her job-related duties and Defendant's brand and reputational interests, thereby implicating the very interests protected by the faithless servant doctrine.[7]

Moreover, employee misconduct that violates work rules may permit recovery under the faithless servant doctrine. See, e.g., Foley v. American Elec. Power, 425 F. Supp. 2d

---

[6] Defendants submitted the Cesaratto Dec. and Moran Aff. as part of their motion for partial summary judgment.

[7] The faithless servant doctrine is grounded in the law of agency, and the principal that prohibits an agent "from acting in any manner inconsistent with his agency or trust and is at all times bound to exercise the utmost good faith and loyalty in the performance of his duties." Phansalkar v. Andersen Weinroth & Co., L.P., 344 F.3d 184, 201 (2d Cir. 2003) (emphasis added). Two "different" standards articulated by the New York Court of Appeals in separate cases determine application of the faithless servant doctrine. Id. One standard, first pronounced in Murray v. Beard, 102 N.Y. 505, 508 (1886), provides that "[a]n agent is held to uberrima fides [i.e., faith, honesty, trust, veracity] in his dealings with his principal, and if he acts adversely to his employer in any part of the transaction, or omits to disclose any interest which would naturally influence his conduct in dealing with the subject of the employment, it amounts to such a fraud upon the principal, as to forfeit any right to compensation for services." See Phansalkar, 344 F.3d at 202 (emphasis added). The other standard, set forth in Turner v. Kouwenhoven, 100 N.Y. 115, 120 (1885), states that a disloyal employee forfeits compensation when the "'misconduct and unfaithfulness ... substantially violates the contract of service.'" In applying this standard, courts have found disloyalty not to be "'substantial' only where the disloyalty consisted of a single act, or where the employer knew of and tolerated the behavior." Phansalkar, 344 F.3d at 202. Plaintiff relies on a New York Supreme Court decision involving wholly dissimilar factual circumstances than those presented here. See Sullivan & Cromwell LLP v. Charney, 15 Misc.3d 1128(A), 2007 WL 1240437, at *5 (Sup. Ct., N.Y. Co. Apr. 30, 2007) (court opined that the duty of loyalty is limited to situations involving unfair competition, diversion of business to the detriment of employer, or improper

863, 873 (S.D. Ohio 2006) (employee's disloyalty deprives employee of *"entire agreed compensation*, due to the failure of such an employee to give the stipulated consideration for the agreed compensation."). In Foley, for example, the employee falsely reported energy trading transactions to industry publications. The court held the case over for trial, recognizing that the employee's inaccurate reporting (ostensibly to aid his employer, yet in violation of the Company's standards of ethical business practices and its Corporate Code of Conduct) potentially triggers the application of the faithless servant doctrine. Id. at 874-75.[8] Economic damage to the employer is not required under the doctrine.[9]

Here, MSG's policies as explained above and the very nature of Plaintiff's senior executive responsibilities define the scope of her fiduciary duty of loyalty. See, e.g., Id. (employee violated company's published ethical standards). None of the cases cited by Plaintiff involves the violation of broad ethical policies like those at issue here or policy considerations of a public, highly visible, for-profit company, such as MSG, enforced through codes of conduct and ethics.[10] MSG's policies are plainly designed to broadly protect MSG (a subsidiary of Cablevision Systems Corporation, a publicly traded company) against conflicts of interest and

---

kickbacks in dismissing claim against law firm associate). To the extent its pronouncement is inconsistent with the case law relied on by MSG, it should not serve as a basis to preclude MSG's counterclaim.

[8] The court in Foley applied a nearly identical standard to that set forth in Turner. Id. at 873; see also Phansalkar, 344 F.3d at 201. The court in Foley also relied on the Restatement 2d §469, as has the New York State Court of Appeals, providing that violation of an employee's duty of obedience permits recovery even if the disobedience results in no substantial harm to the principal's interests. See Feiger, 41 N.Y.2d at 626. In addition, MSG's allegations here, confirmed by undisputed evidence gathered during discovery, goes far beyond the allegation of breach of duty of loyalty made by the employer in Your Honor's decision in Burke v. Steinmann, where the claim amounted to nothing more than allegations that the managing partner was negligent or incompetent in the performance of his job duties. No. 03 Civ. 1390 (GEL), 2004 WL 1117891 (S.D.N.Y. May 18, 2004).

[9] See Fieger v. Iral Jewlery, Ltd., 41 N.Y.2d 928 (1977) (it does not make any difference that "the principal suffered no provable damage as a result of the breach of fidelity by the agent"); South Pierre Assocs. v. Meyers, 12 Misc. 3d 955 (N.Y.C. Civil Ct. 2006) (faithless servant claim recognized even though no economic prejudice resulted to employer).

[10] See Westwood Chem. Co. v. Kulick, 570 F. Supp. 1032 (S.D.N.Y. 1983) (company had no policy prohibiting an outside business); Bon Temps Agency, Ltd. v. Greenfield, 212 A.D.2d 427 (1st Dep't 1995) (same).

6

personal conduct that might impair MSG's brand or standing in the community, or compromise an employee's job-related judgment. Moreover, there is nothing nebulous about MSG policy. The policies clearly prohibit, on their face, unauthorized business activity and illegal conduct.[11]

Under the faithless servant doctrine, misconduct that "'substantially violates the contract of service'" has been defined as more than one incident or where the employer lacked knowledge of the behavior. Phansalkar, 344 F.3d at 201. MSG meets that standard here as (1) Plaintiff's tax returns evidence four years' worth of violations of company policy by engaging in an unauthorized business and/or committing tax fraud, and (2) MSG had no knowledge of either activity. As a senior executive and officer of a subsidiary of a public company, one of the primary work-related duties Plaintiff owed to MSG was to abide by its policies and protect its institutional brand and reputation. Plaintiff's misconduct "substantially" violated her "contract of service"; under the faithless servant doctrine, her compensation is subject to forfeiture.[12]

## II. PLAINTIFF'S REMAINING CONTENTIONS LACK MERIT

### A. MSG's Counterclaim Was Not Brought In Bad Faith

Plaintiff argues that MSG has acted in bad faith. (Pl. Br. at 17). Plaintiff asserts, without any factual support whatsoever, that MSG's counterclaim was motivated by retaliatory animus in violation of Title VII and state and city law. Under the circumstances described above,

---

[11] Plaintiff cannot legitimately assert surprise that MSG is now seeking to recover her compensation, as its Code of Conduct signed by her plainly provides that, in addition to termination, MSG may seek available remedies in the event of a breach. (Cesaratto Dec., Exh. E ¶7). Plaintiff's citation to cases involving breach of contract claims did not involve claims under the faithless servant doctrine or policies setting forth company standards governing employee conduct and are therefore inapposite. See Lobosco v. New York Tel. Co./NYNEX, 96 N.Y.2d 312 (2001) (breach of contract claim by employee involving policy which prohibited retaliation for reporting violation of policy); Maas v. Cornell Univ., 94 N.Y.2d 87 (1999) (breach of contract claim by employee involving policy which defined procedure to be followed in sexual harassment investigations).

[12] Plaintiff's citation to case law holding that mere preparation of an outside business before leaving employment is not in violation of the duty of loyalty is inapposite here because Plaintiff went well beyond mere preparation. Indeed, Plaintiff's tax returns disclose in excess of $70,000 of detailed business expenses incurred from 2001 to 2004. This disclosure is an admission that Plaintiff devoted a substantial amount of time to the operation of her unauthorized business including travel, telephone and various business expenses and costs.

7

the existence of the underlying discrimination allegations provides no support for an allegation that MSG's proposed counterclaim is in bad faith.[13] Far from being based on mere allegations made on information and belief, MSG's proposed counterclaim is based upon evidence revealed in discovery that establishes a breach of MSG's clearly defined and consistently applied policies. For the same reasons, Plaintiff's allusion to Rule 11 sanctions is equally unavailing; since MSG's proposed counterclaim is based on evidence revealed in discovery, it can hardly be said that MSG's proposed counterclaim is "utterly devoid of factual allegations to raise a colorable claim." (Pl. Br. at 16 citing Jacques v. DiMarzio, Inc., 216 F. Supp. 2d 139, 142 (E.D.N.Y. 2002)).[14]

    B.    <u>Plaintiff Will Not Suffer Prejudice If Leave To Amend Is Granted</u>

Plaintiff argues that MSG's claim should have been hastily filed on December 1, 2006 when MSG's answer to Plaintiff's Second Amended Complaint was due. (Pl. Br. at 18). While Plaintiff is correct that the tax records received on November 22 and 24, 2006 indicated that Plaintiff conducted an unauthorized business and/or engaged in tax fraud, either or both of which would violate company policy, Plaintiff is wrong to assert that MSG failed to act with appropriate alacrity by not asserting a counterclaim some nine days later, especially in light of Plaintiff's dilatory behavior in failing to produce the tax returns until the eve of her deposition

---

[13] Cf. Yankelevitz v. Cornell Univ., No. 95 Civ. 4593, 1996 WL 447749 (S.D.N.Y. Aug. 7, 1996) (counterclaim filed against current employee following his participation as a witness in a discrimination investigation to the detriment of the employer may constitute retaliation).

[14] Plaintiff asserts, alternatively, that MSG's counterclaim seeking forfeiture of wages fails because New York Lab. Law § 193 prohibits MSG from seeking to recoup earned compensation from Plaintiff by a "separate transaction." (Pl. Br. at 13-14; see also Burke, 2004 WL 1117891, at *6 (citing Section 193, this Court found that New York employers may not assert a claim for damages against an employee for an employee's negligent acts or sue for lost profits caused by an employee's poor performance)). As it relates to a faithless servant claim, Plaintiff's argument is unsupported by any case law. Cf. Angello v. Labor Ready, Inc., 7 N.Y.3d 579, 584 (2006) (case involving improper deduction from an employee's wages stemming from the employer imposing a fee for the service of providing a voucher for receipt of case wages). Indeed, no case addressing the faithless servant doctrine in New York holds that Section 193 would limit recovery based upon analogous facts to those presented here, i.e., where MSG's claims are based upon a breach of a duty of loyalty or trust related to violations of agreed to company policy which have nothing to do with the employee's underlying job performance or negligence.

8

and Defendants' need for additional discovery (i.e., deposing her numerous accountants) to determine what facts could be alleged.[15]

Moreover, a six-week delay between the close of discovery and the filing of a motion to amend in a case of this magnitude does not amount to an inordinate delay or bad faith. See MSG Br. at 10.[16] MSG's motion to amend was filed "soon after it fully developed the evidence of Plaintiff's breach of MSG policy." (MSG Br. at 8). For example, MSG did not receive proof as to the actual tax returns that were filed, stipulated on Plaintiff's April 4, 2007 stipulation, which itself was not forthcoming until after this Court's February 16, 2007 Order.

Finally, MSG will gain no unfair tactical advantage. Plaintiff concedes that she was on notice as early as November 29, 2006 that Defendants were contemplating motion practice related to her violation of company policy resulting from information gained from the tax returns. (Pl. Br. at 19). Despite such knowledge, Plaintiff chose not to question James Dolan, Steve Mills, or any other MSG employees regarding issues related to MSG policies, or to take any discovery related to those policies. As MSG explained in its opening brief and Plaintiff concedes, no additional discovery is required concerning the facts related to MSG's proposed counterclaim. (MSG Br. at 11; Pl. Br. at 19). Plaintiff instead claims prejudice will result due to the fact that should the counterclaim be permitted, Plaintiff would be denied discovery "on the critical issue of whether MSG's counterclaim was asserted for a retaliatory purpose." (Pl. Br. at 19). However, as explained above, MSG has not brought the proposed counterclaim in bad

---

[15] See State Teachers Retirement Bd. v. Fluor Corp., 654 F.2d 843, 856 (2d Cir. 1981) (delay in amending claim in order to depose an important witness may be justified given a need to verify information).

[16] Plaintiff's case law in support is distinguishable. For example, Plaintiff mis-cites McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 201 (2d Cir. 2007) for the proposition that filing a motion for leave to amend more than two months after discovery was completed warrants denial of the motion. In McCarthy, the motion to amend was not denied based solely upon the notion that the motion was made two months after discovery, but instead also involved movant's earlier knowledge of facts related to the proposed amendment which evidenced undue delay. Id. at 202.

faith.[17] Even if the Court were to determine that additional discovery is warranted, that does not suffice to warrant denial of the motion to amend.[18]

### C. MSG's Counterclaim Is Governed By The Liberal Rule 12(b)(6) Standard

In determining the merit of a proposed amendment, a court should apply a Rule 12(b)(6) standard. (See MSG Br. at 5-6.) Under Rule 12(b)(6), Defendant is entitled to plead a claim provided there is a good faith basis and no futility of amendment. MSG has met and surpassed this liberal standard. Plaintiff argues that the Court must decide the instant motion under a more stringent summary judgment standard. (Pl. Br. at 6).[19] The cases cited by Plaintiff are distinguishable as both involve motions to amend complaints to avoid dismissal by adding new claims or parties in response to a summary judgment motion.[20] Even if the Court were to decide the instant motion under a summary judgment standard, however, sufficient undisputed evidence exists to demonstrate that MSG has a cognizable faithless servant claim.

## CONCLUSION

Based on the foregoing, Defendant's motion for leave to amend its Answer to assert a counterclaim should be granted.

Dated: New York, New York  
June 8, 2007

EPSTEIN BECKER & GREEN, P.C.  
s/Ronald M. Green  
By:   Ronald M. Green (RG-7766)

---

[17] Notably, Plaintiff has set forth no examples as to what type of evidence Plaintiff could possibly seek to uncover by opening discovery on the issue of retaliatory motive, i.e., who would likely be deposed. Since no additional discovery is necessary, Plaintiff's argument that MSG must show "good cause" under Rule 16 is meritless.

[18] See, e.g., Resorts & Motel Adv. Devel. Agency, Ltd. v. Sloan, 160 F.R.D. 449, 451 (S.D.N.Y. 1995).

[19] Cf. Veritas-Scalable Inv. Prods. Fund, LLC v. FB Foods, Inc., No. 3:04 Civ. 1199 JBA, 2006 WL 2520262 (D. Conn. July 26, 2006) (permitting leave to amend to assert a counterclaim six weeks after the close of discovery with a motion for summary judgment pending under the liberal pleading standards of Rules 15 and 12(b)(6)).

[20] See Smith v. P.O. Canine Dog Chas, No. 02 Civ. 6240 KMF, 2004 WL 2202564, at *12 (S.D.N.Y. Sept. 28, 2004) (plaintiff attempted to defeat summary judgment motion by adding claim against a new defendant); Stoner v. New York City Ballet Co., No. 99 Civ. 0196, 2002 WL 523270 (S.D.N.Y. Apr. 8, 2002) (plaintiff moved to amend complaint in response to summary judgment motion).

                                        Barry A. Cozier (BC-7110)
                                        Brian G. Cesaratto (BC-5464)
250 Park Avenue
New York, New York 10177-1211
(212) 351-4500

MORGAN, LEWIS & BOCKIUS LLP

Amber L. Kagan (AK- 7973)
101 Park Avenue
New York, New York 10178
(212) 309-6000

*Attorneys for Defendant Madison Square Garden, L.P. and James L. Dolan*

To:    Anne Vladeck, Esq.
        Kevin Mintzer, Esq.
        Vladeck, Waldman, Elias &
        Engelhard, P.C.
        1501 Broadway, Suite 800
        New York, New York 10036
        (212) 403-7300
        *Attorneys for Plaintiff*

        Sue Ellen Eisenberg (SE-4713) –
        *admitted pro hac vice*
        Lucetta Franco (LF-7638) –
        *admitted pro hac vice*
        Eisenberg & Bogas, P.C.
        33 Bloomfield Hills Parkway, Suite 145
        Bloomfield Hills, Michigan 48304-2945

            -and-

        Laurie Berke-Weiss (LB-3445)
        Louis Pechman (LP-6395)
        Berke-Weiss & Pechman LLP
        488 Madison Avenue
        New York, New York 10022
        (212) 538-9500

        *Attorneys for Defendant Isiah Lord Thomas III*

11