UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - x

ANUCHA BROWNE SANDERS, :

               Plaintiff, :

                                   :    06 CV 0589 (GEL) (DCF)

     - against -            :

                                     :    ECF CASE

MADISON SQUARE GARDEN, L.P., ISIAH LORD :
THOMAS III AND JAMES L. DOLAN, :

               :

                  Defendants. :

- - - - - - - - - - - - - - - - - - - - - - - - - - - x

## REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF MADISON SQUARE GARDEN, L.P. AND JAMES L. DOLAN'S MOTION FOR PARTIAL SUMMARY JUDGMENT

EPSTEIN BECKER & GREEN, P.C.
250 Park Avenue
New York, New York 10177-1211

———

212.351.4500

Attorneys for Defendants Madison Square Garden, L.P. and James L. Dolan

Dockets.Justia.com

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................. ii

PRELIMINARY STATEMENT ........................................................................................ 1

ARGUMENT ...................................................................................................................... 3

I.    PLAINTIFF HAS FAILED TO DEMONSTRATE THAT ANY
      DISPUTED ISSUES OF MATERIAL FACT EXIST, AND THEREFORE
      MSG IS ENTITLED TO PARTIAL SUMMARY JUDGMENT ............................ 3

      A.    There Is No Legitimate Factual Dispute As To Whether Plaintiff
            Operated A Direct Marketing Business ..................................................... 3

      B.    There Are No Material Issues Of Fact As To Plaintiff's Tax Fraud ........... 5

      C.    Plaintiff Cannot Dispute MSG's Evidence That Plaintiff Would
            Have Been Terminated For Her Misconduct ............................................. 7

II.   REPUTATIONAL DAMAGES ............................................................................. 10

CONCLUSION ............................................................................................................... 10

i

## TABLE OF AUTHORITIES

Page

### CASES

Blake-McIntosh v. Cadbury Beverages, Inc., No. 96 Civ. 2554 (EBB), 1999 WL
643661 (D. Conn. Aug. 10, 1999) ...................................................................................7

Dister v. Continental Group, Inc., 859 F.2d 1108 (2d Cir. 1988)........................................9

Flores v. Buy Buy Baby, Inc., 118 F. Supp. 2d 425 (S.D.N.Y. 2000).................................5

Goldman v. Admin. for Children's Servs., No. 04 Civ. 7890 (GEL), 2007 WL
1552397 (S.D.N.Y. May 29, 2007).................................................................................9

Greene v. Coach, Inc., 218 F. Supp. 2d 404 (S.D.N.Y. 2002)............................................9

Lewis v. Sugar Creek Stores, Inc., No. 96-CV-0100 (ECH), 1996 WL 685730
(W.D.N.Y. Nov. 25, 1996)...........................................................................................8, 9

McKennon v. Nashville Banner Publ'g. Co., 513 U.S. 352 (1995) ...............................5, 10

Predzik v. Shelter Corp., No. 05-1063 (JRT/FLN), 2006 WL 2794368 (D. Minn.
Sept. 27, 2006) ..............................................................................................................7

Russell v. Board of Plumbing Exam'rs of County of Westchester, 74 F. Supp. 2d 339,
348 (S.D.N.Y. 1999)......................................................................................................9

Russell v. Microdyne Corp., 65 F.3d 1229 (4th Cir. 1995)................................................4

Simon v. Safelite Glass Corp., 128 F.3d 68 (2d Cir. 1997)...............................................4

Waag v. Thomas Pontiac, Buick, GMC, Inc., 930 F. Supp. 393 (D. Minn. 1996).............8

Washington v. Lake County, Ill., 969 F.2d 250 (7th Cir. 1992).........................................9

Welch v. Liberty Machine Works, Inc., 23 F.3d 1403 (8th Cir. 1994) ...............................8

### STATUTES

Fed. R. Civ. P. 56(e) .......................................................................................................10

Fed. R. Evid. 801(d)(2)(A) ...............................................................................................4

## PRELIMINARY STATEMENT

Defendants Madison Square Garden, L.P. ("MSG") and James L. Dolan ("Dolan") submit this memorandum of law in further support of their Motion for Partial Summary Judgment dismissing Plaintiff's claims for (i) front pay and reinstatement, as well as limiting her claims for back pay, based on the after-acquired evidence of Plaintiff's tax fraud and other misconduct; and (ii) reputational damages. Plaintiff argues that Defendants have no factual support for limiting Plaintiff's damages under the after-acquired evidence defense and that no reasonable jury could find that Plaintiff violated any MSG policies such that her termination would have been appropriate. Plaintiff's arguments are factually and legally flawed and fail to raise any genuine issue of material fact. It remains beyond dispute that Plaintiff violated MSG policy and engaged in serious misconduct – and that she did so while serving as a senior executive with responsibility over a $120 million budget in a high-profile business.

*First*, Plaintiff has declined to retract two of the four years of "incorrect" tax returns, sworn to under penalty of perjury, and, therefore, is estopped from arguing that she did not in fact operate a marketing business, in violation of MSG's policies and her agreement with MSG, whatever she claims may be the truth now.

*Second*, Plaintiff has not offered any evidence, even in her own sworn declaration, to explain her past and continuing tax fraud or attempt to show that it would not violate MSG's ethics policies. Instead, her counsel attempts to manufacture, through unsupported assertions and inadmissible hearsay, a factual dispute over whether Plaintiff violated MSG policies when she claimed particularized fraudulent deductions in excess of $70,000 on her 2001-2004 federal, New York and New Jersey tax returns. In her sworn declaration, Plaintiff merely asserts that she was unaware of any improper deductions. Plaintiff's unsworn brief blames the accountant who prepared the returns, discrediting some (but not all) of his testimony based on his admission that

he is a recovering alcoholic. Although Plaintiff parses and quotes misleading excerpts from her accountant's testimony, the record testimony taken as a whole reflects that he did <u>not</u> simply make up the numerous false deductions. In any event, it is undisputed that Plaintiff signed and certified under oath <u>four consecutive years of federal and state returns</u>, verifying their contents.

Plaintiff attempts to justify her misconduct through the testimony and declaration of another accountant, retained by Plaintiff's counsel as part of her litigation strategy to clean up years of her tax fraud, only <u>after</u> the Court ordered her tax returns be produced. Plaintiff's counsel and accountant argue that because the Internal Revenue Service ("IRS") has a three-year statute of limitations on civil penalties, she is effectively "exonerated," *nunc pro tunc* by amending the most recent two years of false filings and, therefore, did not violate MSG policies by filing false returns. This argument ignores the undisputed evidence that MSG's ethics policies are not restricted to cases where the IRS pursues employees for civil or criminal liability.

Indeed, it is undisputed that Plaintiff was aware as early as April 2006 that her returns were false, but did nothing to "correct" any of them until approximately six months later, after the Court ordered her to produce the returns. Even if there was a genuine dispute about when she learned the returns were "incorrect" (which there is not), there is no dispute that she never amended her 2001 and 2002 returns, and has thereby retained substantial tax benefits to which she is not entitled. Plaintiff's undisputed filing of four years of false tax returns and knowing, continued retention of undeserved tax benefits for the unamended 2001 and 2002 returns provide sufficient reason to warrant her termination under MSG's well-established and consistently applied policies, particularly given her position of responsibility with the company.

Defendants have demonstrated that there are no genuine issues of material fact as to their after-acquired evidence defense, and they are entitled as a matter of law to the limitations

on damages requested in their opening brief.[1]  Moreover, Plaintiff has raised no genuine issues of material fact precluding summary judgment on her claim for reputational damages.

## ARGUMENT

I.  **PLAINTIFF HAS FAILED TO DEMONSTRATE THAT ANY DISPUTED ISSUES OF MATERIAL FACT EXIST, AND MSG IS THEREFORE ENTITLED TO PARTIAL SUMMARY JUDGMENT**

    A.  **There Is No Legitimate Factual Dispute As To Whether Plaintiff Operated A Direct Marketing Business**

Plaintiff's argument (Pl. Opp. Br. at 10-11) that Defendants have not uncovered any evidence to suggest that Plaintiff actually operated an outside business in violation of MSG policy is unavailing.  There is no dispute that Plaintiff's operating a direct marketing business would violate MSG's policies, and Plaintiff has conceded that she could be terminated for doing so.  (Combined 56.1 ¶ 22-23).  The undisputed facts are that: (i) during her employment at MSG, Plaintiff asserted under penalty of perjury that she operated a direct marketing business and claimed over $70,000 in specific and detailed business deductions on her federal and state returns, and obtained corresponding reductions in her tax liability; (ii) Plaintiff only amended her 2003 and 2004 returns to eliminate any reference to the direct marketing business after the Court ordered that they be produced and immediately prior to her deposition; and (iii) Plaintiff chose not to amend her 2001 and 2002 returns, solely because the civil statute of limitations had expired and she believed she could no longer face disgorgement or penalties in connection with those returns.

In light of these undisputed facts and years of representations to the state and federal governments -- which remain unretracted for two of the years at issue -- Plaintiff's only sworn response is that she never owned or operated a marketing business, and refers to third

---

[1] The facts are more fully set forth in the Combined Rule 56.1 ("Combined 56.1") attached hereto as Exhibit A.  The Memorandum of Law in Support of MSG & Dolan's Motion for Partial Summary Judgment is defined herein as

party testimony as corroboration for that assertion.[2]  Whatever the actual facts, Plaintiff should be estopped from disavowing the existence of her marketing business in order to avoid the negative consequences under MSG's policy of asserting and continuing to assert its existence, especially since she has retained the tax benefits derived from that business under the unamended returns.  To permit Plaintiff to rely upon statements that are irreconcilable with her prior sworn filings with the IRS would countenance a fraud on this Court.  In effect, the principle of judicial estoppel is designed to preclude perpetration of such a fraud.[3]

Plaintiff cites Russell v. Microdyne Corp. for the unremarkable principle that summary judgment on the after-acquired evidence defense should be denied where the evidence is in fact contradictory that the employer would have terminated the plaintiff based on newly discovered evidence.  65 F.3d 1229, 1237-41 (4th Cir. 1995).  There is no contradictory evidence here, and Russell is clearly distinguishable.  The basis of the Fourth Circuit's holding was that the plaintiff's declaration provided contradictory evidence "as to whether the evidence was in fact newly acquired in the course of discovery."  Id. at 1240.  Here, Plaintiff's declaration wholly fails to address anything relative to MSG's after-acquired evidence defense, and there is no dispute that the evidence of Plaintiff's fraudulent tax returns is "newly acquired."  It is undisputed

---

"Def. Br." and Plaintiff's Memorandum of Law in Opposition thereto is defined as "Pl. Opp. Br.".

[2] Plaintiff's declaration is conspicuously devoid of any reference to the tax returns or her business deductions under Schedule C. Without any sworn explanation by Plaintiff, counsel's argument is insufficient to rebut or repudiate her signed and certified tax returns and the resultant benefits she received and retains from her marketing business. See Fed. R. Evid. 801(d)(2)(A).  The testimony by Plaintiff's witnesses (Pl. Opp. Br. at 11) that she did not operate any outside business while an executive at MSG are uncorroborated hearsay.  Although the testimony of Plaintiff's husband may be inadmissible hearsay since the business operated from the home, it is not sufficient to create a factual dispute because it cannot overcome Plaintiff's continuing admission that the business existed.

[3] See Simon v. Safelite Glass Corp., 128 F.3d 68, 71-72 (2d Cir. 1997) (employee's statements made under oath and penalty of perjury to an administrative agency estopped him from adopting a subsequent inconsistent position).  The Social Security Administration granted Simon benefits because he claimed on his application he was unable to work. That assertion was contrary to his claim in the later judicial proceeding that he was able to work, and the court held those inconsistencies could not be reconciled.  Id. at 73.  Reflecting the importance of truthful government filings, the Second Circuit observed that "[a]scertaining the truth is as important in an administrative inquiry as in judicial proceedings."  Id. at 72 (citation omitted).

that MSG only learned of Plaintiff's misconduct when her returns were finally produced in November 2006 and that such misconduct would have resulted in termination. (Dolan Aff. ¶ 5).[4]

**B.    There Are No Material Issues Of Fact As To Plaintiff's Tax Fraud**

Plaintiff's selective quotations from the testimony of her various accountants is misleading and fails to create a genuine factual dispute over whether she committed tax fraud. With respect to ████████████ the accountant who prepared the fraudulent returns, Plaintiff improperly parses his deposition testimony to lead this Court to believe they never discussed her business deductions. ████████ testimony in fact shows that Plaintiff was aware of these remarkably specific deductions totaling in excess of $70,000.00 for four consecutive years and of her substantial resulting tax benefits. When asked whether he prepared Plaintiff's Schedule C, ████████ replied "we did put that schedule together." ████████ p. 44) (emphasis added). When asked whether he discussed expenses with Plaintiff, he stated that "we had several discussions during the height of the season." ████████ p. 45). When asked who furnished the information regarding the direct marketing business, his unequivocal response was "the client." ████████ p. 43).[5]

Plaintiff cites ████████ testimony that he did not remember if he made up the information contained in the Schedule C forms he prepared. (Combined 56.1 at ¶ 29). However, Plaintiff omits the following relevant testimony by ████████

---

[4] Here, the undisputed facts are starkly in contrast to those in Russell. Plaintiff committed serious wrongdoing; her four years of fraudulent tax returns are egregious when compared to Russell's misstatements, which "slightly" misrepresented her annual compensation; and Plaintiff's breaches of MSG policy and of the trust placed in her by Dolan and Mills were beyond "slight"; her conduct was sufficiently serious such that MSG has demonstrated by sworn testimony and every relevant comparator that had it known about the misconduct during Plaintiff's employment, it would have terminated her. See Flores v. Buy Buy Baby, Inc., 118 F. Supp. 2d 425, 433 (S.D.N.Y. 2000) (citing McKennon v. Nashville Banner Publ'g. Co., 513 U.S. 352, 362 (1995)) (where employer seeks to rely on after acquired evidence, it must establish that the wrongdoing was so severe that the employee would have been ██████ on those grounds alone had the employer known of it at the time of discharge).

[5] ████████ would not have made up the deductions on Plaintiff's 2001-2004 Schedule C. The detailed, itemized expenses included car expenses, taxes and licenses, professional dues, attending conferences, telephone, books and

Q     But your testimony is you did have a conversation with her regarding the schedule?

A     Yes, that's correct.

(Combined 56.1 ¶ 46).

Q     . . . So again, with regard to the 2001 return that would have been prepared in 2002, you would not have included information on that return were it not information that you were led to believe was relevant to that return?

A     We prepare returns based on information that our clients give to us. And so we had conversations with Ms. Browne Sanders, which were undocumented, and we would not sign the return if we felt the return was fraudulent.

Q     All right. And just let me be clear about your testimony. And that is that in the calendar year 2002 when you prepared the return, that return would have been prepared based on information you received from Ms. Browne Sanders; is that correct?

A     Yes.

(Combined 56.1 ¶ 46).

████████ made it clear that he did not fabricate the information on Plaintiff's returns:

Q     And have you ever made entries on Schedule C that were not either provided to you by the client orally or by documents?

MR. MINTZER: Objection to form.

A     No.

(Combined 56.1 ¶ 46).

Plaintiff conveniently fails to address her second accountant's testimony that he told her in April 2006 that her prior return was incorrect and suggested that she amend it. (Combined 56.1 ¶¶ 87, 91). Rather than promptly amending her false returns (and paying the associated taxes and penalties), Plaintiff and her counsel strenuously contested MSG's discovery

---

subscriptions, office supplies and office expenses. Plaintiff even fixed in each year's return the exact date she first placed her vehicle in service for business purposes and the mileage. (Def. Br. at 6-7).

requests in an effort to conceal them. This Court, over Plaintiff's objection, directed that her tax returns be produced. Plaintiff's counsel then retained Reimer, a Certified Public Accountant who admittedly specializes in "forensic" accounting and "detect[ing] irregularities in reporting, filing and payment matters." (See Affidavit of Leon Reimer, ¶ 3). Although Reimer swears in an affidavit that Plaintiff told him she never discussed a business, Schedule C or any business expenses with ██████ and never supplied ██████ with any information pertaining to those business expenses, those statements are uncorroborated by Plaintiff's testimony or sworn declaration. They are nothing more than inadmissible self-serving statements in lieu of her own sworn testimony, i.e., "proxy hearsay."

In short, Plaintiff fails to create a genuine dispute over whether Plaintiff fraudulently submitted false tax returns for four years and continues to retain tax benefits for erroneous business deductions by refusing to amend her returns for 2001 and 2002.

## C. Plaintiff Cannot Dispute MSG's Evidence That Plaintiff Would Have Been Terminated For Her Misconduct

Plaintiff incorrectly claims that MSG policies cover only "work-related" misconduct and that MSG cannot claim "that it fires any employee who engages in alleged dishonest or unlawful behavior even if the conduct does not result in criminal charges and is not related to the workplace." (Pl. Opp. Br. at 16). As detailed in Defendants' moving papers, however, MSG has clear, well-defined ethical policies that are not limited to criminal conduct or workplace activity.[6] There are no genuine issues of fact as to whether MSG would have fired Plaintiff for her misconduct.[7]

---

[6] See Def. Br. at 9-11.

[7] Plaintiff's cases are inapplicable. Predzik v. Shelter Corp., No. 05-1063 (JRT/FLN), 2006 WL 2794368, at *5 (D. Minn. Sept. 27, 2006) (company employee handbook language was equivocal as to whether violation of policy mandated termination and therefore insufficient to establish well-settled company policy); Blake-McIntosh v. Cadbury Beverages, Inc., No. 96 Civ. 2554 (EBB), 1999 WL 643661, at *18 (D. Conn. Aug. 10, 1999) (genuine

Plaintiff essentially argues that because MSG or Cablevision cannot identify another senior executive who engaged in similar misconduct, there is no one to whom Plaintiff can be compared and therefore no proof exists that MSG would have terminated her for similar misconduct. (Pl. Opp. Br. at 17-19). The information that MSG proffered concerning other employees is solely for the purpose of demonstrating that it has consistently treated unethical and other misconduct, even outside of work or not directly related to work duties, as terminable. (Def. Br. 9-11).[8] The fact that MSG has not previously faced a situation where a senior executive with extensive business P&L responsibilities engaged in fraudulent, inappropriate and dishonest conduct, does <u>not</u> exonerate Plaintiff. In light of the undisputed evidence that she committed serious tax fraud, Plaintiff cannot create a genuine issue of fact merely by disputing MSG's sworn assertions that if it had learned of her fiscal dishonesty and serious misconduct, it would not have ignored it, but would have terminated her.

Plaintiff attacks the affidavits of Dolan (MSG's Chairman, who ultimately terminated her) and Mills (President of MSG Sports, her direct supervisor) as "self-serving" and "disputed." This argument is specious. For one thing, the cases Plaintiff cites in support of her argument are inapposite.[9] In addition, the affidavits provide incontrovertible evidence that

---

issues existed as to whether employee's actions were so egregious that the employer would have discharged her solely on that basis).

[8] Plaintiff tries to divert attention from her own wrongdoing by referencing the entirely inapposite alleged misconduct of defendants Dolan and Isiah Thomas ("Thomas"), which simply is not analogous to Plaintiff's misconduct or otherwise relevant to MSG's after acquired evidence defense. Allegations of recreational drug use, particularly those remote in time, are a transparent attempt to divert the Court's attention from the issues at hand. Further, the undisputed testimony shows that Thomas obtained all requisite permission from the highest levels of MSG to be an investor and permit the company in which he invested to offer its food product for sale at MSG. (Combined 56.1 ¶ 101).

[9] In <u>Waag v. Thomas Pontiac, Buick, GMC, Inc.</u>, the employer offered only one affidavit stating that the company would not have hired plaintiff had they learned he was just recently fired from his previous job, and did not offer sufficient evidence that its actions were a matter of settled policy. 930 F. Supp. 393, 409 (D. Minn. 1996). Waag also produced credible evidence that the company would have hired him even if they had known about his prior criminal conviction. <u>Id.</u> In <u>Welch v. Liberty Machine Works, Inc.</u>, the employer submitted only one affidavit as evidence to establish its purported policy. 23 F.3d 1403, 1405-1406 (8th Cir. 1994). Where the employer offered no additional evidence of its policies whatsoever, their sole affidavit was self-serving. <u>Id.</u> In <u>Lewis v. Sugar Creek</u>

Plaintiff would have been terminated had her misconduct come to light. Plaintiff has not submitted any admissible evidence contradicting their assertions and never questioned Dolan about MSG's after-acquired evidence defense or its company policies despite having ample opportunity to do so.[10] The affidavits are also substantiated by MSG's well-defined policies, which have been consistently applied. (See Def. Br. at 9-11). Plaintiff's unamended tax returns, coupled with MSG's well-defined company policies and the undisputed affidavits,[11] provide sufficient undisputed evidence to establish Defendants' entitlement to summary judgment.[12]

    Finally, Plaintiff argues in her opposition that MSG's after-acquired evidence defense must fail because the alleged wrongdoing involves her tax returns, which are confidential and statutorily protected from disclosure and thus, MSG cannot make employment decisions based on such tax returns. (Pl. Opp. Br. at 17-18) (citing Russell v. Board of Plumbing Exam'rs of County of Westchester, 74 F. Supp. 2d 339, 348 (S.D.N.Y. 1999)). Russell is inapplicable, as MSG did not wrongfully or coercively acquire Plaintiff's tax returns; instead,

---

Stores, Inc., the employer submitted more than one affidavit, but the plaintiffs submitted materially contradictory affidavits. No. 96-CV-0100 (ECH), 1996 WL 685730, at *3-4 (W.D.N.Y. Nov. 25, 1996). All three of these cases are factually distinct from the case at bar.

[10] Plaintiff was on notice of MSG's after acquired evidence defense as early as November 29, 2006 when MSG's counsel submitted a letter to Plaintiff's counsel stating that MSG believed Plaintiff's tax returns contained evidence that she violated company policies during the course of her employment. (See Declaration of Kevin T. Mintzer in Opposition to MSG and Dolan's Motion for Partial Summary Judgment and MSG's Motion for Leave to Amend its Answer ("Mintzer Aff.") Exhibit 6). Dolan was not deposed until December 11, 2006.

[11] Plaintiff is not in a position to challenge the sworn statements of Mills and Dolan that they would have terminated her for violation of established MSG policies, where such statements are consistent with the appropriate exercise of the business judgment entrusted to them. See Goldman v. Admin. for Children's Servs., No. 04 Civ. 7890 (GEL), 2007 WL 1552397, *5 (S.D.N.Y. May 29, 2007); see also Dister v. Continental Group, Inc., 859 F.2d 1108, 1116 (2d Cir. 1988).

[12] See Greene v. Coach, Inc., 218 F. Supp. 2d 404, 412-14 (S.D.N.Y. 2002) (employer affidavits and undisputed evidence of wrongdoing were sufficient for the court to grant summary judgment and limit plaintiff's remedies); Washington v. Lake County, Ill., 969 F.2d 250, 256 (7th Cir. 1992) (uncontradicted employer affidavits from high level decision makers with knowledge of the company's hiring and firing practices were sufficient absent any evidence by plaintiff to the contrary).

during the normal course of employment and the returns were legitimately obtained pursuant to this Court's order. Plaintiff's argument is also flatly inconsistent with McKennon.[13]

## II.  REPUTATIONAL DAMAGES

With regard to Plaintiff's opposition to Defendants' motion for summary judgment as to Plaintiff's claim for reputational damages, Defendants adopt the arguments set forth in Defendant Isiah Thomas' Reply Brief in Further Support of his Motion For Partial Summary Judgment. Moreover, Plaintiff's claim, as now asserted in her opposition, is inconsistent with her prior deposition testimony and her responses to MSG's Second Set of Interrogatories. To the extent that Plaintiff now asserts that it was Thomas', Dolan's and MSG's alleged acts of discrimination and retaliation that also make them liable to Plaintiff for reputational damages, such an assertion is insufficient as a matter of law to raise a genuine issue of material fact. Fed. R. Civ. P. 56(e) (On motion for summary judgment, genuine issue of fact requiring trial cannot be raised by statements in affidavits not based on personal knowledge, statements and affidavits that conflict with prior deposition testimony, or arguments or statements by counsel unsupported by record).

## CONCLUSION

For all the foregoing reasons, this Court should grant MSG and Dolan's motion for partial summary judgment.

Dated: New York, New York
      June 8, 2007

EPSTEIN BECKER & GREEN, P.C.
s/Ronald M. Green
_____
By:    Ronald M. Green (RG-7766)
       Teresa M. Holland (TH-6973)
       Barry A. Cozier (BC-7110)
       Brian G. Cesaratto (BC-5464)

---

[13] "Once an employer learns about employee wrongdoing that would lead to a legitimate discharge, we cannot require the employer to ignore the information, even if it is acquired during the course of discovery in a suit against the employer and even if the information might have gone undiscovered absent the suit." 513 U.S. at 362 (emphasis added).

250 Park Avenue
New York, New York  10177-1211
(212) 351-4500

MORGAN, LEWIS & BOCKIUS LLP

Amber L. Kagan (AK- 7973)
101 Park Avenue
New York, New York 10178
(212) 309-6000

*Attorneys for Defendant Madison Square
Garden, L.P. and James L. Dolan*

To:   Anne Vladeck, Esq.
      Kevin Mintzer, Esq.
      Vladeck, Waldman, Elias &
      Engelhard, P.C.
      1501 Broadway, Suite 800
      New York, New York 10036
      (212) 403-7300
      *Attorneys for Plaintiff*

      Sue  Ellen  Eisenberg  (SE-4713)  –
      *admitted pro hac vice*
      Lucetta Franco (LF-7638) –
      *admitted pro hac vice*
      Eisenberg & Bogas, P.C.
      33 Bloomfield Hills Parkway, Suite 145
      Bloomfield Hills, Michigan  48304-2945

          -and-

      Laurie Berke-Weiss (LB-3445)
      Louis Pechman (LP-6395)
      Berke-Weiss & Pechman LLP
      488 Madison Avenue
      New York, New York 10022
      (212) 538-9500
      *Attorneys for Defendant Isiah Lord
      Thomas III*