UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

------------------------------------X
ANUCHA BROWNE SANDERS,

        Plaintiff,

    -against-             06 CV 0589 (GEL)

MADISON SQUARE GARDEN, L.P.,
ISIAH LORD THOMAS III and JAMES L. DOLAN,

        Defendants.
------------------------------------X

COPY

VIDEOTAPED DEPOSITION OF ███████

New York, New York

Tuesday, January 23, 2007

REPORTED BY:

BARBARA R. ZELTMAN

JOB NO.: 11343





**David Feldman**
W o r l d w i d e

805 Third Avenue, 8th Floor
New York, NY 10022
(800) 642-1099

From File to Trial.

600 Anton Boulevard, 11th Floor
Costa Mesa, CA 92626
(866) DFW-1380

45

1    ████████
2    at these entries?
3         MR. MINTZER:  Objection to
4    form.
5    A    I don't recall.
6    Q    Did you discuss expenses with
7    Ms. Sanders?
8         MR. MINTZER:  Objection to
9    form.
10   A    Like I said, we had several
11   conversations during probably the height
12   of the season.  Lot of this stuff is -- I
13   don't remember.  All I could tell you, I
14   know we finished the return.  That's all I
15   know.  Forgive me.  We do a lot of
16   clients, and that's information I don't
17   recall.  I really don't.
18   Q    The page that follows, page
19   now marked BH-56, is a continuation of
20   Schedule C.
21        And Part 4 refers to
22   information on your vehicle.
23        Did you discuss this
24   information with Ms. Sanders?
25        MR. MINTZER:  Objection to

46

1        ███████

2    form.  Asked and answered.

3        A    I don't recall.

4        Q    And Part 5 with respect to
5    Other Expenses, you also prepared this
6    schedule; is that correct?

7        A    Yes.

8        Q    Did you discuss these items
9    with Ms. Sanders?

10            MR. MINTZER:  Objection to
11       form.  Asked and answered.

12       A    Well, I don't recall.  Like I
13   said, we did the return at the height of
14   the season.  Information was spoken about.
15   I don't recall specifically what you are
16   asking for.

17            MS. FRANCO:  Can we go off the
18       record a moment?

19            THE VIDEOGRAPHER:  Going off
20       record.  Time is 10:40 a.m.

21                 (A brief recess was
22       taken.)

23            THE VIDEOGRAPHER:  Going back
24       on record.  Time is 10:44 a.m.

25       Q    Mr. ██████ still referring

81

1       ▇▇▇▇▇▇▇▇▇▇▇▇
2       A    Yes.
3       Q    Do you recall when that
4  conversation took place?
5       A    It would have been prior to
6  the date -- see, in our system, when we
7  print them out, it defaults to the date
8  it's printed, which means this return
9  could sit for a week or two before it
10 actually gets reviewed. And then we speak
11 to the client.
12           And we don't have a log that
13 says when printed, when called client,
14 when case is closed. We don't have that
15 kind of timeline. We don't maintain that
16 kind of activity on an account.
17      Q    My question is merely --
18      A    But what I'm saying to you,
19 sir, is I would not know from this date
20 when I called her. This could have been
21 printed on the 29th. I could have
22 spoken to her on April 1st, the 5th, the
23 6th. I don't know.
24      Q    But your testimony is you did
25 have a conversation with her regarding the

175

1     [redacted]

2     prepared in accordance with any

3     requirements of the tax code; was it not?

4         MR. MINTZER:  Objection to

5     form.

6     A    Yes.

7     Q    And that return was prepared

8     in a manner that would not subject you to

9     any criminal or civil sanctions under the

10    tax code?

11        MR. MINTZER:  Objection to

12    form.

13    Q    Is that correct?

14    A    Yes.

15    Q    With regard to that 2001

16    return prepared in 2002, you never took

17    any steps to engage with Anucha Browne

18    Sanders in any fraud in that return, did

19    you?

20        MR. MINTZER:  Objection to

21    form.

22    A    No.

23    Q    And wouldn't it be fair to say

24    that in the calendar year -- strike that.

25        So again, with regard to the

176

1    ▬▬▬▬▬
2    2001 return that would have been prepared
3    in 2002, you would not have included
4    information on that return were it not
5    information that you were led to believe
6    was relevant to that return?
7            MR. MINTZER:  Objection to
8        form.
9            MR. GUNZBURG:  Hold on a
10       second.  Could you just repeat the
11       question.
12           (Requested portion of record
13       read.)
14           MR. MINTZER:  You have my
15       objection.
16       A    We prepare returns based on
17   information that our clients give to us.
18   And so we had conversations with
19   Ms. Browne Sanders, which were
20   undocumented, and we would not sign the
21   return if we felt the return was
22   fraudulent.
23       Q    All right.
24           And just let me be clear about
25   your testimony.  And that is that in the

```
                                                           177
 1            ████████
 2    calendar year 2002 when you prepared the
 3    2001 return, that return would have been
 4    prepared based on information you received
 5    from Ms. Browne Sanders; is that correct?
 6            MR. MINTZER:  Objection to
 7       form.  Asked and answered.
 8       A    Yes.
 9       Q    Because it would be fair to
10    say that in any tax year, you would not
11    add information to a return if you did not
12    have a basis for it received from the
13    individual that you were doing the return
14    for; is that correct?
15            MR. GUNZBURG:  Are you talking
16       about generally, or talking about
17       Anucha Browne Sanders?
18            MS. FRANCO:  I am talking
19       about generally.
20            MR. MINTZER:  Objection to
21       form.  Your questions are so leading,
22       and really, you are testifying for
23       this witness.
24            MS. FRANCO:  I consider him to
25       be an adverse witness.
```

203

1      ▮▮▮▮▮▮

2      Q     And have you ever made entries
3 on Schedule C that were not either
4 provided to you by the client orally or by
5 documents?
6           MR. MINTZER:  Objection to
7      form.
8      A     No.
9           MR. MINTZER:  Asked and
10     answered.
11     Q     With regard to charitable
12 deductions, is there a requirement under
13 the tax code of supporting documentation
14 for any charitable deductions sought over
15 $250?
16          MR. GUNZBURG:  At what point
17     in time because the law changed?
18     Q     In the calendar year 2003 for
19 the tax year 2002.
20     A     I don't recall when that
21 actually came into effect.
22     Q     But once that came into
23 effect, the client would have understood
24 from your communications that they would
25 need supporting documentation if they were