UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

ANUCHA BROWNE SANDERS,

                    Plaintiff,                                    06 Civ. 0589 (GEL)

       - against -

                                           ECF Case

MADISON  SQUARE  GARDEN,  L.P.,  ISIAH
LORD THOMAS III, and JAMES L. DOLAN,

                    Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

---

### REPLY MEMORANDUM OF LAW IN
### SUPPORT OF PLAINTIFF'S MOTION FOR
### PARTIAL SUMMARY JUDGMENT

---

                            VLADECK, WALDMAN, ELIAS &
                              ENGELHARD, P.C.
                            Attorneys for Plaintiff
                            1501 Broadway, Suite 800
                            New York, New York 10036
                            (212) 403-7300

# TABLE OF CONTENTS

TABLE OF AUTHORITIES.............................................................................................ii

ARGUMENT....................................................................................................................1

    I.      THE UNDISPUTED FACTS ESTABLISH THAT DEFENDANTS
           FIRED PLAINTIFF BECAUSE SHE ENGAGED IN PROTECTED
           ACTIVITIES ........................................................................................1

           A.      Plaintiff's Participation In Settlement Discussions Was
                    Protected Activity ....................................................................1

           B.      Plaintiff's Evidence Gathering Was Protected Activity..............................3

           C.      Because Plaintiff's Protected Activity Is Covered By The
                    Participation Clause, She Is Not Required To Prove That
                    She Acted Reasonably And In Good Faith.................................................6

           D.      Plaintiff Had A Reasonable, Good Faith Basis To Oppose
                    Discrimination ........................................................................7

    II.     DEFENDANTS CANNOT PREVAIL UNDER A MIXED
          MOTIVE THEORY ..............................................................................8

CONCLUSION ................................................................................................................10

# TABLE OF AUTHORITIES

## CASES

Cassas v. Lenox Hill Hosp.,
    1997 WL 1052039 (N.Y.C. Com. Hum. Rts., Feb 6, 1997),
    adopted by, 1997 WL 1051928 (N.Y.C. Com. Hum. Rts. Mar. 26, 1997) ........................9

EEOC v. BCI Coca-Cola Bottling Co. of Los Angeles,
    450 F.3d 476 (10th Cir. 2006), cert. dismissed, 127 S. Ct. 1931 (2007)............................5

Grant v. Hazelett Strip-Casting Corp.,
    880 F.2d 1564 (2d Cir. 1989) ....................................................................................4, 6

Gregory v. Daly,
    243 F.3d 687 (2d Cir. 2001) ............................................................................................8

Heller v. Champion Int'l Corp.,
    891 F.2d 432 (2d Cir. 1989) ........................................................................................4, 6

Jackson v. St. Joseph State Hosp.,
    840 F.2d 1387 (8th Cir. 1988) ........................................................................................4

Kessler v. Westchester County Dep't of Soc. Servs.,
    461 F.3d 199 (2d Cir. 2006) ............................................................................................5

Ledbetter v. Goodyear Tire & Rubber Co., Inc.,
    No. 05-1074, 2007 WL 1528298 (U.S. May 29, 2007)....................................................2

Lust v. Sealy, Inc.,
    383 F.3d 580 (7th Cir. 2004) ...........................................................................................5

Nigro v. Pickett,
    11 Misc. 3d 1077(A), 2006 WL 940636 (N.Y. Sup. Ct. Westchester Cty. Mar. 17,
    2006), aff'd in relevant part, 833 N.Y.S.2d 655 (2d Dep't 2007) ........................................2

Perry v. Ethan Allen, Inc.,
    115 F.3d 143 (2d Cir. 1997) ............................................................................................3

Pierce v. F.R. Tripler & Co.,
    955 F.2d 820 (2d Cir. 1992) ............................................................................................2

Tse v. UBS Financial Services, Inc., No. 03 CV 6234 (GEL) (S.D.N.Y. March 23, 2007) ...........4

**STATUTES**

Fed. R. Evid 408 ............................................................................................................ 1, 2, 3

42 U.S.C. § 2000e-3(a) ............................................................................................................ 6

**OTHER AUTHORITY**

Craig Gurian, <u>A Return To Eyes On The Prize: Litigating Under The Restored New York City Human Rights Law</u>, 33 FORDHAM URB. L.J. 255, 312-314 (2006) ........................................ 9

Plaintiff Anucha Browne Sanders ("Browne Sanders" or "plaintiff") submits this reply memorandum in further support of her motion for partial summary judgment against defendants Madison Square Garden, L.P. ("MSG") and James L. Dolan ("Dolan") (collectively, "defendants").[1]

## ARGUMENT

I.    THE UNDISPUTED FACTS ESTABLISH THAT DEFENDANTS FIRED
      PLAINTIFF BECAUSE SHE ENGAGED IN PROTECTED ACTIVITIES

A.    Plaintiff's Participation In Settlement Discussions Was Protected Activity

Defendants do not dispute that it is unlawful for an employer to retaliate against an employee because she participates in efforts to settle her claims of discrimination. (See Main Br. 14-17)  While defendants claim that plaintiff's settlement proposal was unprotected "extortion" (Def. Br. 20), they fail to cite a single case in which a court has held that participating in discussions to settle a bias claim was not protected activity.  Accordingly, the Court should adhere to the rule that an employee engages in protected activity when she offers to settle a claim of discrimination. (See Main Br. at 15-16).

Likewise, defendants cite no authority for their contention that a jury should decide whether plaintiff's settlement demand was "disproportionate to [her] injury" or included inappropriate "threats" from plaintiff's counsel. (Def. Br. 21)  Permitting a jury to consider the propriety of statements counsel allegedly made during compromise negotiations pursuant to Fed. R. Evid 408 would "inhibit settlement discussions and interfere with the effective administration

---

[1]    Plaintiff's factual citations are to plaintiff's Local Civil Rule 56.1 Statement ("Pl. 56.1"), defendants' Local Civil Rule 56.1 Statement ("Def. 56.1"), the Declaration of Christopher Reynolds, dated May 24, 2007 ("Reynolds Decl.") and to the Reply Declaration of Kevin T. Mintzer, dated June 8, 2007 ("Mintzer Reply Decl.").  Plaintiff's Memorandum of Law In Support of Plaintiff's Motion For Partial Summary Judgment is cited as "Main Br."  Defendants MSG and Dolan's Memorandum of Law In Opposition to Plaintiff's Motion For Partial Summary Judgment is cited as "Def. Br."

of justice." Pierce v. F.R. Tripler & Co., 955 F.2d 820, 827-28 (2d Cir. 1992). To discourage pre-litigation efforts to settle discrimination claims would also be contrary to Congress' expressed "preference for the prompt resolution of employment discrimination allegations through voluntary conciliation and cooperation." Ledbetter v. Goodyear Tire & Rubber Co., Inc., No. 05-1074, 2007 WL 1528298, at *8 (U.S. May 29, 2007).[2]

Although the Court should not accept defendants' invitation to scrutinize the content of Rule 408 discussions, plaintiff's settlement position was entirely appropriate.[3] As a condition of resolving plaintiff's claims, MSG required plaintiff to give up her job as head of business operations for the New York Knicks, a unique and highly compensated position that plaintiff had worked for many years to achieve. Moreover, plaintiff had experienced significant emotional distress as a result of the sexual harassment she experienced, although she ultimately decided not to pursue those damages. Browne Sanders also had a substantial claim for punitive damages. Under these circumstances, a sizable monetary proposal was more than justified.

Equally without merit is MSG's complaint (Def. Br. 22) that plaintiff's counsel, in the course of settlement discussions, referred to an incident in which ███████████ had informed plaintiff that she had sex with Stephon Marbury ("Marbury"). ███████ reported to Browne Sanders that she was "out of it" when she had sex with Marbury because she was under the influence of alcohol and that she felt she "could not say no." (Pl. 56.1 ¶¶ 32-35) This event,

---

[2]      Defendants complain that plaintiff's counsel threatened to file an embarrassing lawsuit and "teach MSG a lesson" (Def. Br. 21), but it "[i]s clear that a threat to do what one has a legal right to do is not actionable." Nigro v. Pickett, 11 Misc. 3d 1077(A), 2006 WL 940636, at *3 (N.Y. Sup. Ct. Westchester Cty. Mar. 17, 2006) (internal quotation omitted), aff'd in relevant part, 833 N.Y.S.2d 655 (2d Dep't 2007). Indeed, New York does not even recognize a civil cause of action for extortion. Id.

[3]      For the purposes of this motion, plaintiff assumes the accuracy of defendants' characterization of the parties' settlement discussions. However, defendants' account is neither fully accurate nor complete. (Mintzer Reply Decl. ¶¶ 9-10)

and MSG's lack of any meaningful response to it, was (and remains) highly relevant to plaintiff's sexual harassment claims because the circumstances contributed to a gender-based hostile work environment.  See, e.g., Perry v. Ethan Allen, Inc., 115 F.3d 143, 151 (2d Cir. 1997) ("Evidence of harassment of women other than [plaintiff] . . . was surely relevant to show the existence of a hostile environment [at defendant employer]").

Prior to the filing of this lawsuit, MSG never claimed that it was being "extorted."  To the contrary, after plaintiff had made an initial settlement demand, MSG characterized the parties' efforts as "good faith discussions," (Reynolds Decl. Ex. B), and continued to discuss settlement thereafter. (Mintzer Reply Decl. ¶¶ 9-10)  Furthermore, the parties explicitly agreed -- at MSG's behest -- that their discussions were "confidential and deemed in furtherance of settlement pursuant to Fed. R. Evid. 408." (Reynolds Decl. Ex. A)  Defendants cannot renege on this understanding by raising an unfounded, post-hoc claim of "extortion."  While defendants were entitled to refuse plaintiff's demand, they were not entitled to retaliate against her because of her settlement position.  As Dolan admits he did exactly that, summary judgment is appropriate.

B.    Plaintiff's Evidence Gathering Was Protected Activity

Defendants also fail (Def. Br. 19-20) to raise a genuine dispute of fact as to Dolan's firing plaintiff because she engaged in legally protected evidence gathering.  As an initial matter, the Court should not be swayed by defendants' misleading suggestion (Def. Br. 8-9, 20) that plaintiff's firing had anything to do with an "investigation" of Vernon Manuel or Hassan Gonsalves ("Gonsalves"), two members of plaintiff's staff.  Dolan testified that he fired Browne Sanders because she purportedly "tampered" with the investigation of her own sexual harassment claim. (Mintzer Reply Decl. Ex. 1, Dolan Dep. 178-79; 202-03)

Defendants do not identify any evidence of improper tampering by plaintiff.  Indeed, the sum total of defendants' evidence on this issue is that plaintiff requested three of her staff

members -- Dan Gladstone ("Gladstone"), Karin Buchholz ("Buchholz") and Gary Winkler -- to send her e-mails documenting certain events that plaintiff believed were relevant to her sexual harassment complaint. (Def. Br. 20) While defendants claim that these requests violated MSG's investigation policy and deprived MSG of the "uncoached" testimony of Browne Sanders' staff (Def. Br. 9, 20), the policy defendants have cited does not state that an employee is barred from gathering evidence in support of a bias complaint before raising the issue within MSG.[4] Even if MSG had such a policy, it would not be enforceable. See Heller v. Champion Int'l Corp., 891 F.2d 432, 436 (2d Cir. 1989); Grant v. Hazelett Strip-Casting Corp., 880 F.2d 1564, 1569-70 (2d Cir. 1989); see also Tse v. UBS Financial Services, Inc., 03 CV 6234 (GEL) (S.D.N.Y. March 23, 2007) (employee's surreptitious taping of conversations with colleagues was protected activity despite employer's no-taping policy) (transcript attached as Exhibit 7 of the Mintzer Reply Decl.).

MSG's tampering allegations also fail because there is no evidence that plaintiff requested any of her staff members to document anything other than their truthful recollection of events. (Pl. 56.1 ¶¶ 43-45)[5] Moreover, MSG's investigation of plaintiff's sexual harassment complaint, which included interviews with these staff members, does not even hint at "tampering," or any disruptive conduct by plaintiff. See Grant, 880 F.2d at 1570; cf. Jackson v.

---

[4]    Defendants' assertion that plaintiff's requests to her staff members interfered with "company and personal time" and required them to "forgo their regular job duties" (Def. Br. 20) is absurd. The three e-mails in question range in length from a few sentences to half a page. (See Mintzer Reply Decl. Exs. 4, 5 and 6) Writing those e-mails could not have required anything more than a de minimis expenditure of time.

[5]    MSG emphasizes that Buchholz was purportedly "uncomfortable" with plaintiff's request and that she was "pressured" into complying. (Def. Br. 20) That Buchholz was reluctant to memorialize truthfully events related to plaintiff's sexual harassment claims does not mean that Browne Sanders engaged in improper "tampering" for which she could be lawfully fired. See Grant, 880 F.2d at 1569-70.

St. Joseph State Hosp., 840 F.2d 1387, 1390 (8th Cir. 1988) (upholding dismissal of employee for past conduct and for "abusive attempt" to have a witness change her statement to the EEOC).

Lacking any evidence of tampering by plaintiff, defendants erroneously contend that summary judgment is inappropriate because Dolan "reasonably believed" based on a conversation with Rusty McCormack ("McCormack") that Browne Sanders engaged in improper conduct. (Def. Br. 16-17) The undisputed evidence is that McCormack and John Moran ("Moran") knew that plaintiff had asked one or more MSG employees to document past incidents of harassment (Mintzer Reply Decl. Ex. 2, McCormack Dep. 167-69; Mintzer Reply Decl. Ex. 3, Moran Dep. 101-02; Mintzer Reply Decl. Ex. 5), and there is no evidence that anyone suggested to McCormack or Moran that plaintiff had interfered with MSG's investigation. Therefore, MSG, as a corporation, was on notice that plaintiff had engaged in protected evidence gathering. See Kessler v. Westchester County Dep't of Soc. Servs., 461 F.3d 199, 210 (2d Cir. 2006) (plaintiff need demonstrate only general corporate knowledge of her protected activity, not that the relevant decisionmaker had such knowledge). Furthermore, even assuming that McCormack erroneously told Dolan that plaintiff's protected activity was "tampering," the fact remains that plaintiff was fired because of her protected conduct. See EEOC v. BCI Coca-Cola Bottling Co. of Los Angeles, 450 F.3d 476, 486 (10th Cir. 2006) (employer can be liable where subordinate employee effectuates "the termination of an employee from a protected class by recommending discharge or by selectively reporting or even fabricating information in communications with the formal decisionmaker." ), cert. dismissed, 127 S. Ct. 1931 (2007); Lust v. Sealy, Inc., 383 F.3d 580, 584-85 (7th Cir. 2004) (same).[6]

---

[6]    Dolan also did not have a reasonable belief that plaintiff tampered with MSG's investigation. Dolan objected to plaintiff's conduct because "she [was] off through the company attempting to garner support for a complaint that the -- about sexual harassment." (Pl. 56.1 ¶ 79)

C.   Because Plaintiff's Protected Activity Is Covered By The Participation Clause,
     She Is Not Required To Prove That She Acted Reasonably And In Good Faith

Defendants do not dispute that under Title VII's participation clause, an employee who "participate[s] in any manner in an investigation [or] proceeding" under Title VII, 42 U.S.C. § 2000e-3(a), is protected from retaliation and need not demonstrate that such participation was reasonable or in good faith.  (See Main Br. 11-12)  Ignoring Second Circuit precedent, defendants erroneously assert that the participation clause does not cover plaintiff's evidence gathering and participation in settlement discussions because those events occurred before plaintiff filed this lawsuit or an EEOC charge. (Def. Br. 22 n. 7)  In Heller, 891 F.2d at 436, the Court quoted the participation clause of the ADEA (which essentially mirrors Title VII's participation clause) as the basis for its conclusion that the defendant could not fire plaintiff for surreptitiously taping his co-workers months before the plaintiff filed a lawsuit.  Similarly, in Grant, the Court recognized that "attempting to gather evidence for a future lawsuit" was protected activity under the ADEA participation clause.  880 F.2d at 1570 (emphasis added).

As Heller and Grant hold that gathering evidence for a future lawsuit constitutes protected participation, it follows that an employee's participation in discussions designed to avoid a future lawsuit should receive equivalent protection.  Informal settlement discussions are an essential component of Title VII's remedial mechanisms.  Participation in such discussions should be afforded the highest level of protection against retaliation, or employees will have an incentive to file charges or suits before seeking to resolve their claims.  Accordingly, Browne Sanders participated in a Title VII investigation or proceeding by gathering evidence supporting her complaint and participating in pre-litigation settlement discussions with her employer.

---

Although Dolan testified that McCormack told him plaintiff had tampered, McCormack testified that no such conversation occurred. (Pl. 56.1 ¶ 74)  McCormack's memorandum recommending plaintiff's dismissal does not mention plaintiff's alleged "tampering."  (Pl. 56.1 ¶ 63)

D.     Plaintiff Had A Reasonable, Good Faith Basis To Oppose Discrimination

Even if plaintiff's claims are analyzed solely under Title VII's opposition clause, defendants have failed to raise a dispute of fact that plaintiff had a reasonable, good faith belief that she had been sexually harassed.  Defendants claim that plaintiff's lack of good faith is demonstrated by her failure to complain about sexual harassment before she retained counsel in December 2005.  (Def. Br. 23-24)  However, it is undisputed that on May 11, 2005, soon after MSG gave plaintiff a large raise and a glowing performance review, Browne Sanders told Peter Olsen ("Olsen"), an MSG Human Resources consultant, that Isiah Thomas ("Thomas") had said he was in love with her, that Thomas had asked her to go "off site" with her, and that Thomas needed sexual harassment training.  (Pl. 56.1 ¶ 23)[7]  It is also undisputed that before plaintiff retained counsel, she made Stephen Mills ("Mills") and Moran aware that, according to Gladstone, Marbury repeatedly referred to her as a "black bitch" and made other threatening and hostile comments about her.  (Pl. 56.1 ¶¶ 29, 36, 38)  Thus, there is no factual dispute that plaintiff complained about sexual harassment at MSG before she retained counsel.

Equally without merit is defendants' argument that a jury could find that plaintiff raised her allegations of sexual harassment, not in good faith, but as a "smoke screen" to divert attention from her purported performance problems and to obtain a large severance.  (Def. Br. 24-25)  As discussed above, the undisputed facts are that Browne Sanders complained about Thomas' harassing conduct before any of plaintiff's alleged performance deficiencies occurred.

---

[7]     Defendants have no evidentiary basis to dispute these facts. (Def. 56.1 ¶ 23)  Thomas' denial that he told Browne Sanders that he loved her is not evidence of what plaintiff told Olsen. Defendants' hearsay objection is without merit because plaintiff's statements to Olsen about Thomas are not offered for their truth, but to show that plaintiff had complained about Thomas months before she retained counsel.

In addition, the following underlined facts establish that Browne Sanders had a compelling basis to oppose unlawful discrimination: 1) Gladstone told plaintiff that Marbury had referred to her in hostile and sexist terms, including repeatedly referring to her as a "black bitch" (Pl. 56.1 ¶ 29); 2) Browne Sanders was called a "bitch" by Frank Murphy, the Senior Vice President of Business Operations who reported to Thomas (Pl. 56.1 ¶ 13); 3) Thomas tried to hug and kiss Browne Sanders and, when Browne Sanders rebuffed him, said "No love today? (Pl. 56.1 ¶ 39); 4) Browne Sanders' assistant told plaintiff that she witnessed Thomas looking at plaintiff up and down, while biting his lip and "checking [her] out." (Pl. 56.1 ¶ 20); 5) ▮▮▮▮ ▮▮▮▮▮▮▮▮ told plaintiff that she had sex with Marbury and felt as though she could not say no to him (Pl. 56.1 ¶ 34); 6) plaintiff was told by members of her staff that Gonsalves had made many sexual comment to female employees (Pl. 56.1 ¶ 30); and 7) Petra Pope ("Pope"), the head of the Knicks' dance team, told plaintiff that Thomas had asked her to check in on the referees, which Pope said meant that she should flirt with the referees. (Pl. 56.1 ¶¶ 15-17)

Based on these undisputed facts, a jury would be compelled to find that plaintiff had a reasonable, good faith basis to oppose unlawful discrimination by gathering evidence supporting her claims and participating in settlement discussions. While defendants suggest that Browne Sanders' protected activity was motivated by her desire for financial gain, a plaintiff's motivation for engaging in protected activity is irrelevant. The opposition clause only requires that a plaintiff have a reasonable and good faith belief that she was opposing discrimination. See Gregory v. Daly, 243 F.3d 687, 700-01 (2d Cir. 2001). Because the undisputed facts establish that Browne Sanders had such a belief, summary judgment is warranted.

II.    DEFENDANTS CANNOT PREVAIL UNDER A MIXED MOTIVE THEORY

Contrary to defendants' argument (Def. Br. 14-15, 17-18), the only "fair reading" of Dolan's testimony is that plaintiff would not have been fired on January 19, 2006 if she had not

gathered evidence in support of her claims and participated in settlement discussions. Initially, the Court should reject defendants' mixed motive defense with respect to plaintiff's claims under the City Code because that statute does not provide such a defense. Under the City Code, an employment practice that is at all motivated by plaintiff's protected status is unlawful. Proof that defendants would have taken the same action in the absence of the unlawful motive is only relevant to damages. See Cassas v. Lenox Hill Hosp., 1997 WL 1052039, at *4 (N.Y.C. Com. Hum. Rts., Feb 6, 1997), adopted by, 1997 WL 1051928 (N.Y.C. Com. Hum. Rts. March 26, 1997); see also Craig Gurian, A Return To Eyes On The Prize: Litigating Under The Restored New York City Human Rights Law, 33 FORDHAM URB. L.J. 255, 312-314 (2006).

With respect to plaintiff's federal and state claims, a jury could not find that defendants would have fired Browne Sanders in January 2006 for non-retaliatory reasons. Although Dolan claims that he became dissatisfied with plaintiff's performance during budget meetings in the summer of 2005, Dolan did not believe plaintiff should be fired as a result of those meetings.[8] (Mintzer Reply Decl. Ex. 1, Dolan Dep. 61-65) Furthermore, Dolan had no interactions with plaintiff after the summer budget meetings and he received no further report about her performance. (Id. 187-88) Dolan also testified that, even when he was supposedly informed in late 2005 that plaintiff did not want to stay in her position, he still had no objection to her continued employment. (Id. 87-89, 223) It was only when Dolan learned that Browne Sanders had made a settlement demand and allegedly "tampered" with MSG's investigation of her sexual harassment claim that Dolan decided to fire her. (Id. 87-89, 190-192)

---

[8]    Contrary to defendants' argument, Mills never complained to Dolan about Browne Sanders' work performance. (Mintzer Reply Decl. Ex. 1, Dolan Dep. 170-71) In addition, because Dolan did not testify that Browne Sanders' performance outside of the summer 2005 budget meetings had anything to do with her dismissal, the other "performance issues" that defendants raise are irrelevant. (Def. Br. 5-6)

Dolan repeatedly testified that plaintiff's protected activities were the decisive events that led him to fire her, notwithstanding his claim that non-retaliatory reasons were also "factors" in his decision. Specifically, Dolan testified that:

- Browne Sanders' "tampering" was the "last straw" that "<u>led me to the conclusion</u> that her employment at the company was over with." (Mintzer Reply Decl. Ex. 1, Dolan Dep. 190) (emphasis added)

- Browne Sanders "<u>could have continued on doing her job</u> if she had not tampered with -- with those people." (<u>Id.</u> 190) (emphasis added)

- Browne Sanders "so wanted to -- apparently to have [her] complaint be verified by the people underneath her, that – that she -- you know, she violated the company policy, and she <u>rendered herself at that point the -- the -- unemployable by the company</u>. The -- because the -- we had no way of knowing whether she was going to continue to do that or not continue to do that, and so how could I then have her continue to run that operation. We couldn't. The -- <u>that is why she was let go</u>." (<u>Id.</u> 202) (emphasis added)

- It was reported to him that Browne Sanders "asked people to back her up on -- on -- on the claims of -- of harassment against Mr. Thomas," and that "she did attempt to extort 6 million dollars from the company that the -- the -- using these false claims. This is -- this is what this -- <u>that is what this is about</u>." (<u>Id.</u> 206-07) (emphasis added)

Contrary to defendants' argument (Def. Br. 17-19), these excerpts are neither selective nor unfair. Dolan testified that he fired plaintiff when he did because she engaged in protected conduct (i.e., her settlement proposal and evidence gathering). While defendants may argue at trial that they would have later fired plaintiff based on legitimate reasons, such an argument only relates to damages, not liability. Because the undisputed facts establish that defendants cannot prevail on a mixed motive analysis, plaintiff is entitled to partial summary judgment.

<u>CONCLUSION</u>

Based on the foregoing and for the reasons stated in plaintiff's Main Brief, plaintiff's motion for partial summary judgment against MSG and Dolan should be granted.

245573 v3

10

Dated:      New York, New York      Respectfully submitted,
              June 8, 2007

VLADECK, WALDMAN, ELIAS
  & ENGELHARD, P.C.

By: _____
Anne C. Vladeck (AV 4857)
Kevin T. Mintzer (KM 4741)
Karen Cacace (KC 3184)
Attorneys for Plaintiff
1501 Broadway, Suite 800
New York, New York 10036
(212) 403-7300

245573 v3                 11