UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
:
ANUCHA BROWNE SANDERS,                                       :
:
Plaintiff,    :
:      06 Civ. 589 (GEL)
-v-       :
:      **OPINION AND ORDER**
MADISON SQUARE GARDEN, L.P., et al.,                         :
:
Defendants.    :
:
------------------------------------------------------------x

Anne C. Vladeck, Kevin T. Mintzer, and
Karen Cacace, Vladeck, Waldman, Elias &
Engelhard, P.C., New York, NY, for plaintiff.

Ronald M. Green, Teresa M. Holland,
Barry A. Cozier, Brian G. Cesaratto, Epstein
Becker & Green, P.C., New York, NY, and
Christopher P. Reynolds and Amber L. Kagan,
Morgan, Lewis & Bockius LLP, New York, NY,
for defendants.

GERARD E. LYNCH, District Judge:

      Plaintiff Anucha Browne Sanders brings this employment discrimination action against defendants Madison Square Garden, L.P. ("MSG"), Isiah Lord Thomas III, and James L. Dolan, alleging that she was subjected to discrimination on the basis of sex, sexual harassment, and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e ("Title VII"), and related state and city laws.  Defendant MSG moves for leave to amend its answer to assert a counterclaim against plaintiff for breach of fiduciary duty.  The motion will be denied.

**BACKGROUND**

The following facts are drawn from defendant MSG's and Dolan's motion for partial summary judgment and plaintiff's opposition to that motion, which MSG and plaintiff incorporate by reference in this motion. (Def. Mem. 1 n.1; Pl. Mem. 1 n.1.) Because the issue is whether MSG should be permitted to assert a claim, the relevant evidence is viewed in the light most favorable to MSG; the Court does not undertake to make findings of fact. Only facts relevant to the instant motion are recited here.

Browne Sanders was hired by MSG as Vice-President of Marketing for the New York Knickerbockers ("Knicks") in November 2000. (Pl. Dep. 13.) In this position, Browne Sanders was the chief marketing officer for the Knicks and responsible for all aspects of the Knicks' marketing and media efforts, and she had access to confidential MSG financial and business proprietary material. (Mills Aff. ¶ 7.) When she was hired, Browne Sanders signed a copy of MSG's Confidentiality, Code of Business Conduct and Proprietary Property Agreement (the "Agreement") (Pl. Dep. II 44-46), which provided that "[d]uring [her] employment, [Browne Sanders] may not engage in activities or have personal or financial interests that may impair, or appear to impair, [her] independence or judgment or otherwise conflict with [her] responsibilities to [MSG]." (Def. Exh. E.) Browne Sanders also signed MSG's "Employee Code of Conduct," which stated that "[p]ublic trust and confidence are the greatest assets held by [MSG]." (Pl. Dep. II 24; Def. Exh. F.)

On March 11, 2002, Browne Sanders was promoted to Senior Vice-President, Marketing and Business Operations. (Pl. Dep. II 266; Mills Aff. ¶ 8.) Her responsibilities expanded to include, among other things, oversight of the marketing and business operations budget. (Mills

Aff. ¶ 8; Dolan Aff. ¶ 3.)  Browne Sanders remained in that position until her termination in January 2006.  Her total compensation for just over five years of employment with the Knicks exceeded $1,100,000.  (Moran Aff. ¶ 11.)

Shortly after being fired, Browne Sanders sued defendants, alleging that she was discriminated against on the basis of her sex and terminated in retaliation for her sexual harassment complaint in violation of federal, state, and city law.  (Am. Compl. ¶¶ 54-85.)  During discovery, MSG sought and obtained (over Browne Sanders's objection) copies of Browne Sanders's federal, New York, and New Jersey tax returns for 2000-2005.  (Def. Exh. N.)

The 2001-2004 returns originally produced to MSG included Schedule C deductions for the expenses of a "direct marketing" business, totaling approximately $73,000.  (Def. Exhs. P(PL4302), Q(4321), R(PL4353), S(PL4388)).)  However, Browne Sanders shortly thereafter produced amended federal and state tax returns for 2003 and 2004.  (Def. Exh. O.)  The 2003 and 2004 tax returns had been amended the day after Browne Sanders's initial production to remove the Schedule C deductions.  (Def. Exhs. W-X.)  The amendment resulted in the elimination of approximately $20,000 of business deductions for 2003 and 2004.  (Reimer Dep. 36-37.)  Although the 2000 and 2001 tax returns included identical deductions (Def. Exhs. P(PL4302), Q(4321)), they were not similarly amended.

Browne Sanders denies that she operated a "direct marketing" business, and claims that the Schedule C deductions were due to accountant error and not a deliberate attempt to commit tax fraud.  (Pl. Dep. II 43-44; Halstead Dep. 44-46, 48, 50-51, 64-65, 72.)  Browne Sanders asserts that she did not amend her 2000 and 2001 tax returns on the advice of her current accountant, who informed her that there is a "three year statute of limitations" for amending tax

returns.  (Reimer Dep. 67; see Reimer Aff. ¶ 19.)

On April 27, 2007, MSG moved for leave to amend its answer to assert a counterclaim for breach of fiduciary duty, claiming that Browne Sanders had breached her duty, either by operating an outside business or by committing tax fraud while employed at MSG, and seeking restitution of all compensation paid to Browne Sanders during the term of her employment. Plaintiff responded on May 25, 2007; the motion was fully briefed on June 8, 2007.

## DISCUSSION

### I.   Motions to Amend Pleadings

Federal Rule of Civil Procedure 15(a) governs the amendment of pleadings, and provides that leave to amend "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a).  A "motion to amend should be denied if there is an 'apparent or declared reason – such as undue delay, bad faith or dilatory motive . . . , repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of the allowance of an amendment, [or] futility of amendment.'" Dluhos v. Floating and Abandoned Vessel Known as New York," 162 F.3d 63, 69 (2d Cir. 1998), quoting Foman v. Davis, 371 U.S. 178, 182 (1962).

When a motion to amend is made early in the proceedings or in response to a motion to dismiss, the amendment will be deemed futile, and the motion to amend denied, where the amended pleading would be subject to "immediate dismissal" for failure to state a claim upon which relief can be granted, or on some other basis. Jones v. N.Y. State Div. of Military & Naval Affairs, 166 F.3d 45, 55 (2d Cir. 1999); S.S. Silberblatt, Inc. v. East Harlem Pilot Block-Bldg. 1 Housing Dev. Fund Co., 608 F.2d 28, 42 (2d Cir. 1979).  Where, however, a summary judgment motion has been made and evidence outside the pleadings has already been submitted,

the court must determine whether the amendment would be futile under the summary judgment standard.  See Milanese v. Rust-Oleum Corp., 244 F.3d 104, 110 (2d Cir. 2001) ("[W]here . . . the parties have fully briefed the issue whether the proposed amended [pleading] could raise a genuine issue of fact and have presented all relevant evidence in support of their positions . . . the court may deny the amendment as futile when the evidence in support of [the] proposed new claim creates no triable issue of fact and the [opposing party] would be entitled to judgment as a matter of law under Fed. R. Civ. P. 56(c)."); DiPace v. Goord, 308 F. Supp. 2d 274, 279 (S.D.N.Y. 2004) (where parties submitted evidence outside the pleadings in connection with a motion to amend, the proposed pleading is assessed for whether it could survive a motion for summary judgment); Stoner v. N.Y. City Ballet Co., No. 99 Civ. 0196, 2002 WL 523270, at *14 n.10 (S.D.N.Y. Apr. 8, 2002) (denying motion to amend where the claim might survive a motion to dismiss, but would "immediately be subject to dismissal on a motion for summary judgment").

In this case, the parties have completed discovery and both sides have moved for partial summary judgment on plaintiff's pre-existing claims.  Defendant has had "ample opportunity to explore and develop a factual foundation" for its proposed counterclaim during discovery. Azurite Corp. Ltd. v. Amster & Co., 844 F. Supp. 929, 939 (S.D.N.Y. 1994).  Indeed, defendant's proposed counterclaim only exists because of, and "is based on evidence revealed during the course of," discovery.  (Def. Mem. 8.)  Accordingly, the Court will deem defendant's counterclaim "fully briefed" and will consider "all relevant evidence" with respect to that claim, Milanese, 244 F.3d at 110, so as to determine whether defendant's proposed amendment would be "futil[e]" under the standard of Rule 56.  Foman, 371 U.S. at 182.

## II. Summary Judgment Standard

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The Court's responsibility is to determine if there is a genuine issue to be tried, and not to resolve disputed issues of fact. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). The Court must draw all reasonable inferences and resolve all ambiguities in the nonmoving party's favor, and construe the facts in the light most favorable to the nonmoving party. Id. at 254-55. However, "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Id. at 249-50 (citations omitted).

The party seeking summary judgment bears the burden of showing that no genuine factual dispute exists. See Cronin v. Aetna Life Ins. Co., 46 F.3d 196, 202 (2d Cir. 1995). Once the moving party has made a showing that there are no genuine issues of material fact, the burden shifts to the nonmoving party to raise triable issues of fact. Anderson, 477 U.S. at 250. A genuine issue for trial exists if, based on the record as a whole, a reasonable jury could find in favor of the nonmoving party. Id. at 248.

## III. The "Faithless Servant" Doctrine

MSG argues that it should be permitted to assert a counterclaim for breach of fiduciary duty pursuant to the "faithless servant" doctrine. Specifically, MSG argues that, under the faithless servant doctrine, it may recover all compensation paid to Browne Sanders while she was allegedly "committing . . . tax fraud, or alternatively, secretly operating an unauthorized

6

direct marketing business." (Def. Mem. 1.) Browne Sanders argues, however, that MSG's claim is "legally baseless." (Pl. Mem. 1.) Because MSG's claim would fail as a matter of law, its motion will be denied.

The faithless servant doctrine provides that an agent is obligated "to be loyal to his employer and is 'prohibited from acting in any manner inconsistent with his agency or trust and is at all times bound to exercise the utmost good faith and loyalty in the performance of his duties.'" Western Elec. Co. v. Brenner, 41 N.Y.2d 291, 295 (1977), quoting Lamdin v. Broadway Surface Adver. Corp., 272 N.Y. 133, 138 (1936). To show a violation of the faithless servant doctrine, an employer must show (1) that the employee's disloyal activity was related to "the performance of his duties," Phansalkar v. Andersen Weinroth & Co., L.P., 344 F.3d 184, 200 (2d Cir. 2003), and (2) that the disloyalty "permeated the employee's service in its most material and substantial part." Id. at 203, quoting Abramson v. Dry Goods Refolding Co., 166 N.Y.S. 771, 773 (1st Dep't 1917). See Feiger v. Iral Jewelry, Ltd., 41 N.Y.2d 928, 928 (1977) ("One who owes a duty of fidelity to a principal and who is faithless *in the performance of his services* is generally disentitled to recover his compensation, whether commissions or salary.") (emphasis added), citing Restatement (Second) of Agency § 469 (1958); Pictoral Films v. Salzburg, 106 N.Y.S.2d 626, 630-31 (Sup. Ct. N.Y. Co. 1951) (holding that, for an employee to forfeit all compensation, "the dishonesty must be of such a character as would justify the conclusion that the contract of employment was violated 'in a most material and substantial part'"), quoting Turner v. Kouwenhoven, 100 N.Y. 115, 120 (1885).

Thus, the faithless servant doctrine, like the traditional fiduciary duty standard, is "limited to matters relevant to affairs entrusted" to the employee. Ross v. FSG PrivatAir, Inc.,

No. 03 Civ. 7292, 2004 WL 1837366, at *7 (S.D.N.Y. Aug. 17, 2004), citing Rush v. Oppenheimer & Co., 681 F. Supp. 1045, 1055 (S.D.N.Y. 1988). See BNY Capital Mkts., Inc. v. Moltech Corp., No. 99 Civ. 11754, 2001 WL 262675, at *8 (S.D.N.Y. Mar. 14, 2001) ("A fiduciary is only responsible to undertake reasonable diligence [or act for the] benefit of another upon matters *within the scope of the relation*.") (emphasis in original).  However, unlike a traditional breach of fiduciary duty claim, which requires a showing of actual damages, see Indep. Order of Foresters v. Donald, Lufkin & Jenrette, Inc., 157 F.3d 933, 943-44 (2d Cir. 1998), to prove a violation of the faithless servant doctrine, an employer is not required to show that it "suffered . . . provable damage as a result of the breach of fidelity by the agent." Feiger, 41 N.Y.2d at 929.  See Webb v. Robert Lewis Rosen Assoc., Ltd., No. 03 Civ. 4275, 2003 WL 23018792, at *5-6 (S.D.N.Y. Dec. 23, 2003) ("[While] proving a breach of fiduciary duty claim requires a showing of damages . . . the faithless servant doctrine[] provides an additional mechanism for relief, notwithstanding that [the employer] suffered no damage.").

      Here, MSG claims that Browne Sanders's tax returns show that she was either operating an outside business or that she committed tax fraud while employed at MSG, and argues that, under either scenario, Browne Sanders's alleged misconduct proves her a faithless servant. However, neither operating an outside business nor unethical conduct unrelated to employment violates the faithless servant doctrine unless such business or behavior adversely affects the employee's job performance.  See Westwood Chemical Co. v. Kulick, 570 F. Supp. 1032, 1040 (S.D.N.Y. 1983); Frederic M. Reed & Co. v. Irvine Realty Group, Inc., 723 N.Y.S.2d 19, 20 (1st Dep't 2001); Western Elec. Co., 41 N.Y.2d at 295; Murray v. Beard, 102 N.Y. 505, 508 (1886). MSG neither claims nor has provided any evidence that Browne Sanders's alleged misconduct

hurt her job performance.

Notwithstanding its failure to produce evidence that Browne Sanders's alleged misconduct actually affected her job performance, MSG makes two principal arguments in support of its proposed counterclaim.  First, it argues that Browne Sanders was a faithless servant because she had a responsibility to "abide by [MSG's] policies and protect its institutional brand and reputation" as defined by the Agreement and Code of Conduct.  (Def. Reply 7; see also Def. Mem. 8 ("The Agreement specifically provides that the Company may seek to recover for an employee's breach [of the Agreement].").)  Even assuming arguendo that plaintiff had such a *contractual* responsibility, defendant's argument does not entail the conclusion that Browne Sanders had a *fiduciary* responsibility to MSG to comply with every provision of the Agreement.  Breach of contract and breach of fiduciary duty are not coterminous causes of action.  See Burke v. Steinmann, No. 03 Civ. 1390, 2004 WL 1117891, at *6 (S.D.N.Y. May 18, 2004) ("[E]mployers may not recover from an employee for [breach of a Management Agreement] absent a finding of a breach of the duty of good faith and loyalty."). The existence of a fiduciary duty is dependent on the law of agency, not on the terms of a contract, see id.; although the duty may be "connected with" the contract, "a simple breach of contract is not to be considered a tort unless a duty independent of the contract itself has been violated.  This legal duty must spring from circumstances extraneous to, and not constituting elements of, the contract . . . ."  Ross, 2004 WL 1837366, at *6, citing Clark-Fitzpatrick, Inc. v. Long Island R.R. Co., 70 N.Y.2d 382, 389 (1987).  Thus, even if plaintiff violated the terms of her employment contract through her alleged misconduct, such misconduct only violates the faithless servant doctrine if it also "material[ly] and substantial[ly]" interfered with plaintiff's job

performance. Phansalkar, 344 F.3d at 203. See Ross, 2004 WL 1837366, at *6 (finding that a fiduciary duty claim "is barred as redundant" where it is "merely a restatement, albeit in slightly different language," of the parties' contractual obligations) (citation and internal quotation marks omitted).

Second, MSG argues that Browne Sanders's alleged misconduct was in fact "substantially" related to her job performance because her alleged misconduct violated MSG's "broad ethical policies." (Def. Reply 6-7.) Specifically, MSG argues that Browne Sanders's "senior executive" position required her to act for the benefit MSG, and therefore any unethical conduct by Browne Sanders – whether at or outside the workplace – that violates MSG's "work rules" and "impair[s] MSG's brand or standing in the community, or compromise[s] [plaintiff's] job related-judgment," also permits recovery under the faithless servant doctrine. (Id. 5, 7.)

MSG misinterprets the faithless servant doctrine. First, even assuming arguendo that the "performance" of Browne Sanders's job required her to act in an ethical manner outside of work, MSG's overly expansive interpretation of the doctrine would eviscerate the requirement that the misconduct must "permeate[] the employee's service in its most material and substantial part." Phansalkar, 344 F.3d at 203. Although New York courts have not specifically defined the "material and substantial" standard, thereby leaving it to case-by-case determination whether the employee's conduct so far infringed on her job performance as to constitute a violation of the doctrine, see id. at 202, defendant has not cited – and the Court has not found – any case where a connection between an employee's alleged misconduct and their job responsibilities as tenuous as that between plaintiff's erroneous tax returns and her responsibilities at MSG was held to be a violation of the doctrine. Instead, in each case in which the doctrine was applied, the employer

showed that the misconduct had an effect on the employee's job performance that was more substantial and concrete than the intangible, nebulous infringement on MSG's "ethical policies" claimed here. (Def. Reply 7.) Compare Phansalkar, 344 F.3d at 203 (duty of loyalty breached where employee "with[held]" from the employer "cash, stocks, and other interests that belonged to" the employer), and Maritime Fish Prods. Inc. v. World-Wide Fish Prods., Inc., 474 N.Y.S.2d 281, 285 (1st Dep't 1984) (duty of loyalty breached where employee "surreptitiously organized a competing corporation, corrupted a fellow employee, and secretly pursued and profited from one or more opportunities properly belonging to his employer"), with Schwartz v. Leonard, 526 N.Y.S.2d 506, 508 (2d Dep't 1988) (duty of loyalty not breached where employee had secretly removed the employer's files to begin his own business but in so doing did not "neglect[]" his work or "further[] his own interest at the expense of" his employer).

      MSG only cites one case for its argument that the faithless servant doctrine applies whenever an employee violates an employer's "work rules." (See Def. Reply 5, citing Foley v. Am. Elec. Power, 425 F. Supp. 2d 863, 873 (S.D. Ohio 2006).) In Foley, the defendant employer filed a counterclaim against the plaintiff employee, arguing that the plaintiff had violated the faithless servant doctrine by falsely reporting energy trading transactions to industry publications. 425 F. Supp. 2d at 873-75. As an initial matter, Foley applied Ohio, not New York, law, and therefore is not controlling here. Id. at 873. More significantly, however, Foley does not stand for the broad proposition that any unethical conduct that violates "work rules" permits recovery under the doctrine (Def. Reply 5); instead, the Foley court denied summary judgment for the employee because the employee's misconduct in that case had been taken on behalf of his employer and as part of his job responsibilities. Id. at 875. Thus, unlike MSG, the

employer in Foley produced evidence showing a direct connection between the employee's alleged unethical behavior and his job performance. See id. (finding an issue of fact as to whether "[p]laintiff's attempts to conceal his own and his subordinates' misconduct satisf[ied] the [doctrine's] permeation requirement").

Under MSG's interpretation of the faithless servant doctrine, an employee breaches her duty of loyalty any time she engages in conduct that is not condoned by her employer or that violates her employer's ethical standards, regardless of whether the employee's conduct was related to her job performance. However, the purpose of the doctrine is not to dissolve the "well-established" boundaries of an employee's fiduciary duty, Design Strategies, Inc. v. Davis, No. 02 Civ. 5329, 2004 WL 1394327, at *4 (S.D.N.Y. June 22, 2004), but to provide a remedy for an employer if an employee breaches that duty and "it is difficult to prove that harm resulted from the breach or . . . the [employee] realizes no profit through the breach." Restatement (Third) of Agency § 8.01 (2006). While employers may contractually obligate employees to act in an ethical manner, and condition continued employment on compliance with that requirement, an employee's alleged violation of that requirement does not result in a violation of the faithless servant doctrine unless the employee's unethical conduct "material[ly] and substantial[ly]" infringed on her job performance. Phansalkar, 344 F.3d at 203. A faithless servant doctrine read as broadly as urged by MSG would allow an employer to sue an employee if the employee engaged in any conduct that fell short of the employer's ethical standards, no matter how disconnected to the employer's business the employee's misconduct might have been, simply because the employee's private misbehavior might reflect poorly on her employer.

The unfairness of MSG's position makes evident why the faithless servant doctrine does not stretch so far. MSG does not seek damages for any breach of Browne Sanders's alleged contractual promises to pay her taxes and eschew outside business pursuits. Indeed, it conspicuously fails to identify any way in which it suffered any such damage. As noted, it does not identify any way in which her alleged derelictions affected Browne Sanders's performance of her duties. Nevertheless, having accepted the fruits of Browne Sanders's labor for five years, MSG argues that it is entitled to obtain those fruits for free by forcing the forfeiture of all of Browne Sanders's pay for her entire period of employment. The remedies of the faithless servant doctrine are drastic, and appropriately so where the doctrine applies. An employee who works to undermine or covertly compete with her employer cannot be permitted to retain the benefits of an agency relationship she has betrayed. An employee who violates an incidental work rule, however, or who cheats the government out of taxes due, may have to respond in damages for breach of contract, but need not forfeit her entire salary.

Finally, MSG's argument that Browne Sanders's job responsibilities were so sensitive and crucial to MSG that any unethical behavior by *this particular plaintiff* constitutes a violation of the faithless servant doctrine is unavailing. MSG's own evidence refutes any argument that Browne Sanders should be held to a different ethical standard than other MSG employees. (See Moran Aff. ¶ 6 ("[MSG's ethical conduct] rules apply to every employee of MSG, even lower-level employees not entrusted with the high-level responsibilities and duties with which Plaintiff was entrusted.").) In addition, MSG has provided no reason why the general rule should be abrogated in this case, other than its conclusory assertion that Browne Sanders was in a "senior executive position" and was privy to "confidential" information. There is no basis, either in the

case law or in the purpose of the doctrine itself, to distinguish between a high-ranking management employee such as Browne Sanders and any other employee who owes their employer a duty of good faith and loyalty. See, e.g., Bon Temps Agency, Ltd. v. Greenfield, 622 N.Y.S.2d 709, 710 (1st Dep't 1995) (finding that defendant, a manager of plaintiff's employment agency, only violated the faithless servant doctrine if the defendant's misconduct "lessened her work on behalf of plaintiff or misused plaintiff's business secrets"); Schwartz, 526 N.Y.S.2d at 508 (denying faithless servant claim where attorney secretly removed confidential files from the workplace because employer did not show that there was a "persistent pattern of disloyalty"). Since Browne Sanders is not accused of misusing MSG's confidential information in any way, the fact that she had access to such information is irrelevant.

Thus, the alleged misconduct here is so far removed from Browne Sanders's job responsibilities that it cannot be said that the misconduct "substantial[ly]" interfered with her job performance. Phansalkar, 344 F.3d at 203. Because MSG's claim would fail as a matter of law, permitting it to amend its answer at this juncture would be "futil[e]." Foman, 371 U.S. at 182. Accordingly, defendant's motion is denied.

## CONCLUSION

For the foregoing reasons, MSG's motion to amend its answer (Doc # 81) is denied.

SO ORDERED.

Dated: New York, New York
       July 2, 2007

_____
GERARD E. LYNCH
United States District Judge