UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x

ANUCHA BROWNE SANDERS,

          Plaintiff,

  -v-

MADISON SQUARE GARDEN, L.P., et al.,

          Defendants.

------------------------------------------------------------x



06 Civ. 589 (GEL)

**ORDER**

GERARD E. LYNCH, District Judge:

    This order addresses a number of motions in limine filed by the parties in advance of the trial scheduled for September 10, 2007.

Plaiintiff's Motions

    1. Plaintiff Browne Sanders seeks to exclude testimony from Karen Buchholz, an MSG employee who reported to her, that Browne Sanders "forced" her to attend a meeting at which Browne Sanders sought to retain counsel to pursue a sexual harassment complaint. (P. Mem. 3.) The motion will be denied.

    Defendants argue that this testimony is relevant to the extent that it supports their contention that Browne Sanders misused her authority over subordinates to pressure them into supporting her claims of sexual harassment, thus demonstrating her bad faith. (D. Mem. 5.) Whether the testimony supports this contention depends crucially on exactly what transpired between Browne Sanders and Buchholz. To the extent Buchholz would testify that Browne Sanders urged her to provide the lawyers with a false story, or to support Browne Sanders's accusations in a way that Buchholz did not believe was accurate, such evidence would of course be powerful proof of bad faith. At the other extreme, if Browne Sanders pressured Buchholz to provide the lawyers with a truthful account of what Buchholz had seen or observed, despite Buchholz's wish not to get involved, such behavior, however inappropriate or obnoxious, would not suggest that Browne Sanders was making a bad faith complaint. An insistence that Buchholz be interviewed by the lawyers *in Browne Sanders's presence*, rather than simply that she give information to them if asked, is more ambiguous, but is susceptible to the interpretation that Browne Sanders wished to ensure consistency between the two women's stories, and to influence what Buchholz told counsel. In short, whether this incident speaks to Browne Sanders's alleged bad faith in charging sexual harassment turns on the extent to which it reflects a desire to influence the content of Buchholz's testimony, as opposed to a desire to influence her

Sanders v. Madison Square Garden, L.P. et al            Doc. 117

to *provide* testimony.

At oral argument on this motion, defendants represented that Buchholz would testify directly that Browne Sanders pressured her to advance a claim of sexual harassment that she did not believe was justified. Because whether Browne Sanders's sexual harassment charge was brought in bad faith is a relevant inquiry in this proceeding, the motion is denied.

2. Plaintiff seeks to preclude defendants from inquiring into her "relationship with her husband." (P. Mem. 5.) This motion, which concerns issues that are currently under seal, was disposed of by the Court on the record during a pre-trial conference held on September 4, 2007.

3. Plaintiff seeks to preclude evidence that Browne Sanders filed an internal sexual harassment grievance while previously employed by IBM. (P. Mem. 8.) The motion will be denied.

Defendants rightly argue that it is an issue in this case whether Browne Sanders knew of, and failed to avail herself of, MSG's internal complaint procedure for such complaints. Apparently, defendants will offer direct evidence of Browne Sanders's knowledge of the existence of such procedures. That she had previous experience of such procedures at other employers and had followed them is thus of marginal relevance. However, the evidence that in other circumstances she had availed herself of such procedures does tend, to a limited extent, to support the inference that her failure to do so here suggests that she was not genuinely offended by Thomas's conduct. Contrary to plaintiff's suggestion, there is no prejudicial implication that she is a litigious or overly-sensitive person: the logic of defendants' argument is precisely the opposite, in that it presupposes not that the IBM complaint was part of a pattern of false accusations, but that it was a legitimate complaint. In any event, a limiting instruction can and will advise the jurors, who are presumed to follow such instructions, see United States v. Stewart, 433 F.3d 273, 307 (2d Cir. 2006), that the evidence is not to be taken for this purpose, an instruction that will easily be followed since the evidence of a single prior complaint that did not lead to litigation hardly warrants concern that the jury will see Browne Sanders as chronically litigious.

4. Plaintiff seeks to preclude evidence that she once used a vulgar term in reference to another employee. Plaintiff argues that such evidence would cause "unfair[] prejudice" to her. (P. Mem. 11.) The motion will be denied.

Plaintiff apparently intends to introduce evidence of pervasive vulgar and profane abuse directed at her in the workplace by defendant Thomas and others. It is perfectly appropriate for defendants to ask plaintiff whether she also used such vulgarity in the same workplace, as her tendency to do that would shed light on whether she really found such conduct abusive. See Feingold v. New York, 366 F.3d 138, 150 (2d Cir. 2004) (to succeed on a hostile work environment claim a plaintiff must "subjectively perceive [the] environment to be abusive"). The notion that plaintiff's use of a vulgar term on a single occasion will somehow cause the jury to be prejudiced against her is fatuous. The jury will be fully able to assess whether such a

single episode demonstrates that Browne Sanders was not offended by the barrage of hostile and abusive language she claims was directed at her, and if defendants believe that the jury will reach that conclusion, they are entitled to try their luck.

     5. Plaintiff seeks to preclude testimony by witnesses she says defendants did not properly identify during discovery. (P. Mem. 12.) The motion will be denied. All of these witnesses were clearly identified during depositions in this case as persons with knowledge of relevant events. The nature of their role and involvement was fully known to plaintiff during discovery, and plaintiff had every opportunity to depose them if she thought it worthwhile to do so. See Weiss v. La Suisse, Societe D'Assurances Sur La Vie, 293 F. Supp. 2d 397, 415 (S.D.N.Y. 2003). Whether or not defendants should have identified them in some other way, plaintiff can claim no prejudice whatsoever from defendants' failure to do so.

     6. Finally, plaintiff argues that she has a constitutional right to submit her claims for front and back pay to the jury. She concedes, however, that "the Second Circuit has stated that a party is not entitled to a jury determination of back pay or front pay under Title VII, deeming them 'equitable' remedies." (P. Mem. 14, citing Broadnax v. City of New Haven, 415 F.3d 265, 271 (2d Cir.2005).) Plaintiff also concedes that whether her similar claims under state and city law are to be submitted to a jury is a matter of federal, not state, law. (Id., citing Byrd v. Blue Ridge Rural Elec. Corp., 336 U.S. 525 (1958).) These two concessions essentially determine the issue. The state and city substantive and remedial schemes at issue here are virtually identical to the Title VII scheme at issue in Broadnax. No doubt it is possible that plaintiff may someday, if the matter progresses so far, persuade the Supreme Court, which has never ruled on the matter, that the Second Circuit's decision in Broadnax was incorrect. Or the plaintiff might persuade the Second Circuit en banc to overrule Broadnax, or that the rule of Broadnax should not be applied to state and city claims, though such a conclusion would have to be based on discontent with the Broadnax rule and not on any comprehensible difference between the virtually identical federal and state statutes. But it is not for this Court to disregard binding and indistinguishable precedent from the Second Circuit.

     Alternatively, plaintiff suggests that the Court submit the back and front pay issues to the jury for an advisory verdict, against the (rather unlikely) possibility of a future change in the governing law. (P. Mem. 18.) The Court declines the invitation. Submitting these complex damages issues to the jury unnecessarily would greatly complicate the matters put to the jury. Moreover, while this Court has the highest respect for the common sense of jurors in deciding matters such as the liability issues that will be before them in this trial, and has in other cases submitted similar issues of fact-finding to an advisory jury, complex mathematical calculations of future damages plays to the jury's weakness rather than its strength. The Court thus does not find that an advisory verdict on these matters is likely to be helpful.

Defendants' Motions

     1. Defendants move to exclude various statements made by the plaintiff to relatives and friends, and in writing in her diary, complaining of sexual harassment, contending that such statements are simply hearsay: out of court, unsworn statements offered for the truth of the matter asserted, that is, to prove that plaintiff was subjected to discriminatory working conditions. See Fed. R. Evid. 801(c). (D. Mem. Of. L. In Support Of Mot. In Lim. To Exclude Expected Hearsay Test., at 9 ("D. Mem. I").) Defendants are correct that such statements are within the basic definition of hearsay. Although the plaintiff herself will presumably testify to these alleged events at the trial, under oath and subject to cross-examination, the competent evidence is that testimony, and her prior out-of-court statements to the same effect are no less hearsay because they were made by someone who will appear in court as a witness.

     However, prior consistent statements of a witness are defined as non-hearsay, and admissible in evidence, when they are "offered to rebut an express or implied charge against the declarant of recent fabrication." Fed. R. Evid. 801(d)(1)(B); see United States v. Wilkerson, 361 F.3d 717, 726 n.3 (2d Cir. 2004). The basic notion, although perhaps not intuitive, is entirely logical, is well understood by lawyers and is in fact easily understood by lay jurors when carefully explained. Essentially, what a witness says in court, under oath and subject to the test of cross-examination, is evidence the credibility of which the jury can assess for itself. That the witness said the same thing to a friend or relative the day before the trial does not make it any more likely to be true, and does not help the jury to evaluate whether to believe the testimony. Thus, the evidence of the prior statement is excluded as not probative and essentially a waste of the jury's time.

     When, on the other hand, a witness is accused of making up a story for a particular reason, the situation is different. For example, if the defense in a criminal case challenges a police informant witness on the ground that the witness is simply accusing the defendant in order to please the prosecutors and secure leniency, the fact that the witness made the same accusation to a friend a year before he himself was ever arrested or offered leniency to testify tends to rebut the claim that the witness made up this story only to secure favorable treatment from the prosecutor. Of course, such prior statements are only probative if they were made *before* the motive to fabricate arose. That the informant made the same statement that he made at trial to the prosecutor the day before trial, after signing a leniency agreement with the government, would not make it less likely that the trial testimony was fabricated to secure favorable treatment.

     Here, defendants have made clear that they intend to argue at trial that Browne Sanders fabricated her charges of sexual harassment, to protect her job (because she knew that her superiors were dissatisfied with her), and to extort money from defendants. Under the rule, statements made by Browne Sanders, consistent with her present accusations, that were made before these motivations arose, are unquestionably admissible. The essential issue is whether the out-of-court statements and journal entries were made before Browne Sanders had the motivation to lie that defendants attribute to her.

Defendants argue that none of Browne Sanders's statements predate her alleged reason to fabricate. (D. Mem. I 14.) It is of course difficult to determine with precision when Browne Sanders became aware that her job was in jeopardy, and the task is complicated by the fact that a victim of sexual harassment may well believe that failure to respond to improper advances will put her job in jeopardy. Moreover, a plot to extort money from an employer by making a false charge of discrimination could theoretically be hatched at any time, and someone unscrupulous enough to devise such a scheme might well prepare the ground by complaining to outsiders of the mistreatment she plans to make the basis of a later lawsuit.

But the record here contains solid evidence that Browne Sanders had little basis to fear that her supervisors thought ill of her until relatively late in her employment. In early 2004, Browne Sanders received the highest possible performance rating from her supervisor, and she received a $53,000 bonus in April 2004. (Pl. Opp'n 7.) As late as early 2005, Browne Sanders received a favorable rating, a $76,000 bonus (the highest she had ever received), and a substantial raise in salary. (Id.) While there is evidence that Browne Sanders had some friction with defendant Thomas as early as March 2004 that might have given her concern about her future with the Knicks (id. at 7-8, citing Berke-Weiss Decl. Ex. K), Browne Sanders's supervisor, Stephen Mills, testified that he had essentially backed Browne Sanders in a meeting with her and Thomas (id. at 8-9, citing Mintzer Decl. Ex. C, at 193-94).

Thus, at least through early 2005, the claim that Browne Sanders had a reason to fear being fired is unpersuasive. And while in principle a scheme to extort a huge settlement could be hatched at any time, this Court finds it highly fanciful to suggest that a woman who was earning a salary of a quarter million dollars a year, receiving favorable job ratings and hefty bonuses, and reasonably anticipating a continued successful career in sports management would have a logical motive to devise a reckless scheme that would risk the loss of her job, significant adverse publicity, and very possibly the end of her career.

Defendants' subsidiary argument that Browne Sanders's prior statements are inadmissible because they are not, as the rule requires, "consistent" with her expected testimony requires little discussion. (D. Mem. I 16.) A prior consistent statement "need not be identical in every detail to the declarant's . . . testimony at trial." United States v. Vest, 842 F.2d 1319, 1329 (1st Cir. 1988). Here, the thrust of the proffered testimony is entirely consistent with Browne Sanders's expected testimony, and the purported inconsistencies are matters of detail.

Defendants remain entirely free to argue to the jury that these various prior statements were fabricated for the same reasons they contend the testimony was fabricated, to urge the jury to conclude that Browne Sanders had the same motive to deceive in 2004 and 2005 as she allegedly has today, and to find that whatever inconsistencies in detail that exist between her prior statements and what she says at trial are evidence that she has trouble maintaining consistency in a made-up story. It is the jury's prerogative to decide where the truth lies, including to resolve inconsistencies in testimony and assess the motives of the actors. But the plaintiff's claim that her prior statements arose before the charged motive to fabricate arose is more than sufficiently persuasive to warrant allowing the jury to hear the testimony and draw

5

their own conclusions as to what to believe.

At least some of the challenged statements are potentially admissible for another reason as well. To establish a claim of hostile work environment, a plaintiff must prove not only that the alleged misconduct was sufficiently severe to create an objectively hostile environment, but also that she "subjectively perceive[d] that environment to be abusive." Petrosino v. Bell Atlantic, 385 F.3d 210, 221 (2d Cir. 2004) (citations and internal quotation marks omitted). Evidence that Browne Sanders expressed unhappiness about alleged abusive behavior or sexual advances to others at the time tends to indicate that the behavior was unwelcome or stressful to her. This is simply an instance of a familiar principal in the law of evidence. Testimony regarding a person's out-of-court statements is not admissible to prove the truth of the matter asserted, but it may be relevant to prove the declarant's state of mind. A witness who testifies to the plaintiff's contemporaneous tearful or angry account of alleged mistreatment may not have first-hand, admissible evidence that the mistreatment occurred, but the witness can testify to the declarant's apparent emotional state, to which he or she is a first-hand observer. For similar reasons, the declarant's own description of her mental state ("I am really upset about this") is admissible as a recognized exception to the hearsay rule. Fed. R. Evid. 803(3). Such evidence may be particularly relevant in this case, where at least some of Browne Sanders's factual accusations are admitted, and defendants contest whether she in good faith subjectively perceived the conduct in question as harassing or unwelcome. See LaMarch v. Tishman Speyer Props., L.P., No. 03 Civ. 5246, 2006 WL 2265086, at *7 (E.D.N.Y. Aug. 8, 2006) (plaintiff's "testimony regarding other employees' statements about alleged age discrimination, while inadmissible hearsay when introduced to establish the truth of those statements . . . would be admissible if introduced" to support the hostile work environment claim).

The precise parameters of the testimony that will be received under this rubric will depend on the issues at trial as they develop, including what the plaintiff actually testifies to, and what defenses are explicitly or implicitly offered in the defense openings, the cross-examination of Browne Sanders, or the direct testimony and cross-examination of other witnesses. Moreover, whether any particular proffered evidence should be excluded as cumulative must await further development. But enough has been said to demonstrate that defendants' wholesale attack on putative "hearsay" evidence must be rejected, and their motion in limine is accordingly denied.

2. Defendant Thomas seeks to exclude as hearsay testimony by Browne Sanders that other employees told her about comments denigrating her allegedly made by Thomas and others when she was not present. (Thomas Mem. 6-9.) The motion will be granted, unless plaintiff is able to represent that the out-of-court declarants will testify at trial.

Indisputably, testimony by Browne Sanders that a co-worker told her that Thomas said to Knicks players that they should not cooperate with her is inadmissible hearsay if offered to prove that Thomas did so instruct his players. It is the co-worker, not Browne Sanders, who has first-hand knowledge of that alleged instruction (if in fact he or she even had such knowledge), and whose credibility is relevant. As plaintiff points out, such testimony may be relevant to Browne Sanders's subjective experience of a hostile work environment, but the prejudicial impact of

injecting such rumor and hearsay into the trial is obvious and overwhelming: the jury can reasonably be expected to be confused about what evidence is competent to prove what Thomas actually did and what evidence only relates to what Browne Sanders believed was occurring. Of course, if a witness will actually testify that Thomas did give such an instruction, the prejudice will evaporate, because the jury will be able to evaluate the truthfulness of that testimony, and it will be readily apparent that testimony by Browne Sanders that she was informed of the alleged incident is offered only to prove that she became aware of it.

The issue becomes even more convoluted to the extent that plaintiff proposes to offer testimony from third party witnesses that Browne Sanders told *them* of such alleged incidents of which she was not personally aware, but of which she had been told by still others. The same basic principle applies. If competent first-hand testimony will be offered that Thomas said or did something, it will in turn become relevant that Browne Sanders was aware of that behavior, and that she expressed her unhappiness with the behavior at the time she became aware of it. But absent a competent foundation, the risk of piling hearsay upon hearsay, by having witnesses testify that Browne Sanders told *them* that she had *heard from a third party* that Thomas did something, on top of Browne Sanders's own testimony as to the same underlying hearsay, and thus creating a false impression in the jury that the additional witnesses are corroborating Browne Sanders's testimony in a way that makes it more likely that an incident occurred, is unacceptable, given that the ultimate foundation for so believing is in fact the credibility of someone who will not appear at trial and be tested by cross-examination.

3. Defendants also move to exclude evidence of the EEOC's probable cause determination, and of various memoranda of interviews conducted by the agency. (D. Mem. Of L. In Support Of Mot. In Lim. To Exclude The Equal Employment Opportunity Comm'n Probable Cause Determination And Investigation Notes, at 11-17 ("D. Mem. II").) The motion will be granted.

Plaintiff correctly points out that the EEOC determination is not excludable as hearsay, because Fed. R. Evid 803(8) permits the introduction of certain public records and reports, including "factual findings resulting from an investigation made pursuant to authority granted by law, unless the sources of information or other circumstances indicate lack of trustworthiness." Defendants' argument that the investigation here was cursory and untrustworthy barely passes the straight-face test. (D. Mem. II 11-14.) The agency undertook a responsible, serious investigation into the facts, and defendants' arguments do not persuade the Court that it is less trustworthy than the sort of governmental investigative findings to which this exception was intended to apply.

However, the fact that evidence is not vulnerable to a hearsay objection does not mean that it must be received into evidence. Any proffered evidence "may be excluded if its probative value is outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed. R. Evid. 403. Here, the minimal probative value of the EEOC determination is far outweighed by the danger of jury confusion and diversion of the trial that its admission would

7

create.

The probative force of the determination is limited by the generalized and inconclusive nature of the determination made by the agency. The EEOC made no specific findings of historical fact as to the occurrence of any particular event, limiting itself to generalizations and mixed conclusions of law and fact regarding whether plaintiff "was subjected to a hostile work environment" and whether the defendant employer took "reasonable care to prevent or correct discrimination and harassment in the workplace." (EEOC Determination, Cozier Decl. Ex. 2, at 2.)

Moreover, even as to these issues, the EEOC determination is at best ambiguous as to whether the agency made a definitive finding that MSG was guilty of actionable discrimination or retaliation. Its ultimate finding was simply that "there is probable cause to believe that [MSG] violated Title VII." (Id.) The predicate subsidiary findings for this less than conclusive determination are similarly hedged: the agency's brief findings (consisting of two short paragraphs) are replete with limiting language such as "[t]here is evidence that . . . ," "[t]he evidence . . . indicates that . . . ," "[t]he Commission's investigation supports . . . ," and "there is probable cause to believe that . . . ." (Id.) The determination goes on to state that the EEOC has decided to undertake conciliation, based on a its conclusion, required by the statute before such action can be taken, that "there is reasonable cause to believe that violations have occurred." (Id. 3.)

These somewhat equivocal findings ultimately amount to little (if any) more than what this Court has found in denying defendants' motions for summary judgment: that there is sufficient evidence to support plaintiffs' allegations that a reasonable factfinder *could* find in favor of plaintiff, and that her claims are sufficiently supported to proceed to trial. This provides little useful assistance to the jury in performing its function of assessing whether plaintiff's charges have been proved by a preponderance of the evidence. The jury will hear the same evidence considered by the EEOC, and must make its own independent determination of whether the plaintiff's burden of proof has been met. To learn that a government investigator had determined that the evidence was sufficient to warrant the EEOC's decision to employ "informal methods of conference, conciliation and persuasion" in an effort to resolve the dispute (id.) is of little value to a factfinder charged with determining whether violations of law actually occurred.

That limited evidentiary value would be purchased at the cost of considerable jury confusion and diversion of attention. At a minimum, the Court would have to instruct the jury as to the difference between the evidentiary standards applied by the EEOC in determining "reasonable cause" and the standard of proof by a preponderance of the evidence that the jury is required to apply. Moreover, the Court, after admitting this evidence, would have to emphasize to the jury that it must make its own independent determination, and that it must not allow the EEOC's alleged judgment to substitute for its own – an instruction that would make a reasonable person wonder why they are hearing evidence of a putative finding that they may somehow take into account but must in the end put aside in favor of their own independent assessment of a fuller record. Even with such instructions, the worrisome possibility cannot be completely

avoided that jurors would be confused about exactly what the agency found, and the relationship between the EEOC's findings and those the jury itself is being asked to make.

Moreover, the Court's determination that the EEOC's investigation was sufficiently reliable to satisfy the standard of Rule 803(8) in no way precludes the defendants from presenting evidence in support of its legitimate jury argument that the investigation was far less thorough than the adversary inquiry conducted before the jury at trial. Inevitably, a significant part of the trial would then be devoted not to the underlying events, but to the adequacy of the EEOC's inquiry into those events, and an additional and unnecessary layer of meta-factfinding would be injected into the trial, as the jury is diverted from comparing the evidence before it with reality into comparing the trial evidence to the evidence before the EEOC.

The EEOC interview memoranda require little discussion. Plaintiff merely seeks to offer them insofar as they "provide the foundation for" the determination itself. (P. Opp'n 35.) The exclusion of the determination thus removes the basis for the admission of the interview reports. Indeed, the plaintiff's rationale simply illustrates the danger of admitting the determination: admitting the determination would inevitably lead to introduction of the memoranda, to explain what the agency did to make its findings, leading in turn (equally inevitably) to the taking of further evidence as to the accuracy and reliability of the interviewer's reports.

For these reasons, the EEOC determination and interview memoranda will be excluded from evidence under Rule 403.

4. Defendants seek to preclude testimony by Browne Sanders regarding comments made and questions asked of her by prospective employers regarding her dismissal from MSG. (D. Mem. Of L. In Support Of Mot. In Lim. To Exclude Hearsay Test. With Respect To Statements Attributed To Prospective Employers And Executive Recruiters, at 6-10 ("D. Mem. III").) The motion will be denied.

Much turns here on the specifics of the testimony to be offered, and the purpose for which it is offered. A statement by a prospective employer to the effect that "we're sorry, but we won't hire you because we understand that MSG regarded you as a deficient employee," offered to prove the that this was the actual reason why the employer failed to hire Browne Sanders, would be inadmissible hearsay. Offered for that purpose, the evidence would implicate the core concern of the hearsay rule: whether the statement was true would depend on the credibility of the prospective employer who made the statement, who would not be present in court to be cross-examined under oath about whether this was the true reason for the rejection or simply a convenient excuse.

However, as the Court has already ruled in its summary judgment opinion, see Browne Sanders v. Madison Square Garden, L.P., No. 06 Civ. 589, 2007 WL 2254698 (S.D.N.Y. Aug. 6, 2007), the fact that an employer inquired about Browne Sanders's dispute with MSG or made some reference to the subject is not offered for the truth of anything asserted by the employer, "but as evidence that prospective employers are aware of and interested in [her] termination from

the Knicks." Id. at *15 n.10. That is a valid non-hearsay use of the statement, since the probative force of the evidence turns on the fact that the comment was made or the question asked. As to that, the person whose credibility in issue is the plaintiff, and the jury will be fully able to assess whether her testimony as to what was said by such interviewers is to be believed.

It is not clear that plaintiff proffers any statement by a prospective employer that takes the form of a direct assertion that her troubles at MSG were the reason she was not hired for another job. Plaintiff's counsel are directed not to refer to such a statement before the jury or to elicit such a statement from plaintiff without further discussion. While such a statement does have the same potential non-hearsay value as more ambiguous comments or questions about Browne Sanders's dispute with MSG, the potential for jury confusion between the hearsay and non-hearsay uses of such a direct assertion is obviously great, and whether its probative value outweighs that risk may well turn on the extent to which the non-hearsay aspect is merely cumulative of other, less problematic statements.

5. Defendants seek to preclude reference to an unrelated claim of sexual harassment of female dancers employed by the New York Rangers, an ice-hockey team also owned by defendant MSG, that resulted in an EEOC conciliation agreement in which MSG undertook to create improved compliance with anti-discrimination law by, among other things, creating training programs for its managers. The motion will be granted in part and denied in part.

Plaintiff argues that the evidence is admissible for three purposes. First, she argues that the conciliation agreement will support her argument for punitive damages by demonstrating that defendants were aware of the laws regarding sexual harassment. (P. Opp'n 36.) This argument is valid, and will come into play if MSG contests its knowledge of the law. It would be astonishing, however, if MSG, a significant employer, disputes its awareness of the well-known requirements of federal, state, and local anti-discrimination law. If defendants decline to stipulate to such knowledge, or reserve the right to dispute it, plaintiff may well be permitted to offer such evidence on her direct case; if Dolan or Thomas denies such knowledge during the defense case, plaintiff will surely be permitted to challenge such a claim by inquiring as to their knowledge of the virtually contemporaneous issue with respect to the Rangers dancers. But absent these circumstances, the minimal probative value of the conciliation agreement in demonstrating an uncontested fact would be far outweighed by the potential prejudice of injecting an unrelated claim of harassment into the case.

Next, plaintiff argues that it should be permitted to offer evidence of the conciliation agreement in rebuttal if MSG, as expected, puts in evidence that it conducted anti-sexual harassment training for its employees, on the theory that "[t]he jury should know that MSG instituted this sexual harassment training, not because it was committed to ending discrimination in the workplace, but because it was required to do so as part of an agreement with the federal government." (P. Opp'n 38-39.) This is illogical. First, MSG was not "required" to enter this agreement in the first place; it was a voluntary settlement by which MSG, without admitting or having been found guilty of any violation of law, undertook to take steps to ensure compliance with the law. No doubt many employers undertake such compliance programs less out of

10

independent enthusiasm for anti-discrimination law, but in order to avoid liability or for other self-interested business reasons. What matters to liability is the effectiveness of the anti-discrimination programs in place, not the underlying motive for their adoption. Of course, defendants must beware of opening the door to such rebuttal by attempting for their own part to paint these relatively routine employer programs as some badge of personal commitment on the part of senior management to advancing the interests of female employers. And nothing prevents plaintiff from cross-examining Dolan, as she apparently wishes to do (id. 36 n.23), about his own failure to comply with the company's commitment (regardless of the source of that commitment) that all managers would undergo such training, since that reflects on the seriousness and degree of compliance with the purported program.

Finally, plaintiff suggests that all reference to the allegations of harassment of Rangers dancers cannot be avoided, because in the midst of her own difficulties, plaintiff e-mailed her supervisor, Mills, about the "Rangers dancers situation," and his response demonstrated his dismissive attitude toward claims of sexual harassment. (P. Opp'n 39.) Plaintiff's account of the conversation is too general to permit a definitive ruling on this matter, but since plaintiff's understanding of her employer's attitudes may be relevant in explaining why she did not take advantage of any internal avenues of complaint that may have been available to her, this conversation may well be admissible. The matter will be discussed further with counsel before trial.

6. Defendants seek to preclude cross-examination of Karen Buchholz, the MSG employee discussed above, concerning her own complaints about sexual harassment while employed at the United States Olympic Committee ("USOC"). Decision on this motion will be deferred pending the direct examination of Buchholz.

Buchholz apparently will testify that Browne Sanders somehow coerced or intimidated her into attending a meeting with lawyers that Browne Sanders sought to retain to pursue a complaint based on Thomas's alleged harassment, and may testify that she was "shocked" that Browne Sanders had filed this action, because Browne Sanders had not complained to her of any inappropriate behavior by Thomas, and she had never herself observed any such behavior. (P. Opp'n 39-40.)

The details of her expected direct testimony, however, are unclear. It is therefore not clear how Buchholz's own experience with sexual harassment, while working for a different employer, might turn out to be relevant to any conversations between her and Browne Sanders. Presumably, Buchholz's prior complaint would be relevant on cross-examination to the extent that her prior complaint is arguably inconsistent with her testimony at trial. If, for example, Buchholz testifies that she saw nothing inappropriate in Thomas's behavior, but she herself had previously complained to another employer regarding similar behavior, the alleged inconsistency would go be relevant in assessing the credibility of her testimony. If, on the other hand, the conduct Buchholz claims to have witnessed or been informed of by Browne Sanders is not of a similar nature to the conduct Buchholz found objectionable at the USOC, the fact that she had complained about behavior unlike anything she knew of at MSG would not be relevant here.

Only after Buchholz testifies, and the relevance and importance of her testimony becomes clear, will it be possible to decide whether anything about her own experience at USOC impeaches or illuminates her testimony, and whether any such relevance outweighs the potential prejudice of creating some irrelevant sideshow about the nature of that experience.

7. Defendant Thomas moves to preclude plaintiff from asking him whether he ever engaged in criminal activity. (Thomas Mem. 21.) Plaintiff responds that all that she wants to ask is whether he lied in his deposition. (P. Opp'n 42.) Plaintiff may certainly inquire into whether Thomas lied during his deposition. Plaintiff will not be permitted to ask the question in the form, "have you ever engaged in criminal activity." That much broader inquiry is offensively prejudicial and potentially opens the door to matters of no conceivable relevance to this case. Plaintiff suggests no good faith basis for believing that Thomas has ever committed any offense other than testifying in this case in a manner that plaintiff regards as false, and the Court is aware of no evidence whatsoever of any criminal conduct on Thomas's part. Plaintiff's counsel has assured the Court that they have no intention of asking such an inflammatory and improper question as a predicate to a straightforward inquiry about the credibility of Thomas's own testimony in this case. The motion is therefore denied as moot.

## CONCLUSION

Accordingly, the parties' various motions in limine are disposed of as set forth above with respect to each such motion.

SO ORDERED.

Dated: New York, New York
       September 4, 2007

_____
GERARD E. LYNCH
United States District Judge