UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
                                                            :
ANUCHA BROWNE SANDERS,                                      :
                                                            :
           Plaintiff,                                       :
                                                            :    06 Civ. 589 (GEL)
      -v-                                                   :
                                                            :    **OPINION AND ORDER**
MADISON SQUARE GARDEN, L.P., et al.,                        :
                                                            :
           Defendants.                                      :
                                                            :
------------------------------------------------------------x

Anne C. Vladeck, Kevin T. Mintzer, and
Karen Cacace, Vladeck, Waldman, Elias &
Engelhard, P.C., New York, NY, for plaintiff.

Ronald M. Green, Teresa M. Holland,
Barry A. Cozier, Brian G. Cesaratto, Epstein
Becker & Green, P.C., New York, NY, Miguel A.
Estrada, Gibson, Dunn & Crutcher LLP,
Washington, DC, and Amber L. Kagan, Morgan,
Lewis & Bockius LLP, New York, NY,
for defendants MSG and Dolan.

Sue Ellen Eisenberg and Lucetta Franco,
Eisenberg & Bogas, P.C., Bloomfield Hills, MI,
Laurie Berke-Weiss and Louis Pechman,
Berke-Weiss & Pechman LLP, New York, NY,
for defendant Thomas.

GERARD E. LYNCH, District Judge:

  Plaintiff in this employment discrimination action has submitted a motion for reconsideration of an aspect of the Court's decision on summary judgment, see Sanders v. Madison Square Garden, L.P., 06 Civ. 589, 2007 WL 2254698 (S.D.N.Y. Aug. 6, 2007), or in the alternative a motion in limine to exclude any evidence of settlement negotiations. On reflection, it appears that the motion has merit.

Local Civil Rule 6.3 provides that a party may submit a motion for reconsideration "setting forth concisely the matters or controlling decisions which counsel believes the court has overlooked." Loc. Civ. R. 6.3. "[T]o be entitled to reconsideration, a movant must demonstrate that the Court overlooked controlling decisions or factual matters that were put before it on the underlying motion, which, had they been considered might reasonably have altered the result reached by the court." Keiser v. CDC Inv. Mgmt. Corp., No. 99 Civ. 12101, 2004 WL 516212, at *1 (S.D.N.Y. Mar. 17, 2004).

Plaintiff's motion for summary judgment was predicated on the notion that defendant Dolan's testimony in effect admitted to retaliation as a matter of law. That motion was denied, and correctly so. Title VII provides that "[i]t shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because [s]he has opposed any practice made an unlawful employment practice by this subchapter, or because [s]he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). It is well established, as the Court ruled, that in order to constitute protected activity under this provision, the plaintiff's complaint does not have to be correct that the conduct complained of was illegal, but the complaint has to be made in the good faith and reasonable belief that it was. Manoharan v. Columbia Univ. Coll. of Physicians & Surgeons, 842 F.2d 590, 593 (2d Cir. 1988). Therefore, if the plaintiff did not make a good faith complaint, but rather made up accusations in order to extort money from defendants, then her activity was not protected. See Matima v. Celli, 228 F.3d 68 (2d Cir. 2000).

Similarly, to the extent that plaintiff in good faith undertook to document instances of what she genuinely believed was unlawful discriminatory behavior, that would be protected

2

conduct, but if she attempted in bad faith to coerce employees under her supervision to conform their stories to hers, and thus to obstruct legitimate factfinding by the employer, the administrative agencies, or by the Court, that would be bad faith behavior that would not be entitled to protection: "[T]he way in which an employee presses complaints of discrimination can be so disruptive or insubordinate that it strips away protections against retaliation." Id. at 79.

But the question then arises, what if the employee acted in good faith, but the employer believed that the employee was engaged in bad faith behavior? In the summary judgment opinion, the Court indicated that this could be a defense, because in that event that employer did not act with a retaliatory motive. On reflection, the Court finds that this was a mistake.

The usual way in which the elements of a retaliation claim are set forth, as they were set forth in my earlier opinion, is as follows: To state a prima facie case of retaliation, plaintiff must show that: (1) she engaged in a protected activity; (2) defendant was aware of that activity; (3) she suffered an adverse employment action; and (4) there was a causal connection between the protected activity and the adverse action. See Reed v. A.W. Lawrence & Co., 95 F.3d 1170, 1178 (2d Cir. 1996).

In the hypothesized situation in which the employer fires an employee for what he erroneously believes was a bad faith complaint, these elements are satisfied: the activity was in fact protected, she suffered an adverse employment action, and there was a direct causal connection between her protected activity and her firing. Indeed, it is clear in such a case that the employer fired her *because of* what is, on these assumptions, in fact protected activity.

This is not just a matter of too close a verbal parsing of language in court opinions. There is a good reason why this is so. Contrary to what the Court indicated in the summary

judgment opinion, if an employer fires an employee because he believes her otherwise-protected activity opposing alleged sex discrimination amounts to extortion or obstruction of justice, this is not a firing for a reason distinct from her oppositional behavior. On these assumptions, if the employer's "knowledge" of the employee's conduct actually "influence[s] the manner and timing of" the employee's discharge, the employer is in fact firing the employee *because of* the employee's protests, and not for some other reason. Cosgrove v. Sears, Roebuck & Co., 9 F.3d 1033, 1040 (2d Cir. 1993).

If an employer were permitted to fire employees who protested alleged illegal discrimination, simply because the employer believed the complaints were unfounded or malicious, the employees' protection would be illusory. Employers could easily make false claims that they disbelieved in the employees' good faith. But it is not just a question of possible false defenses. Undoubtedly, many employers do in fact believe that employees' complaints of discrimination are completely without merit. But the law requires the employer to tolerate such complaints, and not to retaliate because of them. So long as the employee in fact acts in good faith when she brings a discrimination complaint, she is absolutely protected against retaliation for her complaint, even if the employer's alleged conduct does not actually violate Title VII. See Wimmer v. Suffolk County Police Dep't, 176 F.3d 125, 135-36 (2d Cir. 1999), citing Quinn v. Green Tree Credit Corp., 159 F.3d 759, 768-69 (2d Cir. 1998). She only loses this protection if she is *in fact* acting in bad faith. Although employees who make up false complaints of discrimination are not protected by the act, see Spadola v. N.Y. City Trans. Auth., 242 F. Supp. 2d 284, 292 (S.D.N.Y. 2003), if an employer chooses to fire an employee for making false or bad faith accusations, he does so at his peril, and takes the risk that a jury will later disagree with his

characterization.

For these reasons, the Court withdraws that portion of its previous opinion that appears at 2007 WL 2254698, at *23-*25, under the heading "retaliation or legitimate firing," insofar as that portion of the opinion differs from the Court's holding here.

The next issue presented by plaintiff's motion is whether testimony relating to the settlement negotiations is admissible under Fed. R. Evid. 408 on the issue of plaintiff's good faith. The summary judgment opinion suggests that it is. Id. at *21-22, citing Pierce v. F.R. Tripler & Co., 955 F.2d 820, 827-28 (2d Cir. 1992). However, the summary judgment opinion did not squarely address the issue of the admissibility of the evidence under Fed. R. Evid. 408. All the Court held in that opinion was that evidence that plaintiff had demanded a large sum of money was potentially relevant to the issue of her good faith. This much is true, or at least, so Judge Weinstein's treatise suggests, noting that evidence of settlement positions will often meet "the modern requirements of relevancy . . . embodied in Rule 401." J. Weinstein & M. Berger, Weinstein's Federal Evidence ¶ 408.03[4], at 408-13 (J. McLaughlin ed. 2007) ("Weinstein's Evidence"). But it does not address the rule excluding evidence of settlement negotiations in most circumstances, which rests not on grounds of relevance but on independent policy grounds. See Manko v. United States, 87 F.3d 50, 54 (2d Cir. 1996). This aspect of plaintiff's motion is not really a motion to reconsider any aspect of the summary judgment ruling as such, but is simply a completely proper motion in limine addressing the admissibility of evidence of settlement negotiations.

It is important to note that the rule prohibits evidence of offering to accept a valuable consideration in attempting to compromise a claim "when offered to prove . . . [the] invalidity of

. . . a claim that was disputed." Fed. R. Evid. 408(a). The rule expressly does not prohibit the use of such evidence for any other purpose. Fed. R. Evid. 408(b). See Starter Corp. v. Converse, Inc., 170 F.3d 286, 293 (2d Cir. 1999).

     Here, plaintiff has two analytically distinct claims. First, she claims that she was discriminated against on the basis of sex by virtue of sexual harassment by defendant Thomas. Second, she claims that she was fired in retaliation for her complaints about that alleged harassment. Plaintiff's settlement offer was an offer to settle the sexual harassment claim. Rule 408(a) therefore clearly prohibits any use of evidence of plaintiff's settlement demands to disprove that claim. However, plaintiff was not offering to settle the retaliation claim; there was no retaliation claim to settle at the time of the negotiations in question. It is arguable that defendants are offering evidence of plaintiff's offer to settle the sexual harassment claim not to show the invalidity of that claim, but to show the invalidity of the retaliation claim, by demonstrating that plaintiff's conduct was not protected. See Deluca v. Allied Domecq Quick Serv. Rests., No. 03 Civ. 5142, 2006 WL 2713944, at *2 (E.D.N.Y. Sept. 22, 2006) (admitting evidence of settlement negotiations over a discrimination claim because the evidence was relevant to a distinct retaliation claim); Carr v. Health Ins. Plan of Greater N.Y., Inc., No. 99 Civ. 3706, 2001 WL 563722, at *4 (S.D.N.Y. May 24, 2001) (same).

     But this cuts too fine a line. First, the way in which the evidence of the settlement negotiations is alleged to be relevant to the retaliation claim is that, according to defendants, it shows that her underlying sexual harassment claim was made in bad faith, that is, that it was not merely invalid, but was known to be such by plaintiff when she made it. Thus, even if the offer is limited to its alleged relevance to the retaliation claim, it is offered precisely for the forbidden

purpose of showing that the underlying claim that was the subject of the settlement discussions was frivolous.

    Second, even if the evidence is not excluded definitively by Rule 408, like any evidence it must pass Rule 403's test: that is, the probative value of the evidence must exceed any prejudicial impact of the evidence in order for it to be admissible. Fed. R. Evid. 403; see Starter Corp., 170 F.3d at 294. The contrary is true here. To the extent that the evidence is offered only as to one of plaintiff's two claims, a limiting instruction would be required. But the instruction here would be all but incomprehensible and "highly confusing." Warren v. Dwyer, 906 F.2d 70, 73 (2d Cir. 1990). (See Pl. Reply 5 (characterizing the potential limiting instruction as "nonsensical").) It would have to tell the jury that it could not consider the settlement offer as evidence that the discrimination claim was invalid, but that it could nevertheless consider it as evidence against the retaliation claim, to which it is relevant precisely because it tends to suggest that the discrimination claim was meritless and offered in bad faith. Such an instruction is too transparently self-contradictory to be expected that a jury could avoid considering it for the very purpose the rule forbids. The Second Circuit has sustained the discretion of a trial judge to exclude evidence of settlement negotiations, even when offered for a purpose permitted by Rule 408(b), where the issue to which the evidence was relevant was closely intertwined with the validity of plaintiff's claims. Trebor Sportswear Co. v. The Limited Stores, Inc., 865 F.2d 506 (2d Cir. 1989).

    Moreover, the evidence has very little probative value. As noted, Judge Weinstein's treatise states that an offer of compromise has probative force. But that is precisely because, as he puts it, "[t]here is no doubt that an offer of compromise . . . might suggest to a reasonable

person that the offeror believed that the adversary's claim had substantial merit." Weinstein's Evidence ¶ 408.03[4], at 408-13. Conversely, an offer by a plaintiff to settle a claim for a small amount might suggest to a reasonable person that the claim had little merit.

    Here, however, defendants want the factfinder to infer that plaintiff's claim was meritless because she asked for too *much* money. As noted in the summary judgment opinion, this is not a completely illogical argument: a factfinder might think, as Dolan purportedly thought, that a large demand suggests a kind of extortion or blackmail. See 2007 WL 2254698, at *21. But, as also noted in the summary judgment opinion, the inference is weak, and defendants' argument is "an uphill battle at best." Id. at *22. Presumably, plaintiff will be asking the jury to return a large verdict. It will be evident to the jury that anyone who complains that his rights have been violated and threatens a lawsuit in response has in effect demanded financial compensation. The possibility of compensation, not to mention potential punitive damages, creates an incentive to bring false claims. The jury will thus have ample basis to assess that incentive, and to take it into account in assessing plaintiff's credibility and in deciding whether plaintiff's claim was honestly made.

    However, the fact that plaintiff offered to settle the claim for a large sum of money casts little further light on the matter. And what little light it sheds comes at the expense of undermining the policy of Rule 408, which is based on the notion that settlement negotiations are to be encouraged, that the use of settlement discussions in litigation will make parties reluctant to engage in such negotiations, and that settlement offers and demands are too tightly bound to the incentive to avoid litigation to cast much light on the underlying merits of a case in any event. The policy behind Rule 408(a) is a strong one. As Judge Weinstein emphasizes, "[t]o

promote settlement of disputes, there must be full and frank disclosure by each party of his or her position, and the facts on which he or she relies to sustain that position. It should be assumed that the law has written over the door of every such conference room the words 'ye who enter here do so without prejudice.'" Weinstein's Evidence ¶ 408.05[2], at 408-20 - 408-21. He goes on to point out that "care should be taken that an indiscriminate application of [Rule 408(b)'s] 'exception' . . . does not result in undermining the rule's public policy objective. . . . The trial judge should weigh the need for such evidence against the potentiality of discouraging future settlement negotiations, and 'has broad discretion as to whether to admit evidence of settlement negotiations offered for another purpose.'" Id. ¶ 408.08[1], at 408-30 - 408-31, quoting Trebor Sportswear Co., 865 F.2d at 511.

Accordingly, plaintiff's motion to exclude evidence of the settlement discussions is granted.

SO ORDERED.

Dated: New York, New York
September 4, 2007

_____
GERARD E. LYNCH
United States District Judge