UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | |
|---|---|
| ANUCHA BROWNE SANDERS, | : |
| Plaintiff, | : Civil Case No. 06 CV 0589 |
| - against - | : ECF CASE |
| MADISON SQUARE GARDEN, L.P., ISIAH LORD THOMAS III AND JAMES L. DOLAN, | : |
| Defendants. | : |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**MEMORANDUM OF DEFENDANTS
MADISON SQUARE GARDEN, L.P. AND JAMES L. DOLAN IN
SUPPORT OF THEIR RENEWED MOTION FOR JUDGMENT AS A
MATTER OF LAW OR, IN THE ALTERNATIVE, FOR A NEW TRIAL**

Defendants Madison Square Garden, L.P. and James L. Dolan respectfully submit this memorandum in support of their renewed motion for judgment as a matter of law or, in the alternative, for a new trial.[1]

**The Punitive Damages Awards On Plaintiff's Claims Are Unlawfully Excessive In The Extreme.**

The jury awarded Plaintiff $6,000,000 in punitive damages on her hostile-environment sexual harassment claim, despite having awarded her *no* compensatory damages—not even a nominal amount. This punitive damages award is excessive, both under New York law and the United States Constitution, and it should be reduced below the Title VII cap of $300,000. Plaintiff did not seek, nor would she have been entitled to receive, compensatory damages on her

---

[1] MSG and Dolan join in Defendant Thomas's arguments in his Memorandum in Support of Renewed Motion for Judgment as a Matter of Law or New Trial to the extent that those arguments apply to the claims against MSG and Dolan.

hostile-environment claims because she neither alleged nor proved an actual injury—indeed, Plaintiff abandoned any claim to such damages by, for example, affirmatively *withdrawing* her claim for emotional distress damages well before trial. That fact alone forecloses punitive damages on her New York law claim. Moreover, the awards on each of her claims grossly exceed the limits of due process. Judged against the three relevant constitutional factors—reprehensibility, the ratio to actual damages, and comparable cases and penalties—even the statutory cap of $300,000 cannot be supported.

      A.      **Absent Any Actual Damages Award, The Punitive Damages Award On Plaintiff's Hostile-Environment Claim Must Not Exceed $300,000.**

On statutory grounds alone, Plaintiff's punitive damages award on her hostile environment claim must be reduced to no more than $300,000—the maximum allowed under Title VII. This is because "New York law . . . requires a finding of actual damage before punitive damages may be awarded[,]" *Action House, Inc. v. Koolick*, 54 F.3d 1009, 1013 (2d Cir. 1995) (citing *Bryce v. Wilde*, 333 N.Y.S.2d 614, 616 (N.Y. App. Div. 1972), *aff'd*, 292 N.E.2d 320 (N.Y. App. 1972)), and Plaintiff neither sought nor recovered any compensatory damages on that claim. While Plaintiff seeks front and back pay on her retaliation claim—equitable relief that will be decided by this Court in a separate proceeding—she did not seek and was not awarded *any* compensatory damages on her hostile-environment harassment claim.

Plaintiff disavowed any right to actual damages for her sexual harassment claim. In her original Complaint, at paragraph (g) of the prayer for relief, she sought an award to "compensate" her "for emotional distress" that she allegedly suffered as a result of sex discrimination. But in her First Amended Complaint she elected to withdraw her request for compensatory damages as well as any claim that she experienced "mental anguish" or "humiliation." *Cf.* Original Compl. ¶¶ 57 & 62. And when she added a sex discrimination claim

under Title VII in her Second Amended Complaint, she again affirmatively elected not to seek such damages. Having removed the issue of actual damages for sex discrimination from the case, and having deprived defendants of the opportunity to refute the existence of such damages at trial, Plaintiff may recover no more than Title VII's $300,000 maximum for punitive damages.

Plaintiff has grudgingly acknowledged New York's requirement that at least nominal damages must be appropriately awarded before there can be punitive damages. Plaintiff's Letter of Sept. 18, 2007, attached proposed instruction No. 21 at n.6 (recognizing the "arguable" requirement under New York law). It is undisputed that the jury made no such award, and the upcoming phase of these proceedings addressing back and front pay cannot supply the missing predicate *nunc pro tunc*. Under Title VII, nominal damages (if any) are for *the jury*—not the Court—to award. *See, e.g.*, *McLaughlin v. New York*, 784 F. Supp. 961, 979 (N.D.N.Y. 1992) (holding that nominal damages are not "equitable relief" authorized by Title VII because they "are compensatory in nature"); *Griffith v. State of Colorado*, 17 F.3d 1323, 1327 (10th Cir. 1994) (same, citing cases). Moreover, an award of nominal damages is *not* automatic upon finding a violation of Title VII. *See Azimi v. Jordan's Meats, Inc.*, 456 F.3d 228, 239-40 (1st Cir. 2006), *cert. denied*, 127 S. Ct. 1831 (2007); *Walker v. Anderson Elec. Connectors*, 944 F.2d 841, 845 (11th Cir. 1991); *cf. Bonner v. Guccione*, 178 F.3d 581, 594 (2d Cir. 1999) (holding that a plaintiff was not a "prevailing party" under Title VII simply because the jury found in her favor on liability, in part because the jury did not award even nominal damages on the plaintiff's sexual harassment claim). Any award of nominal damages in this post-verdict posture would therefore violate the "constitutional prohibition of additur under the Seventh Amendment." *Gentile v. County of Suffolk*, 926 F.2d 142, 155 (2d Cir. 1991) (citing *Dimick v. Schiedt*, 293 U.S.

3

474, 486-88 (1935)).[2]  Punitive damages therefore may not be awarded under Plaintiff's New York law claim.

It is of no help to Plaintiff that the law of this circuit permits punitive damages *under Title VII* in the absence of an award of actual damages.  *See Cush-Crawford v. Adchem Corp.*, 271 F.3d 352, 359 (2001).  Such a rule allows a plaintiff to recover punitive damages only to the extent allowed by the statutory caps in Title VII.  *See* 42 U.S.C. § 1981a(b)(3).  An award that exceeds that cap would need to be based on the New York City Administrative Code; the New York State Human Rights Law does not provide for punitive damages.  Not only is it settled that New York law *does* require an award of actual damages before there may be punitive damages, the rationale under Title VII for permitting an award of punitive damages without actual damages is also wholly inapplicable under the law of New York.  One of the main reasons an award of nominal damages is *not* a prerequisite to the imposition of punitive damages under Title VII is that "[i]n Title VII cases . . . the statutory maxima capping punitive damage awards strongly undermine the concerns that underlie the reluctance to award punitive damages without proof of actual harm."  *Cush-Crawford*, 271 F.3d at 359.  In other words, an award of nominal damages is not needed as a check on the jury's discretion in awarding punitive damages under Title VII, because Title VII's caps are sufficient to serve that purpose.  That rationale does not apply to *uncapped* punitive damages under the New York City Administrative Code, nor could it displace the New York substantive rule that an award of actual damages is a prerequisite to

---

[2]  The Second Circuit has held that a court may direct a post-verdict award of nominal damages without violating the Seventh Amendment in cases involving *constitutional* violations.  *See Robinson v. Cattaraugus County*, 147 F.3d 153, 162 (2d Cir. 1998).  But the Second Circuit has also made clear that this rule is limited to cases involving that type of claim.  *See Gentile*, 926 F.3d at 155; *see also Azimi*, 456 F.3d at 239; *Walker*, 944 F.2d at 845.  Plaintiff's claims, by contrast, are grounded solely in statute.

punitive damages. *See Action House*, 54 F.3d at 1013. Thus, without an award of actual damages, Plaintiff may not receive punitive damages under New York law.

In the absence of an actual damages award on Plaintiff's hostile-environment sexual harassment claim, this Court at the very least (and quite apart from the defendants' constitutional claims) must reduce the $6 million punitive damages award to the maximum permitted under Title VII. Title VII imposes varying caps on punitive damages based on the size of the defendant employer. *See* 42 U.S.C. § 1981a(b)(3). Because MSG has more than 501 employees, the applicable cap—the highest available under the statute—is $300,000. *See id.* § 1981a(b)(3)(D). The Court must, at the very least, reduce the $6,000,000 punitive award on Plaintiff's hostile environment claim to $300,000. *See, e.g.*, *Luciano v. Olsten Corp.*, 110 F.3d 210, 221 (2d Cir. 1997) (holding that if punitive damages "awarded by the jury exceed[] the relevant cap, the district court reduces the award to ensure that it conforms with subsection (b)(3)").

### B. The Punitive Damages Award On Plaintiff's Claims Should Be Reduced Even Further Under Federal Constitutional Principles.

Independent of the requirements of New York law and quite apart from Plaintiff's failure to receive compensatory or even nominal damages, the $11.6 million awards of punitive damages must be drastically remitted to satisfy constitutional limits. Under the Due Process Clause, three factors guide a trial court's review of the constitutionality of a punitive damages award: first, the degree of reprehensibility of the defendant's misconduct; second, the disparity between the harm suffered by the plaintiff and the size of the punitive damage award; and finally, the difference between the size of the award and civil penalties authorized or imposed in comparable cases. *See, e.g.*, *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 418 (2003). These three factors, whether considered individually or together, demonstrate that the

awards of punitive damages are grossly excessive and must be reduced below the Title VII statutory cap.

### 1. Reprehensibility

The reprehensibility of Defendants' conduct—the "most important indicium of the reasonableness of a punitive damages award," *BMW of N. Am. v. Gore*, 517 U.S. 559, 575 (1996)—does not support a punitive damages award larger than the federal cap. Factors relevant to determining reprehensibility are whether (1) "the harm caused was physical as opposed to economic"; (2) "the tortious conduct evinced an indifference to or a reckless disregard of the health or safety of others"; (3) "the target of the conduct had financial vulnerability"; (4) "the conduct involved repeated actions or was an isolated incident"; and (5) "the harm was the result of intentional malice, trickery, or deceit, or mere accident." *State Farm*, 538 U.S. at 419. None of these factors favors the substantial awards in this case.

The decision in *Parrish v. Sollecito*, 280 F. Supp. 2d 145, 162 (S.D.N.Y. 2003), is instructive. In that case, a jury awarded punitive damages of $500,000 against an employer for sexual harassment and retaliation. Applying the federal constitutional limits on punitive damages, the court determined that the award must be remitted to an amount equal to the applicable Title VII cap. *See id.* at 164. Even though the jury had found the employer's conduct sufficiently reprehensible to merit an award of punitive damages up to the Title VII cap, it was not serious enough to warrant the award of $500,000: the employer had not threatened the plaintiff with violence or the threat of violence; the plaintiff had suffered no economic or compensable emotional harm as a result of the harassment; and the plaintiff was not financially vulnerable. *Id.* at 163. The court therefore reduced the punitive damages award to $50,000, the applicable Title VII cap.

6

A similar calculus applies in this case, and it likewise merits reducing the punitive award to no more than the Title VII cap. Viewing the trial record in the light most favorable to Plaintiff, there is no evidence that any MSG employee sexually harassed her in such a way as to threaten or subject her to physical violence, let alone that such violence could be imputed to MSG. Instead, Plaintiff presented evidence that Isiah Thomas on isolated occasions subjected her to *verbal* harassment only in 2004, and amorous advances thereafter in 2005, Tr. at 134-36, 138-40, 142, 153, 168-69, 184-86; that Stephon Marbury made insulting comments about her on one occasion in 2005 outside of her presence, Tr. at 243-44; and that *other* MSG employees were subjected to what she believed were sexual advances or other inappropriate behavior of which she was unaware when made, Tr. at 106, 203, 234-35.[3] Plaintiff testified that Frank Murphy interacted with her in a verbally menacing manner on one occasion in 2004, Tr. at 141, 357-58, and that Thomas on one occasion had "pulled or led" her into a room before speaking with her harshly in 2004, Tr. at 516-17, but those two isolated incidents do not remotely constitute the "violence" necessary to support a massive award of punitive damages. Indeed, not only was there no evidence at trial of physical harm to plaintiff, there was also no evidence of *economic* harm; plaintiff made no claim that would entitle her to compensatory damages for sexual

---

[3] To the extent the jury awarded punitive damages against MSG for Thomas's alleged verbal harassment such damages would be attributed to conduct time barred under Title VII since all such conduct ceased as of December 2004. *See, e.g.*, *Ledbetter v. Goodyear Tire & Rubber Co.*, 127 S. Ct. 2162, 2166-67 (2007). Nor is there any evidence that the conduct concerning other MSG employees was directed at Plaintiff because of her sex and thereby appropriate for a punitive damages award. Neither the Marbury nor the Murphy comments were directed at Plaintiff because of her sex. In the case of Marbury, it was prompted by a failure to pay overtime to Marbury's cousin. And Plaintiff regarded Murphy's alleged comment as part of his efforts to right past perceived wrongs suffered by Murphy in the years prior to Thomas's hire.

harassment. And although Plaintiff did claim economic harm from retaliation, she has never so much as contended that her dismissal involved physical threats or violence.

Nor is there the slightest evidence that Plaintiff was a "financially vulnerable" "target" of "economic injury" inflicted by MSG, *see BMW*, 517 U.S. at 576. Plaintiff alleged economic injury as a result of her termination, but claimed no such injury as a result of any harassment. And Plaintiff labored long during the trial to demonstrate that, throughout the period of the alleged "harassment," she was a highly successful and highly competent senior executive who was rapidly and repeatedly promoted, and who, during the period when she claims she was harassed, received her most lucrative raises and bonuses, upon which she relied to bolster her claims of recognized extraordinary performance. Tr. at 93, 97, 98, 120, 123. Plaintiff made it abundantly clear that during this time she was suffering no financial stress and was unconcerned about her job. Tr. at 463. Moreover, Plaintiff readily acknowledged that, while Thomas's conduct bothered her, she was emotionally resilient, and no "wilting flower." Tr. at 144. Financially and emotionally, therefore, Plaintiff was in no sense "vulnerable"—a conclusion made all the more clear by her decision to withdraw claims of emotional distress.

The evidence, viewed in the light most favorable to Plaintiff, also demonstrates that MSG's conduct was far from egregious or indicative of indifference to the health and safety of others. Even though the jury may have found that MSG did not do enough to prevent the creation of a sexually hostile work environment by its employees, it is undisputed that MSG took numerous and costly steps to prevent workplace harassment. MSG had a well-developed sexual harassment policy including in-person and online training of its employees regarding its rules against such conduct, Tr. at 374-81, 958, 1034, 1292-94, 1326, 1489, and it enforced that policy, as shown by the prompt investigation and termination of Hassan Gonsalves and Vernon Manuel

8

for their harassing conduct, Tr. at 894-97, 1298-1302.  Although Plaintiff's "imputation" theory rested heavily on her testimony that she reported Thomas's sexually harassing conduct to Mills each and every time it occurred, Tr. at 135-36, 138-39, 142-43, 144-45, 153-54, 170, 175, 187, 249, even Plaintiff does not dispute that Mills believed the conflicts between Thomas and Plaintiff reflected a tension between basketball and marketing operations common to all NBA teams.  Tr. at 859, 861-63, 865.  Indeed, when Plaintiff came to Mills with a claim of conduct that could be portrayed as sexual in nature—an unwelcome hug from Thomas—Mills promptly made Thomas aware of Plaintiff's objection and told him not to engage in such behavior again.  Tr. at 901.  Simply stated, such conduct by MSG is not so reprehensible as to warrant a $6,000,000 punitive damages award against it for sexual harassment, especially in the absence of any actual damages alleged or proved by Plaintiff on this claim.  Nor is the retaliatory conduct found by the jury so reprehensible that an award of punitive damages—beyond the substantial compensation that Plaintiff is already seeking—is warranted under the Constitution.

### 2.     Ratio

The second *State Farm/Gore* factor—the disparity between the harm suffered by the Plaintiff and the size of the punitive damage award—presents the starkest proof of the award's excessiveness.  Since Plaintiff sought *no* actual damages for sexual harassment, yet was awarded $6,000,000 in punitive damages, the disparity could not be more evident.  The Supreme Court has held disparities far smaller than this one to be constitutionally suspect.  *State Farm*, 538 U.S. at 425 (ratio of 145-1 constitutionally suspect); *BMW*, 517 U.S. at 583 (ratio of 500-1 "breathtaking").  Even had there been an award of nominal damages, and even if the jury had limited its award to the Title VII cap of $300,000, the ratio would still be unprecedented.

To be sure, the Supreme Court has also made clear that "low awards of compensatory damages may properly support a higher ratio than high compensatory awards if, for example, a particularly egregious act has resulted in only a *small amount* of economic damages." *BMW*, 517 U.S. at 582 (emphasis added). Similarly, the Second Circuit has held that "the use of a multiplier to assess punitive damages is not the best tool" where a Plaintiff is awarded only nominal damages. *Lee v. Edwards*, 101 F.3d 805, 811 (2d Cir. 1996). But neither court has ever suggested that an award of *zero* actual damages may properly support a punitive damages award in the hundreds of thousands of dollars, much less an award of $6,000,0000. Based on the ratio alone, the award must be remitted to below the Title VII cap for punitive damages.[4]

### 3. Comparable cases and civil penalties

Comparing the $11.6 million award in this case with other cases in which juries have awarded punitive damages—the third factor in *State Farm* and *Gore*—reinforces that this award is far greater than the Constitution allows. As an initial matter, the Title VII cap itself is indicative of the outer limit of punitive awards in cases of discrimination. Courts have therefore repeatedly looked to those caps as appropriate indications of the maximum amount of punitive damages in such cases. *See Bains LLC v. Arco Prods. Co.*, 405 F.3d 764, 777 (9th Cir. 2005); *Kauffman v. Maxim Healthcare Servs., Inc.*, 2007 WL 2506026, at *7-8 (E.D.N.Y. Sept. 5, 2007); *Cioffi v. N.Y. Cmty. Bank*, 465 F. Supp. 2d 202, 214 (E.D.N.Y. 2006). The jury's award of punitive damages in this case is constitutionally flawed because it vastly exceeds that cap.

---

[4] Defendants respectfully reserve the right to address additional challenges to the retaliation awards following the Court's ruling on back pay and front pay.

Second, the punitive damage award in this case is dramatically greater than jury awards in comparable cases. Where, as here, plaintiffs have received punitive damages without compensatory damages, the punitive damages awards have been in the tens or hundreds of thousands of dollars—not in the millions. *See, e.g.*, *Fabri v. United Techs. Int'l, Inc.*, 387 F.3d 109, 126-27 (2d Cir. 2004) (award of $500,000 in compensatory damages excessive in the presence of only nominal damages); *Cush-Crawford*, 271 F.3d at 357 (upholding punitive award of $100,000 despite plaintiff having been awarded no actual damages); *Lee*, 101 F.3d at 813 (reducing a punitive award of $200,000 to $75,000 where the plaintiff suffered no compensatory damages); *Tuszynki v. Innovative Servs., Inc.*, 2005 WL 221234, at *4 (W.D.N.Y. Jan. 29, 2005) (upholding punitive award of $30,000 despite the plaintiff being awarded only nominal damages); *Fernandez v. N. Shore Orthopedic Surgery & Sports Med.*, 79 F. Supp. 2d 197, 209 (E.D.N.Y. 2000) (reducing punitive award of $100,000 to $50,000 in the absence of any actual damages on a harassment claim); *EEOC v. Harbert-Yeargin, Inc.*, 266 F.3d 498 (6th Cir. 2001) ($300,000 in punitive damages awarded in sexual harassment case despite only nominal damages); *Timm v. Progressive Steel Treating*, *Inc.*, 137 F.3d 1008 (7th Cir. 1998) ($15,000 in punitive damages awarded on sexual harassment claim without any compensatory damages). The punitive damages award in this case should be similarly reduced.

A comparison of the $11.6 million punitive award with "civil penalties authorized or imposed in comparable cases," *State Farm*, 538 U.S. at 428, points to the same conclusion. As explained above, Title VII's caps provide a reasonable benchmark by which to judge whether an award of punitive damages under other discrimination laws is excessive. Moreover, under the City Law the maximum civil penalty the New York City Commission on Human Rights may impose for discriminatory acts is $250,000—even less than the Title VII cap applicable here.

11

*See* N.Y. City Admin. Code § 8-126(a). Those comparisons likewise support reducing the punitive damage award at least to the Title VII cap, if not well below.

## Conclusion

For the reasons stated above, the punitive damages award on the hostile-environment claim against MSG should be reduced to below the Title VII cap of $300,000.

Respectfully submitted,

s/ Miguel A. Estrada

Miguel A. Estrada (ME-4227)
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Ave. N.W.
Washington, D.C. 20036
mestrada@gibsondunn.com
(202) 955-8500

Ronald M. Green (RG-7766)
Barry A. Cozier (BC-7110)
Brian G. Cesaratto (BC-5464)
EPSTEIN BECKER & GREEN, P.C.
250 Park Avenue
New York, New York 10177

*Attorneys for Defendants*
*Madison Square Garden, L.P. and*
*James L. Dolan*

## CERTIFICATE OF SERVICE

I hereby certify that on October 16, 2007 I caused an electronic copy of this Memorandum to be served on the following individuals who are registered to receive electronic service via the ECF system:

Anne Vladeck, Esq.
Kevin Mintzer, Esq.
Vladeck, Waldman, Elias &
Engelhard, P.C.
1501 Broadway, Suite 800
New York, New York 10036
(212) 403-7300
*Attorneys for Plaintiff*

Sue Ellen Eisenberg (SE-4713) – *admitted pro hac vice*
Lucetta Franco (LF-7638) – *admitted pro hac vice*
Eisenberg & Bogas, P.C.
33 Bloomfield Hills Parkway, Suite 145
Bloomfield Hills, Michigan  48304-2945

    -and-

Laurie Berke-Weiss (LB-3445)
Louis Pechman (LP-6395)
Berke-Weiss & Pechman LLP
488 Madison Avenue
New York, New York 10022
(212) 538-9500

*Attorneys for Defendant Isiah Lord Thomas III*

                                                    /s/     Henry Whitaker
                                                        Henry C. Whitaker